UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HAMAN, INC.,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | |
| ] | CIVIL ACTION NO. |
| **CHUBB CUSTOM INSURANCE** ] | 2:18-CV-01534-KOB |
| **COMPANY,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

This insurance dispute comes before the court on Plaintiff Haman, Inc.'s "motion for specific performance to enforce the insurance policy's appraisal process provisions." (Doc. 33). Haman asserts that its commercial property insurance carrier, Defendant Chubb Custom Insurance Company, must submit to the appraisal process of Haman's claims for fire damage and storm damage to its hotel. For the following reasons, the court will deny Haman's motion.

### I.  STANDARD OF REVIEW

In Count One of its amended complaint, Haman brings a claim for specific performance against Chubb to submit to appraisal of two of Haman's insurance claims. In its motion for specific performance, relying on evidentiary exhibits, Haman asks the court to compel the same performance: Chubb's submittal to appraisal. So, Haman's motion for specific performance is really a motion for

1

summary judgment in which Haman asks the court to enter judgment for Haman on Count One. So the court will treat the motion for specific performance as a motion for summary judgment.

A trial court can resolve a claim on summary judgment only when the moving party establishes two essential elements: (1) no genuine disputes of material fact exist; *and* (2) the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Under the first element of the moving party's summary judgment burden, "'[g]enuine disputes [of material fact] are those in which the evidence is such that a reasonable jury *could* return a verdict for the non-movant.'" *Evans v. Books-A-Million*, 762 F.3d 1288, 1294 (11th Cir. 2014) (emphasis added) (quoting *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996)). And when considering whether any genuine disputes of material fact exist, the court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

## II. BACKGROUND

### 1. *The Commercial Property Insurance Policy Appraisal Provision*

Chubb issued to Haman a commercial property insurance policy that covered certain damages to Haman's hotel. The insurance policy contained an

appraisal provision. The appraisal provision provided that if the insurer and the insured disagreed on "the value of the property or the amount of loss" for a claim, then either party could demand an appraisal of the loss. (Doc. 33-1 at 3). If a party demanded appraisal, then each party would select its own competent and impartial appraiser to state separately the value of the loss. And if the appraisers could not agree on the value of the loss, then an umpire selected by the appraisers would decide.

2. *The Fire Claim*

On March 22, 2014, a fire damaged Haman's hotel. Haman submitted a claim to Chubb for the fire damage. Chubb investigated Haman's claim and, according to Haman, valued the loss from fire damage at $523,477.01. But Haman also investigated the damage and valued its loss at $1,679,975.33. So the parties dispute the amount of loss from fire damage; they do not dispute the cause of the fire or that the insurance policy covers the fire damage.

Because of the dispute over the amount of loss caused by the fire, the parties initially agreed to invoke the appraisal provision of the insurance policy. But then Chubb refused to proceed with appraisal after Haman selected Charles Howarth as its appraiser because, according to Chubb, Mr. Howarth is not impartial. Chubb asserts that Mr. Howarth had a financial interest in the outcome of the appraisal because Haman paid Mr. Howarth an hourly fee and agreed that his fee "[would]

3

not exceed thirty percent (30%) of the additional settlement awarded to [Haman], and additionally, should the process produce no additional settlement then no fee will be due." (Doc. 38-3 at 2). So Chubb contends that Mr. Howarth has incentive to advocate for an increased damage amount for Haman because the higher the damage amount, the higher the cap on his fee.

    3.    *The Storm Claim*

Then, on April 28, 2014, a storm caused additional damage to Haman's hotel. Haman submitted a claim to Chubb for the damage and asserted that the storm caused $1,595,608.00 worth of covered losses to the exterior and interior of the hotel.

Chubb investigated the storm damage claim and determined that the storm caused only $43,262.01 worth of *covered* losses. According to Chubb, Haman's poor maintenance and the age of the roof—not the storm—caused the remainder of the damages to the exterior and interior of the building and thus were not damages covered under the insurance policy. So, like the fire claim, the parties dispute the amount of damages for the storm claim; but, unlike the fire claim, the parties dispute the cause and coverage of Haman's claimed damages for the storm claim.

