FILED

2020 Aug-07  AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC., | ] |
| | ] |
|     **Plaintiff,** | ] |
| | ] |
| v. | ]   **CIVIL ACTION NO.** |
| | ]   **2:18-CV-01534-KOB** |
| **CHUBB CUSTOM INSURANCE** | ] |
| **COMPANY,** | ] |
| | ] |
|     **Defendant.** | ] |

## MEMORANDUM OPINION

This case involving insurance coverage for an ill-fated Knight's Inn motel now comes before the court on Defendant Chubb Custom Insurance Company's motion to strike Plaintiff Haman, Inc.'s amended expert disclosures. (Doc. 69). Chubb asserts that the court should not allow Haman's amended disclosures because Haman filed them after the deadline for expert disclosures and the later filing prejudices Chubb.

Upon reviewing the submissions of the parties, the court finds most of Haman's amended disclosures justified or harmless, so the court will deny in part Chubb's motion to strike. However, the court will grant in part Chubb's motion to strike solely regarding Haman's expert Tom Irmiter's opinions on the reasonableness of cost assessments, as Haman cannot show that the delayed disclosure qualifies as justified or harmless because no basis exists for those

1

opinions in Haman's prior expert disclosures or discovery.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case—which has a long history that includes a previous, dismissed-without-prejudice complaint based on the same underlying events—arises from an insurance dispute.  Chubb issued to Haman a commercial property insurance policy that covered certain damages to Haman's Knight's Inn motel.  The insurance policy contained an appraisal provision allowing each party, upon demand of an appraisal relating to an insurance claim, to select its own independent appraiser to assess the value of a loss on the property.  If the appointed independent appraisers could not agree on the value of the loss, then an umpire selected by the appraisers would determine the value of the loss.

On March 22, 2014, a fire damaged Haman's motel.  Haman submitted a claim to Chubb for the fire damage, but the parties could not agree on the value of the damage claim.  Because of the dispute over the amount of loss caused by the fire, the parties initially agreed to invoke the appraisal provision of the insurance policy.  However, the appraisal hit a roadblock when Chubb argued that Haman's appraiser, Charles Howarth, was not impartial because his fee could increase commensurately with the amount of the insurance payout.

Then, on April 28, 2014, a storm caused additional damage to Haman's motel.  Once again, Haman and Chubb disagreed on the amount of covered loss.

Haman believed that all damage should be covered, while Chubb argued that some of the damage to the Knight's Inn came from age and poor maintenance, not the storm.

After the dismissal without prejudice of the first lawsuit involving the damage to the Knight's Inn, the dispute over insurance coverage led to the instant lawsuit and Haman filed an amended complaint against Chubb.  (Doc. 35). Because of Chubb's refusal to pay the entirety of Haman's claimed damages and submit to the appraisal process, Haman brought three claims against Chubb: (1) specific performance to submit to appraisal; (2) breach of contract; and (3) bad faith.  Haman also filed a motion requesting that the court enter judgment in its favor on its count for specific performance and appraisal.  (Doc. 33).  The court entered a memorandum opinion and order finding that genuine factual disputes precluded the court from compelling appraisal.

The parties began conducting discovery and made expert disclosures.  In accordance with the operative scheduling order, Haman's expert disclosures— including complete reports under Federal Rule of Civil Procedure 26—were due on or before April 30, 2019.  The scheduling order did not contain any provisions regarding supplemental disclosures.  Haman produced its disclosures on the April 30, 2019 deadline.  Relevant to the motion at hand, Haman's disclosures included expert reports from Charles Howarth and Tom Irmiter.  (Doc. 69-1).

Haman's expert disclosures identified Mr. Howarth as an insurance appraiser and consultant knowledgeable about the "specific damages to the Knight's Inn that were caused by both the fire loss and the storm loss." (Doc. 69-1 at 2). The disclosures stated that Mr. Howarth has an abundance of experience in insurance appraisals and performed detailed inspections of the Knight's Inn. Haman stated that Howarth would testify regarding "damage, repair costs, replacement costs and actual cash value" of the damage based on his inspections. (Doc. 69-1 at 2).

The disclosure specifically referenced previous lengthy reports prepared by Mr. Howarth's company that related to the damage to the Knight's Inn and were "previously produced in this litigation." (*Id.* at 3). The disclosure also said that Mr. Howarth is knowledgeable about insurance appraisal and "is critical" of the appraisal/claims handling of Chubb. (*Id.*). In his expert disclosure, Mr. Howarth listed his sources, which included insurance law, the relevant insurance policy in this case, and communications about the claim administration for the Knight's Inn.

