FILED

2020 Aug-20  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-KOB |
| | ) |
| v. | ) **OPPOSED** |
| | ) |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHUBB CUSTOM INSURANCE COMPANY TO EXCLUDE THE EXPERT OPINION TESTIMONY OF CHUCK HOWARTH

Wayne D. Taylor
Georgia Bar No. 701275
Michelle A. Sherman
Georgia Bar No. 835980
Mozley, Finlayson & Loggins LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON
SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax:205-324-7097
dlee@pljpc.com

*Attorneys for Chubb Custom Insurance Company*

**TABLE OF CONTENTS**

I.   **OVERVIEW** ...................................................................................1

II.  **STATEMENT OF FACTS** ........................................................5

   A.   The Alleged Fire And Wind Losses........................................5
   B.   Haman Retained Howarth As Its Appraiser............................6
   C.   Haman Designated Howarth As Its Expert On Cause Of
        Loss, Bad Faith and Damages................................................7
   D.   Howarth's Deposition Testimony ...........................................8
        (1)   Howarth Does Not Have Any Education, Training Or
              Experience In Any Area Related To Determining
              Whether Winds From A Tornado And Soot Contained
              In Smoke From A Fire Allegedly Damaged Haman's
              Buildings ........................................................................9
        (2)   Howarth Did Not Inspect Haman's Property For The
              Purpose Of Determining The Alleged Causes
              Of The Losses ...............................................................11
              (a)   Fire Claim ...........................................................11
              (b)   Wind Claim..........................................................12
        (3)   Howarth Did Not Prepare Any Narrative Reports
              Containing His Cause Of Loss Opinions...................14
              (a)   Fire Claim ...........................................................14
              (b)   Wind Claim..........................................................14
        (4)   Howarth's Damages Estimates Pertain To The Alleged
              Replacement Cost (RCV), Not Actual Cash Value (ACV)
              Of The Damages ..........................................................15
              (a)   Fire Claim ...........................................................16
              (b)   Wind Claim..........................................................17

III. **ARGUMENT AND CITATION OF AUTHORITY** ................18

   A.   The *Daubert* Standard .........................................................18
   B.   Howarth Is Not Qualified To Testify As An Expert On The Alleged
        Causes Of The Losses At Issue In This Action ..................19
   C.   Howarth's Opinions Regarding The Alleged Causes Of The
        Losses Are Based Upon Insufficient Facts And An
        Unreliable Methodology ......................................................22
        (1)   Insufficient Facts.........................................................23

   (2) Unreliable Methodology ...........................................................26

 D. Howarth's Cause Of Loss Opinions Are Inadmissible Due To His Failure To Comply With The Disclosure Requirements Of Federal Rule Of Civil Procedure 26(a)(2)..........................................27

 E. Howarth Should Be Precluded From Testifying As An Alleged Expert On Issues Related To Claims Handling And Appraisal Conduct And The Meaning Of The Chubb Insurance Policy Provisions .................................................................................31

   (1) Failure To Comply With The Disclosure Requirements Of Rule 26(a)(2)(B) ...................................................31

   (2) This Court And Other Courts Previously Have Rejected Howarth's Improper Attempts To Testify To Legal Conclusions..................................................32

   (3) Improper Attempt To Testify To The Meaning Of A Contract .................................................................34

 F. Howarth's Opinions Regarding The Actual Cash Value (ACV) Of Haman's Damages Are Inadmissible Under Rules 402 and 403 ..................................................................................34

 G. Howarth's Untimely Estimates Of Actual Cash Value Are Inadmissible Under Rule 26(a)(2)(B) ................................................37

IV. **CONCLUSION** ...........................................................................38

Defendant Chubb Custom Insurance Company ("Chubb") respectfully files this memorandum of law in support of its motion to exclude the expert opinion testimony of Chuck Howarth ("Howarth"), as follows:

## I.   <u>OVERVIEW</u>

This insurance coverage dispute originated as a complaint filed by plaintiff Haman, Inc. d/b/a Knights Inn ("Haman") in the Circuit Court of Jefferson County, Alabama, Bessemer Division to compel appraisal of property damages using Howarth as Haman's designated appraiser. The complaint also sought damages for alleged breach of the Chubb insurance contract and bad faith.[1] The dispute arose when Chubb postponed appraisal because the causes of loss were disputed and Howarth was not an impartial appraiser. The Bessemer Circuit Court dismissed Haman's complaint without prejudice because it failed to comply with post-loss obligations under the Chubb policy.

In 2018, Haman refiled its complaint in the Circuit Court of Jefferson County, Alabama, Birmingham Division. [Doc. 1-1]. Chubb removed the action to this Court based upon diversity jurisdiction. [Doc. 1]. Haman filed a motion for specific performance to compel Chubb to submit to appraisal with Howarth as Haman's designated appraiser. [Doc. 33]. This Court denied Haman's motion, finding that

---

[1] ***Haman, Inc. v. Chubb Custom Ins. Co.,*** Civil Action No. CV-2016-900146-ERV (Cir. Ct. Bess. Div. Ala. October 16, 2016).

"reasonable jurors could infer … that Mr. Howarth has a financial incentive to increase his appraisal and is thus not an impartial appraiser," and that appraisal was premature because "this case presents a 'cause of loss' dispute." [Doc. 48, pp. 7 and 11 of 11; and Doc. 49].[2]

Haman has identified Howarth as its expert witness regarding the alleged causes of the losses, the damages sustained, and Chubb's conduct during the claim investigation and appraisal process. *Exhibit 1 to Chubb's motion to exclude Howarth.* Howarth should be precluded from testifying as an expert witness at trial regarding the alleged causes of the losses because he is not qualified by education, training or experience to provide expert opinion testimony under Federal Rule of Evidence 702 and ***Daubert***[3] regarding whether winds from a tornado that passed to the southwest of Haman's property in 2014 were strong enough at the property to cause damage to the roofs of three hotel buildings, and allegedly did cause such damage, and whether a fire in 2014 in one of Haman's buildings caused damage to all 80 rooms in that building by emitting smoke that allegedly traveled through the entire HVAC system and allegedly deposited soot in the hidden spaces in the walls, floors and ceilings. Howarth is a public adjuster and damages appraiser, not a meteorologist, engineer or industrial hygienist. His area of expertise (if any) lies in

---

[2] This Court also ruled that a reasonable jury could find that Howarth is impartial because he now allegedly is working for Haman on an hourly fee basis. *Id.*

[3] ***Daubert v. Merrell Dow Pharmaceuticals, Inc.,*** 509 U.S. 579, 113 S.Ct. 2786 (1993).

determining the cost to repair or replace property that qualified experts have determined was damaged by a covered cause of loss. Howarth is not qualified by education, training or experience to provide expert opinion testimony regarding the alleged causes of the losses, when determining the causes requires a qualified expert to apply principles of engineering, meteorology and science reliably to the facts. In addition, for this reason, Howarth is not qualified to testify that Haman's buildings are a total loss allegedly as a result of damages caused by the wind and fire events in 2014.

