

FILED

2020 Aug-20 PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-KOB |
| | ) |
| v. | ) |
| | ) |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

### <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHUBB CUSTOM INSURANCE COMPANY FOR SUMMARY JUDGMENT</u>

Wayne D. Taylor
Georgia Bar No. 701275
Michelle A. Sherman
Georgia Bar No. 835980
Mozley, Finlayson & Loggins LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON
SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax:205-324-7097
dlee@pljpc.com

*Attorneys for Chubb Custom Insurance Company*

**TABLE OF CONTENTS**

I.    **STATEMENT OF UNDISPUTED FACTS** ...................................................1

    A.    Procedural History.................................................................1
    B.    Haman's Fire Damage Claim....................................................2
        (1)    Haman's Evidence Of The Cause Of Damage
              To The Rooms............................................................4
        (2)    Chubb's Evidence Of The Cause Of Damage
              To The Rooms............................................................4
    C.    The Wind Damage Claim........................................................6
        (1)    Haman's Evidence Of The Cause Of The Damages
              To The Roofs And Interiors.......................................10
        (2)    Chubb's Evidence Of The Cause Of The Damages
              To The EPDM Roofs And Interiors Of The Buildings.............11
    D.    Haman's Expert Witness And Appraiser, Chuck Howarth.................15
    E.    The Chubb Policy Of Insurance .............................................18

II.   **ARGUMENT AND CITATION OF AUTHORITY** ...............................22

    A.    Standard On Motion For Summary Judgment ...................22
    B.    The Insured's And The Insurer's Burdens Of Proof.........................23
    C.    Summary Judgment On The Supplemental Fire Damage Claim........25
        (1)    Haman's Claim For Breach Of Contract Must Fail
              Because There Is No Coverage Under The Chubb Policy
              For The Disputed Damages .........................................25
        (2)    Haman Has No Admissible Evidence Of Additional
              Money Owed By Chubb To Repair Damages Caused
              By The Fire……………………………………………………..27
        (3)    Chubb Did Not Act In Bad Faith In Refusing To Pay
              The Disputed Fire Damages........................................27
    D.    Summary Judgment On The Wind Damage Claim ...........................30
        (1)    Haman's Claim For Wind Damage Must Fail Because
              Due To Late Notice Of The Claim ...........................30
        (2)    Haman's Claim For Breach Of Contract Must Fail
              Because There Is No Coverage Under The Chubb Policy
              For the Disputed Damages........................................33
        (3)    Haman Has No Admissible Evidence Of Additional
              Money Owed By Chubb To Repair Damages Caused
              By Wind In 2014……………………………………………..37

        (4)    Chubb Did Not Act In Bad Faith In Refusing To Pay
The Disputed Wind Damages ....................................................37

  E.    Chubb Is Entitled To Summary Judgment On Haman's Claim For
Alleged Bad Faith Claim Handling......................................................38

  F.    Chubb Is Entitled To Summary Judgment On Haman's Claim For
Specific Performance To Compel Appraisal........................................43

        (1)    Haman Filed Its Claim Prematurely And Without
Fulfilling Its Own Obligations Under The Appraisal Provision
Of The Chubb Policy ................................................................43

        (2)    This Court Should Not Compel Appraisal Using Chuck
Howarth As Haman's Appraiser Because A Reasonable Jury
Could Not Find That Howarth Is Impartial ...............................46

III.  **CONCLUSION** ...........................................................................49

Defendant Chubb Custom Insurance Company ("Chubb") respectfully files this memorandum of law in support of its motion for summary judgment, as follows:

## I.   STATEMENT OF UNDISPUTED FACTS

### A.   Procedural History

1.      This action is a repeat of Haman's earlier action filed in the Circuit Court of Jefferson County, Alabama, Bessemer Division, Case No. 68-CV-2016-900146. Then as now, Haman sought damages for alleged breach of a contract of insurance, bad faith, and for specific performance to compel appraisal. *See, Attachment 1 to Chubb's evidentiary submissions.*

2.      The Circuit Court in the earlier action granted Chubb's motion for summary judgment and dismissed the complaint without prejudice because Haman had failed to comply with the Chubb policy's conditions precedent to filing suit. Specifically, Haman failed to supply the required sworn proofs of loss and other information and documents requested by Chubb. Haman also had not submitted to the examination under oath that Chubb requested. [Docs. 38-7 and 38-8].

3.      After additional interactions between the parties, Haman refiled its complaint in the Circuit Court of Jefferson County, Alabama, Birmingham Division. [Doc. 1-1].

4.      Chubb removed the action to the United States District Court for the Northern District of Alabama based upon diversity jurisdiction. [Doc. 1].

- 1 -

5.     This Court entered an order denying Haman's motion for partial summary judgment for specific performance to compel appraisal, finding that appraisal was not appropriate when disputed issues of cause of loss remained unresolved. [Docs. 48-49].

6.     In its order denying Haman's motion to compel appraisal, this Court examined the evidence that Haman's appraiser, Chuck Howarth, had a financial interest in the outcome of an appraisal award by virtue of his contingency fee appraisal employment agreement with Haman, whereby Howarth would be paid only if the results of appraisal exceeded Chubb's initial offer. This Court found that "[r]easonable jurors could find that this agreement creates a financial incentive for Mr. Howarth to increase his appraisal and shows that he is not an impartial appraiser." [Doc. 48, page 7 of 11].

7.     This Court further held that reasonable jurors could find that Howarth's revised employment agreement, entered into after Haman commenced this renewal action, now permits Howarth to be impartial. [Doc. 48, page 8 of 11].

**B.     Haman's Fire Damage Claim**

8.     On March 22, 2014, one of Haman's hotel buildings was damaged by fire. *Amended complaint, ¶ 9.* [Doc. 35-2, ¶ 9].

9.      On September 30, 2014, Haman submitted a sworn proof of loss claiming fire damages in the amount of $466,838.73 (before reduction to actual cash value (ACV) and deduction for depreciation). [Doc. 38-1].

10.     Haman's fire damage claim as initially presented represented damage to 37 units (rooms) in the building. *See, Exhibit 14 to the deposition of Zarin Visram, which is attachment 16 to Chubb's evidentiary submissions.*

11.     On May 13, 2015, Chubb obtained a detailed repair estimate from Young and Associates in the total amount of  $523,477.01 to repair 36 rooms plus a stairwell. *See, report of Young and Associates, which is appendixed to the report of Chubb's certified industrial hygienist, Thomas Sumner, which is an exhibit to Sumner's affidavit, which is attachment 32 to Chubb's evidentiary submissions.*

12.     Chubb paid the adjusted loss for fire and soot damage to the 36 rooms and the stairwell, which consisted of payments of $357,401.93 and $27,6-1.01. *See, Plaintiff's Response to Chubb's First Request For Admissions Nos. 2-3; Attachment 33 to Chubb's evidentiary submissions.*

13.     Haman later revised its fire damage claim upward to allege soot damage to all 80 units in the building at an estimated repair cost of $1,679,975.33, based upon a repair estimate provided by Chuck Howarth of The Howarth Group ("THG"), public adjusters. [Doc. 33-3, page 3 of 4; Doc. 38-4].

14.     When Chubb disputed that the fire deposited soot in all of these rooms, Chuck Howarth on behalf of Haman demanded appraisal of the loss naming Howarth as Haman's appraiser. [Doc. 33-6; Doc. 38-5].

15.     Chubb did not initially deny the fire damage claim; rather, it refused to engage in appraisal using Howarth as Haman's appraiser because Howarth had a pecuniary interest in the outcome of the appraisal by virtue of his fee agreement with Haman. [Doc. 6-4].

### (1)     Haman's Evidence Of The Cause Of Damage To The Rooms

16.     Haman's only evidence that all 80 rooms in its hotel building allegedly were damaged by soot from the fire in March 2014 is the opinion testimony of its expert Thomas J. Irmiter, who asserted that all 80 rooms were damaged by soot based upon the results of laboratory tests performed by an unaccredited laboratory. [Doc. 38-6].

17.     However, contemporaneously with the filing of this motion for summary judgment, Chubb filed a motion to exclude Irmiter's opinions as inadmissible under Fed. R. Evid. 702 and *Daubert v. Merrell,* 509 U.S. 579 (1993).

