IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
SOUTNERN DIVISION

| | | |
|---|---|---|
| HAMAN, INC., d/b/a KNIGHTS INN, | ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) | 2:18-CV-01534-KOB |
| CHUBB CUSTOM INSURANCE CO., | ) | |
| Defendant. | ) | |

## PLAINTIFF'S MOTION TO STRIKE EXPERT THOMAS SUMNER'S AFFIDAVIT

Comes now the Plaintiff, by and through its counsel of record, and moves that the Affidavit of Defendant Chubb Custom Insurance Company's ("Chubb") expert witness, Thomas Sumner, be stricken. That affidavit is filed by Chubb at Doc.#105-32. In support thereof, Plaintiff submits as follows:

**I.   Portions of Mr. Sumner's Affidavit are Contradictory to his Deposition Testimony[1]**

1. An affidavit constitutes a sham under Fed. R. Civ. P. 56(c)(4) when there is a "flat contradiction between the prior, sworn testimony" and that of the affidavit. *Duke v. Nationstar Mortgage, LLC.*, 893 F.Supp2d 1238, 1245 (N.D. Ala. 2012). When statements in a declaration constitute a sham, they may be stricken as a

---

[1] Haman has filed a *Daubert* motion to Exclude Sumner's Testimony, (Doc. #92) based upon his deposition testimony.  See Motion, attached hereto as Exhibit 1.

1

matter of law. *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir. 1986). A sham affidavit is one which constitutes a "flat contradiction to the earlier deposition." *Van T. Junkins and Assoc. v. U.S. Indus.,* 736 F.2d 949, 955 (11th Cir. 1984).

2. In his Affidavit, Mr. Sumner claims he did a level 4 testing. Affidavit, p. 7, ¶23. However, in his deposition, Sumner was not sure if he did a level 3 or a level 4 testing. See Exhibit 39, Depos. Sumner at p. 108 where Sumner states "And again, I think I made that same mistake of thinking that was the highest level."[2] In his report, Mr. Sumner attached a chain of custody for the samples. In that chain of custody document, someone has marked out level 3 and written level 4. It is unclear who made this change and when. Id. p. 86. All of this in its totality shows that Sumner does not know what level testing he had done by a lab several hundred miles away that he chose to send his samples to. His documentation is unclear on the topic. His testimony has been in favor of either and both. His current Affidavit makes a bold, contradicted statement, an attempt to clarify a muddled fact that he previously testified to, and therefore should be stricken.[3]

---

[2] Sumner's deposition was filed as Doc.#92-3; Ex. 39 to Haman's Motion to Strike.
[3] Haman's expert Tom Irmiter has testified that Chubb's Sumner's testing was level 3, not 4, and for the purpose of the Knights Inn claim, level 1 was appropriate. (Doc.#90-36 at p. 238, 248).

2

## II. Portions of Mr. Sumner's Affidavit are Not Based on Personal Knowledge

3. Under Fed. R. Civ. P. 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge…" "To be sufficient, a declaration based on anything less than personal knowledge is insufficient." *Duke v. Nationstar Mortgage, LLC.,* 893 F.Supp 2d 1238, 1243 (N.D. Ala. 2012). Information based simply on information and belief, rather than actual personal knowledge, is insufficient. See *Givham v. Electronic Engineers, Inc.*, 4 F.Supp. 2d 1331, 1334 (M.D. Ala. 1998); Lugo v. City of New York, 518 Fed.Appx. 28 (2d Cir. 2013).

4. In his report, Mr. Sumner discusses the investigation and findings, purportedly of Young & Associates. See Sumner affidavit, p. 6, ¶20. Therein, he discusses Chubb's retention of Young and their findings regarding the cleaning of Room 170 for smoke damage. Mr. Sumner was not involved in this investigation. He has no personal knowledge of this investigation, nor its findings. Further, he testified he was only asked to "evaluate whether the scope of work provided by Young & Associates was adequate to remediate the impact from the fire." Ex. 38, Sumner report. So, he was asked only to validate someone else's work. Haman has not objected to any Young & Associates witnesses. Therefore, Sumner's

testimony would be unreliable, unnecessary, duplicative and a waste of time, especially since he has no personal knowledge of the assertions or contents of the Young & Associates report. His testimony will not have any tendency to make a fact more or less probable. See Fed. R. Civ. P. 401, 403. An expert cannot simply repeat or adopt findings of another expert without attempting to assess the validity of the opinions relied upon. *In re Polypropylene Carpet*, 93 F.Supp.2d, 1348, 1357 (N.D. GA 2000); *Hernandez v. Crown Equip. Corp.*, 92 F.Supp.3d, 1325, 1351 (M.D. GA 2105); *Sofillas v. Carnival Corp.* No. 14023920-Civ-Scola, 2016 WL 5407889, at *4 (S.D. Fla. July 8, 2016).

