FILED
2020 Sep-10  PM 03:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

FILED
2020 Aug-20 PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| Plaintiff, | ) Civil Action File No. |
| v. | ) 2:18-cv-1534-KOB |
| CHUBB CUSTOM INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

### HAMAN'S MOTION TO EXCLUDE THE TESTIMONY OF CHUBB'S EXPERT THOMAS SUMNER OR TO LIMIT SAME

Comes now Haman, by and through its counsel of record, and pursuant to Rules 103(d), 401, 402, 403, 702, and 703 of the Federal Rules of Evidence, and files this motion to exclude the testimony of Defendant Chubb's industrial hygienist, Thomas Sumner. First, Mr. Sumner was directed by Young and Associates and Chubb Custom Insurance Company. He was under their supervision and control and unable to form an independent opinion regarding the subject matter of his testimony because his opinions were based on an incomplete scope created by persons other than himself. Second, Mr. Sumner was asked by Chubb not to do a mold analysis despite the fact that his specialty is mold remediation. Third, Mr. Sumner's testing was unreliable, producing unreliable results. His opinions are therefore not helpful to the trier of fact and, at best, would

1

be confusing or a complete waste of this Court's time. For the reasons contained herein, Mr. Sumner's testimony should be stricken or severely limited.

## TABLE OF CONTENTS

I.   INTRODUCTION AND STATEMENT OF FACTS...............2

II.  LEGAL ARGUMENT..................................................................6

III. CONCLUSION............................................................................8

### I.   INTRODUCTION AND STATEMENT OF FACTS

1) The premises of Knight's Inn, owned by Plaintiff Haman, Inc. ("Haman") were damaged by a fire on March 22, 2014. Plaintiff's insurer, Chubb Custom Insurance Company ("Chubb") paid $337,401.93 in damages relating to the fire claim, agreeing that fire is a covered loss. Chubb also paid $27,602.01 for contents losses. Payment for the structure damages was not made until November 11, 2014. Payment for the contents losses was not made until September 22, 2014.[1] See Doc.# 88, 89, 90, Haman's Motion for Summary Judgment at p. 2, ¶ 2.

2) Chubb retained York Risk Services Group ("York") in the handling of the Haman fire (and eventually wind) loss claims. York then retained U.S. Health and Environmental Liability Management, LLC ("U.S. Helm"). Mr. Thomas Sumner acted on behalf of U.S. Helm as an Industrial Hygienist in the evaluation

---

[1] Exhibits referred to in this Daubert motion are labeled herein as Exhibit 38, 39 and 40.

of the Haman loss alongside Stephen Trauth. Specifically, Mr. Sumner was asked only to "evaluate whether the scope of work provided by Young and Associates was adequate to remediate the impact from the fire." (Ex. 38, herein).

3) Mr. Sumner's formal education consists of the U.K. Equivalent of a B.S. in Chemistry from Liverpool J.M.U. in 1981. He has no formal graduate coursework. His CV specifically lists his in-depth experience with mold remediation in hotels. Mr. Sumner has significant background and experience in mold investigation. (Ex. 39, Sumner depo. pp. 16, 29, 33-35, 37, and 42). Mr. Sumner has never been published. Id. at p. 59.

4) Billing for Mr. Sumner's services totaled $22,613.91 to U.S. Helm. (Ex. 39, Sumner depo. at p. 9). His billing rate now and presumably at that time ranged from $186-$196 per hour. Id. at p. 21. Mr. Sumner was hired by Mr. Bushman in order to create a **"legally defensible analysis"**. Id. at pp. 106-107.

5) Mr. Sumner first visited the location of the loss on October 23, 2015, one year and seven months after the fire actually occurred. (Ex. 39 at p. 13). This is the only time he visited the location. Id. He was accompanied at that time only by Stephen Trauth, a co-employee. Id. This is the only time he has ever been to Knights Inn. He never went back for a retest. He has not seen it since, nor is he aware of the state it is in currently. Id. at p. 14. He would have to revisit the site

and retest in order to give a new opinion in this case regarding the damage to Knight's Inn. Id. at p. 86. He is only qualified to give an opinion regarding the condition of the premises on the day of his visit four (4) years prior to his deposition—he has not been back to the site since. Id. at pp. 88, 93.

6) At the time of his visit, Mr. Sumner and Mr. Trauth had been provided a scope by Chubb's Young and Associates and they were tasked with determining if it was appropriate based on the fire damage they observed. They were provided the Young and Associates Xactimate estimate and the FBS (Haman) report in performing this analysis. They formed a hypothesis—but only within the limitations provided to them by Young and Associates. (Ex. 39 at pp. 16-17).

