IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC., d/b/a KNIGHTS INN, ) | |
|    Plaintiff, ) | Civil Action No. |
| v. ) | 2:18-CV-01534-KOB |
| CHUBB CUSTOM INSURANCE CO., ) | |
|    Defendant. ) | |

## PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT KURT MULDER'S AFFIDAVIT TESTIMONY

Comes now the Plaintiff, by and through its counsel of record, and moves that the Affidavit of Defendant Chubb Custom Insurance Company's ("Chubb's") expert witness, Kurt Mulder, be stricken.[1] That affidavit is filed by Chubb at Doc.#105-74. In support thereof, Plaintiff submits as follows:

   I.   Mulder's Affidavit is an Inadmissible Attempt to Rectify the Shortcomings of His Deposition

1.   An affidavit constitutes a sham under Fed. R. Civ. P. 56(c)(4) when there is a "flat contradiction between the prior, sworn testimony" and that of the affidavit. Duke v. Nationstar Mortgage, LLC., 893 F.Supp 2d 1238, 1245 (N.D. Ala. 2012). When statements in a declaration constitute a sham, they may be

---

[1] Haman has filed a Daubert motion to exclude Mulder's testimony, (Doc. #93) based upon his deposition testimony. That motion has been attached hereto as Exhibit A.

1

stricken as a matter of law. Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986). A sham affidavit is one which constitutes a "flat contradiction to the earlier deposition." Van T. Junkins and Assoc. v. U.S. Indus., 736 F.2d 949, 955 (11th Cir. 1984). Mr. Mulder's affidavit is, in many ways, a flat contradiction to his earlier deposition, and should be stricken.

    2.    In his affidavit at paragraph 22, Mr. Mulder states that the metal roofs on the Knights Inn building would have withstood up to 90 mph winds. He argues that defects in the roof caused the roof to have a lowered capacity to resist wind uplift and that, therefore, the real cause of this loss is the maintenance or installation of the roof. Affidavit at ¶29. However, in his deposition, Mr. Mulder admitted that the Bessemer tornado dated April 20, 2014 was graded at an EF2, reaching up to 120 mph winds. (Haman MSJ Ex. 31 at p. 185).[2] Based on this wind speed, it is probable that the Knights Inn did sustain damage due to the wind loss event, and this windspeed would have exceeded what the roof would be expected to withstand. This is a direct contradiction on an issue which goes directly to the heart of this litigation as far as the wind damage claim is concerned. This is an inappropriate attempt to change deposition testimony through an Affidavit.

---

[2] Mulder's deposition was previously filed as Exhibit 31 to Haman's Motion for Summary Judgment.

3. In his Affidavit at ¶16, Mr. Mulder states that the flashings were separated from the roof due to age-related deterioration and uses this as support for his conclusion that this damage predated the wind-loss event. However, in his deposition, Mr. Mulder states that **he does not know when the base flashing separation or damage occurred.** Id. p. 114. In his affidavit at ¶15 and ¶29, Mr. Mulder states that defects in the coping contributed to the wind uplift resistance being compromised and damage occurring to the Knight's Inn location. However, in his deposition, he states that **he does not know when the damage to the copings on the roof occurred.** Id. p. 115. For that matter, in ¶29 of his Affidavit, he specifically states that fasteners coming undone were a contributing cause, but in his deposition, he states that **he does not know when these fasteners came undone.** Id. p. 116. Then, in his deposition, Mr. Mulder admitted that he did not see any displaced coping to the roof in the fire pictures which were taken a month before the wind storm occurred, but in his Affidavit, he insists that the flashings were damaged by age and predated the storm according to some images from Google Earth historical views. Affidavit at ¶16, 31, and 43. Along this same thread, Mr. Mulder states in his Affidavit at ¶35 that he observed air bubbles in patches to the EPDM roof and that those air bubbles caused rainwater to enter the interior of the building. In his deposition, Mr. Mulder simply stated that the

bubbles denoted moisture underneath the patch and that **he does not know when the bubbles appeared.** Id. pp. 117-118.

