IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC., d/b/a KNIGHTS INN, ) | |
|     Plaintiff, ) | Civil Action No. |
| v. ) | 2:18-CV-01534-KOB |
| CHUBB CUSTOM INSURANCE CO., ) | |
|     Defendant. ) | |

### HAMAN'S REPLY BRIEF TO CHUBB'S RESPONSE IN OPPOSITION TO HAMAN'S MOTION TO EXCLUDE TESTIMONY OF EXPERT KURT MULDER

Comes now Plaintiff Haman, Inc. d/b/a Knight's Inn ("Haman") and files its reply to Chubb's Response in Opposition to Haman's Motion to exclude the testimony of Chubb engineer Kurt D. Mulder, and respectfully shows the Court as follows:

I. **INTRODUCTION**

1. Haman filed a Motion to Exclude the testimony of Chubb expert Kurt D. Mulder based upon his deposition testimony and the documentary evidence. (Doc.#93).

2. Chubb filed its Response to Haman's Motion to Exclude Mulder's Testimony. (Doc.#119). Chubb's Response is in unnumbered paragraphs that Haman will respond to generally, and then more specifically.

1

3. Haman filed a Motion to Strike Mulder's Affidavit because of the inconsistencies and contradictions to his earlier deposition testimony. (Doc.#114).

4. *Daubert* "holds that before expert opinion evidence should be allowed, the opinion should be based on 'good grounds,' that is, 'supported by appropriate validation - i.e., 'good grounds,' based on what is known.'" *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 590 (1993).

5. "The Supreme Court explained that it is the district court's function to serve as 'gatekeeper' and to ensure that an expert's testimony rests on a reliable foundation and is relevant." *Garrison v. Novartis Pharmaceuticals Corp.*, 30 F.Supp.3d 1325, 1331 (M.D. Ala. 2014) (citing Daubert, 509 U.S. at 597). "The trial court's gatekeeping function requires more than simply taking the expert's word for it." Fed. R. Evid. 702, advisory committee's notes (2000 amendments). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

6. Here, as explained in Haman's motion and essentially confirmed in Chubb's opposition, Mulder has essentially no basis for his opinions. It is easier to say what he does not know than what he does know. This is because Chubb purposefully limited the scope of his work. Chubb cannot benefit from its own efforts to limit access to the truth, and Mulder should be excluded.

## II. FACTS

7. Chubb agrees that it designated Mulder as a "causation expert," in connection with Haman's wind damage. However, Mulder testified by deposition, and stated that he did not know when the damages in question occurred.

8. Mulder, who first visited the premises seventeen (17) months after the loss, was directed by Stuart Mintz of York Services, who gave him the scope of what he was supposed to look for as far as damages. He met Mintz on site but Mintz did not give him any documents. Mintz only told Mulder what he wanted him to do. (Doc. #90-78 depo. trans. pp. 77-78, 86).

9. The photos show obvious wind damage to the cap coping, potential damage to the rest of the metal roof, and interior damages. (Id. p. 108). Mulder is aware a tornado touched down in that area. He measured the wind speed at Knight's Inn at 68 miles per hour.

10. In evaluating the roof, Mulder saw separated seams, openings in the roof, and determined the seams were possible sources for interior water intrusion. **But, he does not know the timeframe the seams separated.** (Id. pp. 113, 114). He saw quite a bit of damage to copings, but **does not know when they occurred**. He saw patching and caulking around some seams, **but does not know when they occurred, before or after the storm.** He saw fasteners undone and bent metal

and patching, **but does not know when those damages occurred.** (Id. pp. 117, 118).

11. There were copings that should have been fastened that were not, and some bent, separated seams and a lot of punctures, indicating flying debris. (Id. pp. 148, 149). Mulder saw evidence of sealant or glue or caulk being used to repair, **but does not know if repairs were made after the storm.** (Id. p. 151). He saw pock marks and holes; and saw that where the coping had come loose, it had damaged portions of the roof, **but did not know when that damage occurred.** (Id. p. 148, 149). He saw numerous places where the roofing membrane was punctured, **but doesn't know when that occurred, either.** (Id. p. 122). He found seams had been partially unsealed, leading to water intrusion and wet ceiling tiles from multiple aspects, but **does not know when this occurred.** (Id. p. 126). He observed wet ceiling tiles, but says lining them up with specific roof seams was impossible. (Id. p. 127). He observed saturated roofs. He took core samples. You could feel water in the membrane. (Id. p. 128). He does **not know when the ceiling tiles became stained or missing.** (Id. p. 162).

