IN THE UNITED STATES DISTRICT CO URT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action File No. | |
| ) 2:18-CV-01534-KOB | |
| v. ) | |
| ) | |
| CHUBB CUSTOM INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**REPLY OF CHUBB CUSTOM INSURANCE COMPANY TO PLAINTIFF'S RESPONSE TO CHUBB'S MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF CHUCK HOWARTH**

Chubb Custom Insurance Company ("Chubb") files this reply to the response of plaintiff Haman, Inc. d/b/a Knights Inn ("Haman") to Chubb's motion to exclude the expert opinion testimony of Chuck Howarth [Docs. 98, 99 and 116], respectfully showing the Court as follows:

**I.   OVERVIEW**

Haman argues misleadingly that "Chubb paid on both losses, determining that both fire and wind were covered losses." *Haman's response, p. 1*. While fire and wind are Covered Causes of Loss under the Chubb policy, Chubb disputes that soot from the fire in 2014 damaged all 80 rooms in Haman's building and disputes that wind from the tornado in 2014 damaged the EPDM roofing on all three

- 1 -

buildings and caused openings in the roofs that allowed water to leak into the interiors of the buildings. This dispute is discussed at length with record citations in Chubb's memorandum of law in support of its motion for summary judgment [Doc. 103] and in its response in opposition to Haman's motion for partial summary judgment. [Doc. 123].

The facts show that, in 2014 and 2015, Chubb paid the fire damage to 36 rooms and a stairwell in one of Haman's buildings. [Docs. 103 and 123]. The following year, Haman submitted a claim for alleged soot damage to all 80 rooms in the building. Chubb denied that soot damaged these additional rooms. Chubb's payment for fire damage to 36 rooms and a stairwell was <u>not</u> an admission that the fire and its by-products damaged all 80 rooms. Thus, there remains for resolution on summary judgment or at trial a cause of loss dispute.

With regard to the wind damage claim, Chubb determined there was slight wind damage to some of the metal coping on one of the buildings, although Chubb was unable to confirm that this damage was caused by the tornado in 2014.[1] Chubb paid the actual cash value (ACV) of the damage to the metal coping in the amount of $34,620.62. Haman later claimed that wind from the tornado had damaged the EPDM roofing on all three buildings, allegedly causing openings in the roofs that allowed rainwater to intrude into the interiors of the buildings. Haman demanded

---

[1] Haman did not notify Chubb of its wind damage claim until eleven months later.

from Chubb the cost to replace all roofs and the interiors of all three buildings. Chubb's payment for the damage to some of the metal coping on one of the buildings was not an admission that winds from the tornado in 2014 damaged the EPDM roofing and resulting water damage to the interiors of all three buildings.

Haman argues incorrectly that Chubb "accepted" Howarth as Haman's appraiser. This was the result of duplicity on the part of Howarth, who provided Chubb with a redacted copy of his appraisal fee agreements with the contingency fee clauses redacted. *See Exhibits 1 and 2 to this reply brief.* [Docs. 6-2 and 6-5]. Once Chubb finally was provided with a complete copy of Howarth's appraisal fee agreement containing the contingency fee clause [Doc. 38-3] and took the examination under oath of Howarth on September 26, 2017 and December 12, 2017 [Docs. 123-2, 123-3] to question Howarth regarding his compensation arrangement with Haman, Chubb's counsel wrote to Haman's counsel on March 15, 2018 explaining that Chubb would not agree to Howarth as Haman's appraiser of the fire loss due to his obvious partiality. [Doc. 6-4, p. 3 of 3]. Chubb never agreed to appraisal of the additional wind damage claim; instead, Chubb denied that claim. This is explained in detail in Chubb's response to Haman's motion for partial summary judgment. [Doc. 123].

Contrary to Haman's erroneous argument, Chubb did not waive its right to object to Howarth as Haman's appraiser based on his lack of impartiality. Chubb

disagrees with Haman's discussion of the parties' efforts to agree on appraisal, which discussion takes up pages 2 through 7 of Haman's response.[2] The true facts are found in Chubb's response in opposition to Haman's motion for partial summary judgment. [Doc. 123].

