FILED

2020 Sep-25  PM 05:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action File No. |
| | ) 2:18-CV-01534-KOB |
| | ) |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## REPLY OF CHUBB CUSTOM INSURANCE COMPANY TO PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Defendant Chubb Custom Insurance Company ("Chubb") files this reply to plaintiff Haman, Inc. d/b/a Knights Inn's ("Haman") response to Chubb's motion for summary judgment, respectfully showing the Court as follows:

## I.   OVERVIEW

Haman's hotel, the Knights Inn, lies in shambles because Haman decided not to spend any of the approximately $400,000.00 Chubb paid for covered losses. Plaintiff instead pocketed the money and abandoned the buildings. Vandals moved in and set the buildings on fire on several occasions - most recently in January 2020.

The appraisal of the fire damages could have been completed (Chubb denied coverage for wind damage claim and never agreed to appraisal) if Haman had not attempted to corrupt the process by suing to force appraisal of both losses without

first complying with its contractual post-loss obligations to submit sworn proofs of loss, submit to an examination under oath and provide the documents requested by Chubb, and if Haman had not improperly insisted upon resolving disputed cause of loss and coverage issues through appraisal using an appraiser partial to Haman. *See* [Doc. 38-8] *finding that Haman failed to comply with its contractual post-loss obligations.* Haman's first petition filed in Circuit Court to, among other things, compel appraisal was dismissed in Chubb's favor on October 26, 2016. *Id.* On August 13, 2018, Haman refiled this action. On August 6, 2019, this Court ruled: "So, according to Chubb, these outstanding coverage and causation disputes preclude appraisal as a matter of law. For the following reasons, this Court agrees." *Memorandum Opinion, pp. 9-11.* [Doc. 48]. Ignoring the rulings of two courts of competent jurisdiction, both of which held as a matter of law that appraisal was not appropriate, Haman continued to insist erroneously that it was wrongfully denied its alleged right to appraisal of the cause of loss and coverage disputes as well as damages. These issues were addressed and briefed in Chubb's response in opposition to Haman's motion for partial summary judgment. [Doc. 123]. Chubb respectfully refers to that pleading for its position on matters related to appraisal.

## II.     REPLY TO HAMAN'S RESPONSE TO CHUBB'S STATEMENT OF UNDIISPUTED FACTS

Chubb replies to Haman's specifically-numbered responses as follows:

(2)   Haman states disingenuously that "[t]he dismissal order [dated July 5, 2016], entered by Judge Verin, said nothing about proofs of loss." The whole truth is that the Circuit Court vacated that order and entered a new order on October 26, 2016, which <u>did</u> mention proofs of loss and stated:

> The Order of July 5, 2016 is hereby VACATED in its entirety and the following Order is ENTERED: The Court finds that Plaintiff failed to comply with its contractual post-loss obligations to submit sworn proofs of loss, produce documents requested by Chubb Custom Insurance Company ("Chubb") and submit to examinations under oath, all of which obligations were conditions precedent to Plaintiff's right of recovery under the insurance policy issued by Chubb. Plaintiff therefore filed this lawsuit having failed to comply with the policy's terms. Plaintiff's complaint, as amended, against Chubb is hereby DISMISSED WITHOUT PREJUDICE, costs taxed as paid.

[Doc. 38-8].

(10)   Exhibit 14 to Visram's deposition shows exactly what Chubb wrote that it shows. It consists of two pieces of correspondence between Chubb's representative and Zarin Visram, the owner of the hotel, regarding Haman's fire damage claim. In the first letter, Brent Perich of York Risk Services Group wrote that Haman's claim was for fire damage to 36 rooms (for which Chubb paid). Perich inquires why, over a year later, Haman has submitted a claim for additional fire damages. Visram's letter in response acknowledges Perich's statement that its claim had been for damage to 36 rooms by stating: "The first list was a partial list that was hastily prepared by my manager at the time, Sheila." [Doc. 105-16].

(13)   Haman erroneously claims this is disputed because it also submitted a claim for wind damage; however this portion of Chubb's statement of facts deals only with the supplemental fire damage claim. The wind claim is addressed later.

