FILED
2020 Oct-08  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-KOB |
| v. | ) |
| | ) |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## CHUBB CUSTOM INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO HAMAN'S MOTION TO STRIKE THE SECOND AFFIDAVIT OF THOMAS SUMNER

Chubb Custom Insurance Company ("Chubb") files this response in opposition to the motion of plaintiff Haman, Inc. d/b/a Knights Inn ("Haman") to strike the second affidavit of Chubb's expert Thomas Sumner, CIH, CSP, CHMM [Doc. 128], respectfully showing the Court as follows:

## I. THERE IS NO CONTRADICTION BETWEEN SUMNER'S SECOND AFFIDAVIT AND HIS DEPOSITION TESTIMONY

In the Eleventh Circuit, "[a]n affidavit may only be disregarded as a sham 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . (and that party attempts) thereafter (to) create such an issue with an affidavit that merely contradicts, without

1

explanation, previously given clear testimony.'" ***Tippens v. Celotex Corp.,*** 805 F.2d 949, 954 (11th Cir. 1986) (quoting ***Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,*** 736 F.2d 656, 657 (11th Cir. 1984)); s*ee also* ***Southard v. State Farm Fire & Cas. Co.,*** No. 4:11-cv-243, 2013 U.S. Dist. LEXIS 7283, at *24 (S.D. Ga. Jan. 17, 2013)(declining to strike an expert's affidavit because the statements in his deposition testimony and affidavit "do not rise to an excludable level of inconsistency," and do not "blatantly contradict" one another). Sumner's deposition testimony and his affidavit testimony (his first affidavit and his second) are completely consistent with one another and not a sham.

Even if, hypothetically, there was some inconsistency between Sumner's affidavit testimony and his deposition testimony, Sumner is entitled to offer an explanation for the discrepancy. The court then would determine whether the statements are so inherently inconsistent that the affidavit irreconcilably conflicts with the deposition and therefore warrants exclusion. *See **Tippens,*** 805 F.2d at 954. If Sumner offered an explanation for any alleged discrepancies and the court found that the statements may be reconciled, the discrepancy goes to the weight of the evidence, but the affidavit statements should not be excluded. *See **id.; Telfair v. First Union Mortg. Corp.,*** 216 F.3d 1333, 1342-43 (11th Cir. 2000). In the Eleventh Circuit, Sumner was authorized to give a second affidavit to refute Haman's attempts to mischaracterize his deposition testimony and the averments in his first affidavit.

2

There are numerous examples of Haman's mischaracterizations that needed to be refuted. For example, Haman stated incorrectly in its motion to strike Sumner's first affidavit and again in its motion to strike Sumner's second affidavit that the qualifications of EMSL Forensics, Inc. ("EMSL") are outside of Sumner's personal knowledge because "[h]e has already testified that his assignment was <u>only</u> to 'evaluate whether the scope of work provided by Young & Associates was adequate to remediate the impact from the fire.'" *Motion to strike second affidavit, p. 4 (Emphasis added).* Sumner never said any such thing. In his second affidavit, Sumner refuted that same incorrect assertion, which Haman made in its motion to strike Sumner's first affidavit, explaining as follows:

> Contrary to the incorrect assertion in paragraph 2 of Haman's motion, I was not asked <u>only</u> to evaluate whether the scope of the remediation work proposed by Young and Associates was adequate to remediate the impact from the fire. In addition to that assignment, and as I explained several times in my deposition testimony, I was asked to determine the impact upon Haman's building from the fire and its combustion byproducts including soot, ash and char. *See Deposition of Thomas Sumner, p 17, l. 10-17; p. 18, l. 11-16; p. 22, l. 20-25; p. 23, l. 1.*

*Second Affidavit of Sumner, ¶ 3.* In other words, Sumner was asked to perform his own investigation and analysis. In paragraphs 4 and 5 of his second affidavit, Sumner further refuted Haman's repeated false assertion that he, Sumner, was retained "only" to evaluate the scope of the work of Young & Associates. There was nothing improper about this. Sumner and Chubb were not required to force the Court

to determine plaintiff's assertion was false through its own examination of the extensive record.

