FILED

2021 Mar-29  PM 02:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-KOB |
| v. | ) |
| | ) **OPPOSED** |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHUBB CUSTOM INSURANCE COMPANY FOR PARTIAL RECONSIDERATION OF ORDER DENYING CHUBB'S MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF THOMAS J. IRMITER

WAYNE D. TAYLOR
Georgia Bar No. 701275
MICHELLE A. SHERMAN
Georgia Bar No. 835980
Mozley, Finlayson & Loggins LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com
msherman@mfllaw.com

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON
SALE LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600, Fax:205-324-7097
dlee@pljpc.com

*Attorneys for Chubb Custom Insurance Company*

## <u>TABLE OF CONTENTS</u>

I.   OVERVIEW ...................................................................................1

II.  STATEMENT OF FACTS ..............................................................3

III. ARGUMENT AND CITATION OF AUTHORITY.......................................7

   A.   The Court Failed To Apply The Three-Part Gatekeeping
        Analysis Required Under Rule 702 And Daubert..............................7

        (1)   Irmiter's Lack Of Qualifications ..................................8

        (2)   Lack Of A Reliable Methodology .................................

        (3)   "Presumptive" Lab Test Results Are Not A Sufficient
              Basis For Irmiter To Testify To The Presence Of Soot
              From The 2014 Fire "To A Reasonable Degree Of
              Scientific Certainty"..................................................16

IV.  CONCLUSION.............................................................................19

# TABLE OF AUTHORITIES

*Abrams v. Ciba Specialty Chemicals Corp.,*
2010 U.S. Dist. LEXIS 19155 (S.D. Ala. Mar. 2, 2010) .................................. 11-13

*Allison v. McGhan Med. Corp.,*
184 F.3d 1300, 1306 (11th Cir. 1999) ....................................................... 9

*Brantley v. Int'l Paper Co.,*
2017 U.S. Dist. LEXIS 81818 at *30 (M.D. Ala. May 24, 2017) ..................... 9, 18

*City of Tuscaloosa v. Harcros Chems.,*
158 F.3d 548, 562 (11th Cir. 1998 ) ......................................................... 8

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,*
402 F.3d 1092, 1107 (11th Cir. 2005) ...................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579, 589 (1993) ............................................... 2-3, 7-9, 13-14, 16

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,*
285 F.3d 609, 614 (7th Cir. 2002) ......................................................... 13

*Eastridge v. Norfolk S. Ry. Co.,*
2008 U.S. Dist. LEXIS 125126 at *20-21 (N.D. Ala. Feb. 15, 2008) .............. 11, 14

*Ex Parte Mobile Power & Light Co.,*
810 So.2d 756, 759-60 (Ala. 2001) ........................................................ 17

*Fuller v. Winn Dixie Montgomery, LLC,*
2017 U.S. Dist. LEXIS 112777 at * 23 (S.D. Ala. 2007) ............................... 17

*Goldberg v. Fla. Int'l Univ. Bd. of Trs.,*
2019 U.S. Dist. LEXIS 27955 at *6 (S.D. Fla. Feb. 7, 2019) ......................... 14

*In re TMI Litig.,*
193 F.3d 613, 715-16 (3d Cir. 1999) ...................................................... 14

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) ............................................... 13

*Lowery v. Sanofi-Aventis LLC,*
U.S. Dist. LEXIS 43905 (N.D. Ala. Mar. 9, 2021) ..................................................13

*Paz v. Brush Engineered Materials, Inc.,*
555 F.3d 383, 388 (5th Cir. 2009) ..........................................................................17

*Robinson v. GEICO Gen. Ins. Co.,*
447 F.3d 1096, 1101 (8th Cir. 2006) ........................................................................9

*Steckyk v. Bell Helicopter Textron, Inc.,*
295 F.3d 408 (3rd Cir. 2002) ..................................................................................16

*United States v. Barton,*
909 F.3d 1323, 1331 (11th Cir. 2018) ......................................................................7

*United States v. Frazier,*
387 F.3d 1244, 1260 (11th Cir. 2004) ...............................................................7, 15

*Weisgram v. Marley Co.,*
169 F.3d 514, 519 (8th Cir. 1999) ..........................................................................16

Federal Rule of Evidence 702...............................................................2, 15, 16, 17