Because of the dispute over the amount of loss for the storm claim, Haman invoked the appraisal provision in the insurance policy. But Chubb refused to submit to appraisal because of the outstanding dispute over what caused the

claimed damages and what damages the insurance policy covered. According to Chubb, appraisal would be premature without first resolving these coverage and causation disputes.

    *4.    Haman's Amended Complaint and Motion for Specific Performance*

Because of Chubb's refusal to pay the entirety of Haman's claimed damages and submit to appraisal, Haman brings three claims against Chubb: (1) specific performance to submit to appraisal; (2) breach of contract; and (3) bad faith. Haman now moves the court to compel the specific performance that Haman demands in its amended complaint; so, as the court discussed above, Haman asks the court to enter judgment in its favor on its count for specific performance.

The court next analyzes whether Haman has demonstrated that no genuine disputes of material fact exist and/or whether it is entitled to specific performance as a matter of law for appraisal of its fire claim and storm claim. In doing so, the court finds that genuine disputes over whether Haman's appraiser is impartial preclude compelled appraisal of the fire claim, and that Haman is not entitled to appraisal of the storm claim as a matter of law because of outstanding causation and coverage disputes.

## III.    ANALYSIS

    *1.    The Fire Claim*

Chubb refuses to submit to appraisal for the fire claim because it contends

5

that Haman's appraiser, Mr. Howarth, has a financial incentive to inflate his appraisal and is thus not an impartial appraiser. Haman, on the other hand, contends that no dispute over Mr. Howarth's impartiality exists. The court disagrees; though the court reaches no decision on whether Mr. Howarth is an impartial appraiser, the record currently before the court reveals a genuine dispute over his impartiality that precludes summary judgment.

Chubb submitted a screenshot of Mr. Howarth's company's website that contains statements that *could* reflect his bias in favor of Haman. The website states that Mr. Howarth's company "always serve[s] on the insured's side of the claim." (Doc. 38-2 at 2). The website also explains the company's compensation arrangement with insureds, stating, "we only get involved in claims when there is a major deficit in the estimate and where we have a chance to significantly increase the claim amount for our clients and to be profitable in so doing for our company"; "we . . . cap our fee on just a small percentage of the 'new' money we add to the claim"; and, "we only want to get paid if we actually improve your settlement." (*Id.* at 3). Reasonable jurors could decide that these statements reflect Mr. Howarth's bias in favor of the party who hired him and may pay him from the amount of the award he obtains for it.

Chubb also submitted a copy of the appraisal employment agreement between Haman and Mr. Howarth for the fire claim. (Doc. 38-3). The agreement

6

provides that Haman would pay Mr. Howarth an hourly fee with a total fee cap "not [to] exceed thirty percent (30%) of the additional settlement awarded to the Insured, and additionally, *should the process produce no additional settlement then no fee will be due*." (*Id.* at 2) (emphasis in original). So, according to the employment agreement, a higher appraisal would increase the cap on Mr. Howarth's fees. Reasonable jurors could find that this agreement creates a financial incentive for Mr. Howarth to increase his appraisal and shows that he is not an impartial appraiser.

And Chubb submitted a transcript of an examination under oath of Haman's representative, Zarin Visram, that shows that Mr. Howarth's fee could be contingent on the value of his appraisal. (Doc. 38-17). Ms. Visram testified that Haman would only pay Mr. Howarth a percentage of any additional amounts that it recovered above what Chubb had already paid Haman, and that Haman would not pay Mr. Howarth any fee if Mr. Howarth appraised the damage and Haman did not recover any more money from Chubb. (*Id.* at 71–72). Reasonable jurors could infer from this testimony that Mr. Howarth has a financial incentive to increase his appraisal and is thus not an impartial appraiser.

On the other hand, Haman submitted evidence that shows that Mr. Howarth's financial incentive, if one ever existed, no longer exists. In an affidavit, Mr. Howarth states that, after Haman filed this lawsuit, Haman hired him as an

7

expert witness and started paying him an hourly fee. (Doc. 33-12 at ¶ 4). According to Mr. Howarth, that hourly fee will include any work he performs under the appraisal provision of the insurance policy, will not be capped, is "not contingent or in any way related to . . . the appraisal," and will be receivable "regardless of whether Haman receives any additional sums from Chubb." (*Id.*). Reasonable jurors could credit Mr. Howarth's testimony and determine that he has no financial incentive to increase his appraisal and thus conclude that he is impartial.