Haman's expert disclosures identified Tom Irmiter as a licensed building inspector and appraiser who inspected the Knight's Inn damage and prepared a report that had been provided to Chubb. (Doc. 69-1 at 4). The disclosure stated that Mr. Irmiter would testify concerning "the storm claims and the scope of the damage." (*Id.*). In his expert report filed with his disclosure, Mr. Irmiter stated

4

that he would address causation and the scope of repairs for the two incidents of damage to the Knight's Inn.  The report shows an assessment of the building after the damage that indicates that the roof of the Knight's Inn likely needed to be replaced, interior repairs needed to be made, and that the damage could continue to get worse if it went unremedied.  (Doc. 69-1 at 154–55).

After Haman's expert disclosures, Chubb deposed Mr. Irmiter in December 2019 and Mr. Howarth in January 2020.  Not long after, on February 13, 2020, Haman filed amended disclosures for both Mr. Howarth and Mr. Irmiter.   (Doc. 69-4; doc. 69-6).  Haman filed these amended disclosures before the end of discovery but after the deadline for expert disclosures.

In Haman's amended disclosures for Mr. Howarth, Haman references Chubb's deposition of Mr. Howarth and the previous reports from Mr. Howarth that were cited in his original expert disclosure.  (Doc. 69-4).  Haman's amended disclosures for Mr. Howarth provide actual cash value calculations for his damage assessment, building on his previous replacement value damage estimates.  The amended disclosure specifically states that Mr. Howarth's new information arose from questions from Chubb at Mr. Howarth's deposition.  Haman's amended disclosure also states that Mr. Howarth's damage assessments in the amended disclosure were "valid as of the day of their creation," but will continue to change over time because the property—which is now a "total loss"—will continue to

5

deteriorate and the cost of repairs must be assessed at the time of repair.  (Doc. 69-4 at 3).

In Haman's amended disclosure for Mr. Irmiter, Haman indicated that Mr. Irmiter would testify that the building was a total loss because only the foundation and exterior walls are salvageable.  (Doc. 69-6).  The amended disclosure also states that Mr. Irmiter will testify that Mr. Howarth's cost estimates are reasonable.

Discovery in this case concluded on March 15, 2020.  On April 6, 2020, Chubb filed the instant motion to strike Haman's amended expert disclosures as untimely.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26(a)(2), parties must disclose their intended expert witnesses to the other party; the expert witnesses generally must provide a written report containing, among other things, (i) "a complete statement of all opinions the witness will express and the basis and reasons for them," (ii) the facts or data used to form the opinions, and (iii) any exhibits supporting the opinions.  Fed. R. Civ. P. 26(a)(2)(B).

Parties must make their disclosures in accordance with court ordered schedules.  Fed. R. Civ. P. 26 (a)(2)(D).  Parties can supplement disclosures when required by Rule 26(e); parties must supplement disclosures where ordered by the court or "if the party learns that in some material respect the disclosure or response

is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in

writing."  Fed. R. Civ. P. 26(e).

Under Federal Rule of Civil Procedure 37, if a party "fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not

allowed to use that information or witness" at trial "unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  "The burden of

establishing that a failure to disclose was substantially justified or harmless rests

on the nondisclosing party."  *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824

(11th Cir. 2009) (citing *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga.

2006)).  Rule 37 gives trial courts "discretion to decide how best to respond to a

litigant's failure to make a required disclosure under Rule 26."  *Taylor v. Mentor*

*Worldwide LLC*, 940 F.3d 582, 593 (11th Cir. 2019).

## III.   ANALYSIS

Chubb argues that Haman cannot now file new expert disclosures because

the deadline for expert disclosures has passed and the court's scheduling order has

no provision for supplemental disclosures.  (Doc. 69).  Further, Chubb asserts that

Haman's expert disclosures, as originally filed before the deadline, were

incomplete.

Specifically, Chubb argues that Mr. Howarth's original expert disclosure did not include reports from Mr. Howarth about the causes of the damages to the Knight's Inn, the meaning of relevant insurance provisions, anything about Chubb's handling of the insurance claims, or the actual cash value of the damages to the Knight's Inn. Chubb also argues that Mr. Irmiter's report did not include anything about the motel being a "total loss" or about cost estimates. Thus, Chubb argues that the court should strike the amended disclosures and bar Mr. Howarth and Mr. Irmiter from testifying at trial regarding the new topics.

Chubb further argues that Haman has avoided presenting a damage figure by claiming that Mr. Howarth's damage estimates continue to evolve. Chubb asserts that it will likely not get the real number until Mr. Howarth takes the stand at trial, which prejudices Chubb.

Haman argues that its short supplements to the expert disclosures were necessary because of the evolving nature of the damages in this case and to comport with deposition testimony from Mr. Howarth and Mr. Irmiter. (Doc. 74). Further, Haman argues that Chubb was aware of the basis for the new information, so it suffered no prejudice. Haman asserts that Chubb's attorneys obtained sworn testimony from Mr. Howarth in 2017 in the previously dismissed case that covered the information in the amended disclosures. Haman also points to particular places

within Mr. Howarth's 2019 deposition testimony in which Mr. Howarth discussed the disputed information.

In reply, Chubb argues that, although Mr. Howarth was an appraiser in the predecessor case, he was not designated as an expert witness at that time. Chubb also argues that the previous information should not be considered because it was only for appraisal, not expert testimony on cause of loss, and this court said in its previous memorandum opinion that "cause of loss disputes may not be resolved through appraisal." (Doc. 77 at 5). Chubb also asserts that the previous information did not contain evidence about the actual cash value of damages.

As an initial matter, the court finds itself unpersuaded by Chubb's argument that Mr. Howarth's cause-of-loss opinions cannot be considered because this court has said that cause-of-loss disputes may not be resolved by appraisal. This court did state in its previous opinion that an appraisal cannot resolve a cause of loss dispute. (Doc. 48). But, the court's statement dealt specifically with the appropriateness of a court-compelled appraisal to resolve an insurance coverage dispute. The decision did not address the use of appraiser information as evidence in a court case. Accordingly, Chubb's argument mischaracterizes the court's previous decision and does not resolve the question of whether this court should strike Mr. Howarth's amended disclosures.

Chubb's apparent assertion that this court's scheduling order bars the supplemental disclosures also lacks the power to persuade the court to strike the amended disclosures. Chubb correctly states that the operative scheduling order in this case did not mention supplemental disclosures and stated only that "disclosure of expert witnesses, including a complete report under Rule 26(a)(2)(B) from any specially retained or employed expert, is due from Plaintiff by April 30, 2019." (Doc. 18 at 1). However, Rule 26(e) states that a party "*must* supplement or correct its disclosure or response" in a timely manner if it learns that its disclosures are incomplete or incorrect. Fed. R. Civ. P. 26(e) (emphasis added). Accordingly, Haman's amended disclosures should not be stricken just because the scheduling order did not specifically provide for supplemental amended disclosures.

But, the court still must grapple with the question of whether the amended disclosures comply with the Federal Rules or should be struck. Chubb's motion argues that Haman's amended disclosures should be struck because they merely attempt to remedy Haman's incomplete original expert disclosures. Chubb argues that the original disclosures did not comply with Rule 26 because they were not "complete" as required by the rule, as they did not set forth all of the expert's opinions, along with factual bases and exhibits supporting the opinions. *See* Fed. R. Civ. P. 26(a)(2)(B). Although Chubb made no objection when it originally received Haman's expert disclosures, Chubb now argues that Haman cannot now

10

remedy the defects in its original disclosures through belated amended disclosures and that any new disclosures must be struck pursuant to Rule 37.

Rule 26 requires that expert reports be "complete" and provide the expert's opinions and the basis and facts supporting those opinions. Fed. R. Civ. P. 26. The Rule also requires that the disclosures be made according to the court's scheduling orders, unless Rule 26(e) requires supplemental disclosures to correct earlier disclosures. The Eleventh Circuit has held that "a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 719 (11th Cir. 2019) (citation omitted).

In this case, whether the original reports were complete and whether the amended disclosures seek to impermissibly bolster them present close questions. The face of Mr. Howarth's original expert disclosure provides his expertise, his experience, and the subject matter of his proposed testimony, but does not provide much in terms of the specific facts and data forming the basis for his opinions. (Doc. 69-1 at 2–3). However, the initial disclosure specifically points to lengthy reports that had already been produced to Chubb that address the more specific details of Mr. Howarth's assessments of the damage. (*Id.* at 3). Further, Mr. Howarth provided more extensive relevant information when questioned by Chubb at his deposition. Similarly, Mr. Irmiter's original expert disclosure stated his qualifications and included a report in which he detailed the damage to the

11

Knight's Inn in 2015, and he added more information upon questioning at his deposition.

For the most part, the court finds Haman's original expert disclosures reasonably complete under Rule 26. They provided the intended subject matter of Mr. Howarth and Mr. Irmiter's testimony, the qualifications that allowed the experts to arrive at their conclusions, and, at the very least, identified reports detailing the experts' findings regarding the damage to the Knight's Inn. *See* Fed. R. Civ. P. 26(a)(2)(B). While Mr. Howarth's previous reports were not *attached* to the disclosures, they were very specifically referenced in the disclosures and identified as already produced to Chubb. Chubb has not put forth any effective arguments regarding why the disclosure of those reports via reference should not suffice to set forth the basis for Mr. Howarth's opinions. Thus, the court finds Haman's initial Rule 26 disclosures to be reasonably complete.

Nevertheless, Haman's expert disclosures lack some information—for instance any cost-reasonableness opinions from Mr. Irmiter. But, even if Haman failed to properly disclose some information from its experts under Rule 26, the court need not strike Haman's amended disclosures under Rule 37 if Haman can show that the failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c). In the context of Rule 37, the Eleventh Circuit has stated that an action is substantially justified where "there is a genuine dispute, or if reasonable people

12

could differ as to the appropriateness of the contested action." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314 (11th Cir. 2011). Generally, a failure to disclose is considered harmless where the failure does not prejudice the party entitled to disclosure. *Little v. City of Anniston*, No. 1:15-CV-954-VEH, 2016 WL 7407093, at *3 (N.D. Ala. Dec. 22, 2016).

Here, with the exception of limited information from Mr. Irmiter, any failures by Haman to completely disclose Rule 26 opinions were harmless under Rule 37 because they did not prejudice Chubb. Haman asserts, and Chubb does not clearly rebut, that Chubb had access to all of the information that it needed from documents produced during the course of this and the prior proceeding. Haman also argues that its amended disclosures simply arose from questions raised by Chubb during its depositions of the experts.

First, much of Mr. Howarth's amended testimony had a basis in information previously disclosed to Chubb. A colleague on this court has addressed a similar, but distinguishable, issue regarding prior disclosure. Where a party argued that there was no prejudice in a failure to disclose because the material was already possessed by the other party, the court stated that it could find no support "for the proposition that a party is justified in failing to produce or identify a document in Rule 26(a) merely because that document was already in the possession of an opposing party." *Little*, No. 1:15-CV-954-VEH, 2016 WL 7407093, at *4. But,

13

that case dealt with a situation in which the nonproducing party had not received any indication that the previously-possessed knowledge could have bearing on the expert's testimony.  In this case, Haman specifically cited previously-possessed reports in its original initial disclosures.  (Doc. 69-1 at 3).  So, Chubb cannot claim surprise regarding the previously produced information.

Relatedly, Chubb had sufficient information from the original initial disclosures to meaningfully depose both Mr. Howarth and Mr. Irmiter on most of the relevant topics at issue.  "[T]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses."  *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008).  Further, the Rule is meant to "allow both sides in a case to prepare their cases adequately and to prevent surprise."  *Id.* at 66. Chubb was aware of the general substance of Mr. Howarth and Mr. Irmiter's testimony and their qualifications and methods, not to mention more specific information about their assessments of the damages to the Knight's Inn.  For most of the topics at issue, Chubb had sufficient information from the expert disclosures to be able to elicit testimony from Mr. Howarth and Mr. Irmiter during their depositions.  For almost all of the amended disclosures, Chubb has failed to specifically show that they were not able to adequately depose the experts, so they cannot show prejudice.

14

Moreover, many of the amended disclosures in this case actually arose out of deposition testimony that opposing counsel elicited based on the initial expert disclosures. The Eleventh Circuit has intimated that deposition testimony can supplement expert disclosures. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 823 (11th Cir. 2009) (stating that expert inappropriately testified to matters outside of Rule 26(a) disclosures *and* his deposition). Additionally, Judge Proctor on this court has noted that Rule 26 reports must "convey the substance of the expert's opinion," but do not need to replicate every piece of testimony the expert could possibly offer at trial, and an expert can "supplement, elaborate upon, and explain the opinions in a written report through later testimony." *Vigneulle for Estate of Vigneulle v. Tahsin Indus. Corp. USA*, No. 2:15-CV-02268-RDP, 2018 WL 1509435, at *12 (N.D. Ala. Mar. 27, 2018) (quotations omitted). In fact, Judge Proctor found that testimony outside the corners of the Rule 26 report need not be excluded where it was developed during deposition. *Id.*

Here, for the most part, Haman's amended disclosures grew out of the expert deposition testimony. The experts' deposition testimony supplemented and elaborated on the original disclosures, and—based on that new information— Haman filed amended disclosures under Rule 26(e)'s mandate to amend disclosures if they are incomplete or incorrect. *See* Fed. R. Civ. P. 26(e).

In his deposition, Mr. Howarth testified, in response to questions from opposing counsel, that his appraisals include an element of causation determination because his job requires him to appraise damage from specific causes.  He stated that he had not submitted a narrative account of his expert opinion on causation, but that his appraisal, as produced, necessarily implicated causation.  (Doc. 75-6 at 18, 38).  Mr. Howarth testified, again in response to questioning from opposing counsel, about how Chubb handled the insurance claim and how he believed that Chubb had mishandled the claim.  (*Id.* at 42, 49–54).  Finally, Chubb's counsel also questioned Mr. Howarth at his deposition about the actual cash value of repairs and the implications of depreciation.  (Doc. 75-6 at 45, 48).  Even the shifting nature of Mr. Howarth's actual cash value estimate arises from opposing counsel's questions about his repair estimates because the answers are subject to change over time as the property continues to deteriorate and costs evolve. Accordingly, the subjects of Mr. Howarth's amended disclosures can all be characterized as attempts to include and expand upon topics brought up by Chubb at his deposition.

The same can be said for part of Mr. Irmiter's amended disclosures.  Mr. Irmiter testified in his deposition about the condition of the Knight's Inn, stating in response to opposing counsel's questions that he believed that repair of the soot damage would require complete demolition of interior walls.  (Doc. 74-7 at 68).

16

This testimony built on Mr. Irmiter's original report filed with his expert disclosure, which stated that the roof of the Knight's Inn needed to be replaced, much of the interior needed to be replaced, and failure to replace the roof would result in more continuing damage.  (Doc. 69-1 at 154–55).  Mr. Irmiter's deposition testimony and original report dovetail with his amended disclosure's statement that only the exterior walls of the structure remained salvageable, making the building effectively a total loss.  Thus, the amended disclosures describing the building as a total loss elaborate on deposition testimony elicited by opposing counsel and on his original expert disclosure.

For the reasons discussed above, Chubb cannot show prejudice for Mr. Howarth's amended disclosures or Mr. Irmiter's amended disclosures regarding the building being a total loss.  Chubb cannot show that it was unduly surprised by the information, as it was either previously produced or arose out of deposition testimony, and cannot show that it will be unduly harmed.  Thus, Chubb cannot show prejudice and the late disclosures were harmless, so the court need not strike the amended disclosures.  *See* Fed. R. Civ. P. 37.

But, that rationale does not hold true for Mr. Irmiter's amended disclosures regarding the reasonableness of Mr. Howarth's cost assessments.  Neither Mr. Irmiter's deposition nor his original disclosure provides a basis for his amended disclosure regarding the reasonableness of Mr. Howarth's cost assessments.  Mr.

Irmiter's original disclosure did not say anything about cost assessments or provide a basis for expert testimony on costs.  (Doc. 69-1 at 4).  His original expert report also failed to contain information about costs or about Mr. Howarth's evaluation. (Doc. 69-1 at 141–66).  Further, the only time that Mr. Irmiter talked about Mr. Howarth's cost estimates in his deposition was at the urging of Haman's counsel, not Chubb's.  (Doc. 74-8 at 8).

So, while Mr. Irmiter's new amended disclosures about the building being a total loss arise from his previous expert disclosure and deposition, any opinion about the reasonableness of Mr. Howarth's estimates does not.  The lack of previous basis for the amended disclosure prejudices Chubb, as it could not adequately depose Mr. Irmiter on the issue, so the amended disclosure does not qualify as harmless under Rule 37.  *See Little*, No. 1:15-CV-954-VEH, 2016 WL 7407093, at *3.  Thus, unlike Haman's other amended disclosures, the court finds that Mr. Irmiter's amended disclosure regarding reasonableness of Mr. Howarth's cost assessments must be struck and he cannot testify on that subject at trial.  *See* Fed. R. Civ. P. 37(c).

## IV.   CONCLUSION

Because the court finds that Haman's amended disclosures for Mr. Howarth and for Mr. Irmiter's opinion on the building being a total loss do not prejudice Chubb, the court DENIES IN PART Chubb's motion to strike amended disclosures

regarding those topics.  But, because the court finds that Chubb is prejudiced by Mr. Irmiter's new opinions regarding the reasonableness of Mr. Howarth's cost assessments, the court GRANTS IN PART Chubb's motion to strike amended disclosures, solely regarding that topic.

  **DONE** and **ORDERED** this 7th day of August, 2020.

           _Karon O. Bowdre_

           **KARON OWEN BOWDRE**
           UNITED STATES DISTRICT JUDGE