Howarth's opinions regarding causation are inadmissible under Rule 702 and **Daubert** for the additional reasons that they are not based upon sufficient facts or a reliable methodology. Finally, Howarth's opinions should be excluded because he did not prepare a narrative report setting forth his opinions on causation and the bases for those opinions as required by Federal Rule of Civil Procedure 26(a)(2)(B).[4]

Haman's complaint includes a claim for alleged bad faith. Howarth should be precluded from providing expert opinion testimony that Chubb's claims adjusting

---

[4] With regard to Howarth's damages estimates, this Court previously ruled as follows:

For the most part, the court finds Haman's original expert disclosures reasonably complete under Rule 26. They provided the intended subject matter of Mr. Howarth and Mr. Irmiter's testimony, the qualifications that allowed the experts to arrive at their conclusions, and, at the very least, identified reports detailing the experts' findings regarding the damage to the Knights Inn. See Fed. R. Civ. P. 26(a)(2)(B). While Mr. Howarth's previous reports were not attached to the disclosures, they were very specifically referenced in the disclosures and identified as already produced to Chubb.

*Memorandum Opinion, p. 12.* [Doc. 84]. Even so, it is undisputed that Howarth never provided Chubb with a Rule 26 report outlining his opinions on causation and the bases for those opinions.

and conduct during the appraisal process regarding Haman's fire damage claim and wind damage claim allegedly were improper. Howarth is exclusively a representative of Haman, and his business model is set up to maximize recovery for an insured. He does not possess the scientific objectivity required of an expert under Rule 702 and ***Daubert***.

Howarth also should be precluded from testifying as an expert regarding the meaning of the Chubb insurance contract provisions because the interpretation of a contract is exclusively a question of law for the Court.

Haman has not repaired or replaced its damaged property; therefore, it is entitled to receive from Chubb only the actual cash value (ACV) of any covered losses. Howarth's opinions regarding the alleged replacement cost (RCV) of Haman's damaged property should therefore be excluded under Federal Rules of Evidence 402 and 403 because those opinions are irrelevant and not helpful to the jury, and merely would be confusing and prejudicial to Chubb.

Howarth finally should be precluded from testifying as an expert regarding the alleged actual cash value (ACV) of Haman's damages because Howarth did not provide those amounts in his Rule 26 expert report,[5] and he did not provide a

---

[5] Although this Court has decided not to strike Haman's amended expert disclosures containing Howarth's ACV estimates, [Doc. 94], Chubb respectfully disagrees and wishes to preserve the issue for the record.

depreciation schedule for the damaged property, from which Chubb could have determined Haman's claimed ACV losses.

## II.   STATEMENT OF FACTS

### A.   The Alleged Fire And Wind Losses

The Knights Inn (hereinafter "Haman's buildings" and "the buildings") consists of three hotel buildings located in Bessemer, Alabama. On March 22, 2014, one of the buildings was damaged by fire. *Amended Complaint, ¶ 9 [Doc. 1-1].* On April 28, 2014, an EF-0 tornado passed to the southwest of Haman's property but did not directly impact the property. *Deposition of Thomas J. Irmiter, p. 189, l. 17-25; p. 190, l. 1-3; p. 125, l. 24-25; p. 126, l. 1-3; p. 127, l. 2-22; p. 128, l. 12-16; p. 189, l. 17-24; exhibit 2 to Chubb's Daubert motion to exclude the opinion testimony of Irmiter.* Initially, no one at the Knights Inn noticed any alleged damage to the property from wind.[6] Approximately eleven months later, on March 17, 2015, the owner of Haman, Zarin Visram, wrote a letter to Chubb stating as follows:

> I was at my Knights Inn premises several days ago and noticed wind damage to the roofs of my three buildings. I am not certain to what extent the roofs have been damaged, but my hotel was in the direct path of the windstorm that hit Bessemer, AL 4/28/2014. I wish to file a wind claim. …

*Exhibit 56 to depo. Howarth.* This was Haman's first notice to Chubb of a wind damage claim.

---

[6] The alleged wind damage to the roofs first was noticed by Arthur Grandinetti, an employee of The Howarth Group, in early 2015. *Depo. Howarth, p. 96, l. 7-25; p. 97, l. 1-6; p. 98, l. 2-9.*

## B. <u>Haman Retained Howarth As Its Appraiser</u>

On January 29, 2015, before demanding appraisal with Chubb regarding the amount of the fire loss in 34 to 37 rooms of Haman's hotel building, Haman retained Chuck Howarth's company, The Howarth Group ("THG"), as its appraiser pursuant to a capped contingency fee Appraisal Employment Agreement – Commercial ("Appraisal Agreement"). *See, Exhibit 39 to depo. Howarth.* The Appraisal Agreement stated that THG would "determin[e] the amount of the loss and … present[] this valuation to the appraisal panel and/or the Carrier." *Id.* The Appraisal Agreement contained a capped contingency fee provision, which stated:

> The Insured [Haman] agrees to pay THG in consideration for its services an hourly rate of $375.00 per hour together with all expenses reasonably incurred in this appraisal. However, because THG has expressed to the Insured the opinion that the amount proposed by the Carrier to the Insured is inadequate, and because THG agrees that a reasonable limitation of the amount of compensation will be necessary for the Insured to realize a benefit from this appraisal, THG agrees that the total fee charged will not exceed thirty percent (30%) of the additional settlement awarded to the Insured, and additionally, *should the process produce no additional settlement then no fee will be due.* …

*Id. (Emphasis original).* On June 15, 2015, Haman and Howarth modified the Appraisal Agreement to stipulate that "THG does not make any promise or guarantee that a recovery can or will be obtained above 34,597 ACV." *Exhibit 41 to depo. Howarth.* Thereafter, Howarth's company provided its estimate of damages in connection with Haman's fire claim in the amount of $1,679,975.33, *Depo. Howarth, p. 167, l. 16-22; [Doc. 38-4],* which represented alleged smoke damage to

all 80 rooms in the building. This was Haman's first notice to Chubb that all of the rooms in that building allegedly had been damaged by fire.

Chubb and Haman were unable to agree on Haman's use of Howarth as an appraiser, and Haman filed its petition to compel appraisal using Howarth as its appraiser, and for damages in the Circuit Court of Jefferson County, Alabama, Bessemer Division. The Circuit Court dismissed the petition. Haman refiled the petition in the Birmingham Division of the Circuit Court of Jefferson County, Alabama, and Chubb removed the action to this Court.

### C.   Haman Designated Howarth As Its Expert On Cause Of Loss, Bad Faith And Damages

On April 30, 2019, Haman served its Designation of Expert Witnesses in this action, stating in part as follows:

> Mr. Howarth is an insurance consultant, appraiser and adjuster with over thirty-six (36) years of insurance claims experience. He is knowledgeable about the specific damages to the Knights Inn that were caused by both the fire loss and the storm loss. … Mr. Howarth will testify concerning damages assessments made during inspections made by The Howarth Group as they relate to damage, repair costs, replacement costs and actual cash value. Mr. Howarth's … valuation of loss, summary of opinions … are attached hereto as Exhibit "A". Mr. Howarth may also respond to any other testimony provided in his area of expertise, including any testimony that is offered by Defendant Chubb. … Mr. Howarth is familiar with the insurance principles and policy terms and conditions and the requirements of good faith. He is particularly familiar with the appraisal process procedures and the policy in question. He is critical of the claims handling and of the appraisal conduct of Chubb and its representatives.

*Exhibit 1 to Chubb's motion to exclude Howarth. (Emphasis added).*

Haman's designation of expert witnesses stated incorrectly that Howarth's summary of his opinions allegedly was attached as exhibit "A" thereto. In fact, that exhibit consisted merely of replacement cost (RCV) estimates of damages for the fire and wind claims. The exhibit did not include a narrative report containing Howarth's cause of loss opinions or his opinions regarding Chubb's claim handling and appraisal conduct, or the bases for those opinions. The exhibit did not discuss the alleged actual cash value (ACV) of Haman's damages and did not contain a schedule of the alleged depreciation to be applied to the various items of damaged property in order to determine the ACV.

Haman's amended expert disclosures, *Exhibit 3 to Chubb's motion to exclude Howarth,* addressed Howarth's opinions regarding the amount of damages allegedly suffered by Haman, and the amended disclosures attached ACV estimates. However, the amended disclosures did not discuss Howarth's opinions regarding causation, the basis for those opinions, his opinions regarding Chubb's investigation of the losses, or his opinions regarding the alleged meaning of the Chubb policy's provisions.

### D.    <u>Howarth's Deposition Testimony</u>

At Howarth's deposition, it became clear that he plans to testify at trial as an alleged expert regarding cause of loss issues; specifically, whether winds from the tornado that passed to the southwest of Haman's property in 2014 allegedly caused

damage to the roofs of Haman's three buildings and allegedly caused openings in the roofs that allowed water to leak into the interiors of the buildings, and whether the fire in one of Haman's hotel buildings in 2014 allegedly caused damage to all 80 rooms in the building by depositing soot in the hidden spaces in the walls, floors and ceilings. It also was clear that Howarth plans to testify as an expert that Chubb allegedly improperly investigated and adjusted Haman's claims, and that Chubb's conduct during the appraisal process allegedly was improper. Howarth also apparently plans to testify as an expert regarding the meaning of certain provisions in the Chubb insurance policy. Finally, he plans to testify to the alleged replacement cost (RCV) and actual cash value (ACV) of Haman's damages.

> **(1)** **Howarth Does Not Have Any Education, Training Or Experience In Any Area Related To Determining Whether Winds From A Tornado And Soot Contained In Smoke From A Fire Allegedly Damaged Haman's Buildings**

Howarth's college education consists solely of a bachelor's degree in theology from Holmes Bible College in Greenville, South Carolina. *Deposition of Chuck Howarth, p. 20, l. 13-24; p. 21, l. 7-10.* In the late 1970s and early 1980s, Howarth obtained a Chartered Property and Casualty Insurance Underwriter (CPCU) designation, *id., p. 21, l. 11-19,* and worked as a re-inspector/trainer and associate claims adjuster for State Farm. *Id., p. 22, l. 3-7.* Howarth does not have any other degrees or certifications. *Id., p. 23, l. 18-21.* He does not have a degree in any science field. *Id., p. 27, l. 25; p. 28, l. 1-3, 11-16.*

Howarth is not a professional engineer, and he does not have any education in engineering. *Depo. Howarth., p. 28, l. 17-20.* He has never been a general contractor. *Id., p. 28, l. 21-25; p. 29, l. 1-2.* He is not an industrial hygienist and he does not have any training or certification as an industrial hygienist. *Id., p. 29, l. 3-18.* He is not a scientist or microbiologist. *Id., p. 30, l. 4-7.* He does not have any training in sampling and analysis of mold and soot. *Id., p. 30. l. 8-10.* He is not a licensed mold consultant. *Id., p. 30. L. 11-13.*

Howarth is a licensed public adjuster in several states, although not in Alabama, which does not allow public adjusters. *Depo. Howarth, p. 31, l. 3-15.* A licensed public adjuster handles property damage insurance claims as a representative of the policyholder. *Id., p. 31, l. 16-22.* Howarth's company, The Howarth Group ("THG"), is an insurance claims adjusting company that represents policyholders in disputes against insurance companies. [Doc. 38-2 at 2]. At present, THG does mostly appraisal work utilizing the appraisal provision in insurance policies to resolve disputes regarding property damage claims. *Depo. Howarth, p. 35, l. 12-16.* Howarth does more appraisal work than work as a public adjuster. *Id., p. 35, l. 17-19.* According to Howarth, that was his role in this case; he was employed [by Haman] as the appraiser for the appraisal process regarding the Knights Inn. *Id., p. 35, l. 22-24.*

### (2)    Howarth Did Not Inspect Haman's Property For the Purpose Of Determining The Alleged Causes Of The Losses

#### (a)    Fire Claim

Howarth visited Haman's property for the first time between January and June of 2015 (he later narrowed the time frame to between January and March 2015). This visit was with regard to the fire damage claim only. *Depo. Howarth, p. 101, l. 18-25; p. 103, l. 15-24.* Howarth "guessed" that he went into 8 to 12 of the 80 units in that building. *Id., p. 149, l. 5-18.* He did not make any notes or take any photographs. *Id., p. 105, l. 4-8.* On his second visit [after June 15, 2015], Howarth did not go into any of the interiors of the buildings. *Id., p. 149, l. 22-25; p. 150, l. 1-9.*

During his investigation of the fire loss claim, Howarth did not make an independent determination that the cause of the damages to all 80 units in Haman's hotel building allegedly was soot from the fire. Instead, in order to prepare his report on the estimated amount of the fire loss, Howarth used the report prepared by Forensic Building Sciences, Inc. ("FBS") to obtain the alleged scope of the fire damages, *Depo. Howarth, p. 169, l. 15-22, – i.e.,* the number of rooms allegedly damaged by fire (including soot from the fire). Consequently, Howarth's report containing his damages estimate regarding the fire loss, which is an exhibit to Haman's expert designations, does not include an opinion on causation.

### (b)   Wind Claim

During his first visit to Haman's property (between January and March 2015), Howarth did not go up onto the roofs of the buildings to inspect the alleged wind damage loss. *Depo. Howarth, p. 102, l. 25; p. 103, l. 1-4; p. 159, l. 10-13*. He visited the property later to inspect the alleged wind loss only <u>after</u> his company had been employed on June 15, 2015 as Haman's appraiser, *id., p. 106, l. 8-16,* on a capped contingency fee basis. Howarth explained: "there's no reason for us to do an estimate on the wind claim until after we've been employed…." *Id., p. 115, l. 15-17.*

Once he was retained as Haman's appraiser, Howarth no longer was impartial regarding the wind claim (if he ever was impartial, which is questionable[7]). Howarth testified that "we do not take on an appraisal job until we have decided that there is loss that's not been properly valued and paid for by the carrier…." *Depo. Howarth, p. 111, l. 22-25.* Howarth's fee in this case is capped at 30 percent of the net award to Haman, *id., p. 111, l. 10-17,* which means the more Haman recovers in this action, the more Howarth can be paid.[8]

---

[7] In addition to Howarth having been retained initially as Haman's appraiser on a capped contingency fee basis, Howarth employed as the registered agent for service of process for his company, The Howarth Group, Gary Conchin, who is Haman's legal counsel in this action. *Exhibit 4 to Chubb's motion to exclude Howarth.*

[8] This Court has held that, "according to the employment agreement, a higher appraisal would increase the cap on Mr. Howarth's fees. Reasonable jurors could find that this agreement creates a financial incentive for Mr. Howarth to increase his appraisal and shows that he is not an impartial appraiser." [Doc. 48, p. 7 of 11].

Howarth explained how he came to the conclusion that winds from the tornado in 2014 allegedly caused the damages observed on the roofs of Haman's building eleven months later: "everybody concurred once we started seeing the damage, this looks like a debris field tornado loss, and sure enough, that's what it was." *Depo. Howarth, p. 179, l. 23-25; p. 180, l. 1.* Howarth explained that FBS made the final decision that the damage to the roofs allegedly was caused by the tornado. *Id., p. 179, l. 2-4, 22-23.* Howarth did not investigate or follow up on other possible causes of damage to the roof of Haman's buildings, such as pre-existing damages to the roofs evidenced by ongoing leaks into the interiors of the buildings. He testified:

> Q.   When you were up there [on the roof] did you notice any evidence of prior repairs?
>
> A.   Yes.
>
> -----
>
> Q.   Did you ask anybody why were the patches that you did see, why they were there?
>
> A.   No, I would never ask that, it just doesn't really play into what I am doing.

*Depo. Howarth, p. 159, l. 20-22; p. 160, l. 13-16.*

> -----
>
> Q.   Do you remember specifically asking Zarin [Visram, Haman's owner] or anyone else at the Knights Inn about prior water damages?
>
> A.   As I sit here I don't remember the content of any of those conversations with her, but those are questions we always ask.

- 13 -

Q.      But as you sit here today you don't remember?

A.      I can't remember the conversation, no, it's been years.

*Id., p. 162, l. 2-10.*

### (3)     <u>Howarth Did Not Prepare Any Narrative Reports Containing His Cause Of Loss Opinions</u>

#### (a)     <u>Fire Claim</u>

Howarth did not prepare a narrative report containing his opinions regarding the alleged cause of the damages in connection with Haman's fire claim. *Depo. Howarth, p. 66, l. 24-25; p. 67, l. 1-7.* His report in connection with that claim is simply his estimate of the amount of damages. *Id., p. 171, l. 1-4.*

Howarth did not prepare a narrative report containing his opinions regarding Chubb's claim handling conduct regarding Haman's fire claim. *Depo. Howarth, p. 67, l. 15-19.* Howarth also did not prepare a report containing his opinions regarding Chubb's conduct during the appraisal process of the fire claim. *Id., p 68, l. 10-17.*

#### (b)     <u>Wind Claim</u>

Howarth did not prepare a narrative report containing his opinions regarding the damage to the roofs of Haman's buildings allegedly as a result of wind, *Depo. Howarth, p. 67, l. 8-14;* in other words, damages allegedly caused by wind.

Howarth did not prepare a narrative report containing his opinions regarding Chubb's claim handling conduct regarding Haman's wind claim. *Depo. Howarth, p.*

*67, l. 20-24.* He also did not prepare a report containing his opinions of Chubb's conduct during the appraisal process for the wind claim. *Id., p. 68, l. 10-17.*

### (4)     Howarth's Initial Damages Estimates Pertain To The Alleged Replacement Cost (RCV), Not Actual Cash Value (ACV) Of The Damages

The Chubb policy pays replacement cost (RCV) only after the damaged property has been repaired or replaced; until then it pays actual cash value (ACV) only. *See, Chubb Policy, Building and Personal Property Coverage Form, E. Loss Conditions, 4 and 7; and G. Optional Coverages, 3.d.; Exh. 5 to Chubb's motion to exclude Howarth.* Because Haman has not repaired or replaced its damaged property, it can recover from Chubb (if at all) only the ACV of the damages to the property as a result of covered causes of loss. This means the damages dispute in this case involves the ACV of Haman's covered losses.

Haman has designated Howarth as its damages expert; however, the initial damages estimates provided by Howarth addressed the replacement cost (RCV) of the damages only, and did not mention the ACV. Howarth explained that ACV (actual cash value) means replacement cost less depreciation to account for age and condition. *Depo. Howarth, p. 143, l. 12-15; p. 144, l. 1-2.* In Howarth's initial damages estimate, which is strictly a replacement cost estimate, *id., p. 172, l. 18-21,* depreciation was not applied to determine the actual cash value of the damages *Id., p. 173, l. 1-4.*

Haman's amended expert disclosures, provided to Chubb <u>after</u> Howarth's deposition, were the first ACV damages estimates provided to Chubb.

### (a)   <u>Fire Claim</u>

Exhibit 47 to Howarth's deposition is his fire damages estimate. *Depo. Howarth, p. 171, l. 18-25.* At his deposition, Howarth testified that he could not recall whether he determined the actual cash value (ACV) of the damages when his estimate of the damages allegedly caused by fire was prepared. He testified:

> Q.   Did you determine the actual cash value of the damages when the – when estimating the damages in connection with the fire claim?

> A.   I don't remember that we did, I can't remember seeing a depreciation schedule.

> Q.   Did you determine the actual cash value of the damages to the building in connection with the wind claim?

> A.   I can't remember. We could very easily but I can't remember if we did.

*Depo. Howarth, p. 146, l. 20-25; p. 147, l. 1-4.* At his deposition, Howarth attempted to estimate the ACV off the top of his head, without having prepared a depreciation schedule. He testified:

> Q.   Do you have an estimate in connection with the fire damage in which you calculated the actual cash value of the damages?

> A.   I don't have it written out, I can tell you that depreciation on a loss like this, fire loss like this, with the kind of materials replaced, is going to run in the 12 percent range.

Q.     Have you rendered a report that indicates what the actual cash value of the damages are as a result of the fire in your – that reflects your opinion of that?

A.     I don't remember that we prepared a depreciation schedule on this one, I don't remember seeing one.

*Id., p. 173, l. 5-18.*

### (b)     Wind Claim

Exhibit 49 to Howarth's deposition is his replacement cost (RCV) estimate with regard to Haman's wind claim. Prior to his deposition, Howarth did not apply depreciation to arrive at the actual cash value of those damages, *depo. Howarth, p. 184, l. 12-25,* and he did not even create a schedule of depreciation in order to calculate the actual cash value of the wind damages. *Id., p. 185, l. 1-4.* Haman in its amended expert disclosures provided for the first time Howarth's ACV estimates.

Howarth's estimate of the replacement costs addresses replacement costs as of January 2016, instead of the replacement costs as of the date of the loss in 2014. *Depo. Howarth, p. 183, l. 14-21.* The Chubb policy pays replacement cost as of the date of the loss only. *See, Chubb Policy, Building and Personal Property Coverage Form, E. Loss Conditions, 4 and 7; and G. Optional Coverages, 3.d.* Howarth does not even know the replacement costs on the date of the loss. *Depo Howarth, p. 184, l. 4-11.*

### III.   ARGUMENT AND CITATION OF AUTHORITY

#### A.   The Daubert Standard

The Eleventh Circuit has recognized that "expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States v. Frazier,* 387 F.3d 1244, 1263 (11th Cir. 2004). The district court's gatekeeping function requires it to "keep unreliable and irrelevant information from the jury" because of its "inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Bowers v. Norfolk S. Corp.,* 537 F. Supp. 2d 1343, 1349–50 (M.D. Ga. 2007), *aff'd,* 300 Fed. App'x 700 (11th Cir. 2008)(citing *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1311-12 (11th Cir. 1999)).

The objective of the Court's *Daubert* gatekeeping function is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 152 (1999). "In sum, in acting as a gatekeeper, the court is responsible for 'keep[ing] unreliable and irrelevant information from the jury,' because of its 'inability to assist in factual determinations, its potential to create confusion, and its lack of probative value.'" *Bowers,* 537 F. Supp. 2d at 1349–

50 (citing *Allison,* 184 F.3d at 1311-12). "The 'reliability' requirement [of Federal Rule of Evidence 702] is designed to exclude so-called 'junk science,' … and ensure that the 'knowledge' offered is 'more than subjective belief or unsupported speculation.'" *Woodley v. PFG-Lester Broadline, Inc.,* 556 F. Supp. 2d 1300, 1307 (M.D. Ala. 2008)(citing *Daubert,* 509 U.S. at 591 - 593).

The proponent of an expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Daubert,* 509 U.S. at 592, n.10; see also, *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,* 402 F.3d 1092, 1107 (11th Cir. 2005); *Allison,* 184 F.3d at 1306. "The *Daubert* 'requirement that the expert testify to scientific knowledge -- conclusions supported by good grounds for every step in the analysis -- means that *any* step that renders the analysis unreliable under the *Daubert factors renders the expert's testimony inadmissible*.'" *McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1245 (11th Cir. 2005)(citations omitted).

### B.   Howarth Is Not Qualified To Testify As An Expert On The Alleged Causes Of The Losses At Issue In This Action

Howarth's experience in adjusting and appraising the values of property insurance claims does not render him qualified to testify on cause of loss issues in cases such as this one where determining causation requires expertise in engineering, meteorology and industrial hygiene, which expertise Howarth does not possess. "In examining the sufficiency of [an expert's] credentials to offer [his] opinions, the

Court will keep in mind 'the particular matter to which the expert testimony was directly relevant' rather than his credentials in general." *Clarke v. Schofield,* 632 F. Supp. 2d 1350, 1356 (M.D. Ga. 2009)(citing *Kumho,* 526 U.S. at 153–54. "This [*Daubert*] standard is applicable to all expert testimony: 'Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.'" *Whelan v. Royal Caribbean Cruises Ltd.,* 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013)(citing *Kumho,* 526 U.S. at 141).

This Court has held previously that the disputed issues in this case "do[] not present an 'extent of loss' dispute. Rather, the parties disagree whether a storm caused all of Haman's damages and whether the insurance policy covers all of the damages; Haman contends that the storm caused all damages, while Chubb contends that the age and poor maintenance of the roof caused some of the damages. So this case presents a 'cause of loss' dispute." *[Doc. 48, p. 11 of 11].* The same is true with regard to Haman's fire claim. The parties disagree whether the fire caused soot damage to all 80 rooms in the building, as alleged by Haman, or whether the damages observed in the majority of the rooms were caused by other, excluded causes of loss, as alleged by Chubb.

Haman cannot meet its burden of proving by a preponderance of the evidence that Howarth is qualified as a cause of loss expert in this case. Howarth is not an engineer, meteorologist or industrial hygienist. In fact, he has not been educated in any scientific field. Howarth's education, training and experience does not qualify him to testify as an expert that the damages observed to the roofs of Haman's buildings in 2015 allegedly were caused by winds from a tornado that passed to the southwest of the property eleven months earlier in April 2014. He has no education, training or experience that would enable him to differentiate damages to a roof caused by a particular past wind event from damages that have accumulated over time due to wear, tear and deterioration or prior weather events. He is not qualified to testify as an expert that smoke from a fire in a specific section of Haman's hotel building traveled through the entire HVAC system and allegedly deposited soot in the hidden spaces in the floors, walls and ceilings of all 80 rooms in the building.

A witness "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *United States v. Frazier,* 387 F.3d 1244, 1261 (11th Cir.2004) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends). Howarth's years of experience as a public adjuster and appraiser determining the cost to repair and replace damaged

property does not qualify him to testify as an expert on the disputed cause of loss issues in this action.

Howarth previously was found unqualified to testify on cause of loss issues in a roof damage case. In *Carneal v. Travelers Cas. Ins. of Am.,* No. 5:12-CV-00174, 2013 WL 5939879, at *3 (W.D. Ky. Nov. 5, 2013), the federal court precluded Howarth from testifying as an expert, and further held:

> Howarth does not appear to offer an opinion as to the cause of loss. To the extent he intends to, Plaintiffs have not shown that Howarth is qualified to render such an opinion, nor is the Court satisfied that such testimony rests on a reliable foundation in Howarth's professional knowledge and experience. Accordingly, any such testimony must be excluded.

Because Haman cannot meet its burden of proving that Howarth is qualified as a cause of loss expert regarding the damages to Haman's roofs and the interiors of its buildings, and because Howarth obviously is not so qualified, he should be precluded from testifying at trial as an alleged cause of loss expert. Howarth's lack of qualifications also prevent him from testifying as an expert that Haman's buildings are a total loss allegedly as a result of damages caused by the wind and fire events in 2014.

### C.   Howarth's Opinions Regarding The Alleged Causes Of The Losses Are Based Upon Insufficient Facts And An Unreliable Methodology

Haman bears the additional burden of proving by a preponderance of the evidence that Howarth's opinions are based upon sufficient facts and the result of a

reliable methodology. See, ***United States v. Frazier,*** 387 F.3d 1244, 1261 (11th Cir. 2004)("Of course, the unremarkable observation that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express. … [U]nder Rule 702, the reliability criterion remains a discrete, independent, and important requirement for admissibility").

### (1) <u>Insufficient Facts</u>

Howarth testified that his role in this case was that of Haman's appraiser. *Depo. Howarth, p. 35, l. 22-24.* Under Alabama law, an appraiser does not determine the cause of the loss. See, ***Rogers v. State Farm Fire & Cas. Co.,*** 984 So.2d 382, 383-84 (Ala. 2007)(The appraiser could not resolve the parties' dispute about whether the home had been damaged by a covered loss – tornado - or by an uncovered loss - ground settlement). Thus, when Howarth visited the Knights Inn property on two occasions in 2015 as Haman's appraiser, he did not inspect the roofs of the buildings or the interiors of the rooms with a view toward determining the causes of the losses. He did not make any notes or take any photographs, *depo. Howarth, p. 105, l. 4-8.* Later, he simply calculated the replacement cost of the alleged damages based upon the scope of loss reports prepared by FBS. *Id., p. 169, l. 15-22; p. 179, l. 2-4, 22-23.*

After Haman refiled this action, it decided that Howarth would testify at trial as a cause of loss expert and damages expert. In preparation for this role, Howarth did not return to the premises to compile sufficient facts (or any facts) to support his cause of loss opinions. During his initial inspection of the property in 2015, because he was attempting as an appraiser merely to determine the amount of the damage and not establish the causes of losses, he did not address evidence that suggested the damages to Haman's roofs were caused by other, excluded causes of loss, such as wear, tear, deterioration and prior weather events. In response to questioning at his deposition, Howarth testified: "Q. Did you ask anybody why were the patches [on the roof] that you did see, why they were there? A. No, I would never ask that, it just doesn't really play into what I am doing." *Depo. Howarth, p. 160, l. 13-16.*

An expert's failure to address alternative explanations for the opinions he asserts in the ways standard in his field of expertise "violates a primary purpose of Daubert: to ensure the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" ***Guinn v. AstraZeneca Pharmaceuticals LP,*** 602 F.3d 1245, 1255 (11th Cir.2010) (quoting ***Kumho,*** 526 U.S. at 152). In this case, because Howarth did not compile any facts to support his cause of loss opinions and did not work scientifically to rule out other, non-covered causes of the losses, his cause of loss opinions are not admissible as expert opinion testimony under Rule 702 and ***Daubert***.

Howarth may not bootstrap into his opinion testimony the cause of loss opinions of Haman's other purported expert, Tom Irmiter, or the expert reports of Irmiter's company, FBS. Chubb has moved to exclude the cause of loss opinions of Irmiter. *See, motion of Chubb to exclude the expert opinion testimony of Irmiter, filed contemporaneously herewith.* Because the cause of loss opinions of Irmiter are inadmissible in evidence under Rule 702 and **Daubert,** Howarth may not bootstrap those inadmissible opinions as his own.

Moreover, the expert reports of FBS, upon which Howarth relies, contain primarily the cause of loss opinions of Brian Johnson, P.E., who was not disclosed by Haman as an expert witness, and the inadmissible opinions of Irmiter, who is not qualified as an expert on the cause of the damages to Haman's roofs or the interiors of its buildings, and who impermissibly bootstrapped the opinions of Johnson regarding the wind claim and the inadmissible results of testing performed by an unaccredited laboratory.[9] A court may exclude testimony of an expert [Howarth] when it is "inextricably linked" to, or a "derivative of," the inadmissible excluded testimony of another expert. See ***J.B. Hunt Transp., Inc., v. GM Corp.,*** 243 F.3d 441, 444 (8th Cir.2001). "[B]ootstrapping of an undisclosed expert witness's opinions into the reports and testimony of another is plainly improper, where the

---

[9] *See, motion of Chubb to exclude the expert opinions of Irmiter.* By the time Howarth renders his cause of loss opinions based upon the cause of loss reports of FBS, Howarth's opinions will amount to bootstrapping based upon bootstrapping.

disclosed expert is treating those opinions as his own (rather than simply relying on information from another expert as underlying data from which he formulates his own expert opinions)." *Abrams v. Ciba Specialty Chemicals Corp.,* No. CIV.A. 08-0068-WS-B, 2010 WL 779283, at *4 (S.D. Ala. Mar. 2, 2010). See also, *GWTP Invest., L.P. v. SES Americom, Inc.,* No. 3:04-CV-1383-L, 2007 WL 7630459, at *10 (N.D. Tex. Aug. 3, 2007)(rejecting an attempt to bootstrap a late expert opinion into evidence by getting another expert to parrot that late opinion in a rebuttal report). To the extent, if any, that Howarth is permitted to use the cause of loss reports of Irmiter and Johnson to calculate his damages estimates, Howarth may not simply bootstrap those opinions as his own, thereby becoming a cause of loss expert.

Because it is clear that Howarth did not perform an investigation into the causes of the losses at Haman's property or compile facts to support his alleged cause of loss opinions, and because he is merely proposing to bootstrap the cause of loss opinions of Irmiter and Johnson at FBS as his own, Howarth should be precluded from testifying at trial regarding the alleged causes of Haman's losses, including that Haman's buildings allegedly are a total loss as a result of damages caused by the wind and fire events in 2014.

### (2)   Unreliable Methodology

Howarth has not identified any methodology by which he allegedly arrived at his cause of loss opinions (other than the improper methodology of parroting the

inadmissible cause of loss opinions of Irmiter and Johnson at FBS). Equally as problematic is Howarth's obvious bias in favor of Haman, evidenced by the fact that Howarth's company's business model is one of an advocate for insureds against insurance companies, [Doc. 38-2 at 2], and the fact that Haman's legal counsel in this action, Gary Conchin, is the registered agent for service of process for Howarth's company, THG. *Exh. 4 to Chubb's motion to exclude Howarth.* An expert witness should not enter the case already biased in favor of the conclusion that he ultimately reaches. Indeed, Howarth's company, THG, does not even take cases unless it already has determined that the insurer has not offered to pay an adequate amount for the insured's losses. *Depo. Howarth, p 72, l. 1-7. See also,* [Doc. 38-2, page 3 of 4]. The Eleventh Circuit has stated that in similar situations of obvious expert bias, "the Court can easily identify [the proposed expert] as a hired gun expert and simultaneously conclude that he cannot satisfy the first factor - the 'independence' factor - under the [Rule 702] advisory committee notes." **Bowers,** 537 F. Supp. 2d at 1354–55.

For all of these reasons, Howarth's cause of loss opinions fail the reliability test of Rule 702 and Daubert and therefore should be excluded.

D. <u>**Howarth's Cause Of Loss Opinions Are Inadmissible Due To His Failure To Comply With The Disclosure Requirements Of Federal Rule Of Civil Procedure 26(a)(2)**</u>

Fed. R. Civ. P. 26(a)(2)(B) requires a party's expert witness to provide during discovery a report that contains in part the following:

> (i) a complete statement of **all** opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;

(Emphasis supplied). Howarth did not provide an expert report containing his cause of loss opinions, the bases for those opinions, the facts or data he considered in forming those opinions, or exhibits used to summarize or support his opinions. He simply provided estimates of damages prepared with the assistance of Xactimate software.

"[C]ompliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004). See also, *Reese v. Herbert,* 527 F.3d 1253, 1265 (11th Cir. 2008); *Prieto v. Malgor,* 361 F.3d 1313, 1317–18 (11th Cir. 2004). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Howarth's failure to provide an expert report regarding his cause of loss opinions was not substantially justified, nor was it harmless. The period of discovery has closed and Howarth's deposition has been taken. Because of Howarth's failure

to comply with the disclosure requirements of Rule 26, Chubb's counsel has been unable to prepare for and depose Howarth regarding his cause of loss opinions and unable to prepare to rebut them at trial. Chubb has been substantially prejudiced by Howarth ignoring his obligation as an alleged expert witness to disclose his opinions in writing.

Courts in the Eleventh Circuit have excluded public adjusters from testifying as expert witnesses at trial when the parties propounding their testimony failed to comply with the disclosure requirements of Rule 26(a)(2)(B). In **Garcia v. Scottsdale Ins. Co.,** No. 18-20509-CIV, 2019 WL 1491872, at *3 (S.D. Fla. Apr. 4, 2019), the court excluded the plaintiff's expert, Rami Boaz, a public adjuster, from testifying at trial as an expert witness because he failed to provide an expert report as required by Fed. R. Civ. P. 26(a)(2)(B). Likewise, in **Armstead v. Allstate Prop. & Cas. Ins. Co.,** No. 1:14-CV-586-WSD, 2016 WL 928722, at *3, fn. 3 (N.D. Ga. Mar. 11, 2016), the court excluded the testimony of the plaintiff's purported expert, a public adjuster, Bruce Fredrics, because the plaintiff failed to provide an expert report prepared by Fredrics as required by Fed. R. Civ. P. 26(a)(2)(B), and the plaintiff's failure was not substantially justified. On motion for reconsideration, the plaintiff argued that Fredrics had not been "retained or specially employed to provide expert testimony in the case," as required by the Rule, and therefore, was not required to submit an expert report. The court rejected this argument, holding that,

even if Fredrics was not retained initially as a testifying expert, the plaintiff ultimately disclosed him as an expert who would testify regarding "methods and standards use [sic] for calculating construction repair estimates," and an "estimate of the [repair] costs." *Id.,* at *4. Declining to reconsider its order precluding Fredrics from testifying as an expert on these matters, the court held that, even if Fredrics "was not 'retained' to 'provide expert testimony' in 2012, he was certainly retained to do so very early in this litigation. He was thus required to comply with the disclosure requirements of Rule 26(a)(2)(B)." *Id.,* at *3, fn. 3.

Howarth was retained by Haman in 2015 as an appraiser specifically with regard to the amount of damages for the wind and fire claims. In 2019, Haman in its expert disclosures in this action designated Howarth as a cause of loss expert and damages expert. As an expert specifically retained for trial on the cause of loss issues, Howarth was required to comply with the disclosure requirements of Rule 26(a)(2)(B) by providing a report containing "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; [and] (iii) any exhibits that will be used to summarize or support them. Instead, all that Howarth provided was an Xactimate estimate of damages. Haman's amended expert disclosures, served after the conclusion of Howarth's deposition, did not contain a narrative discussing Howarth's cause of loss opinions and the bases for those opinions.

Due to his failure to provide an expert report in compliance with Rule 26(a)(2)(B), Howarth should not be allowed to testify as an expert at trial regarding the alleged causes of the losses.

### E.   Howarth Should Be Precluded From Testifying As An Alleged Expert On Issues Related To Claims Handling And Appraisal Conduct And The Meaning Of The Chubb Insurance Policy Provisions

Haman's expert disclosures state in part as follows:

Mr. Howarth is familiar with the insurance principles and policy terms and conditions and the requirements of good faith. He is particularly familiar with the appraisal process procedures and the policy in question. He is critical of the claims handling and of the appraisal conduct of Chubb and its representatives.

*Exhibit 1 to Chubb's motion to exclude Howarth.* In other words, Howarth proposes to testify as an expert at trial on matters that allegedly are relevant to Haman's claim that Chubb allegedly acted in bad faith when investigating Haman's claims and with regard to the appraisal process.

### (1)   Failure To Comply With The Disclosure Requirements Of Rule 26(a)(2)(B)

Howarth did not provide an expert report in compliance with Rule 26(a)(2)(B) regarding his opinions critical of Chubb's claims handling and conduct in appraisal. Although this Court ruled that "Mr. Howarth testified, again in response to questioning from opposing counsel, about how Chubb handled the insurance claim and how he believed that Chubb had mishandled the claim," [Doc. 84, p 16 of 19],

Chubb respectfully asserts that testimony at an expert's deposition is not sufficient to remedy the lack of a Rule 26 expert report. If it was sufficient, the rationale behind the expert disclosure requirements of Rule 26 would be completely vitiated.

Based upon the authority discussed above in section III. D. of this memorandum, Howarth should be precluded from testifying as an expert witness at trial regarding Chubb's claims handling and conduct during the appraisal process, and precluded from criticizing that conduct. Howarth's failure to comply with the Rule 26 expert disclosure requirements was not substantially justified, nor was it harmless. Chubb has been substantially prejudiced because it has been prevented from adequately preparing to depose Howarth on these issues and prevented from preparing materials to rebut Howarth's criticisms of Chubb and his opinions on issues related to bad faith.

### (2) This Court and Other Courts Previously Have Rejected Howarth's Improper Attempts To Testify To Legal Conclusions

Howarth should be precluded from offering expert opinion testimony on issues related to bad faith, such as his opinions that Chubb allegedly acted unreasonably and in non-compliance with the provisions of the Chubb policy and insurance industry standards. A witness may not testify to legal conclusions. This very Court precluded Howarth from testifying on issues related to an insurer's alleged bad faith in *Cole v. Owners Ins. Co.,* 326 F. Supp. 3d 1307, 1313 (N.D. Ala.

2018), where it granted the defendant insurer's motion to strike Howarth's testimony "to the extent Mr. Howarth testified as an 'expert' about legal conclusions regarding Owners' bad faith." Similarly, in ***Carmeal, supra***, 2013 WL 5939879, Howarth was precluded from testifying as an alleged bad faith expert regarding the meaning of the insurance policy's provisions and his criticisms of the insurer's approach.

Whether an insurer acted in bad faith is a question for the jury, which can decide on its own whether an insurer acted reasonably. In ***Tardiff v. Geico Indem. Co.***, 481 Fed. Appx. 584 (11th Cir. 2012), the court affirmed the exclusion of an alleged bad faith expert who planned to testify to industry standards for handling insurance claims. The same result was reached in ***VJ, LLC v. State Auto Property and Casualty Co.***, 2016 WL 7497580 (W.D. Tenn. July 11, 2016), where the court excluded the testimony of so-called bad faith expert Chuck Howarth, holding:

> The basis for Howarth's conclusion is that State Auto's conduct was contrary to how a claims adjuster applying a vacancy clause should perform an investigation under industry standards. [Cits.]. … [T]he jury can decide for itself whether State Auto acted intentionally, fraudulently, maliciously, or recklessly during the investigation.

Moreover, Howarth proposes to usurp this Court's role of instructing the jury regarding the applicable legal standards. This is improper. As the court noted in ***Burkhart v. Washington Metropolitan Area Transit Service***, 112 F.3d 1207, 1213 (D.C. Cir. 1997), "[e]ach courtroom comes equipped with a 'legal expert', called a judge, and it is his or her province alone to instruct the jury on the relevant legal

standards." It is well-settled that an expert witness may not give an opinion that is a legal conclusion or amounts to the application of a legal definition. ***Phillips v. Harris,*** 643 So.2d 974 (Ala. 1994).

### (3)   Improper Attempt To Testify To The Meaning Of A Contract

Howarth proposes to explain to the jury as an alleged expert the meaning of the Chubb "policy terms and conditions" including "the appraisal process procedures and the policy in question." *Haman's expert disclosures.* This is an improper attempt to testify about the meaning of a contract. "In Alabama, the interpretation of a contract, including an insurance contract, is a question of law…." ***Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc.,*** 480 F.3d 1254, 1258 (11th Cir. 2007).

For all of the reasons discussed above, Howarth should be precluded from testifying as an alleged expert at trial regarding the matters set forth in Haman's expert disclosures, including "the insurance principles and policy terms and conditions and the requirements of good faith, … the appraisal process procedures and the policy in question … [and Howarth's criticisms] of the claims handling and of the appraisal conduct of Chubb and its representatives." *Haman's expert disclosures.*

### F.   Howarth's Opinions Regarding The Replacement Cost Value (RCV) Of Haman's Damages Are Inadmissible Under Rules 402 And 403

Haman's expert disclosures included as attachments Howarth's estimates of Haman's alleged wind damages and fire damages. The estimates pertained only to the replacement cost (RCV) of the damages. However, Haman is not entitled to recover RCV in this case; it is only entitled to ACV because as of the date of filing this lawsuit (and this date), Haman had not repaired or replaced any of the damaged property. The Chubb policy states:

> Building and Personal Property Coverage Form
>
> -----
>
> E.    Loss Conditions
>
> -----
>
>    7.    Valuation
>
>    We will determine the value of Covered Property in the event of loss or damage as follows:
>
>        a.    At actual cash value as of the time of loss or damage, except as provided in b., c., d. and e. below.
>
> -----
>
> G.    Optional Coverages
>
>    3.    Replacement Cost
>
>        a.    Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.
>
> -----

      d.    We will not pay on a replacement cost basis for any loss or damage:

         (1)    Until the lost or damaged property is actually repaired or replaced; and

         (2)    Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

*See, Chubb Policy, Building and Personal Property Coverage Form, E. Loss Conditions, 4 and 7; and G. Optional Coverages, 3.d.*

In light of these Chubb policy provisions and the fact that Haman has not replaced or repaired its damaged property, Howarth's estimates of the replacement cost (RCV) of Haman's damages are irrelevant. Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 402 provides that evidence that is not relevant is not admissible. Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The Eleventh Circuit has held that, "[b]ecause of the powerful and potentially misleading effect of expert evidence, see ***Daubert***, 509 U.S. at 595, 113 S.Ct. at 2798, sometimes expert opinions that otherwise meet the admissibility requirements

may still be excluded by applying Rule 403." ***Frazier,*** 387 F.3d at 1263. Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, see United ***States v. Rouco,*** 765 F.2d 983, 995 (11th Cir. 1985).

Howarth's estimates of the replacement cost (RCV) of Haman's damages should be excluded under Rule 402 because those estimates are not relevant to any alleged right or remedy of Haman against Chubb, and therefore, they are not admissible. Even if relevant, the RCV estimates are inadmissible under Rule 403 because the jury will not be able to determine on its own the actual cash value of the damages to Haman's property based upon the RCV estimates; thus, Howarth's RCV estimates will be meaningless, confusing and potentially misleading.

### G.    <u>Howarth's Untimely Estimates Of Actual Cash Value (ACV) Are Inadmissible Under Rule 26(a)(2)(B)</u>

At his deposition, Howarth provided a few off-the-top-of-his-head estimates of the depreciation rates applicable to various items of property; however, he did not provide a depreciation schedule for the damaged items of property belonging to Haman, and he did not provide the final actual cash value (ACV) figures for Haman's damaged property. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Howarth should be precluded from testifying as an expert regarding the alleged actual cash value (ACV) of the damages to Haman's property because Howarth did not provide those amounts in his Rule 26 expert report,[10] and he did not provide a depreciation schedule for the damaged property from which Chubb could have determined Haman's claimed ACV damages. As of the date of Howarth's deposition, Chubb had not been provided with any of this information, which has substantially prejudiced Chubb and is not excusable conduct on the part of Haman or Howarth.

## IV.   <u>CONCLUSION</u>

For the reasons and on the grounds discussed above, Chubb requests that the Court enter an order precluding Howarth from testifying to any of the matters addressed in Haman's expert disclosures, including the alleged causes of the losses claimed by Haman, the meaning of the Chubb policy's  provisions, whether Chubb complied with the policy provisions and other legal obligations of an insurer when investigating a first-party property claim, any criticisms of Chubb's claim handling conduct and its conduct during the appraisal process, and the alleged replacement cost (RCV) and actual cash value (ACV) of the damages to Haman's property.

This 20th day of August, 2020.

---

[10] The ACV estimates were provided for the first time in Haman's amended expert disclosures, which were served upon Chubb <u>after</u> it took Howarth's deposition.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MICHELLE A. SHERMAN
Georgia Bar No. 835980
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

-and-

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON SALE
LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

-and-

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax: 205-324-7097
dlee@pljpc.com

*Attorneys for Defendant*
*Chubb Custom Insurance Company*

- 39 -

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-JHE |
| | ) |
| v. | ) |
| | ) |
| CHUBB CUSTOM INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHUBB CUSTOM INSURANCE COMPANY TO EXCLUDE THE EXPERT OPINION TESTIMONY OF CHUCK HOWARTH** was electronically mailed to the following counsel of record:

Gary V. Conchin
Kenneth B. Cole, Jr.
Franklin Taylor Rouse
Conchin, Cloud & Cole, LLC
2404 Commerce Court SW
Huntsville, Alabama 35801
gary@alainjurylaw.com
kenny@alainjurylaw.com

-and-

Gregory A. Brockwell
Jason R. Smith
Brockwell Smith LLC
2100 1st Avenue North, Suite 300
Birmingham, Alabama 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

*Attorneys for Plaintiff Haman, Inc. d/b/a Knights Inc.*

This 20th day of August, 2020.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*

488020