### (2)     Chubb's Evidence Of The Cause Of Damage To The Rooms

18.     Based on the affidavit of Chubb's expert certified industrial hygienist, Thomas Sumner, CIH, CSP, CHMM, which details his education, training and experience, he is qualified to opine as an expert on the cause and origin of the

damages observed in Haman's room and whether those damages were caused by the fire in 2014. *Affidavit of Thomas Sumner, ¶¶ 3-10; Attachment 32 to Chubb's evidentiary submissions.*

19.    Sumner conducted sampling in the additional rooms claimed by Haman and obtained test results that revealed an absence of forensic evidence of the by-products of combustion (fire) beyond a trace element of soot on three wipe samples. *Aff. Sumner, ¶¶ 16, 21-27; Attachment 32 to Chubb's evidentiary submissions.*

20.    Sumner opined that the presence of a trace amount of soot in a few locations in several of the rooms, where all of the soot was located behind the walls or ceiling tiles, did not indicate that all of the rooms in the entire building were impacted by the combustion by-products (soot, char and ash produced by the fire). *Aff. Sumner, ¶¶ 27; Attachment 32 to Chubb's evidentiary submissions.*

21.    Sumner opined that soot, a by-product of combustion (fire), is produced by the everyday activities of burning candles, smoking cigarettes and burning food in a microwave oven. According to Sumner, one cannot assume that all of the soot samples collected from Haman's hotel rooms were deposited by smoke from the fire in March 2014. Other sources must be considered and evaluated. There was evidence that vagrants had occupied a number of the rooms and there was a small charcoal grill in one room, which had evidence of recent use. *Aff. Sumner, ¶ 29; Attachment 32 to Chubb's evidentiary submissions.*

22.     Sumner determined that the report of Chubb's investigators, Young and Associates, upon which Chubb based its earlier adjustment and payment of the fire damage claim to 36 rooms and a stairwell, accurately described the extent of the fire, soot and water damage to Haman's building and the work needed to repair the damage as a result of the 2014 fire. *Aff. Sumner, ¶ 31(3); attachment 32 to Chubb's evidentiary submissions.*

23.     Regarding the opinions of Haman's expert, Tom Irmiter, as to the scope of the fire damage, Sumner opined:

> The scope of the fire damage claimed by Haman's experts at Forensic Building Sciences (FBS), including Irmiter, inaccurately expanded the damage beyond its actual scope.

*Aff. Sumner, ¶¶ 30(1); Attachment 32 to Chubb's evidentiary submissions.*

24.     Sumner's investigation, observations, documentation, conclusions, and expert opinions are discussed in greater detail in his affidavit and his expert report, which are attached as an exhibit to his affidavit, and which are incorporated by reference herein. *See, Attachment 32 to Chubb's evidentiary submissions.*

**C.     The Wind Damage Claim**

25.     On April 28, 2014, five weeks after the March 22 fire, a tornado passed to the southwest of Haman's property. *Depo. of Thomas J. Irmiter, p. 189, l. 17-25; p. 190, l. 1-3; Attachment 34 to Chubb's motion for summary judgment.*

26.     According to official data from the National Weather Service ("NWS"), the accuracy of which Haman and its expert do not dispute, Haman's buildings were <u>not</u> in the direct path of the tornado. Instead, the tornado passed to the west of a wooded area south of the property. *Depo. Irmiter, p. 125, l. 24-25; p. 126, l. 1-3; p. 127, l. 2-22; p. 128, l. 12-16; p. 189, l. 17-24; p. 190, l. 1-3; Ex. 34 to depo. Irmiter; Attachments 34 and 38 to Chubb's evidentiary submissions.*

27.     An employee of the Knights Inn, Wasif Burkari, lived at the hotel, where his job included making small repairs to the property. *Deposition of Wasif Burkari, p. 24, l. 9-10; p. 32, l. 8-13; Attachment 41 to Chubb's evid. submissions.*

28.     Burkari testified that the hotel's ceilings always leaked after heavy rains, but after April 2014, he noticed more leaks in the ceiling, which required him to replace the ceiling tiles. *Depo. Burkari, p. 77, l. 14-23; p. 78, l. 1-5, 14-17; p. 79, l. 6-13, 18-23; p. 80. L 102; Attachment 41 to Chubb's evidentiary submissions.*

29.     Burkari testified: "Mostly it was restaurant and the lobby, but sometimes even the guest rooms were damaged," referring to rains generally. *Depo. Burkari p. 78, l. 12-13; Attachment 41 to Chubb's evidentiary submissions.*

30.     According to Burkari, the owners of the hotel, Mr. and Mrs. Visram, visited the property every day, and Mrs. Visram knew about the tornado shortly after it occurred. *Depo. Burkari, p 68, l. 3-25; p. 69, l. 1-4; Attachment 41 to Chubb's evidentiary submissions.*

31.     Sheila Allen was employed as Haman's general manager and lived at the Knights Inn from July 2012 until April 2015. *Deposition Sheila Allen, p. 25, l. 8-18; p. 27 , l. 5-13; Attachment 43 to Chubb's evidentiary submissions.*

32.     In 2014, after the tornado, Allen noticed a leak in the office ceiling over her computer. *Depo. Allen, p. 150. L. 21-25; p. 151, l. 1-5; Attachment 43 to Chubb's evidentiary submissions.*

33.     Allen discovered the leaks in April 2014. She testified:

Q.     Didn't know about any damage [to the roof] until Mr. Conchin said something today from the tornado?

A.     No. I mean, I knew that we had a leak in the roof because – we had a leak in the roof because it was over my computer.

Q.     But that was discovered two weeks before you left your employment – right? – in April of 2015. Okay. Is that right?

A.     No. That would have been – that would have been April 2014.

*Depo. Allen, p. 177, l. 23-25; p. 178, l. 1-7; Attachment 43 to Chubb's evidentiary submissions.*

34.     On February 11, 2015, The Howarth Group, Haman's public adjusters, submitted an estimate for the full replacement cost (RCV) of the roofs of all three buildings in the amount of $1,307,177.99. *Exhibit 48 to deposition of Chuck Howarth, which is Attachment 64 to Chubb's evidentiary submissions.*

35.     On March 24, 2015, eleven months after the tornado, a notice of loss was submitted to Chubb, which stated: "Insured inspected her premise and

discovered wind damage to roofs of three buildings. States hotel was in direct path of the windstorm that hit Bessemer on 04-28-2014." *Exhibit 16 to depo. Visram; Attachment 18 to Chubb's evidentiary submissions.*

36.     This notice eleven months after the tornado was Chubb's first notice of the alleged wind damage to the roofs. [Doc. 6-6, page 3 of 11].

37.     On August 24, 2015, Chubb wrote to Haman's owner, Zarin Visram, stating that a field adjuster had inspected the buildings and provided an estimate on the cost to repair the metal roofing, and that Chubb had retained a building consultant to inspect the buildings and verify the estimate provided by the field consultant [Doc. 38-10, page 1].

38.     Engineer, Design & Testing Corp. ("ED&T"), which Chubb retained to investigate the damage to the EPDM roofing as well as the cause of the interior water damage, issued a report dated October 7, 2015, which Chubb forwarded to Haman's counsel. [Doc. 38-12; Doc. 38-13, p. 2 of 11].

39.     Based upon the ED&T report, Chubb paid the actual cash value (ACV) of the damage to the metal coping on the roof in the amount of $34,620.62. [Doc. 38-14, page 2 of 10; Doc. 38-11, pages 76-78 of 89].

40.     On December 10, 2015, Chubb advised Haman that it did not appear the tornado damaged the EPDM roofing; instead, the damage to the roof was the result of improper design and installation, age-related wear and tear, and improper

repair and maintenance, which are excluded causes of loss under the Chubb policy. [Docs. 6-6, 6-7, 6-8].

41.    On April 8, 2016, Haman submitted a sworn proof of loss claiming damage to its roofs allegedly caused by wind and water damage to the buildings' interiors in the total amount of $1,595,608.00. [Doc. 38-17, page 147 of 147; Doc. 33-5, page 3 of 3].

42.    Chubb declined to participate in appraisal of the wind damage claim because there was a dispute regarding the cause of damages to the EPDM roofing and cause of the interior water damages. [Doc. 6-6, pages 10-11 of 11]. As noted above, as a matter of law the appraisal process is not appropriate when there are unresolved and disputed issues concerning causes of loss.

### (1)    Haman's Evidence Of The Cause Of The Damages To The Roofs And Interiors

43.    Haman's only evidence of alleged wind damage to the roofs of its buildings is the opinion testimony of its experts Irmiter and Chuck Howarth, who without any qualifications as experts and without a sufficient factual basis, have asserted that winds from the tornado allegedly damaged the roof.

44.    Contemporaneously with the filing of this motion for summary judgment, Chubb has filed motions to exclude Irmiter's and Howarth's opinions as inadmissible under Fed. R. Evid. 702 and ***Daubert v. Merrell,*** 509 U.S. 579 (1993).

### (2) Chubb's Evidence Of The Cause Of The Damages To The EPDM Roofs And Interiors Of The Buildings

45.     Chubb's expert engineer Kurt D Mulder, P.E. has opined that the damage to the metal and EPDM roofs was caused by defective construction and materials, age-related wear, tear and deterioration, and faulty maintenance and repair, and that those excluded causes of loss, not wind, caused openings in the roofs that allowed long-term water leakage into the buildings' interiors. *Affidavit of Kurt D Mulder, P.E., Attachment 74 to Chubb's evidentiary submissions.*

46.     Mulder is qualified to opine regarding the causes of the conditions on the roofs of Haman's hotel buildings and the damage in the interiors of the buildings, and whether these conditions and damages were caused by winds from the tornado in 2014 and rain water leaking through the roofs through openings in the roofs caused by wind. *Aff. Mulder, ¶P 3-6; Attachment 74 to Chubb's evidentiary submissions.*

47.     Mulder observed conditions of deterioration and improper repair and maintenance on the EPDM flat roofs that would allow rainwater to leak into the interiors of the buildings, which conditions included sealant at the lap seams that was cracked and weathered, separated seams that were patched with a white sealant that was cracked, sealant over roof cores that was cracked, EPDM patches that were bubbled, torn and covered in white sealant that was loose, and tears in the EPDM

membrane and base flashing adjacent to loose pieces of parapet wall coping. *Aff. Mulder, ¶¶ 11-15; Attachment 74 to Chubb's evidentiary submissions.*

48.     Mulder determined that the EPDM roofing was twenty to twenty-five years old (in 2015), indicating the roofing system was at the end of its service life, which was causing the adhesives and sealants used in the installation of the roofing to deteriorate and allowing the lap seams of the roofing material to separate, resulting in water intrusion into the interiors of the buildings. *Aff. Mulder, ¶¶ 25-26; Attachment 74 to Chubb's evidentiary submissions.*

49.     Mulder observed pieces of roof lapping tape that were separated and torn along the edge of the parapet wall and the base flashing of Building B, which he stated to a reasonable degree of engineering certainty was the result of age-related wear and tear. *Aff. Mulder, ¶ 37; Attachment 74 to Chubb's evidentiary submissions.*

50.     Mulder observed numerous types of sealants on the EPDM roofing that were cracked due to age, allowing water to intrude at these locations, which was a maintenance issue and not the result of wind. *Aff. Mulder, ¶ 33; Attachment 74 to Chubb's evidentiary submissions.*

51.     Mulder observed numerous instances of defective materials and defective construction of the metal roofs, which would shorten the life of the roofs and allow them to deteriorate faster and suffer damage as a result of weather

conditions and storms that would not damage a properly constructed roof. *Aff. Mulder, ¶¶ 28-31; Attachment 74 to Chubb's evidentiary submissions.*

52.     Mulder opined to a reasonable degree of engineering certainty that a portion of the water intrusion at the Knights Inn is the result of the above-described improper installation of the metal roofing. *Aff. Mulder, ¶ 32; Attachment 74 to Chubb's evidentiary submissions.*

53.     Mulder observed a tear in the EPDM patching on the roof of Building B, which resulted from moisture trapped beneath the surface, stretching and tearing the patch. *Aff. Mulder, ¶ 36; Attachment 74 to Chubb's evidentiary submissions.*

54.     Mulder observed multiple blocked drains and drains without cages. *Aff. Mulder, ¶ 38; Attachment 74 to Chubb's evidentiary submissions.*

55.     Mulder observed improperly installed coping, which allowed the coping to be displaced at below design level winds. *Aff. Mulder, ¶ 31; Attachment 74 to Chubb's evidentiary submissions.*

56.     Mulder concluded that the majority of the water intrusion into the buildings' interiors was the result of the roofing system having reached the end of its service life, and was not the result of a damage to the roof caused by wind. *Aff. Mulder, ¶ 27; Attachment 74 to Chubb's evidentiary submissions.*

57.     Mulder did not observe any conditions on the roofs or on the property of Knights Inn that indicated the roofs had been damaged by high winds. *Aff. Mulder, ¶¶ 19-20, 42-46; Attachment 74 to Chubb's evidentiary submissions.*

58.     Mulder opined to a reasonable degree of engineering certainty that the roofing at the Knights Inn was not damaged by a tornado or high winds; rather, improper installation of the metal coping has resulted in portions of the coping displacing. *Aff. Mulder, ¶ 46; Attachment 74 to Chubb's evidentiary submissions.*

59.     Mulder concluded that the EPDM roofing has reached the end of its service life, which has resulted in deteriorated sealants and adhesives and caused separated lap seams throughout the roofing. *Aff. Mulder, ¶ 46; Attachment 74 to Chubb's evidentiary submissions.*

60.     Mulder determined that portions of the metal roofing panels were installed improperly, which created openings into the roof system. *Aff. Mulder, ¶ 46; Attachment 74 to Chubb's evidentiary submissions.*

61.     Mulder opined that the EPDM roofing system failed due to age and the improper installation of the metal roofing panels, which resulted in the water intrusion into the buildings' interiors. *Aff. Mulder, ¶¶ 46-47; Attachment 74 to Chubb's evidentiary submissions.*

62.     Mulder opined that the roofs have not been properly maintained and repaired, which has allowed water to seep into the interiors of the buildings through

openings in the roof caused by deterioration. *Aff. Mulder, ¶¶ 46-47; Attachment 74 to Chubb's evidentiary submissions.*

### D.     Haman's Expert Witness And Appraiser, Chuck Howarth

63.     In 2014, Haman retained The Howarth Group ("THG"), public adjusters, as its appraisers for the fire and wind damage claims. [Doc. 33-10; Doc. 33-11].

64.     Chuck Howarth and his wife are the sole shareholders of THG. *Depo. Howarth, p. 42, l. 24-15; p. 43, l. 1; Attachment 52 to Chubb's evidentiary submissions.*

65.     THG is an appraisal company that works on behalf of insureds; its website states in part that, "we only get involved in claims when there is a major deficit in the [insurer's] estimate and where we have a chance to significantly increase the claim amount for our clients and to be profitable in doing so for our company." [Doc. 38-2, page 3 of 4].

66.     Howarth explained: "We don't – we do not take a claim on to serve as appraiser before we have completed our own evaluation of things and determined that there are legitimate – that there is a legitimate disagreement in our opinion about the amount of the loss between the policyholder and the insurance company's evaluation." *Depo. Howarth, p. 72, l. 1-7; Attachment 52 to Chubb's evidentiary submissions.*

67.     In other words, THG does not contract to act as appraisers in a property damage claim unless it already has concluded that the insurer allegedly has significantly undervalued the claim. [Doc. 38-2, page 3 of 4].

68.     The Law Dictionary (Black's Law Dictionary online) defines bias as follows: "Inclination; bent; prepossession: a preconceived opinion; a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction." https://thelaw dictionary.org/bias/.

69.     Howarth already had formed his opinions regarding the values of Haman's claims before appraisal was demanded. At his deposition, Howarth testified: "I also – I just told you and have told you previously that I also agreed our company agreed with [Haman's representative] that Chubb's evaluation of the loss as of this date was far less than the actual loss sustained." *Depo. Howarth, p. 82, l. 8-11; Attachment 52 to Chubb's evidentiary submissions.*

70.     Howarth's appraisal employment agreements for the fire and wind damage claims stated: "THG has expressed to the Insured [Haman] the opinion that the amount proposed by the Carrier [Chubb] to the Insured is inadequate…." [Docs. 33-10 and 33-11, ¶ 3]; *Depo. Howarth, p. 71, l. 6-13, 20-25; p. 72, l. 1-12; Attachment 52 to Chubb's evidentiary submissions.*

71.     The appraisal employment agreements stated that Howarth would not be paid unless he obtained on behalf of Haman a settlement from Chubb in excess of the amount previously offered by Chubb. [Docs. 33-10 and 33-11, ¶ 3].

72.     Howarth since has claimed that "[t]hose appraisal agreements terminated when Chubb refused appraisal and this lawsuit was filed." *Affidavit of Chuck Howarth.* [Doc. 33-12].

73.     Howarth claims he now will be compensated as Haman's appraiser at a fixed rate. *Affidavit Howarth, ¶ 3.* [Doc. 33-13].

74.     There is no evidence that Howarth's new rate of compensation will have any bearing on the conclusions he already has reached and documented regarding the alleged value of Haman's claims. *See, SOFs 13 and 34.*

75.     Howarth is almost always an expert for insureds; over the past five years, ninety-five percent of his work has been as an appraiser for policyholders, while the other 5% has been expert work. *Depo. Howarth, p. 36, l. 10-13; Attachment 52 to Chubb's evidentiary submissions.*

76.     Howarth has a personal connection with Haman's attorneys; they are THG's registered agents for service of process. *Attachment 75 to Chubb's evidentiary submissions.*

77.     Although appraisal has not yet commenced, Howarth has formed his opinion regarding the alleged specific amount of Haman's fire loss; THG's February

11, 2015 estimate of the alleged replacement cost value (RCV) of the damages allegedly caused by fire and soot was $1,679,975.33, which is more than four times the amount agreed to by Chubb. *Exhibit 47 to Howarth's deposition; Attachment 63 to Chubb's evidentiary submissions.*

78.     Although appraisal has not yet commenced, Howarth has formed his opinion regarding the alleged specific amount of Haman's wind damage loss; THG's February 11, 2015 estimate of the RCV of the alleged wind damage to the roofs of all three buildings was $1,307,177.99, which is more than 37 times the amount agreed to and paid by Chubb. *Exhibit 48 to Howarth's deposition*; *Attachment 64 to Chubb's evidentiary submissions.*

### E.     The Chubb Policy Of Insurance

79.     Chubb insured Haman under a commercial policy of property insurance, policy number 99783420-00, effective March 2, 2014 to March 2, 2015 ("the Chubb policy"), subject to the policy's terms, conditions, limitations and exclusions. *See, certified copy of the Chubb policy; Attachment 76 to Chubb's evidentiary submissions.*

80.     The Chubb policy insured Haman's three hotel buildings located at 1121 9th Avenue Southwest, Bessemer, Alabama, and contains the following pertinent provisions:

Building And Personal Property Coverage Form

-----

A.      Coverage

-----

3.      Covered Causes of Loss

See applicable Causes of Loss Form as shown in the Declarations

-----

4.      Exclusions And Limitations

See applicable Causes of Loss Form as shown in the Declarations

-----

E.      Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions

-----

2.      Appraisal

If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge or a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. … If there is an appraisal, we will still retain our right to deny the claim.

-----

3.      Duties In The Event Of Loss Or Damage

a.      You must see that the following are done in the event of loss or damage to Covered Property:

- 19 -

-----

(2)    Give us prompt notice of the loss or damage. Include a description of the property involved.

-----

Causes of Loss – Special Form

-----

A.    Covered Causes of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1.    Excluded in Section B., Exclusions, or

2.    Limited in Section C., Limitation;

that follow.

B.    Exclusions

-----

2.    We will not pay for loss or damage caused by or resulting from any of the following:

-----

d.    (1)    Wear and tear;

(2)    Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

-----

- 20 -

    f.      Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

-----

3.      We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

-----

    c.      Faulty, inadequate or defective:

-----

        (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3)    Materials used in repair, construction, renovation or remodeling;

        (4)    Maintenance;

        of part or all of any property on or off the described premises.

-----

## C.    Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1.      We will not pay for loss or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

- 21 -

-----

    c.    The interior of any building or structure, or the personal property in the building or structure, caused by or resulting from rain, … whether driven by wind or not, unless:

        (1)    The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain … enters;

*Chubb policy, pp. 8-22 of 71; Attachment 76 to Chubb's evidentiary submissions.*

## II.   <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A.   <u>Standard On Motion For Summary Judgment</u>

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex,* 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259-60 (11th Cir. 2004). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.,* 344 F.3d 1161, 1164 (11th Cir. 2003).

**B.**     **The Insured's And The Insurer's Burdens Of Proof**

The Chubb policy was issued in Alabama to an Alabama corporation. When a federal court sitting in diversity in Alabama interprets an Alabama insurance policy, it applies Alabama substantive law. *Cherokee Ins. Co., Inc. v. Sanches,* 975 So. 2d 287, 292 (Ala. 2007). Under Alabama law, the insured bears the burden of proving coverage under the policy. See *Nat'l Fire & Marine Ins. Co. v. Wells,* 301 F. Supp. 3d 1082, 1097 (N.D. Ala. 2018); *FCCI, Inc. v. Capstone Process Sys., LLC,* 49 F. Supp. 3d 995, 998 (N.D. Ala. 2014) (citing *Colonial Life & Acci. Ins. Co. v. Collins,* 280 Ala. 373, 194 So. 2d 532, 535 (Ala. 1967)). Once the insured has met its burden, the insurer bears the burden of demonstrating that an exclusion to coverage applies. *Penn. Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish,* 790 F.3d 1173, 1181 (11th Cir. 2015) (citing *Acceptance Ins. Co. v. Brown,* 832 So.2d 1, 12 (Ala. 2001)). The court in *Divine Motel Grp., LLC v. Rockhill Ins. Co.,* 655 F. App'x 779, 781 (11th Cir. 2016), affirming summary judgment to the insurer in a first party property damage case, discussed the methods for obtaining summary judgment:

> If the burden of proof is on the nonmovant, the movant must either: (1) demonstrate that the nonmovant has failed to proffer sufficient evidence to support an essential element of its case; or (2) proffer affirmative evidence demonstrating that the nonmovant will be unable to prove an essential element at trial. [citation omitted]. If the movant demonstrates the absence of a genuine factual dispute by either method, the burden then shifts to the nonmovant, which must show that a genuine issue remains for trial.

- 23 -

*Divine Motel,* 655 F. App'x at 781.

Under this standard, Haman bears the initial burden of proving that the 2014 fire and tornado caused the disputed damages to the roofs and interiors of its buildings. Chubb is entitled to summary judgment once (1) it demonstrates that Haman has failed to proffer sufficient evidence to support an essential element of its case – *i.e.,* causation by a covered cause of loss; or (2) Chubb proffers affirmative evidence that Haman will be unable to prove an essential element of its case at trial.

As discussed below, Chubb has met its burden on summary judgment by demonstrating that Haman's experts' opinions regarding the alleged causes of the disputed damages to the roofs and interiors of Haman's buildings are inadmissible in evidence, which means that Haman cannot prove that the disputed damages allegedly were caused by covered causes of loss – fire and tornado - occurring within the Chubb policy period. In addition, Chubb has proffered its experts' opinions that the disputed damages were <u>not</u> caused by the 2014 fire and tornado; instead, the damages caused by the fire and its by-products were limited to the rooms for which Chubb already paid, and the damage to the roofs of the buildings and the water damage to the interiors were caused by excluded causes of loss, and not by wind.

### C.   <u>Summary Judgment On The Supplemental Fire Damage Claim</u>

### (1)   <u>Haman's Claim For Breach Of Contract Must Fail Because There Is No Coverage Under The Chubb Policy For The Disputed Damages</u>

While the Chubb policy provides coverage for fire, the burden is on Haman to prove the damages to the additional rooms were caused by fire occurring during the Chubb policy period. If it cannot, there is no coverage under the Chubb policy for the disputed damages of the fire claim. Haman does not have any admissible evidence to meet this burden of proof, or to rebut the evidence proffered by Chubb's expert Sumner that the 2014 fire and its by-products damaged only 36 rooms and a stairwell, for which damages Chubb already has paid. The opinions of Haman's expert Irmiter regarding alleged soot damage to the additional rooms are not admissible in evidence for the reasons discussed in Chubb's motion to exclude the expert testimony of Irmiter. Because Haman does not have any admissible expert testimony regarding the cause of damages to the additional rooms, it cannot meet its burden of proving these rooms were damaged by fire during the Chubb policy period.

Where the district court properly excludes causation testimony of the plaintiff's expert, summary judgment is properly granted to the defendant. ***Allison v. McGhan Med. Corp.,*** 184 F.3d 1300, 1322 (11th Cir. 1999)(affirming grant of summary judgment where district court properly excluded plaintiff's expert's

causation testimony). Accord, *McDowell v. Brown,* 392 F.3d 1283, 1288 (11th Cir. 2004). In this case, the only admissible evidence regarding the cause of the damages in the additional rooms claimed by Haman is the expert opinion of Chubb's certified industrial hygienist, Sumner, who opined that those rooms were not damaged by fire or its by-products, soot, char and ash. *Aff. Sumner, ¶ 30.* Sumner agreed with Young and Associates that only a limited number of the rooms were damaged by the fire and its by-products – 36 rooms and a stairwell - and the Young and Associates report accurately described the work needed to repair those rooms. *Id., ¶ 30(3); see also, Report of Young & Associates, attached as an exhibit to Sumner's affidavit.* Chubb paid the adjusted loss to these rooms. *See, SOF Nos. 11 and 12 above.*

Chubb has met its burden on summary judgment by showing that Haman cannot prove one of the essential elements of its supplemental fire damage claim and its cause of action for alleged breach of the insurance contract – *i.e.,* causation. In addition, Chubb has proffered the opinions of Sumner that the additional rooms were not damaged by fire. Chubb is therefore entitled to summary judgment on Haman's claim for alleged breach of contract arising out of Chubb's failure to pay Haman's supplemental fire damage claim. See, *Divine Motel, supra.*

### (2)    Haman Has No Admissible Evidence Of Additional Money Owed By Chubb To Repair Damages Caused By The Fire

Chubb already has paid Haman the adjusted amount (RCV reduced to ACV minus the deductible) of the fire damages to Haman's 36 rooms plus a stairwell. *See, SOF Nos. 11 and 12.* Haman, through repair estimates provided by Howarth and Irmiter, claims that additional money is needed to repair or replace additional rooms in the building. In fact, Haman seeks the cost to replace the entire building except for the foundation and concrete walls. However, Haman does not have any admissible evidence linking these proposed repair costs to the fire in 2014. Haman's expert Irmiter has alleged that the building is a total loss; however, Irmiter's testimony regarding the unaccredited lab results of Carlson labs is not admissible to connect these additional damages to soot from the fire in 2014. Haman therefore cannot meet its burden of proving that Chubb breached the contract of insurance by refusing to pay additional money for fire damage.

### (3)    Chubb Did Not Act In Bad Faith In Refusing To Pay The Disputed Fire Damages

"The Alabama Supreme Court recognizes the tort of bad faith failure to pay an insurance claim 'where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal.'" *Walker v. Life Ins. Co. of N. Am.,* No. 5:16-cv-00506-HNJ, 2020 U.S. Dist. LEXIS 87797, at *60 (N.D. Ala. May 19,

2020)(citing *State Farm Fire & Cas. Co. v. Brechbill*, 144 So. 3d 248, 257 (Ala. 2013). "Those two scenarios comprise a single tort with two slightly different methods of proof." *Walker,* at \*60 (citing *Brechbill,* 144 So. 3d at 257-58). "Regardless of whether the claim is a bad-faith refusal to pay or a bad-faith refusal to investigate, the tort of bad faith requires proof of the third element, absence of legitimate reason for denial." *Walker,* at \*62 (citing *Brechbill,* 144 So. 3d at 258). In *Madison Cty. v. Evanston Ins. Co.,* 340 F. Supp. 3d 1232, 1267-68 (N.D. Ala. 2018), the court discussed a plaintiff's high burden of proof, holding:

> Plaintiffs' burden to establish the absence of a debatable reason for insurance denial represents a high bar: "in the ['ordinary'] case, a plaintiff's bad-faith claim may not be submitted to the jury unless she shows that she is entitled to a directed verdict on the contract claim." *Alfa Mutual Fire Ins. Co. v. Thomas,* 738 So.2d 815, 822 (Ala. 1999). Therefore, "[i]f any one reason for denial of coverage is at least 'arguable,' [a] court need not look any further, and a claim for bad faith refusal to pay will not lie." *Weaver v .Allstate Ins. Co.,* 574 So. 2d 771, 774 (Ala. 1990)(quoting *McLaughlin v. Ala. Farm Bureau Mut. Cas. Ins. Co.,* 437 So. 2d 86, 91 (Ala. 1983)(holding that to succeed at summary judgment, the defendant insurer maintains merely the burden of demonstrating "that it had a legitimate or arguable basis for the denial of the claim.").

"An insurer who presents a 'debatable reason' for denying a claim can avoid bad faith liability even if the insured identifies some deficiencies in the insurer's investigatory process." *Walker,* at \*62, (citing *Brechbill,* 144 So.3d at 259). "Where the "[insurer's] investigation established a legitimate or arguable reason for refusing

- 28 -

to pay [the insured]'s claim, [that] is all that is required." ***Madison,*** 340 F. Supp. 3d at 1268 (citing ***Weaver,*** 574 So. 2d at 774).

Haman's bad faith claim fails as a matter of law because Chubb had a legitimate reason for refusing to pay the supplemental fire damage claim; *i.e.,* Chubb's qualified representatives, Young and Associates and its expert, Thomas Sumner, examined the additional rooms, took samples and obtained test results that showed the additional rooms were not damaged by the fire or its by-products. This evidence rendered Haman's supplemental fire damage claim at least "fairly debatable" by Chubb. ***Madison****, supra,* ***Walker****, supra.* As a result, Chubb had at a minimum  an arguable basis for refusing to pay the claim. For this reason, Chubb is entitled to summary judgment on the bad faith claim.

In addition, where a breach of contract claim fails, the bad faith claim also must fail because it is dependent on the contract claim. See, ***Madison,*** 340 F. Supp. 3d at 1268 ("Evanston successfully accomplished summary judgment on Plaintiffs' breach-of contract-claim, striking a blow to Plaintiffs' ability to assert their entitlement to a directed verdict. Therefore, Plaintiffs' 'ordinary' bad-faith claim fails"); *see also* ***Sharp Realty & Mgmt., LLC v. Capitol Specialty Ins. Corp,*** No. CV-10-AR-3180-S, 2012 U.S. Dist. LEXIS 75353, at *81 (N.D. Ala. May 31, 2012). As discussed in the section above, Chubb did not breach the contract of insurance

with regard to the fire damage claim; therefore, it is entitled to summary judgment on Haman's bad faith claim.

### D.   Summary Judgment On The Wind Damage Claim

### (1)   Haman's Claim For Wind Damage Must Fail Due To Late Notice Of The Claim

Haman claims the roofs of its three hotel buildings were damaged by winds from the tornado on April 28, 2014. *Amended Answer, ¶ 10.* [Doc. 35]. The Chubb policy requires timely notice as a condition of coverage: "You must see that the following are done in the event of loss or damage to Covered Property: … (2) Give us prompt notice of the loss or damage. Include a description of the property involved." *Chubb policy p. 16 of 71; Attachment 76 to Chubb's evidentiary submissions.* "[W]hen a primary insurance policy requires notice 'as soon as practicable,' 'promptly,' or 'immediately,' the insured is obligated to give notice 'within a reasonable time considering all relevant facts and circumstances of the case,' and an insured's failure to do so releases the insurer from coverage." ***Lemuel v. Admiral Ins. Co.,*** 414 F.Supp.2d 1037, 1050 (M.D. Ala. 2006) (citing ***Southern Guar. Ins. Co. v. Thomas,*** 334 So.2d 879, 882-83 (Ala. 1976) and ***Pharr v. Cont'l Cas. Co.,*** 429 So. 2d 1018, 1019 (Ala. 1983)); ***Travelers Indemnity Co. of Connecticut v. Miller,*** 86 So. 3d 338, 342 (Ala. 2011); ***Reeves v. State Farm Fire & Cas. Co.,*** 539 So.2d 252, 254 (Ala. 1989).

"[U]nder Alabama law there are only two factors to be considered in determining the reasonableness of a delay in giving notice to an insurer: the length of the delay and the reasons for the delay." ***Pa. Nat'l Mut. Cas. Ins. v. Colyer-Lloyd, Inc.,*** Civil Action No. CV-93-AR-2627-E, 1994 U.S. Dist. LEXIS 22041, at *6 (N.D. Ala. Dec. 2, 1994)(citing ***Southern Guaranty Ins. Co. v. Thomas,*** 334 So. 2d 879, 883 (Ala. 1976)). A showing of prejudice is not required to find that late notice bars coverage. ***Colyer-Lloyd, Inc.,*** 1994 U.S. Dist. LEXIS 22041, at *8. See also, ***Correll v. Fireman's Fund Ins. Cos.,*** 529 So. 2d 1006, 1009 (Ala. 1988)(The question of whether the insurer was prejudiced is immaterial). "If the insured does not notify the insurer in a timely fashion and the insured fails to show mitigating circumstances that reasonably justify the lengthy delay, the court must hold as a matter of law that the notice provision has been breached and grant summary judgment in favor of the insurer." ***Colyer-Lloyd,*** 1994 U.S. Dist. LEXIS 22041, at *6 (citing ***Watson v. Alabama Farm Bureau Mutual Casualty Ins. Co.,*** 465 So. 2d 394 (Ala. 1985)).

"Absent extenuating circumstances, a delay of 15 months is unreasonable as a matter of law." ***Colyer-Lloyd,*** 1994 U.S. Dist. LEXIS 22041, at *6. See also, ***Pharr v. Cont'l Cas. Co.,*** 429 So. 2d 1018, 1019 (Ala. 1983)(A delay of almost eight months with no excuse was unreasonable as a matter of law); ***Correll****, supra.*

(approximately one-year delay in giving notice, coupled with insufficient reasons for delay, relieved insurer of duty to provide indemnification).

Haman failed to provide timely notice of the alleged wind damage to its roofs and the water damage to the interiors of is buildings, and its delay in giving notice was unreasonable. As early as April 2014, Haman's manager, Sheila Allen, and its maintenance man, Wasif Bukhari, both of whom lived at the Knights Inn, were aware of increased water leakage through the roofs and into the buildings' interiors, allegedly commencing just after the tornado. *Depo. Allen, p. 150. l. 21-25; p. 151, l. 1-5, p. 177, l. 23-25; p. 178, l. 1-7; Depo. Burkari, p. 77, l. 14-23; p. 78, l. 1-5; p. 79, l. 18-23; p. 80, l. 102.* Haman claims these causes of loss allegedly caused damages to the roofs and the buildings' interiors in the amount $1,595,605.00. [Doc. 38-17, page 147 of 147]. Yet, despite being aware of alleged substantial damage to the roofs and interiors of its buildings allegedly caused by winds from the nearby tornado, Haman did not notify Chubb of the damage until eleven months later on March 25, 2015.

Haman has "failed to show a reasonable excuse or the existence of circumstances that would justify its protracted delay" of eleven months in providing notice to Chubb of the approximately $1.5 million in alleged wind and water damages to its roofs and the interiors of the buildings allegedly as a result of the tornado. ***Colyer-Lloyd, Inc.,*** 1994 U.S. Dist. LEXIS 22041, at *9. An eleven month

delay after Haman's representatives became aware of the tornado and the increase in leaks, with no excuse for the delay, is unreasonable as a matter of law and vitiates coverage under the Chubb policy. Chubb is entitled to summary judgment on the wind damage claim.

### (2)   Haman's Claim For Breach Of Contract Must Fail Because There Is No Coverage Under The Chubb Policy For The Disputed Damages

Haman seeks to recover the cost of fully replacing the roofs of all three of its buildings, as well as the cost to repair the interiors of the buildings. Chubb, without admitting the cause of the losses, agreed to pay for the alleged wind damage to the metal coping on Haman's roof, but denied that wind damaged the EPDM roofing or caused openings in the roofs that allowed rain water to leak into the interiors. Haman's claim for alleged breach of contract regarding the wind damage claim arises out of Chubb's denial of the additional damages.

Haman does not have any admissible evidence to support its claim that winds from the 2014 tornado damaged the EPDM roofing, or that rain water leaked into the buildings' interiors through openings in the roofs caused by wind. The opinions of Haman's experts Tom Irmiter and Chuck Howarth regarding the wind damage claim should be excluded under Rule 702 and Daubert for the reasons discussed in Chubb's motions to exclude the opinion testimony of Irmiter and Howarth. Without their testimony, Haman cannot meet its burden of proving damage to its roofs caused

by a covered cause of loss during the Chubb policy period. Chubb is therefore entitled to summary judgment as a matter of law. See, *Allison*, 184 F.3d at 1322.

Importantly, Chubb's expert engineer Mulder opined that the damages to the EPDM roofing were <u>not</u> caused by wind, but rather, by a combination of faulty construction, wear, tear and deterioration, and inadequate repair and maintenance. *Affidavit Irmiter, ¶ 47.* The Chubb policy contains exclusions that preclude coverage for property damages caused by faulty construction, wear, tear and deterioration, and inadequate repair and maintenance. See, *Chubb policy, SOF;* Courts in the Eleventh Circuit and Alabama have enforced these standard coverage exclusions. See, e.g., *Nat'l Fire & Marine Ins. Co. v. Wells,* 301 F. Supp. 3d 1082, 1098 (N.D. Ala. 2018)(policy exclusions for wear and tear, decay and deterioration, and faulty, inadequate, or defective construction, repair, renovation, or remodeling are unambiguous and must be enforced); *Travelers Prop. Cas. Co. of Am. v. Brookwood, LLC,* 283 F. Supp. 3d 1153, 1161 (N.D. Ala. 2017)("[T]o the extent faulty workmanship, inadequate maintenance, and/or wear and tear caused the roof damage, they are excluded causes of loss"); *Miele v. Certain Underwriters at Lloyd's of London,* 559 F. App'x 858, 863 (11th Cir. 2014)(affirming summary judgment in favor of insurer based upon policy's exclusion for wear and tear, where evidence showed that the need to replace one part due to wear and tear indirectly

gave rise to need to replace all parts). Because the damages to Haman's roofs were caused by excluded causes of loss, Chubb is entitled to summary judgment.

Regarding Haman's claim for interior water damage, the Chubb policy precludes coverage for water damage to the interiors of buildings caused by rain leaking into the interiors <u>unless a covered cause of loss</u> first causes openings in the roofs or walls through which the rain enters. See, *Chubb policy, Building and Personal Property Coverage Form; SOF 80; Attachment 76 to Chubb's evidentiary submissions.* Thus, it is not sufficient for Haman to provide lay testimony that water continued to leak through the roofs after the tornado, and such testimony does not create a material issue of fact for resolution by a jury. Chubb's expert Mulder opined that the above-referenced <u>excluded</u> causes of loss (deterioration in the roofs due to age, faulty construction and improper maintenance) not wind, caused the openings in Haman's roofs that allowed rain water to leak into the buildings' interiors over an extended period of time. *Aff'd Mulder* ¶ 47.

The insurance policy in ***Brookwood, supra,*** contained a virtually identical rain coverage limitation. 283 F. Supp. 3d at 1160-61. As is the case with Haman's wind damage claim, the issue in ***Brookwood*** was what caused the openings in the roof's EPDM membrane and whether the insurance policies provided coverage for the damages caused by the rain leaking through those openings. ***Id.*** Granting summary judgment in favor of the insurer, the district court in ***Brookwood*** held:

> Brookwood has failed to meet its burden to produce evidence on which a jury could find that a covered cause of loss produced the leak through which the rain entered, thus establishing the applicability of an exception to the Rain Limitation, it cannot recover under the Property Policy any damages incurred as a result of the November 16, 2014 roof leak.

**Brookwood,** 283 F. Supp. 3d at 1163. The same result was obtained in **Divine,** *supra,* 2015 WL 4095449 at *7, 10, where the Eleventh Circuit affirmed the district court's grant of summary judgment to the insurer because the insured failed to identify a covered cause of loss that caused damage to the roof or walls, which permitted the rain to enter.

Based upon the above authority, Haman is unable to prove an essential element of its wind damage claim; *i.e.,* it cannot prove that winds from the 2014 tornado created openings in the roofs, and that the damages to the buildings' interiors were caused by water leaking through openings in the roofs created by wind. Chubb has affirmatively proven that the disputed damages to the roofs were caused by excluded causes of loss, rather than wind. Because Chubb has met its burden on summary judgment, **Divine Motel,** *supra,* Chubb is entitled to summary judgment on Haman's claim for alleged breach of the insurance contract arising out of Chubb's failure to pay the disputed wind damage claim.

### (3) __Haman Has No Admissible Evidence Of Additional Money Owed By Chubb To Repair Damages Caused By Wind In 2014__

Chubb already has paid Haman the adjusted amount (RCV reduced to ACV minus the deductible) of slight wind damage to the metal coping on the roof of one of Haman's buildings. *See, SOF 39.* Haman, relying upon repair estimates provided by Howarth and Irmiter, claims that additional money is needed to replace the entire roofs of all three buildings,. However, Haman does not have any admissible evidence linking these proposed roof replacement costs to wind damage in 2014. Howarth's and Irmiter's opinions that winds from a tornado in 2014 allegedly damaged the roofs requiring replacement of all three roofs is not admissible. *See, Chubb's motion to exclude the opinions of Howarth and Irmiter, filed contemporaneously with this motion for summary judgment.* In addition, this Court has ruled that Irmiter may not testify that Howarth's cost estimates are reasonable. *Memorandum Opinion, p. 18.* [Doc. 84]. Haman therefore cannot meet its burden of proving that Chubb breached the contract of insurance by refusing to pay additional money for wind damage.

### (4) __Chubb Did Not Act In Bad Faith In Refusing To Pay The Disputed Wind Damages__

In light of the facts discussed in the section above, Chubb did not act in bad faith by failing to pay the additional wind damage claim. Chubb had a legitimate reason for refusing to pay the claim; *i.e.,* the reports of its expert, Mulder, who

determined the disputed damages to the roofs were caused by excluded causes of loss including defective construction, age-related wear, tear and deterioration, and faulty repair and maintenance, and not by winds from the 2014 tornado. Mulder determined that water leaked into the interiors of the buildings not through openings in the roofs created by wind, but rather, through openings caused by these excluded causes of loss. *Aff'd. Mulder, ¶47.* Because Haman's wind damage claim was "fairly debatable" by Chubb, ***Walker,*** *supra,* ***Brechbill,*** *supra,* ***Madison,*** *supra,* Chubb was authorized to refuse to pay the claim. As a matter of law, this defeats Haman's bad faith claim and entitles Chubb to summary judgment on the claim for alleged bad faith, regardless of whether the breach of contract claim is resolved in Chubb's favor on summary judgment or at trial.

In addition, because Haman's claim for alleged breach of contract fails, its bad faith claim also must fail. ***Madison,*** 340 F. Supp. 3d at 1268; ***Sharp Realty,*** 2012 U.S. Dist. LEXIS 75353, at *81.

### E.   Chubb Is Entitled To Summary Judgment On Haman's Claim For Alleged Bad Faith Claim Handling

Haman erroneously claims that Chubb "failed and refused to perform a timely, proper and good faith investigation into these [fire and wind damage] claims initially, then delayed and delayed…."[1] *Amended complaint, ¶ 12* [Doc. 35-3].

---

[1] In fact, Chubb's only alleged "delay" was its demand that Haman first fulfill its contractual obligations to provide examinations under oath, documentation of its claimed damages, sworn

Haman alleges that, "[r]ather than properly investigating, adjusting, and paying the claims, Chubb has at all times blocked and delayed. Chubb required Plaintiff to produce documents and sit for an examination under oath.[2] Chubb has refused to accept the repair estimates submitted to it by Plaintiff." *Id., ¶ 19.* Haman claims that Chubb "intentionally refused to pay and has delayed payments of amounts that should have been undisputed," *id., ¶ 35,* "investigated the loss with a pre-determined motive, and has intentionally breached the duty to properly evaluate and honor the claim, has not dealt fairly and in good faith, and has committed bad faith and intentional tortious conduct against Plaintiff," *id., ¶ 36,* "[i]ntentionally delaying the appraisal process in the written policy and refus[ed] to abide by same, for no legitimate or debatable reason…," *id., ¶ 36.m.,* "[i]ntentionally refus[ed] the appraisal process which is written into the insurance contract, which is a breach and is evidence of bad faith," *id., ¶ 36.n.* and "paid less than one-fourth (1/4) of the damages to the structure, and refused to pay more after receiving a 225-page report itemizing the damages. *Id., ¶ 36.*

Contrary to Haman's incorrect allegations, the undisputed evidence is that Chubb did, in fact, timely investigate the claims and promptly paid the agreed

---

proofs of loss, and to select an impartial appraiser, all of which Haman stubbornly refused to do. *See, [Doc. 38-8], which is the circuit court's order dismissing Haman's initial complaint due to its failure to comply with the Chubb policy's loss conditions.*

[2] Ibid.

adjusted losses where the causes of the losses were undisputed. *See, SOF 11-12, 37-40.* The undisputed evidence in Haman's original action filed in the Circuit Court of Jefferson County (Bessemer Division) was that between April 2014 and March 24, 2015, when Chubb was first notified of the fire and wind losses, respectively, and February 25, 2016, when Haman filed its original action, Chubb's investigation of Haman's claims was substantially hampered by Haman's refusal to comply with its contractual obligations to provide documentation of its claimed damages, submit sworn proofs of loss and submit to examinations under oath. The issue of Haman's non-cooperation was thoroughly litigated between the parties in that earlier action and the circuit court dismissed Haman's original complaint, finding that Haman had failed to comply with these post-loss obligations. *See,* [Doc. 38-8, p. 2].

Haman subsequently agreed to cooperate and Chubb was able to complete its investigation. Based upon the well-reasoned reports of its qualified experts, Chubb determined there was no coverage under the Chubb policy for Haman's disputed wind damage claim. In a letter dated March 6, 2018, Chubb denied coverage for the wind damages not already paid by Chubb. *See,* [Docs 6-8; Doc. 38-14]. Chubb did not formally deny the supplemental fire damage claim, instead agreeing appraisal was appropriate once Haman selected a competent and <u>impartial</u> appraiser. Haman thereafter filed suit.

There are no facts in the record upon which a jury could find that Chubb acted in bad faith during its investigation of Haman's claimed losses. Regarding Chubb's actions <u>before</u> Haman filed its original lawsuit, Chubb was not required to pay the losses because Haman refused to fulfill its post-loss obligations. *See,* [Docs. 38-7 and 38-8]. The Alabama Supreme Court has held that "the insurer has no obligation to pay any amount … until the insured meets his or her post-loss obligations." ***Baldwin Mut. Ins. Co. v. Adair,*** 181 So.3d 1033, 1043 (Ala. 2014), *reh'g denied* (May 22, 2015). See also, ***Nationwide Ins. Co. v. Nilsen,*** 745 So.2d 264, 267 (Ala. 1998) ("An insurance company is entitled to require an insured to submit to an examination under oath as part of its claims investigation process.... [A]n insurer's obligation to pay or to evaluate the validity of an insured's claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."); ***Akpan v. Farmers Ins. Exch., Inc.,*** 961 So.2d 865, 872 (Ala. Civ. App. 2007) ("[T]he obligation to pay or to evaluate the validity of the claim does not arise until the insured has complied with the terms of the contract with respect to submitting claims."); ***United Ins. Co. of America v. Cope,*** 630 So.2d 407, 412 (Ala. 1993) ("[N]o case from this Court places on an insurance company an obligation to either investigate or pay a claim until the insured has complied with all of the terms of the contract with respect to submitting claims for payment").

With regard to Chubb's actions <u>after</u> Haman finally decided to cooperate with Chubb's investigation of the losses only <u>after</u> Haman's first lawsuit was dismissed because Haman failed to comply with the policy's post-loss obligations, the undisputed evidence proves that Chubb promptly and thoroughly investigated the disputed claims after Haman finally complied with its contractual post-loss obligations. Chubb also obtained detailed reports from qualified experts who determined the causes and scope of the losses. With regard to the fire damage claim, Chubb relied upon the repair estimate of Young and Associates in the total amount of $523,477.01 to repair fire damage to 36 rooms plus a stairwell, which Chubb paid, declining to pay any additional damages. *See, Aff. Sumner; ¶¶ 20, 31(3); Attachment 32 to Chubb's evidentiary submissions.* Sumner has averred this was the actual scope of the fire loss. *Aff. Sumner, ¶ 31(3).* With regard to the wind damage claim, Chubb's denial letter explained that ED&T had investigated the claim and determined that the conditions on the roofs were the result of excluded causes of loss. *See, [Doc. 38-12; Doc. 38-13, p. 2 of 11].*

The decisions in ***Madison,*** *supra,* ***Walker,*** *supra,* and ***Brechbill,*** *supra,* establish that Haman is unable to meet its high burden of establishing bad faith claim handling arising out of alleged bad faith failure to investigate.

With regard to whether Chubb acted in bad faith in refusing to submit to appraisal to resolve the cause of loss issues with Howarth as Haman's appraiser, this

Court already has found that "[h]ere, like the parties in Rogers,[3] the parties dispute the cause of the damage to Haman's hotel's roof and interior. So, under Rogers, the court cannot order the parties to submit to appraisal while the causation dispute remains. …" [Doc. 48-7, p. 9 of 11]. This Court ruled that "appraisal would be premature while this causation and coverage dispute remains," and "[r]easonable jurors could find that this [appraisal employment] agreement [between Haman and Howarth] creates a financial incentive for Mr. Howarth to increase his appraisal and shows that he is not an impartial appraiser." *Id.*, pages 7-9 of 11. In light of this ruling, and as a matter of law, Haman did not act in bad faith in refusing to engage in appraisal allowing Howarth to serve as Haman's appraiser.

For all of these reasons, Chubb is entitled to summary judgment on Haman's claim for alleged bad faith claim handling.

### F.   **Chubb Is Entitled To Summary Judgment On Haman's Claim For Specific Performance To Compel Appraisal**

#### (1)   **Haman Filed Its Claim Prematurely And Without Fulfilling Its Own Obligations Under The Appraisal Provision Of The Chubb Policy**

"The equitable remedy of specific performance rests largely in the discretion of the trial judge, and whether relief shall be granted depends upon a consideration of the particular circumstances of each case." ***Sharp Realty & Mgmt., LLC v.***

---

[3] ***Rogers v. State Farm Fire and Cas. Co.,*** 984 So. 2d 382 (Ala. 2007).

*Capitol Specialty Ins. Corp,* No. CV-10-AR-3180-S, 2012 U.S. Dist. LEXIS 75353, at *81 (N.D. Ala. May 31, 2012) (citing *Saad v. Saad,* 31 So. 3d 706, 713-14 (Ala. Ct. App. 2009)). Furthermore, "one 'who seek[s] equity must do equity' and 'one that comes into equity must come with clean hands.' The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when that party's own wrongful conduct renders the assertion of such legal rights 'contrary to equity and good conscience.'" *Mantiply v. Mantiply,* 951 So. 2d 638, 657 (Ala. 2006) (citing *Neal v. Neal,* 856 So. 2d 766, 786 (Ala. 2002)).

Based on the particular circumstances of this case and equitable considerations, this Court should decline to issue an order compelling Chubb to submit to appraisal, since Chubb has not unjustifiably resisted appraisal, while Haman has come into court with unclean hands. Before filing this action, Haman failed to comply with its own obligations under the Chubb policy to seek appraisal only of "the value of the property or the amount of the loss," and to select an "impartial appraiser," both of which are required under the Chubb policy's appraisal provision. *Chubb policy, Building and Personal Property Coverage Form, E. Loss Conditions; SOF 80; Attachment 76 to Chubb's evidentiary submissions.* This Court already has found that there remain unresolved cause of loss issues, and that a jury could find that Howarth is not impartial. [Doc. 48, p. 7 of 11]. At the time Haman filed its complaint for specific performance to compel Chubb to participate in

- 44 -

appraisal, Haman was improperly seeking to resolve through appraisal the disputed cause of loss issues regarding whether the fire damaged all 80 rooms in Haman's' building and whether winds from the tornado damaged the roofs of Haman's buildings, and to compel appraisal using Chuck Howarth as Haman's selected appraiser when there are serious questions about whether Howarth is impartial. Because it already has been established conclusively that Chubb did <u>not</u> unjustifiably refuse to submit to appraisal under the conditions demanded by Haman, and because Haman acted improperly in seeking to compel appraisal under these conditions, equity does not support Chubb now being subjected to a compulsory order compelling it to submit to appraisal.

While Haman may argue that for the sake of judicial economy[4] this Court should adjudicate the cause of loss and coverage issues and the issue of Howarth's partiality, and then, in this same action, compel Chubb to submit to appraisal of the amount of the losses with Howarth as Haman's appraiser, the district court rejected a similar approach in ***Caribbean I Owners' Ass'n v. Great Am. Ins. Co.,*** 619 F. Supp. 2d 1178 (S.D. Ala. 2008). In that case, the plaintiff/insured filed a complaint

_____

[4] If Haman had the slightest interest in economy, which it does not, it would have complied with the Chubb policy's loss conditions and submitted sworn proofs of loss, submitted to examinations under oath and provided the requested documents, instead of resisting all such requests by Chubb and then prematurely filing suit in the circuit court of Jefferson County. Not only did Haman's actions cause Chubb to incur attorney's fees and expenses, but they caused the circuit court to expend its judicial resources in considering and dismissing as premature Haman's complaint for specific performance and for damages. [Doc. 38-7, 38-8].

seeking insurance benefits plus interest and costs to be determined pursuant to the appraisal provision of the insurance policy, and an order requiring the defendant/insurer to participate in the appraisal process, with entry of judgment by the court upon determination through appraisal of the amount of the covered loss. Relying upon the decision of the Supreme Court of Alabama in *Rogers v. State Farm Fire and Cas. Co.,* 984 So. 2d 382 (Ala. Oct. 12, 2007), which held that an action to compel appraisal was premature until the coverage issues were decided, the court in *Caribbean I Owners* found that unresolved cause of loss issues remained for adjudication and dismissed all of the insured's appraisal-related claims against the insurer.

For the same reasons relied upon by the court in *Caribbean I Owners,* and based upon the decision in *Rogers,* this Court should find that the equities of the situation preclude Haman from obtaining equitable relief in the form of a compulsory order directed toward Chubb, and this Court should enter summary judgment in favor of Chubb and against Haman on the claim for specific performance to compel appraisal.

### (2) <u>This Court Should Not Compel Appraisal Using Chuck Howarth As Haman's Appraiser Because A Reasonable Jury Could Not Find That Howarth Is Impartial</u>

"According to Black's Law Dictionary, 'impartial' means '[n]ot favoring one side more than another; unbiased and disinterested; unswayed by personal interest.'

Impartial, Black's Law Dictionary (10th ed. 2014)." ***Verneus v. Axis Surplus Ins. Co.,*** No. 16-21863-CIV, 2018 U.S. Dist. LEXIS 117005, at *16-17 (S.D. Fla. July 13, 2018). See also, Webster's New College Dictionary (3d ed. 2008), which states that "impartial" means "not partial or biased." When an appraiser already has arrived at his valuation of the loss (as Howarth has in this case), and when he has a personal connection with one party (as Howarth does in this case[5]), he no longer can be impartial. On these grounds, the court in ***Verneus*** held that the appraiser, Boaziz, selected by the insured, was not impartial and must be disqualified, reasoning:

> First, Boaziz is the appraiser who already examined the property and prepared the demand for payment for Verneus. He is the one who submitted Verneus's scope of loss to the defendant insurer, Axis. So he has an interest to protect. As a professional who presumably values his reputation, Boaziz is unlikely to reach a conclusion as an appraiser that is significantly different from the work product he already produced.
>
> …     Third, Verneus's counsel has not sufficiently demonstrated that Boaziz's apparent roles as Stellar's president and registered agent (and perhaps more) are not grounds that generate a concern over partiality. Although Verneus is correct that Stellar's corporate records no longer list Boaziz as an owner or managing member, and instead name the Rami Boaziz Living Trust as the managing member, Verneus does not provide any information about the living trust or Boaziz's connection to the trust. Nor does Verneus say anything about Boaziz's signing the annual reports as the "president" of Stellar or about the fact that her address as registered agent and Stellar's mailing address is the same as the address for the living trust.
>
> … Fifth, Stellar has a longstanding relationship with the Verneus's law firm, Perry and Neblett. The Perry and Neblett firm do not dispute this

---

[5] Haman's legal counsel has served as the registered agent for service of process for Howarth's company, THG. *See, Attachment 75 to Chubb's evidentiary submissions.*

affiliation, but essentially asks the Undersigned to ignore it as minor and inconsequential. But they give the Undersigned no good reason to automatically turn a blind eye.

***Verneus,*** 2018 U.S. Dist. LEXIS 117005, at *17-19.

The evidence of Howarth's lack of impartiality and his bias in favor of Haman is similar to the evidence in ***Verneus.*** Like the appraiser Boaziz, Howarth in his role as public adjuster for Haman determined as early as February 2015 that the damages allegedly caused by the fire and tornado exceeded Chubb's offer of settlement by several million dollars. *See, [Doc. 33-2 and 38-4]; Exh. 48 to depo. Howarth, which are the repair estimates provided by Howarth's company TGH in 2015.* It is inconceivable that Howarth could enter into any appraisal process in the future as an impartial appraiser, "[n]ot favoring one side more than another; unbiased and disinterested." ***Black's Law Dictionary,*** *supra.* In fact, Howarth has testified to his bias in favor of Haman. *See. Depo. Howarth, p. 82, l. 8-11.*[6] The fact that Howarth now is working for Haman on an hourly fee basis as its retained expert witness in this case, allegedly having dissolved his contingency fee employment arrangement, does not overcome the fact that Howarth already has made his loss valuations, and therefore, he no longer can be impartial.

---

[6] Howarth testified: "I also – I just told you and have told you previously that I also agreed our company agreed with [Haman's representative] that Chubb's evaluation of the loss as of this date was far less than the actual loss sustained."

Not only is there no evidence from which a jury could find that Howarth is or can be impartial, but the evidence that does exist requires a finding as a matter of law that Howarth is not an impartial appraiser. *Verneus, supra.* Therefore, Haman's selection of Howarth as its appraiser fails to satisfy the appraisal provision of the Chubb policy of insurance, which requires Haman to select an impartial appraiser. For these reasons, Chubb is entitled to summary judgment on Haman's claim for specific performance to compel appraisal using Howarth as its selected appraiser.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Chubb requests that this Court enter summary judgment in its favor and dismiss Haman's complaint in its entirety.

This 20th day of August, 2020.

<div style="margin-left: 40%">

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MICHELLE A. SHERMAN
Georgia Bar No. 835980
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

-and-

</div>

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON SALE
LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

-and-

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax: 205-324-7097
dlee@pljpc.com

*Attorneys for Defendant*
*Chubb Custom Insurance Company*

*#488097*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-JHE |
| | ) |
| v. | ) |
| | ) |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHUBB CUSTOM INSURANCE COMPANY FOR SUMMARY JUDGMENT** was electronically mailed to the following counsel of record:

Gary V. Conchin
Kenneth B. Cole, Jr.
Franklin Taylor Rouse
Conchin, Cloud & Cole, LLC
2404 Commerce Court SW
Huntsville, Alabama 35801
gary@alainjurylaw.com
kenny@alainjurylaw.com

-and-

Gregory A. Brockwell
Jason R. Smith
Brockwell Smith LLC
2100 1st Avenue North, Suite 300
Birmingham, Alabama 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

*Attorneys for Plaintiff Haman, Inc. d/b/a Knights Inc.*

This 20th day of August, 2020.

/s/ Wayne D. Taylor
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*