### III. <u>Sumner's Affidavit, and his conflicting testimony, show him to be an unreliable witness.</u>

5. Sumner's opinion cannot be seen as objective expert testimony because his entire involvement in this case has been improperly and artificially controlled by Young & Associates from the very beginning. He was instructed to ignore observations about which he is a subject matter expert. He was given a scope limited to someone else's scope and asked to agree with it, yes or no, without expanding his own scope or addressing other glaring issues with the state of the property. Ex. 39, Sumner depo. pp. 13, 14, 16, 17, 22, 70. He was asked if someone else's opinion was good enough, not if it was independently valid.

6. Sumner was asked by Chubb not to do a mold analysis despite the fact that his specialty is mold remediation. In this case. Sumner actually observed

4

mold. However, he was specifically asked to ignore mold as it was not part of his scope provided to him by Defendant. His testimony is unreliable and manipulated at best. He has already stated both that he observed mold and that testing would confirm that if you see mold, it is present. He was specifically asked to ignore relevant evidence by the defendant and its agent and omit it from his expert opinion. He refused to look at a carcinogenic issue and gave a flakey, unrealistic reason for not doing so. *Id.* p. 71.

### IV. The Mold Issue and Changed Testimony.

7. In his affidavit at p. 2, ¶6; p. 5, ¶18, and p. 10, ¶31(3), Sumner discusses the mold he observed during his time at the site. However, Sumner did not do any testing or investigation of said mold and made no recommendation regarding remediation of the mold he observed. In his deposition, Sumner stated that he was not there to do a mold remediation or look for mold.

> Q: And as part of your scope, you were not asked to look at mold and remediation; is that fair?
> A: No. We were asked to determine the---the scope of remediation related to smoke and fire damage.
> Q: Smoke only? Okay.
> A: Yeah. Q: Smoke, soot only. Not mold and not remediation of mold; fair enough? Yes. (Doc.#92-3, p. 15).

8. Mr. Sumner observed mold, but made the decision not to test for mold, despite his extensive expertise in mold and mold damage

remediation. *Id.* at pp. 16, 101. Now Sumner's affidavit proposes to change that testimony. Sumner has made it excessively clear that he had nothing to do with evaluating the mold he observed while at the site of the loss. He specifically did not evaluate said mold as his job was narrowly tailored away from such work. However, in the conclusions portion of his Affidavit, (p. 10, ¶31(3), Sumner states that the Knights Inn will be habitable once the mold has been remediated. Sumner has no way of knowing this, and has testified that he specifically did not do any kind of investigation or testing to determine if this statement is or could be true. He does not know if the mold could be remediated because he did not investigate the mold at the site. Further, he has testified by deposition that the mold and moisture issues should be remediated "within the first two or three months." Doc.#92-3 p. 51. It has been over six (6) years. As he also testified in deposition, the longer you leave it (mold), "the worse it gets." *Id.* p. 50.

## V. Portions of Mr. Sumner's Affidavit are Inadmissible Hearsay

9. Under Fed. R. Civ. P. 56(C)(4), "An affidavit or declaration used to support or oppose a motion must…set out facts that would be admissible in evidence…" Only the information in statements made on personal knowledge that

would be admissible in evidence is admissible. Hearsay regarding what a nonparty witness may have told the affiant is inadmissible hearsay. See Sires v. Luke, 544 F.Supp. 1155 (S.D. Ga. 1982). Hearsay is defined as an out of court statement made by a declarant entered for the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is not admissible unless it falls within an exception. Fed. R. Evid. 802.

10. In his affidavit, Mr. Sumner quotes from the incident report prepared by the Bessemer Fire Department. (p. 6, ¶19). Mr. Sumner has no personal knowledge of this information. It is hearsay, just as an accident report is hearsay. It is not the type of admissible or inadmissible hearsay that an industrial hygienist would reasonably rely on to form an opinion. See *Sandifer v. Hoyt Archery, Inc.*, 907 F.3d 802, 808-809 (5th Cir. 2018).

11. Then, Sumner quotes from a report prepared by Young & Associates in his affidavit. He did not accompany Young & Associates personnel to the scene and was not part of their decision-making process in rendering their reports. (Affidavit, p. 6, ¶20). He states that the remaining rooms were not damaged by smoke and soot from the fire, because the report says so, "according to Young & Associates." (Affidavit, p. 6, ¶20). Once again, this is a statement made by the preparer of the report which he just accepted but did not verify, and it should therefore be stricken. This testimony contradicts Sumner's deposition testimony wherein he admits he saw evidence of heavy soot. Doc.#92-3 p. 80. Sumner's

7

affidavit, and his unqualified adoption of Young & Associates' work product, requires him to act as a hearsay conduit. He must be more than that. *United States v. Palacios*, 677 F.3d 234, 243 (4th Cir. 2012).

## VI. Sumner's Affidavit Is An Impermissible Attempt to Rectify His Deposition Shortcomings.

12. Mr. Sumner first visited the location of the loss on October 23, 2015, one year and seven months after the fire actually occurred. *Id.* p. 13. This is the only time he visited the location. *Id.* pp. 13, 14.

13. At the time of his visit, Sumner and Trauth had been provided a scope by Chubb's Young & Associates and they were tasked with determining if it was appropriate based on the fire damage they observed. They were provided the Young & Associates Xactimate estimate and the FBS (Haman) report in performing this analysis. They formed a hypothesis—but only within the limitations provided to them by Young & Associates. *Id.* at pp. 16-17.

14. Mr. Sumner has extensive training and specialization in mold remediation. See ¶3, *supra*. Mr. Sumner actually observed mold during his inspection. Doc.# 92-3 pp. 16,101. Despite this, he was not asked to perform any task regarding mold remediation or air quality analysis. *Id.* pp. 14, 24. He did not actually do a mold test. *Id.* p.103. He was specifically not hired to do a mold assessment or remediation analysis under the scope that was provided to him by

Young & Associates on behalf of Chubb. *Id.* p. 22. Mr. Sumner did not observe any evidence of remediation or cleaning. *Id.* p. 65. He agrees with the FBS conclusion that there was evidence of mold and water damage. *Id.* p. 80. He agrees there are **spaces between the walls where smoke could be.** A real question is whether it was pressurized into the walls. *Id. p.* 74, 75. He agrees he saw evidence of **heavy soot and damage from mold and water.** *Id.* p. 80. In his opinion he says, "if you see mold there is no need to test for it." *Id.* p. 16. The longer you leave it the worse it gets. Id. p. 50. Remediation should have started within the first 2-3 months. *Id.* p. 51. His affidavit conflicts with all of this testimony.

## VII.  Sumner's Lack of Credibility on the Soot Issue, and Changed Testimony

15.  Sumner has no credibility, by affidavit or otherwise, due to Chubb's manufacturing of a very limited scope of analysis, and unrealistically confining him. He is primarily a mold and remediation expert but yet was prohibited from investigating those issues. In testing for ash and soot, Sumner did not test any of the HVAC units or connections. *Id.* p. 62. Rather, he tested primarily within wall cavities and conduits. *Id.* In order to perform this type of testing, he and Mr. Trauth dug into the wall, partially destroying it, in order to sample on the opposite side of the drywall. *Id.* p. 70. Despite his willingness to destroy the actual walls, Mr. Sumner was reluctant to remove the metal covering over the expansion joints between the individual room units. *Id.* p. 71. It is a simple process. *Id.* at 74. See

9

photo of expansion joint covering. (Ex. 40, Motion to Exclude Sumner). Sumner did not know enough about the building and its structure to know that he could remove the metal covering without causing additional destruction. *Id.* p. 74. He ignored the expansion joints, one of the major issues in the claim.

16. Mr. Sumner did not even test the room where the fire began for ash and soot because that room would clearly have ash and soot since it was the source of a highly fueled fire. *Id.* pp. 63-64. Char and soot can migrate from the source of the fire. <u>Id.</u> However, Mr. Sumner's scope was limited to the building/area where the fire occurred. *Id.* p. 68.

17. Sumner's affidavit also contradicts his deposition in that he criticizes Haman's Tom Irmiter's use of labs, but yet he believes the lab he sent his samples to, hundreds of miles away, is reliable only because they maintain AIHA accreditation. (*Id.* p. 59). Sumner suggests in his affidavit that in his opinion the samples he took nineteen (19) months after the loss did not show enough soot to be a problem. However, he testified that there is no regulatory body or publication that specifically states how much soot is too much. Anyone could give these types of opinions, he says. (<u>Id</u>. at pp. 84-85). But yet he criticizes Irmiter in his affidavit.

18. Under Fed. R. Civ. P. 56(C)(4), "An affidavit or declaration used to

support or oppose a motion must…set out facts that would be admissible in evidence…" Fed. R. Evid. 401 states "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible." The District Court has broad discretion to determine what rules are relevant under Fed. R. Evid. 401 and the considerations enumerated in Fed. R. Evid. 403. U.S. v. Harris, 542 F.2d 1283 (7th Cir. 1976), cert. denied, 430 U.S. 934 (1977).

## VIII. **CONCLUSION**

19. Sumner's opinion cannot be seen as objective expert testimony because his entire involvement in this case has been improperly and artificially controlled by Young &Associates from the very beginning. He was instructed to ignore observations about which he is a subject matter expert. He was given a scope limited to someone else's scope and asked to agree with it, yes or no, without expanding his own scope or addressing other glaring issues with the state of the property. He was asked if someone else's opinion was good enough, not if it was independently good. Sumner's affidavit and deposition testimony confirms he did not visit the scene until nineteen (19) months after the fire. He was therefore part of Chubb's delay and deny scheme.  Sumner's affidavit conveniently avoids referencing the mold and moisture issues he admitted he observed.

11

20. Sumner's affidavit, in his conclusions section, states "the scope of the fire damage as alleged by FBS has been inaccurately expanded beyond its actual scope." (Affidavit p. 9, ¶1). Irmiter is not a fire damage evaluator. He did no damage estimate. His job was not to define the scope of damage. His job was to find a "legally defensible analysis" to protect Young & Associates' findings. (Ex. 39, pp. 106, 107). In other words, he was a hired gun.

21. Sumner's affidavit is an attempt to cover up the fact that he, with Chubb's advice, direction and assistance, orchestrated a dishonest conclusion. **The very item in dispute, significant enough for Chubb to have aborted an appraisal process meeting, the expansion joint issue, was totally and intentionally overlooked by Sumner.** He knocked holes in walls, but he was "reluctant" to remove simple metal coverings over expansion joints to sample inside those joints. (Ex. 39 p. 70, 71).

22. Sumner's testimony was flawed because of the legal assignment given to him by Young & Associates. He was told by Bushman to create a "legally defensible analysis." (Ex. 39, depo. pp. 101, 107). His affidavit attempts to change his flawed testimony. It should be stricken and he should be terminated as a witness.

Respectfully submitted,

/s/ Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)
Attorney(s) for the Plaintiff

| | |
|---|---|
| Gregory Brockwell, Esq. | CONCHIN, COLE and JORDAN |
| Jason R. Smith, Esq. | 2404 Commerce Ct SW |
| 2100 1st Ave. N., Ste. 300 | Huntsville, AL 35801 |
| Birmingham, AL 35203 | (256)705-7777 (Phone) |
| greg@brockwellsmith.com | (256)705-7778 (Fax) |
| jay@brockwellsmith.com | gary@alainjurylaw.com |

## CERTIFICATE OF SERVICE

I certify that I have on the 10th day of September, 2020 served a true and correct copy of the foregoing to counsel for all parties in this matter via electronic mail using the federal online filing system for this District.

Michelle A. Sherman, Esq.
Wayne D. Taylor, Esq.
MOZLEY, FINLAYSON
and LOGGINS, LLP
1050 Crown Pointe Pkwy., Ste. 1500
Atlanta, GA 30338
msherman@mfllaw.com
wtaylor@mflaw.com

Mark Hess, Esq.
HAND, ARENDALL
2001 Park Place, N. Ste. 1200
Birmingham, AL 35203
mhess@handarendall.com

David A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Ste. 300
Birmingham, Alabama 35216
dlee@pljpc.com

/s/ Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)