7) Mr. Sumner has extensive training and specialization in mold remediation. See ¶ 3, supra. Mr. Sumner actually observed mold during his inspection. (Ex. 39 at pp. 16,101). Despite this, he was not asked to perform any task regarding mold remediation or air quality analysis. Id. at pp. 14, 24. He did not actually do a mold test. Id. at 103. He was specifically not hired to do a mold assessment or remediation analysis under the scope that was provided to him by Young and Associates on behalf of Chubb. Id. at p. 22. Mr. Sumner did not observe any evidence of remediation or cleaning. Id. at p. 65. He agrees with the FBS conclusion that there was evidence of mold and water damage. Id. at p. 80. He agrees there are spaces between the walls where smoke could be. A real

4

question is whether it was pressurized into the walls. Id. 74, 75. He agrees he saw evidence of heavy soot and damage from mold and water. Id. p. 80. In his opinion he says, "if you see mold there is no need to test for it." (Ex. 39, p. 16). The longer you leave it the worse it gets. Id. p. 50. Remediation should have started within the first 2-3 months. Id. p. 51.

8) In testing for ash and soot, Mr. Sumner did not test any of the HVAC units or connections. (Ex. 39 at p. 62). Rather, he tested primarily within wall cavities and conduits. Id. In order to perform this type of testing, he and Mr. Trauth dug into the wall, partially destroying it, in order to sample on the opposite side of the drywall. Id. at pg. 70. Despite his willingness to destroy the actual walls, Mr. Sumner was reluctant to remove the metal covering over the expansion joints between the individual room units. Id. at p. 71. It is a simple process. See photo of expansion joint covering. (Ex. 40, attached hereto). Mr. Sumner did not know enough about the building and its structure to know that he even could remove the metal covering without causing additional destruction. Id. at 74. He ignored the expansion joints, one of the major issues in the claim.

9) Mr. Sumner did not even test the room where the fire began for ash and soot because that room would clearly have ash and soot since it was the source of a highly fueled fire. (Ex. 39. at pp. 63-64). Char and soot can migrate from the

source of the fire. Id. However, Mr. Sumner's scope was limited to the building/area where the fire occurred. Id. p. 68.

10) There is no regulatory body or publication that specifically states how much soot is too much. Anyone could give these types of opinions according to Mr. Sumner. He believes the only additional information an expert could offer would be a different approach to the information. Id. at pp. 84-85.

11) Although Sumner has a safety background he was not asked to evaluate safety concerns. Id. p. 23. He also did no investigation of any structural concerns. Id. p. 24.

12) Mr. Sumner sent the samples he and Mr. Trauth recovered from the Knights Inn location to a lab known as EMSL Analytical, Inc. in Cinnaminson, New Jersey. (Ex. 38). He believes this lab is reliable only because they maintain AIHA accreditation. Mr. Sumner gave no other reason why he chose this particular lab hundreds of miles away from the loss site. (Ex. 39, p. 59).

II.     LEGAL ARGUMENT—Standard of Review

13) Rule 702 governs the admissibility of expert testimony and evidence. Kilpatrick v. Breg, Inc., 613 F.3d 1329, 1335 (11th Cir. 2010). Rule 702 states as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods to the facts of the case.

Fed. R. Evid. 702.

14) In Daubert v. Merrell Dow Pharma. Inc., 509 U.S. 579 (1993), the United States Supreme Court made it clear that Rule 702 is meant to ensure that evidence presented by and through an expert is both reliable and relevant. McCreles v. Global Upholstery Co., 500 F.Supp.2d 1350, 1353 (N.D. Ala. 2007). The Daubert principles apply to all expert testimony, whether based in scientific, technical, or other specialized knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148-149 (1999). Further, "where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question,…the trial judge must determine whether the testimony had 'a reliable basis in the knowledge and experience of the relevant discipline." Id. at 149 (quoting Daubert, 509 U.S. at 592) (alteration adopted). Daubert imposes on the trial court the duty to act as a "gate-keeper" under Rule 702 by ensuring that expert testimony is both reliable and relevant before being admitted. Haney v. Eaton Elec., Inc., 528 F.Supp.2d 1262, 1266 (N.D. Ala. 2007).

15) In the 11th Circuit, determining the admissibility of expert testimony requires a "rigorous three-part inquiry" in which the Court determines whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1992).

16) The burden of establishing that expert testimony meets these three elements rests with the proponent of the expert testimony. This Court possesses broad discretion when assessing the reliability of expert testimony and when determining how to assess the reliability of a proffered opinion. United States v. Frazier, 387 F.3d 1244, 1264 (11th Cir. 2004).

### III. CONCLUSION

17) Mr. Sumner was directed by Young and Associates and Chubb Custom Insurance Company. He was under their supervision and control and unable to form an independent opinion regarding the subject of his testimony because his opinions were based on an incomplete and artificial scope created by persons other than himself.

8

18) Mr. Sumner's opinion cannot be seen as objective expert testimony because his entire involvement in this case has been improperly and artificially controlled by Young and Associates from the very beginning. He was instructed to ignore observations about which he is a subject matter expert. He was given a scope limited to someone else's scope and asked to agree with it, a yes or no, without expanding his own scope or addressing other glaring issues with the state of the property. He was asked if someone else's opinion was good enough, not if it was independently good.

19) Mr. Sumner was asked by Chubb not to do a mold analysis despite the fact that his specialty is mold remediation. Under Rule 703, "[A]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." In this case. Mr. Sumner actually observed mold. However, he was specifically asked to ignore said mold as it was not part of his scope provided to him by Defendant. His testimony is unreliable and manipulated at best. He has already stated both that he observed mold and that testing would confirm that if you see mold, it is present. Ex. 39 citation supra. He was specifically asked to ignore relevant evidence by the defendant and its agent and omit it from his expert opinion. He refused to look at a carcinogenic issue and gave a flakey, unrealistic reason for not doing so.

20) No remediation appeared to be going on at the time of Mr. Sumner's visit—at least none that he was aware of. (Ex. 39 at pp. 50-51, 53). Remediation should be done as soon as possible because the longer the property is allowed to sit the worse the damages will be and the more expensive and extensive repairs will end up being. However, Mr. Sumner was never asked to perform any kind of remediation when it came to the mold which was clearly visible during his tour of the premises, despite his experience and expertise in mold and mold remediation in hotels. More importantly, he does not know what the condition of the premises was after the fire or at any time in close proximity to the fire. He did not visit the premises until 19 months after the fire, and was therefore part of Chubb's delay and deny scheme.

21) Mr. Sumner's testing was unreliable, producing unreliable results. In order to test his selective samples Mr. Sumner sent to them to a lab hundreds of miles away. He and his cohorts cut into the wall and removed it to test the drywall inside. See ¶8, supra. He was willing to do this, and yet he was unwilling to remove a single metal sheet to test the open areas between the room units. (Ex. 39, p. 71; Ex. 40, attached hereto).

22) Even if Mr. Sumner's opinions were reliable and acceptable at the time they were formed, they are no longer relevant evidence because the premises has been lying vacant for four (4) years since the last time Mr. Sumner observed it,

and his opinions are only good for the day such testing was actually performed. Therefore, his opinions are no longer relevant and cannot meet the minimum Daubert standard. See McCreles v. Global Upholstery Co., supra. At this point, his opinions are not supported by current, demonstrable data. They could not aid the finder of fact and would have no rational scientific basis at this time. These opinions are based on outdated and unreliable facts, and therefore cannot meet basic reliability standards or the requirements of Rule 702, and therefore the Court may limit or exclude his testimony in accordance therewith. See Michael's v. Avitech, Inc., 202 F.3d 746, 753 (5th Cir. 2000), cert denied 531 U.S. 926 (2000). The more an expert relies on inadmissible, outdated, untrustworthy facts, the less likely that reliance is to be reasonable under Fed. R. Evid. 703.

23) Mr. Sumner's entire testimony should be disallowed and he should be stricken as a witness. Given that Mr. Sumner has not been to the location site in four years, he is not capable of testifying regarding the damages at the present time. He does not know what the damages are currently and he cannot tell the jury what they were at the time of the loss either. His testing was so artificially limited it is now irrelevant.

WHEREFORE, PREMISES CONSIDERED, Haman moves to strike Tom Sumner's testimony in its entirety. Haman requests such other and further relief as the court sees proper and just.

Respectfully submitted,

/s/ Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)
Attorney(s) for the Plaintiff

Gregory Brockwell, Esq.
Jason R. Smith, Esq.
2100 1st Ave. N., Ste. 300
Birmingham, AL 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

CONCHIN, COLE and JORDAN
2404 Commerce Ct SW
Huntsville, AL 35801
(256)705-7777 (Phone)
(256)705-7778 (Fax)
gary@alainjurylaw.com

## CERTIFICATE OF SERVICE

I certify that I have on the 20th day of August, 2020 served a true and correct copy of the foregoing to counsel for all parties in this matter via electronic mail using the federal online filing system for this District.

Michelle A. Sherman, Esq.
Wayne D. Taylor, Esq.
MOZLEY, FINLAYSON
and LOGGINS, LLP
1050 Crown Pointe Pkwy., Ste. 1500
Atlanta, GA 30338
msherman@mfllaw.com
wtaylor@mflaw.com

Mark Hess, Esq.
HAND, ARENDALL
2001 Park Place, N. Ste. 1200
Birmingham, AL 35203
mhess@handarendall.com

David A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Ste. 300
Birmingham, Alabama 35216
dlee@pljpc.com

/s/ Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)

12