4. In ¶41-42 of his Affidavit, Mr. Mulder states that he did not see debris wind damage which would have been indicative of wind damage. He names very specific wind damage he did not see (i.e. trees and signs) and then blames a piece of coping that had become dislodged from the roof on a tornado that he says occurred before the 2014 tornado that is the subject of this claim. However, in his deposition, Mr. Mulder stated "the coping did damage portions of the roofing." Id. p. 118. Clearly, Mr. Mulder, in the time between when he gave his deposition and the time he submitted his Affidavit, had to come up with an alternate reason as to why this coping was loose so that he could deny there being any evidence of wind damage.

5. In ¶17 of his affidavit, Mr. Mulder blames the rainwater intrusion on vandalism done to the HVAC unit on the roof. However, in his deposition, he states that **he does not know and did not ask if this vandalism occurred before the wind loss event or during the 17-month period that passed between when the event occurred and he did his inspection.** Id. p. 121. Once again, Mr. Mulder is making assertions for which he had no basis at the time of his deposition and is now creating those bases out of thin air. There is no evidence that he ever went back to the scene to conduct a further analysis.

4

6. In ¶10 and 12-15 of his Affidavit, Mr. Mulder states that he photographed certain portions of the roofing loss at the Knight's Inn location. At paragraph 44, he calls them "these photographs" rather than claiming they are his photographs. This language is contradictory to his deposition where he admits that some of the photos may have actually come from someone named "Keith". Id. p. 103. Next in his deposition, he admitted that some of his photos actually came from Google's aerial photography programs. Id. p. 105. And then, he admitted that at least two of the photos were actually taken by another expert in this case, Ned Fortenberry. Id. p. 106. It is clear that Mr. Mulder threw some information together in an Affidavit which creates nothing more than a series of unsupported contradictions.

7. In ¶13 of his affidavit, Mr. Mulder states that he "observed and photographed multiple locations on the flat roofs where core samples had been taken from the roofing membrane," and then goes on to blame those sample areas for rainwater leaking into the building. However, in his deposition, Mr. Mulder states that he was the one who took those samples. (Q: Did you do any core samples? A: Yes.) Id. p. 112; also see Id. p. 128. He even went so far as to state that the photographs in his report of core samples would be his core samples only and not those of someone else. Id. p. 136. |Also in ¶13 of his Affidavit, Mr. Mulder states "the majority of the sealant on the roof cores was deteriorated and cracking

5

along the edges of the patch." However, in his deposition, Mr. Mulder says that **he does not know how old the sealant is and he does not know how old the patches to the roof are** that he claims had reached the end of their service life/deteriorated over time. Id. pp. 162, 165.

    8.    In summary, Mr. Mulder observed extensive damage to the site which he notated in his report, Affidavit, and deposition. However, he cannot say when the damage occurred, and, therefore, does not know if the damage to the roof at the Knights Inn occurred before or after the windstorm which is the subject of this suit. He does not even know who took the pictures he replied upon in forming his opinion or who took the material samples to which he references. Because Mr. Mulder's Affidavit claims that he now suddenly knows that the damage occurred before the storm, it is directly contradictory, and therefore must be stricken as a sham affidavit.

## II. Portions of Mr. Mulder's Affidavit are Not Based on Personal Knowledge

    9.    Under Fed. R. Civ. P. 56(c)(4), "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge…" "To be sufficient, a declaration based on anything less than personal knowledge is insufficient." Duke v. Nationstar Mortgage, LLC., 893 F.Supp2d 1238, 1243 (N.D. Ala. 2012). Information based simply on information and belief rather than actual

personal knowledge is insufficient. See Givham v. Electronic Engineers, Inc., 4 F.Supp. 2d 1331, 1334 (M.D. Ala. 1998); Lugo v. City of New York, 518 Fed.Appx. 28 (2d Cir. 2013).

    10.    In his Affidavit at page 8, ¶23 and 24, Mr. Mulder makes statements regarding the age of the roof, but he has absolutely no personal knowledge to support these statements. In ¶23, he states that the EPDM roofing predated the metal roofing and that the EPDM roofing was installed in the 1990s. Mr. Mulder has absolutely no personal knowledge regarding when the EPDM roof was installed and should not be allowed to make these kinds of statements. Furthermore, in ¶24, he makes statements regarding how long various EPDM manufacturers warrant their products. Then, in ¶39-40, he makes claims about a tornado which damaged the Knight's Inn on April 28, 2014 based on information he obtained from a website. He had absolutely no personal knowledge regarding any of this information. These statements are both outside Mr. Mulder's realm of personal knowledge and are inadmissible. His testimony will not have any tendency to make a fact more or less probable. See Fed. R. Civ. P. 401, 403. An expert cannot simply repeat or adopt findings of another expert without attempting to assess the validity of the opinions relied upon. In re Polypropylene Carpet, 93 F.Supp.2d, 1348, 1357 (N.D. GA 2000); Hernandez v. Crown Equip. Corp., 92

F.Supp.3d, 1325, 1351 (M.D. GA 2105); Sofillas v. Carnival Corp. No. 14023920-Civ-Scola, 2016 WL 5407889, at *4 (S.D. Fla. July 8, 2016).

    III. Portions of Mr. Mulder's Affidavit are Based on Inadmissible Hearsay

    11.    Under Fed. R. Civ. P. 56(C)(4), "An affidavit or declaration used to support or oppose a motion must…set out facts that would be admissible in evidence…" Hearsay is defined as an out of court statement made by a declarant entered for the truth of the matter asserted. Fed. R. Evid. 801. Hearsay is not admissible unless it falls within an exception. Fed. R. Evid. 802. Hearsay regarding what a nonparty witness may have told the affiant is inadmissible. See Sires v. Luke, 544 F.Supp. 1155 (S.D. Ga. 1982).

    12.    In his affidavit at ¶23, Mr. Mulder claims that he spoke with someone (the person is unnamed in both his affidavit and his deposition where he discussed the same) Id. pp. 82, 139, 155, 176, and 178 whoever, that informed him that the EPDM roof was installed "in the 1990s." Mr. Mulder did no independent investigation to determine if this information is true. Id. pp. 82-84. He did not even attempt to verify the information by consulting others who would have been privy to this knowledge like the owner, Ms. Visram, the maintenance manager, Bukhari, or the maintenance worker doing repairs at that time. Id. pp. 8. 81-82. This information is clearly based on hearsay alone, and therefore must be stricken everywhere it appears, which includes ¶25 of Mr. Mulder's affidavit, where he

claimed the EPDM roof to be 20-25 years old. It is impossible for Plaintiff to question the person from whom Mr. Mulder obtained this information and there is no way for Mulder, even, to determine the truth and veracity of these statements. These statements also do not fall within any of the hearsay exceptions under the Federal Rules of Evidence.

    IV.    <u>Mr. Mulder Attempts to Make Legal Conclusions Regarding Admissibility of his Testimony</u>

13.    Mr. Mulder states twice in his affidavit that he is "qualified" to testify as to certain things and to make certain determinations. Affidavit p. 3, ¶6. Determination as to whether a witness is qualified in this regard is left to the Court, not the witness in his affidavit. See generally Daubert v. Merrell Dow Pharma. Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 148-149 (1999); Haney v. Eaton Elec., Inc., 528 F.Supp.2d 1262, 1266 (N.D. Ala. 2007) stating that Daubert requires the Court to act as a gate-keeper under the Rule and ensure that the testimony is reliable and relevant before it can be admitted. For that matter, Mr. Mulder is rather unqualified to testify in this matter as an expert witness and a Motion to Exclude him is currently before this Court. See Doc.#93. Mr. Mulder has no continuing education in wind and has never testified as a wind damage expert. Doc. #90-78 depo. trans. pp. 43, 44; Haman MSJ Ex. 31 pp. 43, 44). Although Mr. Mulder is now a member of the National Roofing Contractors

Association, he did not have this membership at the time of the Knights Inn project. Id. p. 50.

    V.    <u>Portions of Mr. Mulder's Affidavit are Irrelevant</u>

    14.    Under Fed. R. Civ. P. 56(C)(4), "An affidavit or declaration used to support or oppose a motion must…set out facts that would be admissible in evidence…" Fed. R. Evid. 401 states "Evidence is relevant if: (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible." The District Court has broad discretion to determine what evidence is relevant under Fed. R. Evid. 401 and the considerations enumerated in Fed. R. Evid. 403. <u>U.S. v. Harris</u>, 542 F.2d 1283 (7th Cir. 1976), cert. denied, 430 U.S. 934 (1977). Mulder provides no relevant testimony top aid in the resolution of the damages issues in this case. If he does not know when damages occurred, his testimony is not relevant.

    15.    In ¶24 of his Affidavit, Mr. Mulder states that certain manufacturers of EPDM roofs attach warranties to the roofs for the extremely large gap of five to twenty five years. In doing so, he fails to even attempt to claim or show whether these manufacturers (Carlise SynTec and Firestone Building Products) are the manufacturers of the roof in question on the Knight's Inn. Rather, he throws two

10

examples with vastly different warranty lengths at the wall. Mr. Mulder specifically stated in his deposition that he did not check to see if there were any warranties on the roof and he is not aware who put the roof on or if they would have warranted the roof either. Id. p. 138. This is inappropriate, irrelevant, confusing. Nothing about such testimony is admissible.

16. Even if the evidence contained in ¶24 of Mr. Mulder's affidavit is somehow relevant, it should be excluded under Fed. R. Evid. 403 which states "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: ...confusing the issues, misleading the jury..." In this case, Mr. Mulder's discussion of some other roofing manufacturer's warranty is irrelevant and inadmissible.

## CONCLUSION

17. In addition to the reasons stated above, Mr. Mulder's opinion cannot be seen as objective expert testimony because his entire involvement in this case has been improperly and artificially controlled by Young & Associates from the very beginning. Mr. Mulder's scope of work was changed time and time again by Stuart Mintz, who told him not to do the things he asked him to do in an October email because doing so would cost an additional $5,000 to complete. Id. pp. 129-130. He prepared a measure of damages, but did not do an estimate because he was

11

instructed not to by Mintz. Id. p. 195. He was, therefore, part of Chubb's scheme of feigning ignorance in order to continue to delay and deny the insured's legitimate claims.

18. Mulder's affidavit is clearly an attempt to cover up the fact that he, at the direction and assistance of Chubb and Young & Associates, orchestrated a dishonest conclusion. His testimony is frequently based on hearsay or information which he has no personal knowledge of. It contradicts his deposition testimony. For the reasons set out herein, his Affidavit should be stricken. It is irrelevant to the damages in the case. The Affidavit is an attempt to rectify his absurdly incompetent testimony.

Respectfully submitted,

/s/ Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)
Attorney(s) for the Plaintiff

Gregory Brockwell, Esq.
Jason R. Smith, Esq.
2100 1st Ave. N., Ste. 300
Birmingham, AL 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

CONCHIN, COLE and JORDAN
2404 Commerce Ct SW
Huntsville, AL 35801
(256)705-7777 (Phone)
(256)705-7778 (Fax)
gary@alainjurylaw.com

## CERTIFICATE OF SERVICE

I certify that I have on the 10th day of September, 2020 served a true and correct copy of the foregoing to counsel for all parties in this matter via electronic mail using the federal online filing system for this District.

Michelle A. Sherman, Esq.
Wayne D. Taylor, Esq.
MOZLEY, FINLAYSON
and LOGGINS, LLP
1050 Crown Pointe Pkwy., Ste. 1500
Atlanta, GA 30338
msherman@mfllaw.com
wtaylor@mflaw.com

Mark Hess, Esq.
HAND, ARENDALL
2001 Park Place, N. Ste. 1200
Birmingham, AL 35203
mhess@handarendall.com

David A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Ste. 300
Birmingham, Alabama 35216
dlee@pljpc.com

*/s/ Gary V. Conchin*
Gary V. Conchin (ASB-1263-C56G)