12. As to the multiple membrane patches, **he does not know, or didn't even ask, when they were made.** (Id. p. 165). The majority of the core samples were saturated. (Id. pp. 168, 171). Importantly, Mulder had the ability to do a repair estimate. He gave a capped quote for work, since he had a background in the

construction industry. (Id. p. 180). Chubb rejected his quote and would not pay him to do an estimate.

13. The damages that Mulder saw were similar on all three (3) buildings. (Id. p. 119). Even though he did not know when the damage or repairs were done in the seventeen months (17) months since the storm, **he did not ask anyone at the facility about that**. He did not ask for repair bills. (Id. p. 121).

14. Mulder testified in his deposition that he estimated wind speed at the premises of 68 miles per hour in one place but then he also verified that this Bessemer tornado of April 20, 2014 was graded at an EF 2, reaching up to 120 miles per hour. (Id. p. 185). He never really explained how he arrived at this since he appears to have no meteorological training and has never testified as a wind damage expert. (Id. pp. 43, 44). Mulder may have relied upon Google area photo programs taken by another expert in the case, Ned Fortenberry. (Id. pp. 105, 106). Mulder also made observations about the age of the roof, but had no basis for these observations. He subsequently tried to come up with an Affidavit to grease his testimony. That Affidavit should be stricken (Haman Motion to Strike, Doc. #114).

15. Overall, the roof looked in bad shape. (Id. p. 124). If the roofs belonged to him, he would want all three (3) roofs replaced. (Id. p. 137). But, he was not allowed to do an estimate.

16. His original assignment was to compare and contrast Haman's FBS roofing report, but he didn't do that. (Id. p. 129). Stuart Mintz changed his scope and told him not to do the things he asked him to do in an October email, due to the $5,000 it would cost to complete. (Id. p. 130). Mulder verified that, under the 2009 International Building Code, if you have water underneath your roofing, then you cannot re-roof it. **You have to remove all saturated layers.** (Id. p. 183). This, therefore, is the measure of damages in the instant case. The replacement cost for the three (3) roofs are therefore the relevant damages at issue.

17. However, Mulder did not do an estimate to remove all of the roofing. Only Haman's THG and Haman's Irmiter did. Mulder stopped short of issuing the estimate, as he was instructed by Mintz. (Id. p. 194). He thinks Lehman was also instructed not to issue an estimate, but doesn't know why. (Id. p. 195).

18. In summary, Mulder was instructed to document pictures of the wind damages, but was told not to do an estimate. He documented the wind damage and verified all sorts of damage. However, he **could neither tell when the damage occurred,** nor when repairs to the premises occurred. His testimony concerning causation and damages is, therefore, useless, and he simply has no testimony about cost estimates.

19. Mintz changed Mulder's scope during the project, apparently in reaction to Mulder's proposed flat fee. Mulder was asked to evaluate what it would cost for

him to do a damage estimate, and he provided that to Mintz, and then Mintz said no to the $5,000 capped charge. (Id. p. 99). So, Mulder never finished his evaluation on Buildings 1, 2 or 3. (Id. p. 99). He was never asked to determine what was a covered loss or what was not a covered loss. (Id. p. 79). The only thing he reviewed was another EDT engineer Ned Fortenberry's, report on the fire loss. (Id. p, 80).

20. Mulder was not aware that Chubb had done an insurance evaluation inspection of the Knight's Inn property the month before the wind event, which proved the roof was in satisfactory shape. Doc.#90-90. He would have been interested in seeing that. (Id. p. 81). There was also a valuation report done after both claims. (See Doc.#90-91).

21. He did not talk to the maintenance manager, Bukhari, or to the owner, Ms. Visram. (Id. p. 82). He did not even talk to the resident manager, or one of the maintenance workers doing repairs, Ken. (Id. p. 8). Mulder ignored available evidence and has made no explanation of why he ignored all sorts of available evidence.

22. He did not review a Chubb SEA electrical evaluation report or the industrial hygienist reports. (Id. p. 84). He looked at the roof, but could not tell what type of construction was under the exterior roof. (Id. p. 85). He noted heavy

leaking at the ballroom to the right of Building A. Building B had noticeable water under the roofing. (Id. pp. 94, 95).

23. Mulder, like many other Chubb witnesses, was qualified to give an estimate, but was not allowed to do so. His scope was changed and limited by Chubb's orchestrator, Mintz.

24. Mulder is an engineer. He could have issued a definitive report and priced out damages, but he did not. Therefore, he has no testimony bearing on the damages issue in this case. Liability is clear, and the only dispute in this case is the amount of damages. Chubb prevented Mulder from estimating damages, so Mulder has no testimony to add that can be helpful to the trier of fact. At most, various pictures he took seventeen (17) months after the loss could be used.

### III. ARGUMENT AND APPLICABLE LAW.

25. Under the established *Daubert* standards, Mulder's lack of knowledge and limited scope of review renders his testimony inadmissible.

26. Chubb intentionally hired Mulder to be a bit player. Mulder did not account for the obvious alternative explanations provided by eye-witness testimony because Mulder did not speak to any of these eye witnesses. The Court may limit or exclude testimony based upon reliability standards or Rule 702. *Michael's v. Avitech, Inc.*, 202 F.3d 746, 753 (5th Cir. 2000), *cert. denied*, 531 U.S. 926, 121 S. Ct. 303 (2000).

27. Mulder cannot rely upon his own artificially limited observations to give any helpful opinions. The trial court must scrutinize the specific facts relied upon by the expert to make sure that the expert's testimony is reasonable and has probative value in helping the jury evaluate the opinion in the particular case. The more an expert relies on inadmissible facts that the Court finds to be untrustworthy, the less likely it is that the reliance is reasonable. Fed. R. Evid., 703.

28. When an expert seeks to base an opinion on facts either perceived by him personally or already introduced into evidence, the trial judge must determine, pursuant to Rule 104(a), both that (1) facts that are relied upon by an expert are the kinds of facts or data experts in the field rely upon; (2) that such reliance is reasonable. *Advent Systems, Ltd. v. Unisys Corp.*, 925 F.2d 670, 682 (3rd Cir. 1991).

29. The first sentence of Rule 703 states: "[A]n expert may base an opinion on **facts or data** in the case that the expert has been made aware of or personally observed." Only to the extent that evidence has probative value and will assist the jury in evaluating the expert's opinion, should otherwise inadmissible facts or data be admissible. *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1062 (9th Cir. 2003).

30. This Court's preliminary assessment of whether the reasoning or methodology underlying Mulder's testimony is scientifically or reasonably valid can only lead to one conclusion. It is not. Fed. R. Evid. 702; *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010). The *Daubert* requirement asks a district judge to first determine if evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist. *Id.* Here, Mulder's opinions, controlled and artificially limited as they were by Chubb, cannot aid any resolution of this case. They are not scientific. He saw damages, but does not know when they occurred and was told not to do a price estimate.

31. Federal Rule of Evidence 403 provides another avenue for the Court to disallow such contrived testimony that is not based on facts in evidence. The Court is allowed to exclude evidence if it confuses the issues, misleads the jury or is a waste of time.

32. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court made it clear Rule 702 is meant to ensure expert evidence is both reliable and relevant. *McCreles v. Global Upholstery Co.*, 500 F. Supp. 2d 1350, 1353 (N.D. Ala. 2007). The *Daubert* principles apply to all expert testimony, whether based on scientific, technical, or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999). Thus, "where such testimony's factual basis, data, principles, methods, or their application are called

sufficiently into question, . . . the trial judge must determine whether the testimony had 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592) (alteration adopted). *Daubert* imposes on a trial court the duty to act as a "gate-keeper," under Rule 702, by ensuring that expert testimony is reliable and relevant before being admitted. *Haney v. Eaton Elec., Inc.*, 528 F. Supp. 2d 1262, 1266 (N.D. Ala. 2007).

33. Any cost opinions that Mulder might have now, or at trial, would be prohibited. He has never given any cost estimates previously. He did say the International Building Code (IBC) required the roofs to be replaced, but he did no cost estimate for that. His opinions are not even relevant evidence. *See, McCreles v. Global Upholstery Co., supra.* The opinions he does have are just unsupported. His opinions would not aid a Court or the jury in this case because they, having no rational or scientific basis, would be offered by Defendants to confuse the fact finders, and "district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States vs. Frazier,* 387 F. 3d 1244, 1263 (11th Cir. 2004).

34. Mulder's entire testimony should be disallowed, and he should be stricken as a witness. At most, his pictures should be allowed as evidence because they truly depict something. Chubb hired Mulder to opine that the roof had "installation problems," but Chubb so limited him in his opinions that his testimony is useless. He doesn't know when or how the roof damages occurred, and was not interested in talking to any witnesses to find out.

35. Mulder was asked to go document the scene, and he did go and take pictures. Then, he was prevented from giving any estimates or detailed repair costs, although he offered to do so.

36. The opinions that Mulder may have had are unreliable. He did not know when the storm damage occurred, or whether the defects he saw occurred after storm damage, as a result of, or before. He did not know when the repairs were made, nor did he inquire and try to find out when they were made.

37. By artificially limiting Mulder's field of operation, Chubb made his testimony unreliable and of little, if any, use. His testimony has no probative value and would be a waste of time.

38. Information based upon less than personal knowledge is insufficient. *See Givham v. Electronic Engineers, Inc.*, 4 F.Supp. 2d 1331, 1334 (M.D. Ala. 1998); *Lugo v. City of New York*, 518 Fed.Appx. 28 (2d Cir. 2013). Mulder has absolutely no personal knowledge regarding many of the matters that he tried to

12

testify to, including matters related to other manufacturers of EPDM roofing. His statements are both outside his realm of personal knowledge and are inadmissible. His testimony will not have any tendency to make a fact more or less probable. See Fed. R. Evid. 401, 403. An expert cannot simply repeat or adopt findings of another expert without attempting to assess the validity of the opinions relied upon. *In re Polypropylene Carpet*, 93 F.Supp.2d, 1348, 1357 (N.D. Ga 2000); *Hernandez v. Crown Equip. Corp.*, 92 F.Supp.3d, 1325, 1351 (M.D. Ga 2015); *Sofillas v. Carnival Corp.* No. 14023920-Civ-Scola, 2016 WL 5407889, at *4 (S.D. Fla. July 8, 2016).

## IV. CONCLUSION

39. Mulder's opinion cannot be seen as an objective expert opinion because his entire involvement in this case was improperly and artificially controlled by Young & Associates from the beginning. Mulder's scope of work was changed time and time again by Stuart Mintz, Chubb's orchestrater, who told Mulder not to do the things he asked him to do earlier in an October email, because doing so would cost an additional $5,000 to complete. (Doc.#90-78 pp. 129, 130). Mulder prepared a scope of damages but did not do an estimate because he was instructed not to do so by Mintz. (Id. p. 195). Mulder's proposed testimony is frequently based on hearsay or information that he has no personal knowledge of. He relied upon multiple, unsubstantiated assumptions, does not have opinions as to when the

damages he assessed occurred and, therefore, he had to draw opinions out of thin air. Mulder's opinions lack scientific reliability or sound methodology and will not be helpful to the trier of fact. His testimony, as cherry-picked as it would have to be, would be a waste of time.

40. By the time engineer Mulder first visited the premises, seventeen (17) months after the loss, numerous Chubb witnesses had already been there. Another engineer from his same group, Fortenberry, was there within a month after the storm loss, but did not even look at any storm damage, as he was directed to look at fire damages only. Chubb's Bushman visited the premises, along with Perich and Mintz. Those individuals had others in their entourage. Only after breaching the appraisal provision did Chubb hire Mulder, and then Chubb micromanaged his field of operation and told him what to do and what not to do. Mulder was so spoon-fed by Chubb and Mintz, they did not even tell him a detailed insurance evaluation and inspection of the Knight's Inn property was made before the wind event, showing the roof in satisfactory shape. See Haman Ex. 33 MSJ. Mulder would have been interested in seeing that. (Doc.#90-78 p. 81).

41. By trying to orchestrate and manufacture reasons to deny legitimate claims, after the fact, Mulder got caught up in Chubb's web. As a result thereof, his testimony has no value. Chubb's pattern of directed deceitful delays and

denials, not made in good faith, should not be rewarded by allowing the cherry-picked testimony of its manipulated bit players.

                                      Respectfully submitted,

                                      */s/ Gary V. Conchin*
                                      Gary V. Conchin (ASB-1263-C56G)
                                      Attorney(s) for the Plaintiff

| Gregory Brockwell, Esq. | CONCHIN, COLE and JORDAN |
|---|---|
| Jason R. Smith, Esq. | 2404 Commerce Ct SW |
| 2100 1st Ave. N., Ste. 300 | Huntsville, AL 35801 |
| Birmingham, AL 35203 | (256)705-7777 (Phone) |
| greg@brockwellsmith.com | (256)705-7778 (Fax) |
| jay@brockwellsmith.com | gary@alainjurylaw.com |

CERTIFICATE OF SERVICE

     I certify that I have on the 25th day of September, 2020 served a true and correct copy of the foregoing to counsel for all parties in this matter via electronic mail using the federal online filing system for this District.

| Michelle A. Sherman, Esq. | Mark Hess, Esq. |
|---|---|
| Wayne D. Taylor, Esq. | HAND, ARENDALL |
| MOZLEY, FINLAYSON | 2001 Park Place, N. Ste. 1200 |
| and LOGGINS, LLP | Birmingham, AL 35203 |
| 1050 Crown Pointe Pkwy., Ste. 1500 | mhess@handarendall.com |
| Atlanta, GA 30338 | |
| msherman@mfllaw.com | |
| wtaylor@mflaw.com | |

David A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Ste. 300
Birmingham, Alabama 35216
dlee@pljpc.com

                                        */s/ Gary V. Conchin*
                                        Gary V. Conchin (ASB-1263-C56G)