As discussed in Chubb's motion to exclude Howarth and supporting memorandum of law, Howarth is <u>not</u> qualified to testify as an expert under Rule 702 and Daubert that soot from the fire in 2014 damaged all 80 rooms in Haman's building and that wind from the tornado in 2014 damaged the EPDM roofing on all three buildings and caused openings in the roofs that allowed water to leak into the interiors of the buildings. In addition, Howarth's causation opinions are not based upon sufficient facts or a reliable methodology. Howarth's cause of loss opinions also are inadmissible because he did not comply with the expert disclosure requirements of Rule 26. For this and the other reasons argued by Chubb, Howarth should be precluded from testifying as an expert on causation, issues related to claims handling, Chubb's appraisal conduct, and the meaning of the Chubb policy's provisions. Howarth's opinions regarding the actual cash value (ACV) of the

---

[2] None of this has anything to do with whether Howarth is qualified as a testifying expert on causation and whether his opinions are admissible under Rule 702 and ***Daubert***. However, since Haman in every brief mentioning Howarth repeats the same, unsupported argument that Chubb allegedly "waived" any objection to Howarth's partiality as an appraiser, Chubb finds it necessary to respond.

disputed losses are inadmissible under Rules 402 and 403 and because Howarth did not comply with the Rule 26 disclosure requirements.

## II. ARGUMENT AND CITATION OF AUTHORITY

Chubb's motion to exclude Howarth as a causation expert and supporting memorandum of law explains why Howarth is not qualified as a causation expert and why his opinions are not based upon sufficient facts and a reliable methodology. Haman's response fails to meet its burden of proving the admissibility of Howarth's causation opinions under Rule 702 and Daubert.

### A. Howarth Is Not Qualified To Testify As An Expert On The Causes Of The Losses At Issue In This Action

#### (1) Haman Designated Howarth As A Cause Of Loss Expert

Haman in its expert disclosures stated that Howarth "is knowledgeable about the specific damages to the Knights Inn that were caused by both the fire loss and the storm loss…." [Doc. 100-2]. Haman in its response to Chubb's motion to exclude Howarth argues that "[t]he estimates themselves were for disputed building damages." *Response, p. 10.* In other words, Howarth's repair estimates are for the cost to repair/replace the portions of the buildings that the parties dispute were damaged by the fire and wind events. Haman then argues non-sensically, "[a]n estimator cannot determine damages without being cognizant about what the claim is about. Therefore, Howarth's estimates do not provide an opinion as to causation." *Id.* (Emphasis added). The opposite is true. Howarth intends to testify as an expert

- 5 -

that his repair estimates represent the cost to repair the additional damages <u>caused by the fire and tornado</u>. Haman's response to Chubb's motion to exclude Howarth contains a section captioned: "Howarth's Inspection Of Property For Purposes Of Determining Causation." *Id., p. 14*. Haman argues incredibly: "An estimator cannot testify to damages without knowing what caused the loss. Therefore, Howarth's estimates <u>do</u> provide an opinion as to causation, and he has put them in writing." *Id., p. 12*. (Emphasis added). Later in its response, Haman argues that it "disagrees that Howarth did not inspect for purposes of determining the causes of the losses." *Id., p. 14*. In his affidavit attached to Haman's response, Howarth avers, "my estimates <u>do</u> provide an opinion as to causation." *Affidavit of Chuck Howarth, ¶ 7* (Emphasis added).

It is abundantly clear that Howarth plans to testify at trial as a causation expert for Haman. Howarth should not be permitted to do so unless he is qualified under Rule 702 and ***Daubert*** to testify that the 2014 fire and tornado <u>caused</u> the property damages the repair costs of which he estimated.

### (2)   Howarth Is Not Qualified As a Causation Expert

With regard to the disputed fire damage claim, which involves rooms in Haman's building other than the 36 rooms and a stairwell that Chubb acknowledges were damaged by fire, and for which Chubb already has paid, Howarth claims that he was able to determine that soot from the fire traveled through the HVAC system

and penetrated into the hidden spaces in the walls, ceilings and floors of all 80 rooms in the building. Haman failed to show how Howarth's education, training and experience qualifies him as an expert on this subject matter.

With regard to the wind damage claim, Howarth claims the EPDM roofing on all three of Haman's buildings was damaged by wind from the 2014 tornado. Chubb's expert licensed professional engineer Kurt D. Mulder, P.E., opined that the damages observed on the roofs and the openings in the roofs that allowed rainwater to intrude into the interiors were caused by improper installation of the roofing materials, age-related deterioration, vandalism, improper repair and maintenance of the roofs, and other causes of loss unrelated to wind. *See Affidavit of Kurt D. Mulder.* [Doc. 105-74]. Haman failed to show how Howarth is qualified to distinguish wind damage to the roofs of commercial buildings from these other types of damages common to old roofs.

Chubb's motion to exclude Howarth discussed in detail why Howarth is not qualified to testify to these opinions as an expert under Rule 702 and **Daubert**. Haman in its response discussed how it initially retained Howarth only as an appraiser. Haman then argued: "Howarth's forty (40) years of experience in handling insurance claims certainly qualified him to appraise this loss under Chubb's appraisal provision." *Response, p. 5*. Chubb does not dispute that Howarth is competent to appraise a loss – *i.e.,* to determine the cost to repair the damages

observed in Haman's rooms and on its roofs, which the parties agree or a court determines were caused by covered causes of loss. However, it is well-settled in Alabama that appraisers do not resolve cause of loss issues. *See* [Doc. 38, pp.13-15 of 26 ]; *Memorandum Opinion, pp. 9-11*. [Doc. 48] ("So, according to Chubb, these outstanding coverage and causation disputes preclude appraisal as a matter of law. For the following reasons, this Court agrees"). Howarth's experience as an appraiser does not *per se* qualify him as an expert on causation.

Haman argues that "Howarth is qualified to testify regarding the loss from wind and fire based upon his experience and training." *Response, p. 10.* Haman then describes Howarth's experience as an insurance underwriter, approved mediator, insurance claims adjuster and licensed public adjuster. *Id., p. 11*. Howarth's affidavit states that he allegedly has been trained in "causation analysis" by State Farm Claims Schools, and that he has performed hundreds of commercial and residential "analyses." Howarth's affidavit describes the fire and wind damage "claims" that he is "working" – presumably as an appraiser or public adjuster.

None of the evidence or arguments submitted by Haman explains how Howarth's experience qualifies him to provide opinions on the cause of loss that he proposes to provide in this case. These opinions involve the results of sampling and laboratory analysis of microscopic amounts of soot, char and ash, the determination of wind speeds, the ability of commercial building materials to withstand certain

wind speeds, and structural and materials issues regarding EPDM roofing. Haman simply argues that "Howarth has been adjusting claims and analyzing damages issues for forty (40) years." *Response, p. 24*. Haman apparently wants this Court to establish a rule that all claims adjusters and appraisers are qualified *per se* to provide expert opinion testimony regarding the cause of any loss. This argument is erroneous on its face..

Haman argues incorrectly that Howarth is qualified to testify as an expert on the disputed cause of loss issue simply because his observations are based upon his personal knowledge. (The premise of this argument is belied by Haman's numerous references to Howarth's reliance upon the observations of others). Personal knowledge is the basis for qualification of a lay witness, not an expert witness. It does not matter that Howarth walked through a few of the rooms of Haman's hotel and noted what he thought was "soot migration," unless he is qualified as an expert to determine that what he was seeing was soot from the 2014 fire and not dirt or soot from a source other than that fire.

Haman has not met its burden of proving that Howarth is qualified as an expert on the causes of the disputed losses in this case. This Court should enter an order precluding Howarth from testifying as an expert witness regarding the disputed cause of loss issues.

### B. Howarth's Cause Of Loss Opinions Are Not Based Upon Sufficient Facts Or A Reliable Methodology

"[N]othing in either ***Daubert*** or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." ***Gen. Elec. Co. v. Joiner,*** 522 U.S. 136, 146 (1997); *see also* ***McDowell v. Brown,*** 392 F.3d 1283, 1301–02 (11th Cir.2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions...."); ***Allpattah Servs. v. Exxon Corp.,*** 61 F. Supp. 2d 1335, 1340 (S.D. Fla. 1999) ("The expert's 'self-proclaimed' accuracy is insufficient").

Haman has not identified any scientific methodology or analysis that may underly Howarth's' opinions regarding the alleged causes of the claimed losses. Notably, Howarth never provided an expert report that sets forth his causation opinions or the facts and methodology upon which the opinions are based. Haman argues that Arthur Grandinetti, an employee of Haman's company The Howarth Group, observed the roofs of Haman's buildings to be "torn up" and leaking. *Haman's response, p. 6.* Haman fails to explain how a "torn up" and leaking roof necessarily evidences wind damage from the tornado in 2014 as opposed to damage caused by improper design and construction of the roofs, age, wear and tear and deterioration, improper maintenance and repairs, and vandalism, as opined by Chubb's licensed professional engineer Kurt D. Mulder, P.E. *See Affidavit of*

*Mulder.* [Doc. 105-74]. Haman makes the mere conclusory allegation that Grandinetti "noticed wind damage" and "identified wind damage" as a basis for Howarth's opinions on causation. *Response, p. 7.* This is pure "ipse dixit" that fails to satisfy Rule 702 and **Daubert**. **Gen. Elec. Co. v. Joiner**, *Supra.*

Haman argues that, "when Howarth visited the scene for the roofing claim it was clear the damage was from a tornado-style event. He also had the photos. You do not see this type of damage from an average thunderstorm. The building had been peppered, scratched, scraped and punctured." *Response, p. 15.* These are conclusory allegations that fail to offer any scientific methodology as a basis for determining that the damages observed to these old roofs was due to wind from a tornado in 2014 and not the result of other causes of loss discussed by Chubb's expert engineer Kurt D. Mulder. Haman and Howarth merely proclaim it to be so. This is not sufficient to satisfy Rule 702 and **Daubert**.

With regard to whether soot from the fire damaged all 80 rooms in Haman's building, Haman simply states: "[Howarth's] normal process is to go in rooms near the fire source, then go to the extreme ends away, then work back towards the source, where he saw evidence of soot migration. *Response, p. 13.* Haman argues, "Howarth, Grandinetti, and Irmiter have all testified from personal knowledge that smoke and soot damage from the fire caused damage to all the rooms in the building." *Id., p. 21.* Again, this is nothing more than the self-proclaimed accuracy

of a self-proclaimed expert. It does not satisfy Rule 702 and ***Daubert***. Howarth's cause of loss opinions are not admissible as expert opinion testimony and they must be excluded.

> **C. Howarth Should Be Precluded From Testifying As An Alleged Expert On Issues Related To Claims Handling And Appraisal Conduct**
>
> **(1) Howarth Proposes To Testify As An Expert Regarding Chubb's Alleged Bad Faith Claim Handling And Bad Faith Refusal To Engage In Appraisal**

Haman asserts that "Howarth will not be asked to testify as to bad faith." *Haman's response, p. 6.* In the very next sentence, Haman shows its real intentions by stating: "[Howarth] will be asked to testify to the unique appraisal facts and shenanigans he saw with Chubb." *Id.* Haman goes on to argue that "Haman disagrees that Howarth proposes to testify to bad faith conduct." *Id., p. 10.* Howarth's affidavit directly contradicts this. Commenting on Chubb's refusal to engage in appraisal to determine the disputed cause of loss issues using Howarth as Haman's appraiser, Howarth states that "I have personal knowledge of the withdrawal shenanigans of Chubb. Neither of their appraisers seemed to have been appraisers before." *Aff. Howarth, ¶ 21.* Howarth then invokes the legal definitions of bad faith, stating "[t]he late payment of the fire loss, after eight months, was improper. This fire loss should have been investigated and paid in 60-90 days." *Id., ¶ 24.* "It is very clear to me that Chubb aborted the appraisal process because it was

not going well for Chubb. *Id., ¶ 27*. "… aborting the process 1½ years after the loss, was unexpected and unfair." *Id.* Chubb's "conduct in causing the delay and then aborting the appraisal process was without good cause or reason." *Id.*

Howarth clearly plans to testify that Chubb allegedly did not act properly when investigating the claims (including the undisputed portion of the fire damage claim) and when terminating the appraisal of the disputed claims. Near the end of its response, Haman argues that Chubb's conduct "is the type of nebulous, non-productive, invasive, charlatan, run-round conduct foreseen as possible bad faith conduct in Rogers v State Farm." *Response, p. 27*. That Haman intends for Howarth to serve as its expert witness on the bad faith claim is plain and obvious.

Chubb, in its memorandum of law in support of its motion to preclude Howarth from testifying that Chubb's conduct allegedly was improper, cited **Tardiff v. Geico Indem. Co.,** 481 Fed. Appx. 584 (11th Cir. 2012), in which the court affirmed the exclusion of an alleged bad faith expert who planned to testify to industry standards for handling insurance claims, and **VJ, LLC v. State Auto Property and Casualty Co.,** 2016 WL 7497580 (W.D. Tenn. July 11, 2016), in which the court excluded the testimony of the plaintiff's proposed bad faith expert Chuck Howarth. *See* [Doc. 99, at page 36 of 34]. Howarth should be precluded from testifying as an expert that Chubb's conduct was wrong, improper, in bad faith, or any other adjectives argued by Howarth and Haman in their response and affidavit.

### D. Howarth's Replacement Cost (RCV) Estimates Are Irrelevant And Therefore Inadmissible

The Chubb policy states:

3.  Replacement Cost

> d. We will not pay on a replacement cost basis for any loss or damage:
>
> (1) Until the lost or damaged property is actually repaired or replaced; and
>
> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

[Doc. 6-1, p. 22 of 72]. Haman acknowledges in its response: "No significant repairs have been made since the fire or the storm dates." *Response, p. 17*. Howarth in his affidavit also acknowledges: "There had been no significant repairs for any of the damages incurred by the insured on any of the fire or wind losses." [Doc. 116-1, p. 9 of 20]. Because Haman has not repaired the disputed damages, it cannot recover the costs to repair or replace those damages. Therefore, Howarth's RCV estimates are irrelevant and inadmissible under Rules 402 and 403.

### III. RESPONSE TO HAMAN'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

Haman states incorrectly that the following facts are undisputed: "The issue of the wind claim arose because Arthur Grandinetti (AG) was inspecting the fire loss site and noticed a lot of wind damage. The wind claim was timely filed. Chubb evaluated the loss and paid for some damage, waiving any timelines argument."

*Response, p. 18.* On the contrary, it is disputed whether what Grandinetti observed was damage caused by wind. *See Aff. Mulder.* Further, the wind claim was not timely filed. *See Chubb's memorandum of law in support of its motion for summary judgment*; [Doc. 103, pp. 33-36 of 55]. Chubb's payment for slight damage to the metal coping did not waive its right to deny coverage for the late notice of alleged wind and resulting damage to the metal and EPDM roofs of all three buildings and their interiors. This is a legal argument, not a fact.

## IV. CONCLUSION

Chubb specifically reserves and restates all of the other facts and arguments contained in its motion to exclude the expert opinion testimony of Chuck Howarth and supporting memorandum. Haman did not make any meaningful response to any of those other arguments.

For the reasons and on the grounds argued therein and above, Chubb's motion should be granted and this Court should enter an order ruling that Chuck Howarth may not testify as an expert witness on any matter at the trial of this case.

This 25th day of September, 2020.

/s/ Wayne D. Taylor
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MICHELLE A. SHERMAN
Georgia Bar No. 835980
*Admitted pro hac vice*

MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

-and-

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

-and-

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax: 205-324-7097
dlee@pljpc.com

*Attorneys for Defendant*
*Chubb Custom Insurance Company*

#496597

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 25th day of September, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: <u>Gary V. Conchin, Kenneth B. Cole, Jr., Gregory A. Brockwell, and Jason R. Smith</u>, and I certify that I have e-mailed and mailed by United States Postal Service the document to the following non-CM/ECF participants:

      N/A

                                      */s/ Wayne D. Taylor*
                                      WAYNE D. TAYLOR
                                      Georgia Bar No. 701275
                                      *Admitted pro hac vice*