(15)   Haman incorrectly alleges this is a disputed fact; it is not. *See* [Doc. 6-4]. Chubb disengaged from the appraisal process because it learned during Howarth's sworn testimony that he was retained as Haman's appraiser on a contingency fee basis, and therefore was not was not impartial as required by the Chubb policy's appraisal provision.

(16)   Haman's expert disclosures identified Grandinetti as one of its damages experts only, stating as follows: "Arthur [Grandinetti's] work product, his evaluation of the losses, is included in the Howarth Group's estimate. He has personal knowledge of the losses and assisted in the evaluations. Those reports are referenced in the Howarth disclosures herein," referring to Howarth's damages estimates, which are the only documents contained in his disclosures. *See* [Doc. 94-1]. Grandinetti testified that he is exclusively a damages expert and he is not going to offer any expert opinions on the cause of the damages. *Deposition A. Grandinetti, p. 45, l. 13-15;* [Doc. 94-2]. Arthur Grandinetti therefore is not a causation expert.

Chubb moved to exclude Chuck Howarth's expert opinions regarding causation. *See* [Docs. 98, 99]. Howarth is a public adjuster and appraiser, not an

engineer or industrial hygienist. His area of expertise (if any) lies in determining the cost to repair property that others deemed damaged by a covered cause of loss.

(35)   Chubb's expert engineer, Kurt D. Mulder, P.E., testified that the roofs need to be replaced due to improper installation, age-related deterioration, wear and tear, faulty repair and maintenance, and vandalism. *See* [Doc. 105-74].

(39)   It is not an expert witness's place to determine what is a covered loss; that is a legal question. Mulder's job was to determine the causes of the damages he observed on the roofs and interiors of Haman's building. [Doc. 105-74, ¶ 7].

(43)   Please refer to [Doc. 123] for Chubb's position on appraisal.

(46)   Please refer to Chubb's response in opposition to Haman's motion to exclude Mulder [Doc. 119] and Chubb's response to Haman's motion to strike Mulder's affidavit, which is being filed contemporaneously with this reply brief.

## III.   RESPONSE TO HAMAN'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS

For Chubb's response to Haman's statement of facts regarding appraisal, please refer to [Doc. 123], which is Chubb's response in opposition to Haman's motion for partial summary judgment on the appraisal issue.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Supplemental Fire Damage Claim

In reply to Haman's arguments regarding the supplemental fire damage claim, Chubb relies upon its memorandum of law in support of its motion for

summary judgment and its motions and supporting memorandum of law to exclude Haman's experts. *See* [Docs. 94 to 101]. That Arthur Grandinetti, Sarah Grandinetti and Chuck Howarth estimated the costs to repair Haman's claimed damages is not evidence that those damages allegedly were caused by covered causes of loss.

### B.    The Wind Damage Claim

In reply to Haman's arguments regarding the wind damage claim, Chubb relies upon its memorandum of law in support of its motion for summary judgment, as well as its motions and supporting memorandum of law to exclude Haman's experts. *See* [Docs. 94 to 101]. That Arthur Grandinetti, Sarah Grandinetti and Chuck Howarth estimated the costs to repair Haman's claimed damages is not evidence that those damages were caused by covered causes of loss.

### (1)    Late Notice Of The Loss

Haman has not cited any case law supporting its absurd contention that a hotel that was operating and had an on-site manager (Sheila Allen) and an on-site maintenance man (Wasif Bukhari) was justified in not inspecting its roofs for eleven months to discover the alleged wind damages. This is especially true in this case since Allen and Bukhari testified that water was leaking through the ceilings. Burkari testified that the hotel's ceilings always leaked after heavy rains, but after April 2014 (the month the tornado passed nearby), he noticed more leaks in the ceiling, which required him to replace the ceiling tiles. *Depo. of Wasif Burkari, p. 77, l. 14-23; p. 78, l. 1-13, 14-17; p. 79, l. 6-13, 18-23; p. 80. l. 102.* [Doc. 105-41].

Delays like this case should be deemed untimely as a matter of law. *See Chubb's memo. of law in support of its motion for sum. judgment* [Doc. 103, pages 30-32].

### (2)   Summary Judgment On The Coverage Issues

Chubb relies upon its memorandum of law in support of its motion for summary judgment on the coverage issues and its motions and supporting memorandum of law to exclude Haman's experts. [Docs. 102 - 103, 105, 94 - 99].

### C.   Summary Judgment On The Bad Faith Claims

Please refer to the statement of facts and argument and citation of authority in Chubb's memorandum of law in support of its motion for summary judgment [Docs. 102, 105] and Chubb's response in opposition to Haman's motion for partial summary judgment on the appraisal issue. [Doc. 123]. For Chubb's position on all issues regarding appraisal, please refer to [Docs. 123, 102 and 105].

### (1)   Alleged Bad Faith Regarding Appraisal

As a matter of law, Chubb cannot have acted in bad faith when it refused to participate in appraisal before Haman filed its first action in Circuit Court. That court found that Haman had not complied with its post-loss obligations to submit sworn proofs of loss, provide documents requested by Chubb, and submit to an examination under oath. [Doc. 38-8]. Chubb had no obligation to participate in appraisal under the circumstances that existed at that time. *See Baldwin Mut. Ins. Co. v. Adair,* 181 So. 3d 1033, 1043 (Ala. 2014), *reh'g denied* (May 22, 2015)("[T]he insureds must comply with their post-loss obligations as described in

provisions of the respective insured's insurance policy before that insured may invoke the appraisal process"). After Haman finally provided sworn proofs of loss (in April 2016) and provided the requested documents, and Chubb was able to examine Howarth under oath regarding his contingency fee agreement with Haman, Chubb determined both that disputed coverage and cause of loss issues existed that precluded appraisal and that Howarth was partial to Haman, which made him ineligible as Haman's appraiser. These facts and the applicable law are discussed in Chubb's response in opposition to Haman's motion for partial summary judgment on the appraisal issue. [Doc. 123]. This Court has already ruled that disputed issues regarding the cause of loss and coverage issues remain regarding Haman's supplemental fire damage claim. [Doc. 48]. With regard to the disputed wind damage claim, Chubb never agreed to appraisal of that claim and Chubb eventually denied the disputed wind damage claim due to late notice of the loss and a lack of coverage for the claimed damages. [Docs. 123-1, Exhibit 11 thereto; Doc. 6 to 8]. Chubb was not obligated to participate in appraisal under these circumstances.

Chubb's response to Haman's incorrect argument that Chubb allegedly is equitably estopped from denying appraisal was discussed and briefed in Chubb's response in opposition to Haman's motion for partial summary judgment on the appraisal issue. [Doc. 123].

As a matter of law, Haman was not then and it is not now entitled to appraisal of either loss until the disputed cause of loss and coverage issues are resolved and until the issue of Howarth's partiality is decided. Chubb therefore has not acted in bad faith regarding appraisal and it is entitled to summary judgment on Haman's claim for alleged bad faith regarding Chubb's conduct concerning appraisal.

### (2)  Alleged Bad Faith Investigation And Claim Handling

The undisputed facts shown in the exhibits to [Docs. 103 and 123-1] prove that Chubb promptly investigated and paid for the agreed covered losses. Chubb's memorandum of law in support of its motion for summary judgment discusses the chronology of the facts and interactions between the parties, and the law on bad faith claim handling. *See* [Doc. 103, pp. 27-29].

### (a)  Payment Of The Agreed Fire Loss

Haman argues incorrectly that "[t]he delay in receiving funds for the fire damage was from March 22, 2014 to November 11, 2014. The delay in the initial investigation and payment of the structure claim of eight (8) months was, under the circumstances, bad faith." *Response, p. 32.* Under the terms of the Chubb policy, Chubb had <u>no</u> obligation even to agree to make any payments until Haman submitted a sworn proof of loss. The Chubb policy states that "[w]e will give you notice of our intentions within 30 days after we receive the sworn proof of loss." *See Chubb policy, Building and Personal Property Coverage Form, E., Loss Conditions, 4. c.* [Doc. 105-76, page 17 of 71]. Haman did not submit its sworn

proof of loss for the agreed fire damage to 36 rooms and a stairwell until September 30, 2014. *See* [Doc. 38-1]. Chubb accepted that claim and, according to Haman, paid the claim on November 11, 2014. *See footnote 2 in Haman's resp. to Chubb's motion for sum. judg.* This was forty-two days after Haman submitted its sworn proof of loss. Chubb paid the adjusted amount of the fire loss in payments of $357,401.93 and $27,601.01. *See* [Doc. 105-33, nos. 2 and 3, which are Haman's resp. to Chubb's req. for adm.]. Chubb's obligation was to give Haman notice of its <u>intent</u> to pay or deny the first fire damage claim within 30 days after receipt of the sworn proof of loss; Chubb had <u>no</u> obligation to ensure that checks in the total amount of nearly $400,000.00 arrived in Haman's office within 30 days of Chubb's receipt of the sworn proof of loss. As a matter of law, a gap of forty-two days between the insurer's receipt of the insured's sworn proof of loss and arrival of the insurer's check at the insured's place of business does not constitute bad faith.

### (b)    <u>Chubb's Request For Examinations Under Oath</u>

Haman argues incorrectly that Chubb allegedly acted in bad faith by waiting until 2015 to request examinations under oaths from Haman. On December 18, 2015, Chubb's counsel requested a signed, sworn statement in proof of loss, requested an examination under oath, and requested production of various information and documents. *Affidavit of Michael A. Montgomery, ¶ 11-14;* [Doc. 123-1, Exhibit 2]. As the exhibits to [Doc. 123-1] evidence, Haman resisted all of

Chubb's efforts to obtain these necessary items and improperly filed suit to force Chubb to submit to appraisal of the supplemental fire damage claim and additional wind loss. That suit ended when the Circuit Court dismissed Haman's lawsuit because Haman had failed to comply with its post-loss obligations to submit sworn proofs of loss, submit to examinations under oath, and provide the documents in connection with its supplemental claims requested by Chubb. *See* [Doc. 38-8].

Haman has not cited any case law holding that Chubb was obligated to request an examination under oath <u>before</u> the Haman submitted its sworn proofs of loss and provided documents supporting its supplemental fire and wind damage claims. In fact, the absurdity of such a position is evident on its face. Haman did not submit its sworn proof of loss on its supplemental fire damage claim and wind damage claim until April 8, 2016, long <u>after</u> Chubb requested the examinations under oath. [Docs. 38-1; 38-17]. As a matter of law, Chubb's requests for examinations under oath were <u>not</u> untimely; they were made in conjunction with Chubb's request for other items that it was entitled to receive from Haman (and which Haman initially refused to provide). Because Haman had not submitted its sworn proofs of loss, it had no right to insist that Chubb request an examination under oath. There was no bad faith in Chubb's requests for examinations under oath.

### (c)   Chubb Never Accepted Coverage For Disputed Losses

Haman makes the ridiculous argument that, because Chubb paid for the fire damage to 36 rooms and a stairwell and paid a small amount for some slight damage to the metal coping on the roof of one of Haman's buildings caused in part by wind, this allegedly means that Chubb "accepted" coverage for Haman's claim for $1.6 million in alleged soot damage to all 80 rooms in the building, and that Chubb "accepted" coverage for the nearly $3 million in alleged costs to replace all of Haman's roofs and restore the interiors of all three buildings.

Chubb never accepted these disputed claims as covered losses; on the contrary, Chubb insisted on its right to investigate the supplemental fire damage claim and the wind damage claim, but Haman refused to cooperate. *See Exhibits to* [Doc. 123-1]. Once Chubb finally completed its investigation, Chub denied coverage for the wind loss claim. [Doc. 6-8]. With regard to the supplemental fire damage claim, Chubb always has denied that the fire deposited soot into the hidden spaces in the ceilings, floors and walls of all 80 rooms in Haman's building. Chubb retained an industrial hygienist certified by the American Board of Industrial Hygiene, Thomas Sumner, CIH, CSP, CHMM, who based his opinions regarding the extent of the fire damage on "confirmatory" test results obtained from a laboratory accredited by the American Industrial Hygiene Association (AIHA). *Aff. Sumner, ¶ 22.* [Doc. 105-32]. According to Sumner, the damages from the fire and its byproducts were limited to 36 rooms plus a stairwell. *Id., ¶¶ 20 and 31(3).*

### (d)    <u>Chubb Diligently Investigated Both Claims And Never Abandoned Its Investigations</u>

The facts discussed and cited to the record in [Doc. 123-1 and the exhibits thereto evidence that Chubb promptly and diligently investigated Haman's initial fire and wind claims and its supplemental claims. Chubb hired qualified forensic professionals including engineers and industrial hygienists because Haman's representatives, including Chuck Howarth, insisted there were additional damages totaling nearly $4 million allegedly caused by the fire and wind events. All of the so-called delays in Chubb's investigation were caused by Haman's refusal to cooperate with Chubb's investigation, not by Chubb.

That Haman's witnesses are critical of the conduct of Chubb's representatives proves nothing; the undisputed facts discussed in Chubb's motion for summary judgment and Chubb's response to Haman's motion for partial summary judgment [Doc. 123] require a finding as a matter of law that Chubb behaved reasonably, ethically and within its prerogative to insist that Haman comply with its own contractual obligation to cooperate in Chubb's investigation. Chubb had no obligation to remove a metal covering over an expansion joint merely because Haman claims Chubb should have done so. There can be a difference in the approaches of the investigators for the insured and the insurer without bad faith on the part of the insurer. Different approaches is not evidence of bad faith. Haman's

witnesses have not created any issues for resolution by a jury. As a matter of law, Chubb is entitled to summary judgment on the bad faith claim.

### (3)    The Business Interruption Claim

Haman never submitted a sworn proof of loss for business interruption. The record in this case does not contain any proof of loss because it does not exist. Thus, Haman never made a claim for business interruption.

Haman falsely states that "Chubb's Perich confirms the money should have been paid." *Response, p. 33.* On the contrary, Brent Perich with York Risk Services Group, Inc. testified that Sheila Allen, who was the on-site manager at Knights Inn, did not report the fire-damaged building shut down from the fire in 2014; instead, Allen told Perich that "[i]t was shut down in conjunction with previously unaddressed issues with the building. *"Depo. Perich, p. 165, l. 2-12* [Doc. 90-53]. Contrary to Haman's incorrect allegations, Perich's third report contained an "estimate" only of Haman's business interruption loss, which was an estimate Perich prepared to enable Chubb to set its net reserves. *Id., p. 167, l. 9-14.* The document referenced by Haman, [Doc. 90-76], discusses York's plan to issue an advance on estimated losses, including $50,000.00 for business interruption. That Chubb never issued an advance for business interruption does not mean that Chubb acted in bad faith in failing to pay a business interruption claim that never was

submitted. When Sheila Allen was asked at her deposition "what documents, what financial records, of the hotel did you provide to Mr. Parrish (sic)?", she replied:

> We wanted to figure out how much we were – we were having to go back through the night audits and look at what we were making versus what we weren't making. Would have been the night audits and – I'm almost positive that I gave Brent, -- you can just double ask him if I did not give him – and it would be on a tax form. I would have given him something showing that we were losing money by not renting that hotel.

*Depo. Allen, p. 170, p. 4-16* [Doc. 90-74]. None of this is evidence that Haman made a claim for business interruption loss. It did not do so. Chubb did not act in bad faith in refusing to pay a nonexistent business interruption claim.

The entirety of Haman's bad faith claim fails as a matter of law and Chubb is entitled to summary judgment on that claim.

### D.   Chuck Howarth Cannot Be An Impartial Appraiser After The Positions He Has Taken As Haman's Expert Witness On Causation And Damages

This issue was fully discussed and briefed in Chubb's response in opposition to Haman's motion for partial summary judgment [Doc. 123, pages 36-37 of 43] and in Chubb's motion for summary judgment [Docs. 102, 103 and 105]. Chubb restates and incorporates all of those facts, arguments and citations of authority.

## V.   CONCLUSION

For the reasons and on the grounds previously argued, this Court should enter an order granting summary judgment and dismissing Haman's claims with prejudice.

This 25th day of September, 2020.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MICHELLE A. SHERMAN
Georgia Bar No. 835980
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS
LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

-and-

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON SALE
LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

-and-

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600

Fax: 205-324-7097
dlee@pljpc.com

*Attorneys for Defendant*
*Chubb Custom Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of September, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: <u>Gary V. Conchin, Kenneth B. Cole, Jr., Gregory A. Brockwell, and Jason R. Smith</u>, and I certify that I have e-mailed and mailed by United States Postal Service the document to the following non-CM/ECF participants:

N/A

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*

#496734