Another example of Haman persistence in making the same false assertions, necessitating Sumner and Chubb to refute them, is Haman's reference in its motion to strike to Sumner's second affidavit to the alleged "previous statements that he [Sumner] did a level three testing." *Motion to Strike, p. 2.* Haman made this same false assertion in its motion to strike Sumner's first affidavit, and Sumner explained in his second affidavit why plaintiff's contention was not true. The record shows clearly that Sumner <u>never</u> testified that he "did" – *i.e.,* commissioned EMSL to perform – a <u>Level 3</u> testing. Sumner testified at pages 106-107 of his deposition that he asked Wade Bushman of York Risk Services, Inc. ("York") for permission to obtain Level 3 testing because he, Sumner, mistakenly thought that Level 3 was the highest level, when in fact, the highest level of testing was Level 4 testing. Sumner testified as follows:

> Q. And so you suggested to do a Level 3 analysis, and you described in that email what that would involve; correct?
>
> A. Correct. And again, I think I made that same mistake of thinking that was the highest level.
>
> Q. Well, was the highest level of your analysis Level 3 or Level 4?
>
> A. Level 4.

*Depo. Sumner, p. 108, l. 2-8.* Haman has not cited to any deposition testimony of Sumner in which he testified that he "did a Level 3 test" – *i.e.,* commissioned EMSL to perform a Level 3 test – because there is no such testimony.

To reiterate, Sumner did <u>not</u> testify that he commissioned EMSL to perform Level 3 testing, and EMSL did <u>not</u> perform Level 3 testing. At his deposition, Sumner specifically <u>denied</u> that he commissioned Level 3 testing. Sumner testified as follows:

> Q.    Let me ask you, just on the -- the chain of custody issue. There is a document, and I believe it's to the back of your report. I couldn't follow a chain of custody. It looked to me like somebody had stricken through Level 3 and wrote -- and then circled Level 4. Can you tell me why?
>
> A.    Just a mistake.
>
> Q.    Is what y'all did a Level 3?
>
> A.    No. We did Level 4.

*Depo. Sumner, p. 86, l. 9-18.* The chain of custody document referenced in the above-cited exchange, *Id., p. 77 of 339* [Doc. 105-32]*, Exhibit 1 to this response,* clearly shows that Level 3 was <u>scratched out</u> and Level 4 was chosen. This establishes that EMSL performed testing <u>at Level 4</u>, which is what Sumner testified EMSL conducted. Exhibit 1 to Chubb's response in opposition to Haman's motion to strike the first affidavit of Sumner is a copy of the invoice from the EMSL laboratory, which confirms that EMSL performed Level 4 testing and billed Sumner for Level 4 testing. For the convenience of the Court and parties, a copy of that same

invoice is attached as Exhibit 2 to this response. There simply is no inconsistency between Sumner's deposition testimony, his affidavit testimony, and the true facts regarding the Level 4 testing that Sumner commissioned and EMSL performed.

It is incomprehensible why Haman filed motions to strike the affidavits of Sumner to persuade the Court incorrectly that EMSL performed Level 3 testing on the samples submitted by Sumner, when it is abundantly clear from Sumner's testimony – "We did a Level 4" - and from the EMSL chain of custody document and invoice, both of which reference Level 4 testing, that EMSL performed Level 4 testing on Sumner's samples.

Another example of Haman's attempt to mislead the Court, thereby necessitating Sumner's second affidavit, is Haman's mischaracterization of Sumner's qualifications as an expert and his methodology, as evidenced in Haman's motion to strike Sumner's first affidavit. In response to those mischaracterizations, paragraphs 6 through 11 of Sumner's second affidavit discussed his qualifications as an expert and paragraphs 12 through 17 discussed his methodology. When an expert's affidavit testimony is alleged to conflict with his deposition testimony, and his qualifications and methodology are attacked by mischaracterizations, the expert is entitled to explain any alleged discrepancies and to refute the mischaracterizations. It is for the Court to decide if any discrepancies actually exist and, if so, whether the discrepancies merit excluding the expert's affidavit and testimony.

II.   **SUMNER'S SECOND AFFIDAVIT IS NOT CONFUSING AND IF IT IS REPETITIVE THAT IS BECAUSE HAMAN WILL NOT STOP REPEATING THE SAME INNACURACIES**

Haman argues, essentially, that Sumner's affidavit should be stricken because Sumner cannot identify Haman's false assertions regarding Sumner's affidavit testimony. In support of this nonsensical contention, Haman at page 5 of its motion cites *Whitehead v. BBVA Compass Bank,* No. 2:18-cv-01130-AKK, 2019 U.S. Dist. LEXIS 51553, at *5 (N.D. Ala. Mar. 27, 2019), in which the court struck "the sentences in the affidavit that offer conclusory statements and legal conclusions, and lack the 'basis for such personal knowledge.'" No such inadequacies exist in Sumner's second affidavit.

Haman has not provided any case law supporting its erroneous proposition that an expert and the party propounding him must allow without response an expert's qualifications and his methodology to be impugned by the opposing party in a motion to strike. An expert is allowed to explain any alleged inconsistencies between his deposition testimony and his affidavit, and there is no limit on how often he may do so. *See* the discussion of the decisions of the Eleventh Circuit Court of Appeals in the next section of this response.

III.   **NOTHING IN SUMNER'S SECOND AFFIDAVIT VIOLATES THE REQUIREMENT OF PERSONAL KNOWLEDGE**

Federal Rule of Evidence 703 states in part as follows: "An expert may base an opinion on facts or data in the case that the expert has been made aware of or

personally observed." Rule 602 states: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703."

These rules when read in conjunction with one another permit an expert to testify to opinions that are based in part upon hearsay within the constraints of Rule 703. This may be done through the expert's affidavit as well as through live testimony. In other words, an expert testifying by affidavit may rely upon the work and materials of others. In *NAACP-Montgomery Metro Branch v. City of Montgomery,* 188 F.R.D. 408 (M.D. Ala. 1999), which involved an expert affidavit given in support of a motion for summary judgment, the court explained:

> In the context of an affidavit proffered by an expert, "the witness need not have observed or participated in the gathering of the data underlying his opinion. Rather, the personal knowledge requirement hinges on whether the expert personally analyzed the data that was 'made known' to him and formed an expert opinion based on his own assessment of the data within his area of expertise."

*Id.,* 188 F.R.D. at 413 (citing *Huber v. Howard County, Md.,* 56 F.3d 61, 1995 WL 325644, at **5 (4th Cir. 1995) (citing *Doe v. Cutter Biological, Inc.,* 971 F.2d 375, 385-86 & n.10 (9th Cir. 1992); *Colgan v. Fisher Scientific Co.,* 935 F.2d 1407, 1423 & n.15 (3d Cir. 1992)).The court in *NAACP-Montgomery* rejected the plaintiff's argument that the experts' affidavits could not be used in support of the defendant's

motion for summary judgment because the affidavits allegedly were not based upon the experts' personal knowledge, holding: "[Tt]e court applies the above-delineated test for expert affidavits to determine whether their affidavits are admissible." *NAACP-Montgomery,* 188 F.R.D. at 413.

An argument similar to Haman's contention was rejected in *Edwards v. Deere & Co.,* No. 1:17-cv-587-ALB, 2019 U.S. Dist. LEXIS 204730, at *8 (M.D. Ala. Nov. 26, 2019), in which, in response to Deere's motions to exclude the testimony of Edwards' experts Van Iderstine and Sevart, Edwards submitted supplemental affidavits from those experts. Deere moved to strike the experts' affidavits because they allegedly were untimely and relied upon inadmissible evidence. The court addressed the same issues present in this case, holding:

> An expert's affidavit is considered timely, "even outside the time frame for expert discovery," if it is properly submitted in conjunction with dispositive motions. *Khan v. KIR Tampa 003, LLC,* 2015 U.S. Dist. LEXIS 163592, 2015 WL 8207813, at *4 (M.D. Fla. Dec. 7, 2015) (quoting *Cedar Petrochems., Inc. v. Dongbu Hannong Chem. Co.,* 769 F. Supp. 2d 269, 279 (S.D.N.Y. 2011)). Moreover, experts may base their opinions on otherwise inadmissible evidence, so long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject ...." Fed. R. Evid. 703. In forming their opinions, experts need not rely on personal knowledge. Fed. R. Evid. 602 (noting that need for personal knowledge does not apply to expert testimony under Rule 703). Considering these principles, Deere's arguments fail. Van Iderstine and Sevart's opinions in the affidavits are consistent with those disclosed in their initial reports and deposition testimonies. Their opinions have not changed: they assert that the tractor started either as a result of a stuck starter or a bypass-start. The only meaningful difference is that Van Iderstine and Sevart now have read Edwards' testimony, which in their view

strengthens their respective opinions. Moreover, in arguing against the admissibility of the evidence underlying Van Iderstine and Sevart's opinions, Deere asks the wrong question. The rules of evidence expressly allow experts to rely on otherwise inadmissible evidence. The only relevant question—which Deere has not addressed—is whether experts like these would reasonably rely on such evidence to form their opinions.

*Edwards,* 2019 U.S. Dist. LEXIS 204730, at *8-9.

Similarly, in a footnote in ***Stevenson v. Cyprus Amax Minerals Co.,*** No. 6:17-cv-417-Orl-40DCI, 2018 U.S. Dist. LEXIS 234601, at *8 n.3 (M.D. Fla. June 29, 2018), the court rejected the assertion that an expert's affidavit may not contain hearsay, explaining:

"Experts may satisfy the personal-knowledge requirement [of Rule 56(c)(4)] if they provide affidavits containing an opinion formed within their area of expertise and based on their own assessment or analysis of the underlying facts or data." ***Pauls v. Green,*** 816 F. Supp. 2d 961, 978 (D. Idaho 2011) (citing ***Doe v. Cutter Biological, Inc.,*** 971 F.2d 375, 385-86 n.10 (9th Cir. 1992); Fed. R. Evid. 703)); see also ***Genon Mid-Atlantic, LLC v. Stone & Webster, Inc.,*** 2012 WL 1372150, at *2 (S.D.N.Y. Apr. 18, 2012) ("The personal knowledge requirement is relaxed for experts who 'may base an opinion on facts or data in the case that the expert has been made aware of or personally observed' provided that other experts in the field would 'reasonably rely' on similar information."); ***Marine Polymer Tech., Inc. v. HemCon, Inc.,*** 2009 WL 801826, at *1 (D.N.H. Mar. 24, 2009) ("An expert who provides an affidavit with an opinion formed within his area of expertise and based on his own assessment or analysis of the underlying facts or data satisfies the personal knowledge requirement of [former] Rule 56(e)."). Dr. Sanchez declared that he reviewed the materials discussed in his declaration. [cit.]. Dr. Sanchez's review of those materials and his own studies seemingly led him to opine on issues that were within his area of expertise. [cit.] This is sufficient to meet the personal knowledge standard under Rule 56(c)(4). See ***Warren v. Holland,*** 2016 WL 6609194, at *4-5 (W.D. Ark. Nov. 8, 2016)

(denying motion to strike expert affidavit filed in support of motion for summary judgment because the expert was not required to have personal knowledge of the facts and data he reviewed in reaching his opinion in order for the affidavit to be considered in ruling on the motion for summary judgment) (citing Fed. R. Evid. 703).

In *Khan v. KIR Tampa 003, Ltd. Liab. Co.,* No. 8:14-cv-1683-T-17MAP, 2015 U.S. Dist. LEXIS 163592 (M.D. Fla. Dec. 4, 2015), the court denied the plaintiff's motion to strike the defendant's expert's affidavit given in support of the defendant's motion for summary judgment, holding that "the Court is of the view that the Schneider Affidavit merely 'provides evidentiary details for the conclusions originally espoused' in the Schneider Report, and does not expound 'a wholly new and complex approach designed to fill a significant and logical gap' in Mr. Schneider's report." *Id.,* 2015 U.S. Dist. LEXIS 163592, at \*14; s*ee also Scarlett & Assocs. v. Briarcliff Ctr. Ptnrs., LLC,* No. 1:05-CV-0145-CC, 2009 U.S. Dist. LEXIS 90483, at \*6 n.2 (N.D. Ga. Sep. 30, 2009(the "personal knowledge" of an expert for purposes of the requirement of personal knowledge in Rule 56 affidavits "may arise from a review and understanding of documents related to the case").

It is clear that in the Eleventh Circuit an expert may give an affidavit that provides additional support for the opinions already espoused by that expert, provided the affidavit does not state new, undisclosed opinions, and provided that it relies upon information within the realm of the expert's expertise. This is what Sumner did in his first affidavit, as he explained in his second affidavit, in which he

stated as follows: "[A]s I explained several times in my deposition testimony, I was asked to determine the impact upon Haman's building from the fire and its combustion byproducts including soot, ash and char. *See Depo. Sumner, p 17, l. 10-17; p. 18, l. 11-16; p. 22, l 20-25; p. 23, l. 1.*" *Second Affidavit Sumner, ¶ 3.* After making an independent examination, Sumner concluded:

> (3)    The Scope of Work described by Young and Associates in its report represents the actual damage to the Knights Inn caused by the fire and its by-products, and the work required to repair the damage. This proposed work, including demolition and replacement of materials in the fire room and adjacent rooms only, with cleaning of the other areas, is more than adequate to remediate the impact of the fire on the Knights Inn building and rooms and render the Site habitable once remediated after mold and trash have been remediated and climate controlled is restored.

*(First) Affidavit of Thomas Sumner, ¶ 31(3).* [Doc. 105-32]. In his expert report, Sumner opined as follows: "It is the opinion of U.S. HELM that the original Scope of Work, as provided by Young and Associates, was more than adequate to remediate the site from smoke impacts of the fire." [Doc. 122-2, p. 19 of 335]. Sumner's first and second affidavits simply described how he conducted his independent examination of the alleged fire damage and reached his own conclusions regarding the extent of the damage. Sumner in his second affidavit was authorized to explain the scope of the work he was retained to perform in order to refute Haman's mischaracterizations of that work in its motions to exclude Sumner and to strike his first affidavit.

Haman's incorrect pronouncement that Sumner's "entire involvement in this case has been improperly and artificially controlled by Young & Associates," *Motion to strike, p. 5,* has been proven untrue. Sumner performed his own investigation, took photographs and samples, commissioned an accredited laboratory to perform confirmatory testing at Level 4 on the samples taken by Sumner, and formed his own conclusions, which included the conclusion that the remediation measures proposed by Young & Associates were adequate to repair the damage to the building caused by fire.

## IV.   THAT SUMNER DID NOT PERFORM A MOLD ANALYSIS DOES NOT MAKE HIM AN UNRELIABLE WITNESS

This section of Haman's motion repeats Haman's arguments in its motion to strike Sumner's first affidavit, which were a repeat of Haman's arguments in its motion to exclude Sumner as an expert witness. Chubb again respectfully requests that the Court refer to Chubb's response in opposition to Haman's motion to exclude Sumner as an expert witness [Doc. 122], in which Chubb's response to this argument can be found.

In further response to Haman's arguments in this section of its motion, Sumner's reliance upon the test results of an accredited laboratory is not ground for excluding Sumner's affidavit testimony. An expert may rely upon the results of laboratory testing, provided he finds those results to be reliable. Sumner's second affidavit explains why he finds the EMSL laboratory test results are reliable.

## V.    NO PORTION OF SUMNER'S SECOND AFFIDAVIT IS INADMISSIBLE HEARSAY AND NO PORTION IS IRRELEVANT

As an expert industrial hygienist, Sumner is permitted under Rule 703 to reference the work of Young & Associates, which prepared a report on the remediation and repair measures that are necessary to restore Haman's fire-damaged rooms; specifically, repair and cleaning. Sumner is qualified and authorized by Rules 702 and 703 to opine that Young & Associates' recommendations were sufficient and based upon an accurate scope of the fire damage. That Haman did not remediate any of the damages has no bearing on the admissibility of Sumner's independent opinions regarding what was needed to repair those damages. One of the issues in this case is the extent of damages suffered by Haman as a result of the fire. Sumner's opinions are on-point and relevant to that issue.

Haman again attempts to mislead this Court by referencing Sumner's phrase "legally defensible analysis" and juxtaposes it with the phrase "protect Young & Associates' findings." *Motion to strike, p. 9.* Haman previously asserted this straw man fallacy in its motion to strike Sumner's first affidavit and its motion to exclude the expert opinions of Sumner. As discussed above, Sumner was authorized to refute this allegation. In his second affidavit, Sumner explained why he commissioned Level 4 testing from EMSL and what he meant by the phrase "legally defensible:"

> The allegations in paragraph 4 of Haman's motion construe my deposition testimony outside of its proper context. My testimony regarding a "legally defensible analysis" begins on page 105 of my deposition where I explain that

14

I understood from Wade Bushman of Young & Associates that this case might go to arbitration. I understood arbitration to be a proceeding similar to a court of law, where legally admissible evidence is introduced. As I explained on pages 106-107 of my deposition, I recommended to Mr. Bushman that he authorize me to spend the money necessary to purchase a Level 4 test of the samples I took from inside the walls, ceilings and floors of Haman's rooms. The results of a Level 4 test are considered "confirmatory" for the presence or absence of the byproducts of fire, such as soot, ash and char. Because the results of a Level 4 test are "confirmatory," I understood they would be admissible in evidence at arbitration and would provide a legally defensible analysis of whether the byproducts of fire were present or absent in Haman's rooms. As I explained at my deposition, Mr. Bushman agreed with my recommendation and authorized me to spend the money to obtain Level 4 testing of the samples of materials taken from inside and on the walls of Haman's rooms.

*Second Affidavit Sumner, ¶ 13.* Haman's incorrect argument regarding Sumner allegedly "protect[ing] Young & Associates' findings" suggests without any evidence that the results of EMSL's testing were known in advance or pre-determined. There is nothing improper with commissioning reliable testing that produces evidence that is admissible in a court of law, notwithstanding Haman's repeated pronouncements to the contrary.

## V1.    <u>CONCLUSION</u>

For the reasons and on the grounds argued above, Haman's motion to strike the second affidavit of Thomas Sumner should be denied.

This 8th day of October, 2020.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*

MICHELLE A. SHERMAN
Georgia Bar No. 835980
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

-and-

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON SALE
LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

-and-

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax: 205-324-7097
dlee@pljpc.com

*Attorneys for Defendant*
*Chubb Custom Insurance Company*

#497135

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 8th day of October, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following: <u>Gary V. Conchin, Kenneth B. Cole, Jr., Gregory A. Brockwell, and Jason R. Smith</u>, and I certify that I have e-mailed and mailed by United States Postal Service the document to the following non-CM/ECF participants:

      N/A

                          */s/ Wayne D. Taylor*
                          WAYNE D. TAYLOR
                          Georgia Bar No. 701275
                          *Admitted pro hac vice*