Defendant Chubb Custom Insurance Company ("Chubb") respectfully files this memorandum of law in support of its motion for partial reconsideration of this Court's order [Doc. 151] denying Chubb's motion to exclude the expert opinion testimony of Thomas J. Irmiter ("Irmiter") as follows:

## I.   OVERVIEW

This lawsuit involves a claim for wind damages and a claim for fire damages to the property of plaintiff Haman, Inc., d/b/a Knights Inn ("Haman"). Haman designated Thomas J. Irmiter as its causation and damages expert for both claims. Chubb filed a motion to exclude Irmiter's opinions regarding the causes of the losses involved in both claims. [Docs. 100 and 101]. This Court denied Chubb's motion. [Doc. 151]. *See Transcript of Hearing, p. 86; Exhibit 1 to Chubb's Motion for Reconsideration.* Chubb asks the Court to reconsider its order with regard to Irmiter's opinions about the fire claim only.

Irmiter, who is <u>not</u> a certified fire investigator or industrial hygienist, plans to testify at trial "to a reasonable degree of scientific certainty" that smoke from a fire in 2014 allegedly spread through the HVAC system in one of Haman's buildings and deposited soot into the hidden cavities in the ceilings, walls and floors of all 80 units (rooms) of the building. While it is undisputed that fire damaged approximately 34 rooms in the building, the parties dispute whether soot from the fire penetrated any or all of the remaining 46 rooms.

- 1 -

Respectfully, this Court failed to determine whether Irmiter is qualified to testify as an expert on the subject on which he proposes to testify, whether he may properly serve as a mere conduit for the unaccredited Carlson Labs report that found only "presumptive positive" levels of soot in some of the samples taken by Irmiter's team from some of the disputed rooms, and whether Irmiter's opinions, which are based exclusively upon the lab report of an undisclosed expert,[1] are the product of a reliable methodology and based upon sufficient facts.

Irmiter's opinions regarding the extent of the soot damage are not admissible as expert opinion testimony under Federal Rule of Evidence 702 and **_Daubert_**[2] because Irmiter is not qualified to testify as an expert on the subjects on which he proposes to opine, all of which subjects require the application of principles of engineering and science. Irmiter does not have the education, training or experience to apply principles of engineering and science in the capacity of an expert and to testify as an expert in these matters. Irmiter relies instead only upon a report from a laboratory that performed microscopic testing of samples Irmiter's employees took from inside the walls, ceilings and floors of the some of the disputed rooms ("the Carlson report"). The Carlson report concluded that some of the samples "were presumptive positive" for microscopic evidence of soot, which means only that soot

---

[1]  "Undisclosed" means Haman did not designate anyone from Carlson Labs as a testifying expert.
[2] **_Daubert v. Merrell,_**  509 U.S. 579 (1993).

may or may not be present. Irmiter, based solely upon the results of the Carlson report, plans to tell a jury that in his opinion as an alleged expert, soot from the fire penetrated all 80 rooms in Haman's building.

This Court should reconsider its ruling denying a portion of Chubb's motion and enter an order finding that (1) Irmiter is not qualified to testify as an expert regarding whether the fire at Haman's hotel deposited microscopic levels of soot in the hidden spaces in the walls, ceilings and floors of the disputed rooms, and (2) Irmiter's' opinions based solely upon the test results of an undisclosed expert, Carlson Labs, are not admissible because they are not based upon a reliable methodology, and (3) test results that are merely "presumptive" (meaning "it may be or it may not be" soot) are at best 50-50, which does not rise above the level of speculation, and therefore does not provide sufficient facts upon which an expert may base an opinion to a reasonable degree of scientific certainty.

## II.   **STATEMENT OF FACTS**

Irmiter does not have a degree in any science field. *Deposition of Thomas Irmiter p. 35, l. 24-25. P. 239, l. 17-21.* [Doc. 101]. He is not a certified fire investigator. *Id., p. 268, l. 15-22.* Irmiter does not have specialized training or credentials in sampling. *Id., p. 66, l. 2-9.* He is not an industrial hygienist. *Id., p. 64, l. 12-13, 22-24.* Irmiter does not meet the requirements of the American Board of

- 3 -

Industrial Hygiene to be a certified industrial hygienist. *Id., p. 65, l. 16-24; p. 240, l. 22-25.* He does not possess any licenses. *Id., p. 184, l. 1-25; p. 185, l. 1.*

Irmiter visited Haman's property in June 2015, where he spent one and one-half hours. *Depo. Irmiter, p. 143, l. 21-25; p. 144, l. 1.* He "cruised through the hallways pretty quickly in each building and peeked [his] head into" ten, twelve or fifteen of the hotel units. *Id., p. 144, l. 8-11, 20-24.* "Literally opened the door and popped – you know, popped my head in." *Id., p. 144, l. 12-15.* Irmiter did <u>not</u> enter any of the units. *Id., p. 144, l. 16-17.* His son Jim Irmiter and Adam Piero took swab and bulk samples from some of the rooms and sent them to NG Carlson Labs in Brighton, Minnesota [Carlson Labs] for analysis.[3] Based upon Carson Labs' analysis of the samples, Irmiter authored his report. *Id., p. 236, l. 23-25; p. 237, l. 12-22.*[4] Irmiter did <u>not</u> take any of the samples himself. *Id., p. 235, l. 7-9. P. 258, l. 15-21.*

Based solely upon the Carlson Labs' Level 1 presumptive test results of tests performed by the lab on samples taken by Irmiter's team from inside the walls of some of the disputed rooms, Irmiter plans to testify as an expert at trial that the hollow interiors of the CMU [concrete masonry units; *i.e.,* concrete block walls] in all of the disputed rooms were "loaded with soot based upon Mr. Carlson's analysis."

---

[3] Neither Irmiter, his son Jim Irmiter, nor Adam Piero are industrial hygienists. *Depo. Irmiter, p. 239, l. 22-25; p. 240, l. 4-11.*
[4] Haman has not disclosed anyone from Carlson Labs as an expert witness in this case.

*Id., p. 265, l. 2-5.* Irmiter conceded that he can give an opinion only regarding the rooms that his team sampled, which was 20 out of 80 rooms in building number three, *id., p. 282, 9-19,* yet he plans to testify as an alleged expert that all 80 rooms in the building were damaged by soot from the fire.

Irmiter did not perform any independent testing or analysis of the interiors of the walls, ceilings or floors of the disputed rooms to determine whether soot penetrated the hidden spaces in all (or any) of the disputed rooms. Irmiter's report, which confirms that he relied exclusively on the Carlson report, states in part as follows:

> Based upon the site inspection and documentation of the damages … including review of our <u>soot sampling</u>, I have concluded that the property at question … has been damaged by fire and deposition of soot throughout the structure. <u>Based on sample results</u>, and the construction of the building, it is my opinion that the fire caused substantial damage to the building through the deposition of carcinogenic soot into hidden wall, ceiling and floor cavities. This soot is still viable in the ambient air <u>based upon our sampling results</u>.

*Expert Report of Thomas J. Irmiter* [Doc. 100-1, pages 468 – 485 of 485] (Emphasis added). Irmiter's report incorporates the results of Carlson Labs' testing on the samples taken by Irmiter's team. *See* [Doc. 100-1, pages 473-482 of 485].

Irmiter agreed the Level 1 test results obtained from the unaccredited Carlson Labs merely are "presumptive" [evidence of the presence of soot from fire in the hidden cavities of the walls, ceilings and floors of Haman's rooms]. *Depo. Irmiter, p. 246, l. 9-15.* In the industrial hygiene field, a positive presumptive result means

- 5 -

only that a substance <u>may</u> be present. *Affidavit of Thomas Summer, CIH, CSP, CHMM,* ¶ 24 with attached expert report. [Doc. 105-32]. Sumner explained in his report that Irmiter's samples taken on AOC cassettes (see Sumner's critique of these samples on page 3 of his report) and the Level 1 testing that Irmiter commissioned from Carlson Labs did not conform to the standards of the American Society of Testing and Materials (ASTM), including Standard D6602-13, Standard Practice for Sampling and Testing of Possible Carbon Black Fugitive Emissions. Sumner wrote:

> This standard clearly states that soot analysis on AOC cassettes is limited to presumptive analysis level only. Transmission Electron Microscopy (TEM) analysis is required to resolve the submicron size and the aciniform (spherical) morphology of the particles for definitive analysis, and TEM cannot be used with samples collected on AOC cassettes. As a result, the soot sampling and analysis in the FBS report[5] cannot be relied upon as accurate.

[Doc. 105-32, p. 16 of 339]; *see also Second Affidavit of Sumner.* [Doc. 122-1].

Irmiter conceded that Level 4 analysis [which Carlson Labs did <u>not</u> perform in this case], according to Irmiter, is "defensive in the courts." *Depo. Irmiter, p. 246, l. 16-23.* Irmiter does <u>not</u> believe that Carlson Labs is capable of performing a Level 4 analysis. *Id., p. 254, l. 21-23. In fact, Irmiter said, Carlson Labs cannot perform any confirmatory analysis for the presence of soot from fire. Id., p. 263, l, 20-23.* Irmiter has not provided any basis for his assertion that Carlson Labs' test results, which Irmiter conceded are not confirmatory of the presence of soot, prove that

---

[5] Referencing Irmiter's report.

microscopic levels of soot penetrated the hidden spaces in all of the disputed rooms.

Further, those test results are the only basis for Irmiter's opinions in this regard.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Court Failed To Apply The Three-Part Gatekeeping Analysis Required Under Rule 702 And Daubert

The Eleventh Circuit Court of Appeals consistently has reiterated that "Rule 702 compels the district courts to perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Barton,* 909 F.3d 1323, 1331 (11th Cir. 2018)(*quoting United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc), *quoting in turn Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589 (1993)). "Because  expert testimony can be both highly persuasive and difficult for a lay jury to evaluate, the importance of this gatekeeping function 'cannot be overstated.'" *Id.*

When evaluating proffered expert opinion testimony, the district court must find that the expert is qualified and that the opinions are based upon sufficient facts and a reliable methodology. A purported expert's failure to meet any one or more of these three criteria renders the opinion testimony inadmissible. The court in *Barton* explained:

> To faithfully discharge its gatekeeping duty, the trial court must engage in a rigorous three-part analysis and consider whether:
>
> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the

> expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* (*quoting* **City of Tuscaloosa v. Harcros Chems.,** 158 F.3d 548, 562 (11th Cir. 1998). As discussed below, this Court failed to apply parts one and two of the gate-keeping analysis and failed to determine whether Irmiter is qualified to testify competently as an expert regarding the alleged presence of soot inside the hidden spaces of a commercial building as purportedly evidenced by laboratory analysis of samples taken from a few of those rooms, and whether Irmiter's opinions are the result of a reliable methodology.

### (1)   Irmiter's Lack Of Qualifications

At the hearing, this Court stated with regard to Irmiter:

Now, I think you also have challenges to his opinions about the soot damage from the fire and the extensive nature of that; correct?

MR. LEE: Yes, Your Honor.

THE COURT: To that extent, he is not a certified fire investigator or scientist of any kind. And I would agree with you on that.

MR. LEE: Let me just add a couple more points to what Your Honor has said. He has no degree in chemistry. His has no degree of any kind in hygiene whatsoever. And certainly not a certified fire investigator and not a certified industrial hygienist.

THE COURT: And the mere fact that he has worked with industrial hygienists for over thirty years is not the same thing as being one or being trained as one.

*Transcript, p. 83, l. 6-20.* This Court, after noting Irmiter's lack of qualifications as an expert in the fields of industrial hygiene and fire investigation, and his lack of training in any scientific field, simply moved on to an analysis of Irmiter's opinions. This Court ruled:

> … Remember that there is, in essence, kind of a presumption that expert testimony should be allowed, it's not the other way. So, relying upon the huge caveat in Daubert that for the most part cross-examination is the method to attack the weight and credibility to be given to an expert opinion, I'm going to overrule the challenge to Mr. Irmiter's ability to testify as to this alleged soot damage.

*Transcript, p. 86, l. 18-25.*

Respectfully, this Court erred in skipping over the preliminary issue of whether Irmiter is qualified to testify as an expert regarding the alleged presence of soot in the hidden spaces of the disputed rooms. As a matter of law, Haman was required to prove Irmiter's qualifications (as well as the other prongs of Rule 702 and ***Daubert***) by a preponderance of the evidence. ***Daubert,*** 509 U.S. at 592, n.10; *see also **Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,*** 402 F.3d 1092, 1107 (11th Cir. 2005); ***Allison v. McGhan Med. Corp.,*** 184 F.3d 1300, 1306 (11th Cir. 1999)). Importantly, "[f]or an expert to satisfy the qualification requirement of Rule 702, he must possess the requisite skill, experience, and training to offer the testimony he intends to introduce." ***Brantley v. Int'l Paper Co.,*** 2017 U.S. Dist. LEXIS 81818 at *30 (M.D. Ala. May 24, 2017)(*citing **Robinson v. GEICO Gen.***

*Ins. Co.,* 447 F.3d 1096, 1101 (8th Cir. 2006) (area of witness's competence must match subject matter of his testimony).

Here, there is no presumption that Irmiter is qualified as an expert on the subject matter at issue. As this Court noted, Irmiter has no training in any scientific field. That Irmiter has "worked around" industrial hygienists fails to establish his specific qualifications regarding the highly technical and specified subject matter at issue, which is the presence of microscopic levels of soot inside of the walls, ceiling and floors of a room that can be detected only by microscopic analysis of samples taken in accordance with the ASTM. Haman failed to meet its burden of proving that Irmiter is qualified to testify as an expert in this subject matter.

The Carlson report, alone, does not qualify Irmiter as an expert in the subject matter contained in the Carlson report. As discussed below, in the Eleventh Circuit a purported expert cannot pass the test for being qualified as an expert merely by parroting a purportedly qualified expert's opinions. If that were all that were needed, anyone could come into court holding a scientific report and testify as an expert by reading to the jury the contents of the report. Irmiter proposes to go much farther; he plans to tell the jury what he thinks the Carlson report's results mean – *i.e.,* he plans to tell the jury that based upon the results of the testing of samples taken from inside the walls of a some of the disputed rooms, which results only were "presumptive positive" for microscopic levels of  soot in some samples (meaning soot might be

present, or it might not), the jury may conclude that soot penetrated all of the disputed rooms. Irmiter is not qualified as an expert to render these opinions and his possession of the Carlson report does not qualify him. In *Eastridge v. Norfolk S. Ry. Co.,* 2008 U.S. Dist. LEXIS 125126 at *20-21 (N.D. Ala. Feb. 15, 2008), the court explained that a process whereby a purported expert relies solely upon another expert's report fails to establish the expert as qualified to testify to the opinions of the other expert and fails to render his methodology reliable. The court in *Eastridge* held:

> Since Dr. Goldsmith relied solely on the testimony of Plaintiff and the findings of another expert regarding Plaintiff's exposure and the risk of exposure at the Sevier Yard, found no epidemiological literature suggesting that locomotive engineers may be at risk of contracting silicosis, and performed no independent investigation of the rail yard, Dr. Goldsmith does not have sufficient knowledge or expertise to make a projection about Plaintiff's exposure or about the risk of exposure at the John Sevier Yard. [cit.]. Dr. Goldsmith may not simply repeat the opinions of other experts in the case; therefore, he is precluded from testifying as to Plaintiff's exposure or the risk of exposure at the Sevier Yard.

Similarly, in *Abrams v. Ciba Specialty Chemicals Corp.,* 2010 U.S. Dist. LEXIS 19155 (S.D. Ala. Mar. 2, 2010), the court refused to allow a purported expert without expertise in dust or chemical engineering to incorporate the opinions of several of engineers that he had consulted when preparing his own expert opinion. The court found that the expert lacking expertise was a mere conduit, passing off the

undisclosed other experts' opinions as his own. This process did not render the expert

qualified. The court reasoned:

> The sticking point -- and the basis for plaintiffs' Motion -- is that Dr. Zannetti's opinions on this topic are not really his opinions at all. They are Dr. Jennings' opinions. Dr. Zannetti readily admits that he is a physicist, "not a chemical or dust engineer," and that he is not "an expert in this industrial activity." Nonetheless, Dr. Zannetti proposes to offer specific opinions at trial as to vapor/air emission rates from the comminution process at the Ciba plant, even though he did not formulate these opinions and disclaims any expertise in the engineering discipline on which they are grounded. Such testimony is improper and impermissible under the Federal Rules of Evidence.

*Abrams,* 2010 U.S. Dist. LEXIS 19155 at *18. The court further explained:

> Dr. Zannetti's report and deposition testimony are absolutely clear on this point. He is acting as a mere conduit for Dr. Jennings' opinions, passing off the opinions of that undisclosed expert as his own even though they admittedly are outside his ken. What he seeks to do extends far beyond mere "rel[iance] on information and data provided by [Dr.] Jennings," as defendants have wrongly characterized it. (Doc. 328, at 4.) Of course, Dr. Zannetti is free to rely on information and data from another expert in formulating his opinions. However, at the end of the day, it is imperative that Dr. Zannetti apply his knowledge to the facts and form his own opinion. As to the comminution loss rates and emission estimates, Dr. Zannetti did nothing of the sort, but instead served as a conduit for the undisclosed Dr. Jennings. This is not a circumstance where Dr. Zannetti used the undisclosed expert's opinion as an input in performing his own analysis and forming his own opinions (as was the case for Dr. Horsak's use of a remediation target derived from another expert's opinions). To the contrary, Dr. Zannetti's opinion is that plaintiffs' comminution loss figures are wrong, but he has no expertise in that area and is simply repeating what Dr. Jennings told him. Such bootstrapping of an undisclosed expert witness's opinions into the reports and testimony of another is plainly improper, where the disclosed expert is treating those opinions as his own (rather than simply relying on information from another expert as underlying data from which he formulates his own expert opinions).

*Abrams,* 2010 U.S. Dist. LEXIS 19155 at *22-25; *see also **Lowery v. Sanofi-Aventis LLC,*** U.S. Dist. LEXIS 43905 (N.D. Ala. Mar. 9, 2021), finding that "Dr. Abney is not qualified to opine on the orthopedic and infectious disease conditions in this case and is otherwise acting as a 'mouthpiece of a scientist in a different specialty.'" ***Lowery,*** at *40 (*citing **Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,*** 285 F.3d 609, 614 (7th Cir. 2002)); ***Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*** 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007)(excluding expert who relied on conclusions of regression analysis prepared by another expert, which he was not qualified to conduct).

Here, Irmiter's possession of the Carlson report does not substitute for his lack of qualifications on the subject on which he proposes to opine as an expert. Irmiter may not merely parrot the results of the Carlson report and call them his own. He also may not tell a jury that Carlson Labs' tests on the samples taken from inside the walls of some of the disputed rooms allegedly show that all of the rooms in Haman's building have soot in their hidden spaces. Irmiter is not qualified under Rule 702 and ***Daubert*** to testify as an expert on these subjects. This Court should reconsider its ruling and enter an ordering precluding Irmiter from testifying as an expert at trial on causation (scope or extent of soot damage) in Haman's fire damage claim on the ground that Irmiter is not qualified as an expert on this subject matter.

### (2)   Lack Of A Reliable Methodology

An expert who relies solely upon tests performed by another expert has

employed an unreliable methodology. In ***Eastridge,*** *supra,* the court held:

> An expert who does not perform his own investigation nor assess the
> validity of the findings but rather relies solely on the findings of other
> experts should be precluded from testifying on such matters to which
> he relies solely on other expert's findings since his methodology is not
> calculated to produce reliable results under ***Daubert***. See ***In re TMI
> Litig.,*** 193 F.3d 613, 715-16 (3d Cir. 1999)(where expert reviewed the
> reports of other experts and offered an opinion based on his review as
> to the radiation exposure of the residents as a result of the reactor).

***Eastridge,*** 2008 U.S. Dist. LEXIS 125126 at *20; *see also* ***Goldberg v. Fla. Int'l***

***Univ. Bd. of Trs.,*** 2019 U.S. Dist. LEXIS 27955 at *6 (S.D. Fla. Feb. 7, 2019),

finding the expert employed an unreliable methodology when he attempted to serve

as a mere conduit for another expert's opinions. The court reasoned:

> Defendant argues that Mr. Egort is "serving as a mere conduit through
> which Plaintiff's counsel is able to introduce the data and information
> considered relevant or helpful to the case." [cit.]. Based on the
> information testified to and proffered at the Daubert Hearing, the
> undersigned finds that this argument is valid, given that Mr. Egort has
> conducted no independent research, nor any verification or critical
> assessment of the data provided to him.

Here, Irmiter's opinions suffer from the same lack of a reliable methodology as

Egort's opinions in ***Goldridge*** and Dr. Goldsmith's opinions in ***Eastridge.*** Irmiter

relied solely upon Carlson Labs' results of testing performed on samples taken by

Irmiter's team from inside the walls, ceilings and floors of some of the disputed

rooms. Irmiter did not perform any independent testing of his own to determine if

- 14 -

soot penetrated the hidden spaces in the disputed rooms. Irmiter plans simply to serve as a conduit for the findings contained in the Carlson report and to put his own "spin" on the meaning of those test results.

In addition, as Chubb's expert Sumner explained, the testing performed by Carlson Labs on the samples contained in Irmiter's AOC cassettes was not a reliable indicator of the presence of soot in the samples because the samples and testing were not performed in accordance with the industry standards – the ASTM standard. Sumner's opinions on this matter have not been refuted. By contrast, Irmiter is not qualified to verify or critique the data contained in the Carlson report or its method of testing.

Irmiter's ultimate opinion "to a reasonable degree of scientific certainty" – that all 80 rooms in Haman's building allegedly are contaminated by deposits of microscopic levels of soot inside the hidden spaces in the walls, ceilings and floors of those rooms – is nothing more than his *ipse dixit* based upon "presumptive" test results that amount to mere speculation.  This does not meet the mandatory standard for admissibility, which requires that "'[t]he trial judge in *all* cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and **not speculative** before it can be admitted.'" ***United States v. Frazier,*** *supra* 387 F.3d at 1262 (*quoting* Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments) (italics in original, boldface added).

Chubb's challenges to Irmiter's opinions are not properly relegated to cross-examination because Irmiter's opinions do not meet the threshold for admissibility. Irmiter's opinions are not the result of a reliable methodology employed by an expert in his field (Irmiter is not an expert in any scientific field). For this reason, Irmiter's opinions regarding the alleged scope of the soot penetration should be excluded.

> **(3)   "Presumptive" Lab Test Results Are Not A Sufficient Basis For Irmiter To Testify To The Presence Of Soot From The 2014 Fire "To A Reasonable Degree Of Scientific Certainty"**

Irmiter's opinion "to a reasonable degree of scientific certainty" that soot from the 2014 fire allegedly penetrated the hidden spaces of all 80 rooms of Haman's hotel is nothing more than an assumption that is not supported by the evidence. It is mere speculation. "It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record." ***Steckyk v. Bell Helicopter Textron, Inc.,*** 295 F.3d 408 (3rd Cir. 2002). Stated differently, an expert's opinion cannot be based upon "unsupported speculation." ***Daubert,*** 509 U.S. at 590; *see also* ***Weisgram v. Marley Co.,*** 169 F.3d 514, 519 (8th Cir. 1999) (expert testimony is nothing more than "patent speculation" when there is "no evidence in the record" to support it.), *aff'd,* 528 U.S. 440, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000); Fed. R. Evid. 702 Advisory Committees Note, 2000 Amendments ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted"). Further, "[w]here an

expert's opinion is based on insufficient information, the analysis is unreliable." ***Paz v. Brush Engineered Materials, Inc.,*** 555 F.3d 383, 388 (5th Cir. 2009); *see also* Fed. R. Evid. 702 (expert testimony must be "based upon sufficient facts or data").

Irmiter's opinion "to a reasonable degree of scientific certainty" that soot from the 2014 fire allegedly penetrated the hidden spaces in all 80 of Haman's rooms is based entirely upon the "presumptive positive" results of tests performed by Carlson Labs on sampling taking by Irmiter's team from some of the rooms. A true expert in this field, Sumner, who is a certified industrial hygienist and a chartered chemist (among other qualifications), explained the inadequacies in Irmiter's sampling and Carlson Labs' testing, which render the test results unreliable. *See, Aff. Sumner.*

Moreover, the "presumptive positive" test results, even if reliable, mean only that soot may or may not be present in the samples. *Aff. Sumner, ¶ 24; see also Depo. Irmiter; p. 238, l. 7-25; p. 247, l. 22-25 (admitting that the presumptive test results are not confirmatory for the presence of soot).* This "50-50" testimony regarding the presence of soot, and soot that originated from the 2014 fire, never rises above the level of speculation or conjecture, as it must to be admissible expert testimony.  *See, e.g.,* ***Fuller v. Winn Dixie Montgomery, LLC****,* 2017 U.S. Dist. LEXIS 112777 at * 23 (S.D. Ala. 2007)(*quoting* ***Ex Parte Mobile Power & Light Co.****,* 810 So.2d 756, 759-60 (Ala. 2001)("'*if the evidence is without selective application to any one*'" of "'*two or more plausible explanations as to how an event happened or what produced*

*it, they remain conjectures only*'"); **Brantley**, *supra,* 2017 U.S. Dist. LEXIS 81818 at *78("plaintiffs cannot proceed to trial based on a mere hunch that the mill's emissions caused the property damage alleged").

Irmiter did not perform any additional tests of the material in the rooms' walls, ceiling or floors; rather, he relied solely upon the Carlson report and his interpretation of it. Irmiter simply speculated a causal connection between the soot presumed to be in the samples and the 2014 fire.  Chubb's expert Sumner opined that soot, a by-product of combustion (fire), is produced by the everyday activities of burning candles, smoking cigarettes and burning food in a microwave oven. According to Sumner, one cannot assume that all of the soot samples collected from Haman's hotel rooms were deposited by smoke from the March 2014 fire. Other potential sources must be considered and evaluated. There was evidence that vagrants had occupied a number of the rooms and there was a small charcoal grill in one room, which had evidence of recent use. *Aff. Sumner, ¶ 29.* Therefore, the presumed presence of soot in the samples Irmiter submitted to Carlson Labs does not establish a causal connection to the 2014 fire. To suggest otherwise is pure speculation.

There is no admissible evidence in the record that would support Irmiter testifying to a reasonable degree of scientific certainty that soot from the 2014 fire penetrated all 80 rooms (even if Irmiter was qualified to testify to this, which he is

not). There is too great of an analytic gap between the facts and the conclusion that Irmiter has propounded.

## IV.   <u>CONCLUSION</u>

For the reasons and on the grounds discussed above, Chubb respectfully asks this Court to reconsider its order with regard to Irmiter's opinions about the fire claim only and enter an order finding that Irmiter is not qualified to testify as an expert regarding whether the 2014 fire at Haman's hotel deposited microscopic levels of soot in the hidden spaces in the walls, ceilings and floors of all 80 rooms (or any rooms), and finding that Irmiter's opinions regarding the scope and extent of the damage allegedly caused by 2014 fire and soot are inadmissible because his opinions are not the product of a reliable methodology and they are not based upon sufficient facts.

This 29th day of March, 2021.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*
MICHELLE A. SHERMAN
Georgia Bar No. 835980
*Admitted pro hac vice*
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338
Tel: (404) 256-0700
Fax: (404) 250-9355
wtaylor@mfllaw.com

msherman@mfllaw.com

-and-

MARK D. HESS
Alabama Bar No. ASB-0008-E66M
HAND ARENDALL HARRISON SALE
LLC
1801 5th Avenue North, Suite 400
Birmingham, Alabama 35203
Tel: (205) 324-4400
Fax: (205) 322-1163
mhess@handfirm.com

-and-

DAVID A. LEE
Alabama Bar No. ASB-3165-E47D
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, AL 35216
Tel: 205-326-6600
Fax: 205-324-7097
dlee@pljpc.com

*Attorneys for Defendant*
*Chubb Custom Insurance Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| HAMAN, INC. d/b/a KNIGHTS INN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action File No. |
| | ) 2:18-CV-01534-JHE |
| | ) |
| v. | ) |
| | ) |
| CHUBB CUSTOM INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CHUBB CUSTOM INSURANCE COMPANY FOR RECONSIDERATION OF ORDER DENYING CHUBB'S MOTION TO EXCLUDE THE EXPERT OPINION TESTIMONY OF THOMAS J. IRMITER** was electronically mailed to the following counsel of record:

Gary V. Conchin
Kenneth B. Cole, Jr.
Franklin Taylor Rouse
Conchin, Cloud & Cole, LLC
2404 Commerce Court SW
Huntsville, Alabama 35801
gary@alainjurylaw.com
kenny@alainjurylaw.com

-and-

1

Gregory A. Brockwell
Jason R. Smith
Brockwell Smith LLC
2100 1st Avenue North, Suite 300
Birmingham, Alabama 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

*Attorneys for Plaintiff Haman, Inc. d/b/a Knights Inc.*

This 29th day of March, 2021.

*/s/ Wayne D. Taylor*
WAYNE D. TAYLOR
Georgia Bar No. 701275
*Admitted pro hac vice*

#506341

2