So, viewing the record in the light most favorable to Chubb, a genuine dispute over Mr. Howarth's impartiality exists; the court cannot resolve this factual dispute on summary judgment. So the court will deny Haman's motion to compel Chubb to submit to appraisal for the fire claim with Mr. Howarth as Haman's appraiser.

*2.     The Storm Claim*

Chubb refuses to submit to appraisal for the storm claim because the parties dispute the cause and extent of coverage for Haman's claimed damages. For example, Haman claims that the storm caused unrepairable damage to the hotel roof and devastating water seepage into the interior of the hotel. Chubb claims that Haman's poor maintenance and the age of the roof—not the storm—caused most of the roof damage and all of the interior damage. So, according to Chubb, these

outstanding coverage and causation disputes preclude appraisal as a matter of law. For the following reasons, the court agrees.

In *Rogers v. State Farm Fire and Cas. Co.*, 984 So. 2d 382 (Ala. 2007), the Alabama Supreme Court held that if an insurance policy, like the policy in this case, provides for appraisal when the parties "fail to agree on the amount of loss," then "an appraiser's duty is limited to determining the 'amount of loss'—the monetary value of the property damage—and that appraisers are not vested with the authority to decide questions of coverage and liability." 984 So. 2d at 392. In that case, the Alabama Supreme Court reversed the trial court's order directing the parties to submit to appraisal because the parties disputed the cause of the damages to the plaintiff's insured home. *Rogers*, 984 So. 2d at 392. According to the Alabama Supreme Court, "[t]he determination of the causation of these matters is within the exclusive purview of the courts, not the appraisers." *Id.* So the Alabama Supreme Court found that the trial court could not order the parties to appraisal until the trial court resolved the causation issue. *Id.*

Here, like the parties in *Rogers*, the parties dispute the cause of the damage to Haman's hotel's roof and interior. So, under *Rogers*, the court cannot order the parties to submit to appraisal while the causation dispute remains.

Haman contends that *Rogers* does not preclude appraisal under *Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307 (N.D. Ala. 2018). (*See* Doc. 33 at 7–8). In

9

*Cole*, the plaintiff homeowners and the defendant insurer disagreed on the amount of damages that a fire caused to the plaintiffs' insured home. So the plaintiffs demanded appraisal under their insurance policy that, like the policy in this case, provided for appraisal if the parties disputed the amount of loss. The defendant refused to submit to appraisal, and the plaintiffs filed suit alleging that the defendant breached the insurance policy by doing so.

The court ordered the insurance company in *Cole* to submit to appraisal because of a significant fact not present in this case: the parties did *not* dispute the cause of the loss or that the insurance policy covered the loss. *See Cole*, 326 F. Supp. 3d at 1324. In *Cole*, the plaintiffs and the defendants, unlike the parties in this case, "agree[d] that a fire occurred and that things damaged by the fire would be covered under the Policy. [The parties], therefore, only disagree[d] about the extent and value of the loss," a dispute "primed for appraisal." *Id.* at 1325.

In *Cole*, the court also noted that the Alabama Supreme Court in *Rogers* differentiated between "cause of loss" disputes, where the parties dispute causation and coverage, and "extent of loss" disputes, where the parties agree on causation and coverage but disagree on the extent of the covered loss. *Cole*, 326 F. Supp. 3d at 1324–25. And the court found that *Rogers* does not preclude appraisal when only an extent of loss dispute exists. *Id.* at 1325.

But this case does not present an "extent of loss" dispute. Rather, the parties

10

disagree whether a storm caused all of Haman's damages and whether the insurance policy covers all of the damages; Haman contends that the storm caused all damages, while Chubb contends that the age and poor maintenance of the roof caused some of the damages. So this case presents a "cause of loss" dispute. Thus, under *Rogers* and *Cole*, appraisal would be premature while this causation and coverage dispute remains. The court will deny the motion for specific performance as to appraisal of the storm claim.

## IV. CONCLUSION

By separate order, the court will **DENY** Haman's motion for specific performance.

**DONE** and **ORDERED** this 6th day of August, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE