## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **HAMAN, INC.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:18-CV-01534-KOB** |
| **CHUBB CUSTOM INSURANCE** | ] | |
| **COMPANY,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

This case involves a lengthy and contentious insurance coverage dispute involving a Knights Inn motel in Bessemer, Alabama. Haman, Inc., has owned the Knights Inn since 1995. Chubb Custom Insurance Company insured the property at the time of the two events leading to this lawsuit—a fire on March 22, 2014, that damaged the motel's "Studio Inn"; and high winds resulting from a nearby tornado on April 28, 2014, that allegedly damaged the motel's three roofs and caused interior water damage. Haman submitted three claims to Chubb for these two incidents—first a claim for fire damage to 36 rooms and a stairwell in the Studio Inn; then an additional claim for smoke and soot damage to all 80 rooms in the Studio Inn; and lastly a claim for alleged wind damage to the three roofs and interior water damage allegedly resulting from the roof damage.

The parties agree that the damage to the 36 rooms resulting from the fire is

1

covered under the policy and that fire and wind damage are covered causes of loss. On the fire claim, Chubb initially agreed to submit the claim to appraisal in August 2015 but backed out partially through the process: first asserting that coverage issues were implicated, and later asserting that Haman's appraiser, Chuck Howarth, was not "impartial," as required under the insurance policy's appraisal provision. On the "wind claim," Chubb refused to submit to the appraisal process, asserting that because of questions over causation, the dispute was not appropriate for appraisal and that Haman had not timely notified Chubb of the loss.

Because Chubb stopped the appraisal process on the fire claim and refused to submit to appraisal on the wind claim, Haman brought suit. A first suit filed in state circuit court in February 2016 was dismissed; the court found that Haman had not complied with its post-loss obligations. In August 2018, Haman filed another action in circuit court, which Chubb removed to this court.

The case now comes before the court on Haman's motion for partial summary judgment (doc. 88) and Chubb's motion for summary judgment (doc. 102). Haman seeks partial summary judgment in its favor and against Chubb on Haman's breach of contract claim as it relates to Chubb's alleged breach of the insurance policy's appraisal provision. Haman asks the court to find as a matter of law that Chubb breached the parties' contract by refusing to honor the appraisal provision as to both the fire and wind claims. Defendant Chubb filed a response

(doc. 123), and Haman filed a reply (doc. 129).

Defendant Chubb seeks summary judgment as to each of Haman's claims against it: (1) specific performance to submit to appraisal, (2) breach of contract, and (3) bad faith. (Doc. 102). Chubb asserts that it is entitled to summary judgment on Haman's specific performance claim, asserting that appraisal for the fire claim and the wind claim would be inappropriate given the cause of loss issues, that Haman did not comply with post-loss obligations, and that Mr. Howarth was not an impartial appraiser. Chubb asserts that it is entitled to summary judgment on Haman's breach of contract claim as it relates to the fire claim because Haman has no admissible evidence to show that the disputed damages were caused by covered causes of loss. Chubb asserts that it is entitled to summary judgment on Haman's breach of contract claim as it relates to the wind claim because Haman did not timely file notice of the claim and because Haman has no admissible evidence to show that the disputed damages were caused by covered causes of loss. Lastly, Chubb asserts that it is entitled to summary judgment on Haman's bad faith claim because Chubb did not act unreasonably in its handling of Haman's claims. Plaintiff Haman filed a response (doc. 121), and Chubb filed a reply (doc. 139).

The motions are now ripe for review. After considering the submissions of the parties and the record evidence, the court **DENIES** Plaintiff's motion for partial summary judgment for its breach of contract claim as it relates to the

3

appraisal provision; **DENIES** Defendant's motion for summary judgment as to the breach of contract claim as it relates to the fire claim but **GRANTS** Defendant's motion for summary judgment as to the breach of contract claim as it relates to the wind claim; **GRANTS** Defendant's motion for summary judgment as to the bad faith claim; and **GRANTS** Defendant's motion for summary judgment as to specific performance to compel appraisal on both the fire and the wind claims.

The court notes that in a previous memorandum opinion (doc. 150), it granted Chubb's motion to exclude the testimony of Haman's expert Charles ("Chuck") Howarth on the disputed cause of loss issues but denied Chubb's motion to exclude the testimony of Haman's expert Thomas J. Irmiter on the cause of loss issues. The court denied Chubb's motion to reconsider the court's ruling regarding Mr. Irmiter's opinions. (Doc. 156). In making its findings in this Opinion, the court has not considered Mr. Howarth's opinions on causation but has considered Mr. Irmiter's to the extent appropriate.

## I.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment on a claim or defense when the moving party establishes that (1) no genuine disputes of material fact exist, and (2) the moving party is entitled to judgment as a matter of law.

The moving party bears the initial burden of "informing the district court of

the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56).

The burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether a jury could reasonably return a verdict for the non-moving party based on the evidence the nonmoving party presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). The court must also view the evidence in the record in the light most favorable to the non-moving party, drawing reasonable inferences in its favor. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Inferences can create genuine issues of material fact. *Carlson v. FedEx Ground Package Sys., Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015). But "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury would reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

In considering the evidence, the court may not make credibility determinations or weigh the evidence, both of which are "jury functions." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (quoting *Liberty Lobby, Inc.*, 477 U.S. at 255) (internal quotations omitted).

## II.   FACTS AND BACKGROUND

Since 1995, Haman, Inc., has owned a Knights Inn motel in Bessemer, Alabama. The Knights Inn consists of three buildings: the "Studio Inn," an 80-room building designed for extended-stay customers; a second building with event spaces and guest rooms for short-term customers; and a third building with a lobby, restaurant and bar, swimming pool, and office.

Chubb Custom Insurance Company insured the Knights Inn with a commercial property insurance policy at the time of the two events that led to this lawsuit—a fire that burned the Studio Inn on March 22, 2014 (the "fire claim") and winds resulting from a nearby tornado, which allegedly damaged the Inn on April 28, 2014 (the "wind claim").

The Chubb policy, 99783420-00, included coverage for all risks of direct physical loss—excluding earthquakes or floods—that were not otherwise excluded or limited by the policy. Haman paid all insurance premiums at the relevant times. Haman purchased coverage of $1.15 million for the Studio Inn and $1.6 million for the other two motel buildings. The policy included an appraisal provision, which

allowed the parties to demand appraisal when they "disagree[d] on the value of the property or the amount of loss."

A. The "Fire Claim"

On March 22, 2014, a fire damaged the Studio Inn. (Doc. 38-1). Haman timely reported the damage, and on September 30, 2014, Haman submitted a sworn partial proof of loss, prepared by Chubb's adjuster Brent Perich, claiming structural fire damages of $466,838.73 (not reduced to actual cash value or for depreciation). (Docs. 38-1; 90-53, Perich depo. at 81). On the same date, Haman also submitted a sworn partial proof of loss for the building's contents for $26,481.40. (Doc. 90-7).

In November 2014, Chubb paid for the fire damage in an adjusted payment of $357,401.93 for the structural damage; on a date unclear from the record, Chubb paid $27,601.01 for the contents. (Docs. 105-33, 116-1 ¶ 8).

On January 29, 2015, Haman retained The Howarth Group, an insurance claim consulting firm based near Nashville, TN, to determine its amount of loss for the fire claim. (Doc. 38-5). On February 25, 2015, Chuck Howarth, of The Howarth Group, invoked appraisal on Haman's behalf for the fire claim. (*Id.*). When he did so, he produced his appraisal employment agreement with information regarding his fee redacted from it. (*Id.*). According to Mr. Howarth,

"there was a lot more [fire] damage than there was being allowed for in [Chubb's] estimate." (Doc. 123-2, Howarth EUO at 23).

In April 2015, representatives from The Howarth Group, representatives of Young and Associates, and Brent Perich, Chubb's adjuster, met at the Knights Inn to consider the scope of the fire damages. (Doc. 90-29, Grandinetti depo. at 106–108; 90-45 at 4). On May 15, 2015, Chubb received a repair estimate for the fire damage from Young and Associates in the amount of $523,477.01 to repair the fire damage in the Studio Inn. (Doc. 105-32). On August 10, 2015, Haman received a report from Forensic Building Science regarding the scope of the fire loss. (*Id.*).

In late August 2015, Wade Bushman on behalf of Chubb and Chuck Howarth on behalf of Haman signed a Declaration of Appraisal agreement, and the parties agreed that Dale Mullin would serve as the umpire. (Docs. 90-16, 90-17).

According to Chubb, around October 2, 2015, Mr. Howarth "presented Chubb's appraiser with additional information about the scope and nature of the loss," including the Forensic Building Sciences report, stating that "all 80 of the rooms in the damaged motel building have smoke and soot." (Doc. 123-1, ex. 11). Chubb then hired Thomas Sumner of U.S. Helm to inspect the Studio Inn and offer a second report on the extent of the fire damage. (Doc. 105-32). U.S. Helm submitted a report to Chubb in December 2015. (*Id.*).

On another unclear date, Arthur and Sarah Grandinetti on behalf of Haman and Wade Bushman on behalf of Chubb met again at the property "to get as much agreed-upon scope as possible." (Doc. 90-29, Grandinetti depo. at 107–108). At that meeting, Mr. Bushman left before the parties began a walk-through on the property, abandoning the appraisal process. (*Id.*).

On January 11, 2016, counsel for Chubb sent counsel for Haman a letter requesting that Haman submit to an examination under oath, that Haman provide a sworn statement in proof of loss, and that Haman provide Chubb with certain documents, given the expanded scope and nature of the fire loss. (Doc. 123-1, ex. 6).

On January 15, 2016, Chubb's counsel sent Haman's counsel a letter stating that appraisal would be premature "because Chubb is still in the process of receiving information from [Haman] regarding this matter, specifically with the [sic] regard to the scope and nature of the loss and damage." (Doc. 123-11, ex. 11). According to Chubb, Haman's expanded scope of loss necessitated Haman's compliance with post-loss obligations.

On January 30, 2016, Wade Bushman, Chubb's appraiser, signed a second Declaration of Appraisers document with Mr. Howarth. (Doc. 123-1, ex. 15). According to Chubb, the first Declaration of Appraisers document mistakenly included the dates of the fire claim *and* the wind claim, and it only intended to

submit the fire claim to appraisal. On January 30, 2016, Mr. Bushman wrote to Mr. Howarth that although they could sign the revised Declaration of Appraisers document (listing only the fire claim), the appraisers would "need to wait to convene a meeting with the umpire for the purpose of concluding the appraisal until Chubb has finished its investigation and until [Haman] has had an opportunity to complete its duties under the insurance policy." (Doc. 123-1, ex. 15).

The court will now set forth the facts on the wind claim before further discussing the parties' communications about post-loss obligations and appraisal and the subsequent litigation.

B. The "Wind Claim"

On April 28, 2014, a tornado came through Bessemer, Alabama. The tornado passed to the southwest of the Knights Inn property. (Doc. 105-34, Irmiter depo. at 189–90). After the tornado came through, staff at the Knights Inn noticed leaks in the ceilings of the office, the motel restaurant and lobby, and some guest rooms. (Docs. 105-41, Buhkari depo. at 77–80; 105-43, Allen depo. at 150–51). On a date unclear from the record—but presumably after January 29, 2015, when Haman hired The Howarth Group—Arthur Grandinetti, of The Howarth Group, was inspecting the Knights Inn in relation to the fire claim and allegedly noticed wind damage to the motel's roofs. (Doc. 90-20, Howarth depo., at 96–97).  Eleven months after the tornado, on March 26, 2015, Haman reported a loss for wind

damage on the roofs of the buildings, alleging that the motel was in the "direct path" of the April 28, 2014 tornado and that wind had damaged the roofs of all three buildings. (Doc. 105-18). Chubb disputes that wind caused the damage. (Doc. 123 at 5, ¶ 6). On April 8, 2015, Chubb wrote to Haman that York Risk Services Group would investigate the claim and that because the loss was not timely submitted, Chubb would reserve its rights under the policy until investigation could be completed. (Doc. 123-1, ex. 3).

On May 26, 2015, Chubb received a roof inspection from York Risk Services Group, Inc. (Doc. 38-11). The report stated that wind had—at some point—damaged metal coping to one of the roofs but that other damages were due to wear, tear, and deterioration. (*Id.*).

On July 6, 2015, Chuck Howarth, of The Howarth Group, demanded appraisal on Haman's behalf for the wind claim. (Doc. 90-15). The parties disagree as to whether Chubb agreed to appraisal on the wind claim. As previously explained, when Wade Bushman and Chuck Howarth signed the initial Declaration of Appraisal document in August 2015, the document included both the March 22, 2014 and April 28, 2014 date of loss. (Doc. 90-17). But Chubb maintains that including the April date was an inadvertent error. (Doc. 123 at 7, ¶ 16).

And on August 5, 2015, Chubb sent an email to Haman, stating:

We have not received a response from you explaining what you disagree with in our estimate [of $43,284.71]. . . .We do not know if we are in disagreement on

this loss as we have not received your claim for damage. Therefore, it is premature to go to appraisal at this point.

(Doc. 105-67). In that same e-mail, Chubb stated that the interior water damage was not caused by a covered cause of loss. (*Id.*).

On August 20, 2015, Haman received a report from Forensic Building Sciences concluding that the roofs were damaged by wind and that the interior water damage was related to the wind damage. (Doc. 38-12). On August 24, 2015, Chubb sent Haman a letter reiterating that it was not ready for appraisal. (Doc. 123-1, ex. 4).

In October 2015, Chubb received a second opinion regarding the wind damage claim from Kurt Mulder of Engineering Design & Testing Corp., who examined Haman's roofs and interiors and concluded that damages were caused by improper design and installation of the roof, as well as wear and tear. (Doc. 38-12). On December 10, 2015, Chubb provided Haman with a copy of the Engineering Design & Testing Corp. report and rejected appraisal because of the coverage issues but stated that it was not yet denying coverage. (Doc. 38-13).

On December 14, 2015, Chubb's counsel wrote to Haman's counsel that its expert "ha[d] opined that the EPDM roofing and interior water damage are not the result of wind damage, but rather due to the deterioration and wear and tear of the roof." (Doc. 6-7). Chubb also requested that Haman provide a sworn proof of loss and other documents and that Haman submit to an examination under oath as to the

wind claim. (*Id.*). By the time of the December 14 letter, Chubb had adjusted and paid actual cash value of $34,620.62 for damage to metal coping on the roofs but did not concede that the damage was from winds related to the April 2014 tornado. (*Id.*).

In January 2016, Haman filed a 52-page estimate for the wind loss claim, alleging $1,595,608.00 in damages. (Doc. 90-10). It then provided a 41-page contents itemization for $138,082.14 (doc. 90-11) and a common-area wind damage estimate for $56,850.93 (doc. 90-12). On January 11, 2016, Mr. Howarth e-mailed Mr. Bushman: "Wade, I understand that you and I are only in Appraisal now on the fire loss. We both thought you were also on the wind loss at the start but that has changed. Only the fire loss is in Appraisal as I understand it. Thanks." (Doc. 105-69).

Counsel for Chubb set an examination under oath of Haman regarding the wind claim for January 20, 2016. (Doc. 123-1, ex. 2 ¶ 7). Haman then asked to reschedule the EUO. (*Id.* ¶¶ 8–9).

C. Post-Loss Obligations, Counsel Communications, and Procedural History

On February 11, 2016, Chubb again reached out to Haman's counsel regarding examinations under oath for both claims. (Doc. 123-1, ex. 7). On February 24, 2016, counsel for both parties spoke by phone and decided that Haman would submit to an EUO as to both the fire claim and the wind claim at the

same time, tentatively setting the date for March 23, 2016. (Doc. 123-1, ex. 2 ¶ 11). Then on February 25, 2016, Haman filed its first suit in state circuit court. (Doc. 105-1).

On February 29, 2016, Haman's counsel wrote to Chubb's counsel stating that the EUO could go forward on March 23, 2016, but that it would also be treated as a deposition. (Doc. 123-1, ex. 2 ¶ 13; ex. 8). On March 18, 2016, Chubb's counsel wrote to Haman's counsel that "it is clear that your client has no intention of fulfilling the duties and obligations required under the insurance policy," that Haman "breached the policy of insurance" by failing to comply with post-loss obligations, and that an examination under oath could not be a deposition under Alabama law. (Doc. 123-1, ex. 11).

On March 21, 2016, Haman's counsel wrote to Chubb's counsel that Haman "ha[d] fulfilled her duties under the contract of insurance and w[ould] continue to do so" and that it was Chubb's "refusal to timely resolve this loss, in direct violation of the contract and it provisions" that necessitated Haman's lawsuit. (Doc. 123-1, ex. 11).

On April 1, 2016, Chubb's counsel wrote Haman's counsel that "Chubb ha[d] always been willing to move forward with the investigation of [Haman's] claims, and Chubb was in the process of doing so when the lawsuit was filed." (Doc. 123-1, ex. 11). Chubb instructed that it would not proceed with the claim

investigation unless the lawsuit was dismissed with prejudice. (*Id.*). On April 7, 2016, Haman's counsel wrote to Chubb's counsel that they were "unaware of any prior request by the insurance carrier for a proof of loss" and that the insurer usually provided the form. (*Id.*).

On April 8, 2016, Haman filed sworn proofs of loss for the additional fire damage (doc. 90-3) and wind damage (doc. 90-5). On April 26, 2016, Chubb's counsel wrote to Haman's counsel that Chubb could "neither accept, nor reject" the proofs of loss, since Haman filed suit prior to complying with Chubb's request for information. (Doc. 123-1, ex. 11). Chubb stated that it would provide Haman with "one last opportunity to comply with the terms and conditions of the insurance policy" if Haman dismissed the lawsuit and provided dates for examinations under oath. (*Id.*).

On May 9, 2016, Chubb wrote to Haman, stating again that it had never agreed to appraisal on the wind loss. (Doc. 123-1, ex. 11). Chubb also wrote

> As to the fire loss, Chubb initially agreed to pay for the damage. When additional damages were claimed by your client over and above what was agreed to, Chubb agreed to appraisal. Once it became clear that coverage issues were implicated due to the significant increase in the scope of the claimed fire loss, Chubb notified [Haman] that the appraisal process would be placed on hold pending the resolution of the coverage issues.

(*Id.*).

On May 25, 2016, Chubb wrote Haman that its "rush to the courthouse" delayed Chubb's investigation process, that Chubb would not agree to the lawsuit

being stayed for it to complete its investigation, and that Chubb would not agree to appraisal until its investigation was complete. (*Id.*).

On July 5, 2016, the circuit court granted Chubb's motion for summary judgment and dismissed the action. (Doc. 38-7). On October 26, 2016, upon a motion to reconsider from Haman, the circuit court vacated its July 5, 2016 order and dismissed the action without prejudice, finding that Haman failed to comply with post-loss obligations—including submitting sworn proofs of loss, producing documents, and submitting to examinations under oath—as required under the insurance policy. (Doc. 38-8).

On September 26, 2017, Haman's owner, Zarin Visram, submitted to an examination under oath (doc. 38-17), as did Chuck Howarth (doc. 123-2). In his examination under oath, Mr. Howarth testified regarding his fee arrangement with Haman, stating that he charged by the hour but capped his fee at 30 percent of what a client recovered. (Doc. 123-2 at 31). Mr. Howarth submitted to a second examination under oath on December 12, 2017. (Doc. 123-3).

On March 6, 2018, Chubb denied any additional payments for Haman's wind damage claim above the $34,620.62 it had paid for the metal coping, stating that the damages were not caused by wind and that Haman had not provided timely notice of the loss. (Doc. 6-8). On March 18, 2018, Chubb's counsel wrote to Haman's counsel that, having reviewed information from Mrs. Visram as well as

the examinations under oath of Mrs. Visram and Mr. Howarth, Chubb "believe[d] it was appropriate to return the claim for fire damage to appraisal in order to complete the process" but that Chubb would not agree to Mr. Howarth as an appraiser because The Howarth Group did "not meet the criteria of a 'competent and impartial appraiser.'" (Doc. 6-4). Chubb's counsel stated that The Howarth Group had a "financial interest in the outcome of the appraisal," had "clearly acted as an advocate and consultant for the insured that goes well beyond the normal role of an appraiser," and had been "acting in a capacity that is more in line with a public adjuster [which is not allowed in Alabama] by advising Mrs. Visram on whether to file additional claims, her communications with Chubb, and its evaluation of the damages." (*Id.*)

On August 13, 2018, Haman filed another action in the Circuit Court of Jefferson County, Alabama, Birmingham Division. (Doc. 1-1). Chubb removed the action to this court. (Doc. 1).

D. The Policy

Haman's commercial property policy with Chubb contains the following relevant provisions.

**Building and Personal Property Coverage Form**

*A. Coverage*

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any

Covered Cause of Loss.[1]

. . .

*E. Loss Conditions*

    *2. Appraisal*

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding

. . .

If there is an appraisal, we will still retain our right to deny the claim.

    *3. Duties in the Event of Loss or Coverage*

    a. You must see that the following are done in the event of loss or damage to Covered Property

    . . .

    (2) Give us prompt notice of the loss or damage include [sic] a description of the property involved.

    (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

    (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of

---

[1]    The "Location Schedule" shows that Haman purchased "Special—Excluding Flood and Quake" coverage on all three buildings. (Doc. 90-1 at 5). The "Causes of Loss—Special Form" page states that "[w]hen Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions, or 2. Limited in Section C., Limitations . . ."

the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damages and undamaged property include [sic] quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving [stet] the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

(7)  Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days of our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**Causes of Loss—Special Form**

*B. Exclusions*

. . .

2. We will not pay for loss or damage caused by or resulting from any of the following:

. . .

d. (1) Wear and tear;
   (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

. . .

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture, or vapor, that occurs over a period of 14 days or more.

3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

c. Faulty, inadequate, or defective

. . .

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
(3) Materials used in repair, construction, grading, compactions
(4) Maintenance;
    Of part or all of any property on or off the described premises.

*C. Limitations*

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

. . .

c. The interior of any building or structure, or the personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless

(1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain . . . enters.

E. Claims in This Lawsuit

In its Amended Complaint, Haman brings three causes of action against Chubb: 1) a request for specific performance of the appraisal process and/or appointment of an umpire, 2) breach of contract, and 3) bad faith. (Doc. 35). In its request for specific performance and/or appointment of an umpire, Haman alleges that Chubb improperly refused to finish the appraisal process on the fire claim and improperly refused to participate in the appraisal process on the wind claim. (*Id.* at 6).

In its breach of contract claim, Haman alleges that "Plaintiff had certain coverages which Chubb has improperly construed, improperly paid, refused to pay, or offered to pay less than required" and that "Chubb's delays and participation in a delay and scheme process and refusal to pay proceeds under the policy amounts to a clear breach of a written contract of insurance between the parties." (Doc. 35 at 7–8). In its bad faith claim, Haman alleges that "Chubb has committed various acts of bad faith and specifically that Chubb has intentionally refused to pay and has delayed payments of amounts that should have been undisputed." (Doc. 35 at 8).

## III.   DISCUSSION

In this diversity action, Alabama law governs Haman's claims. *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992) ("A federal court in a diversity case is required to apply the laws . . . of the state in which the federal court sits.").

A. Breach of Contract

The court will first consider the parties' cross motions for summary judgment as to Haman's breach of contract claim. Plaintiff moves for summary judgment for its breach of contract claim only as to the insurance policy's appraisal provision. The court **DENIES** Haman's motion for partial summary judgment on the breach of contract claim as it relates to the insurance policy's appraisal provision, **DENIES** Chubb's motion for summary judgment on Haman's breach of contract claim as it relates to the fire claim, and **GRANTS** Chubb's motion for summary judgment on Haman's breach of contract claim as it relates to the wind claim.

In Alabama, to establish breach of contract, a party must show that a valid contract existed, plaintiff performed under the contract, defendant did not perform, and damages. *Emps. Benefit Ass'n v. Grissett,* 732 So. 2d 968, 975 (Ala. 1998). A breach of contract must be material—or "one that touches the fundamental purposes of the contract and defeats the object of the parties in making the contract." *Sokol v. Bruno's, Inc.*, 527 So. 2d 1245, 1248 (Ala. 1988).

"When interpreting a contract, a court should give the terms of the contract their clear and plain meaning and should presume that the parties intended to do what the terms of the agreement clearly state." *Brewbaker Motors, Inc. v. Belser*, 776 So. 2d 110, 112 (Ala. 2000). Contracts should "be construed liberally in favor of the insured and strictly against the insurer." *Allstate Ins. Co. v. Skelton*, 675 So. 2d 377, 379 (Ala. 1996).

When alleging a breach of contract relating to coverage, the insured bears the burden of proving that a claim is *covered* under the policy. *Nat'l Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1097 (N.D. Ala. 2018). If denying a claim as not covered, the insurer bears the burden of proving that a claim is *excluded* under the policy. *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 697 (Ala. 2001).

The commercial insurance policy at issue in this case contains an appraisal provision, which provides that either party may make a written demand for appraisal if the parties "disagree on the value of the property or the amount of loss" and that "each party will select a competent and impartial appraiser." (Doc. 90-1). The policy also provides that the insured must give "prompt notice" when loss or damage occurs; send a "signed, sworn proof of loss containing the information [Chubb] request[s] to investigate the claim" within 60 days of being requested to do so; "cooperate with [Chubb] in the investigation or settlement of the claim"; and

submit to examination under oath "at such times as may be reasonably required." (*Id.*).

In Alabama, appraisal provisions such as the one at issue here are valid and routinely enforced. *Walker v. Allstate Prop. & Cas. Ins. Co.*, No. 19-cv-701, 2020 WL 1235626, at *3 n. 3 (N.D. Ala. March 10, 2020) ("[A]ppraisal provisions are regularly treated as arbitration provisions by the courts and enforced in the same manner."). But the Alabama Supreme Court has clearly delineated an appraiser's duty: it is "limited to determining the 'amount of loss'—the monetary value of the property damage . . . appraisers are not vested with the authority to decide questions of coverage and liability." *Rogers v. State Farm Fire and Cas. Co.*, 984 So. 2d 382, 392 (Ala. 2007). Before they may invoke the appraisal process, insureds "must comply with their post-loss obligations as described in provisions of the respective insured's insurance policy." *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1043 (Ala. 2014).

The court will first consider Haman's motion for partial summary judgment as to the breach of contract claim as it relates to the appraisal provision and will then consider Chubb's motion for summary judgment as to the breach of contract claim.

### 1. Haman's Motion for Partial Summary Judgment as to Alleged Breach of Contract for Chubb's Failure to Abide by the Appraisal Provision

In its motion for partial summary judgment and accompanying brief, Haman

asserts that the appraisal provision covers the parties' dispute, that Chubb's "refusal to honor the appraisal provision" as to both the fire and wind claims was a material breach of contract, and that Chubb is equitably estopped from breaching the appraisal provision. (Doc. 89). Haman also asserts that there is no genuine dispute about Mr. Howarth's impartiality. (*Id.*).

> ### a. *Appropriateness of Claims for Appraisal*

Haman asserts that the parties' dispute is appropriate for appraisal because the parties dispute the extent of damages—not the cause of loss—as to both the fire and the wind claims. (Doc. 89 at 29). To support its argument, Haman points the court to the Alabama Supreme Court's decision in *Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382 (Ala. 2007)—a case with which this court is quite familiar. In *Rogers*, the Alabama Supreme Court considered a question of first impression: "What are the duties and powers of an appraiser when he or she 'set[s] the amount of the loss' under an appraisal clause contained in a homeowner's insurance policy?" *Id.* at 389. The court considered the holdings of other jurisdictions and concluded that "the more persuasive authority is the authority holding that an appraiser's duty is limited to determining the 'amount of loss'—the monetary value of the property damage—and that appraisers are not vested with the authority to decide questions of coverage and liability." *Id.* at 392.

In *Rogers*, a tornado had damaged the Rogerses' home, and they had

submitted a claim to their insurer, State Farm, alleging that their home was a total

loss. 984 So. 2d at 383. State Farm concluded that the damage to the home's roof

was a result of the tornado but that damages to the home's brick veneer and

foundation were a result of settlement and not covered under the insurance policy.

*Id.* at 384. After considering the powers and duties of an appraiser, the Alabama

Supreme Court concluded that because of the issues of causation involved in the

Rogerses' claim, the trial court had erred in ordering the insured and insurer to

submit to appraisal.

In its review of other jurisdictions' authority on appraisal, the Alabama

Supreme Court approvingly cited a Texas Court of Appeals case stating that "if the

parties agree there is coverage but disagree on the extent of the damage, the dispute

concerns the 'amount of loss' and that issue is determined in accordance with the

appraisal clause." *Id.* at 391 (quoting *Johnson v. State Farm Lloyds*, 204 S.W.3d

897, 903 (Tex. App. 2006)) (internal quotations omitted). The Texas court in

*Johnson* cautioned that "[i]f the parties had to first agree on which specific shingles

were damaged and approach every disagreement on extent of damage as a

causation, coverage or liability issue, either party could defeat the other party's

request for appraisal by labeling a disagreement as a coverage dispute." *Johnson*,

205 S.W.3d at 903. In other words, the *Johnson* court wanted to ensure that parties

did not label disputes that were really about "amount of loss" as disputes about

"cause of loss."

Haman points to the language of the *Johnson* court and the Alabama Supreme Court's approving reference to it. True, like the *Johnson* court, the Alabama Supreme Court probably wants to ensure that "amount of loss" disputes are not framed as "cause of loss" disputes so that a party can improperly avoid appraisal. But the *Rogers* court was clear that even though the insurer and insured in that case agreed that tornado damage was a covered loss and that the tornado had damaged the home, the disputes over the brick veneer and foundation were cause of loss disputes. Thus, an insurer's agreeing that a particular piece of property—such as a home, or in this case, a motel—has been damaged by a covered cause of loss does not necessarily mean that no cause of loss issues will be implicated. Whether a particular situation presents a question of "amount of loss" or "cause of loss" depends upon the facts.

Haman also points to non-binding authority to support its contention that the appraisal provision covers the dispute in this case and argues that an appraiser's duty involves a certain element of determining causation. (Doc. 89 at 29–31). The court is not convinced. The *Rogers* court clearly stated that the appraiser's duty is limited to determining the amount of loss—the monetary value of the property.

Here, the court finds that the appraisal provision covers the fire claim because the fire claim constitutes an amount-of-loss dispute; Chubb conceded this

27

when it agreed to go to appraisal on the fire claim—if Haman chose a different appraiser—a second time in March of 2018, after Haman complied with its post-loss obligations. As to the wind claim, the court finds below that Haman did not provide timely notice of the wind claim, that it has not pointed to mitigating circumstances showing that its delay is reasonable, and that Chubb is entitled to summary judgment on Haman's breach of contract claim as to the wind claim. But even if the court did not make this finding, Haman would not be entitled to summary judgment on the breach of contract claim as to appraisal on the wind claim because of the cause of loss issues involved with the wind claim.

The court discussed the issues pertaining to appraisal in a previous memorandum opinion in response to Haman's motion for specific performance to enforce the appraisal process, which this court construed to be a motion for summary judgment on its specific performance claim. (Doc. 48).

In that opinion, the court found that the parties' dispute over the wind claim constituted a "cause of loss" dispute, with Haman contending that wind caused the damages to its roofs and the water damages to its interiors and with Chubb contending that the damages to the roofs (with the exception of damage to the roof's coping) and the interiors were caused by the roofs' age and Haman's poor roof maintenance. (Doc. 48 at 10). If the court were not granting Chubb's motion for summary judgment on the breach of contract claim as it relates to the wind

claim, the court would stand by the "cause of loss" dispute reasoning now.

The court notes that in its response to Haman's motion for partial summary judgment, Chubb presents the fire claim as also involving cause of loss issues. (Doc. 123 at 33–34). Chubb has waived this argument as to the fire claim. On March 18, 2018—after Haman had complied with the post-loss obligations and after Chubb clearly understood that Haman was alleging fire damage to all 80 rooms in the Studio Inn—Chubb wrote to Haman that it found it appropriate to return the fire claim to appraisal if Haman selected a different, impartial appraiser. (Doc. 6-4). Chubb cannot now argue that the fire claim also entails cause of loss considerations inappropriate for appraisal, as it agreed to submit to appraisal a second time after it had completed its investigation as to the fire claim.

The court also notes that throughout its response (doc. 123) to Haman's motion for partial summary judgment, Chubb repeatedly quotes the court's previous memorandum opinion (doc. 48) as stating that "[t]his case does not present an 'extent of loss' dispute . . . [but] a 'cause of loss' dispute." When the court made this statement, it addressed only the wind claim. The court does not appreciate Chubb' equivocation.

### b. Material Breach

Haman asserts that Chubb's refusal to honor the appraisal provision constituted material breach of the contract. (Doc. 89 at 31). Haman argues that

"when the parties agreed in writing to submit the claim to appraisal, the insurance carrier necessarily agreed the insured had performed under the policy." (*Id.*). Haman points to a decision by another judge on this Court, *Cobblestone Condo. Assn. v. Travelers Cas. Ins. Co. of Amer.*, 377 F. Supp. 3d 1291 (N.D. Ala. March 27, 2019). In that case—which also involved a fire claim and a wind claim—Judge Haikala found that "having properly entered the appraisal process [on the fire claim], [the insurer] had a contractual obligation to complete the process." (*Id.* at 1304).

The court finds that the facts in this case are distinguishable from those in *Cobblestone*. Here, viewing the evidence in the light most favorable to the non-moving party, Chubb, the evidence shows that when Chubb initially agreed to appraisal as to the fire claim in August 2015 (doc. 90-16, 90-17), it understood the dispute to be about the amount of loss to the 36 rooms and stairwell in the Studio Inn that the parties had previously agreed sustained damage from the fire. The evidence shows that after the parties signed an appraisal agreement in August 2015, Mr. Howarth presented Chubb's appraiser "with additional information about the scope and nature of the loss"—the Forensic Building Sciences report, which stated that all 80 of the hotel rooms had been damaged by soot and smoke. (Doc. 123-1, ex. 11). Three months later, Chubb began to ask Haman to comply with post-loss obligations—such as submitting to an examination under oath,

providing a sworn statement in proof of loss, and providing certain documents. (Doc. 123-1, ex. 6). Further, on January 30, 2016, Chubb's appraiser wrote to Haman's appraiser that although the parties could sign a revised Declaration of Appraisers, the appraisers would "need to wait to convene a meeting with the umpire for the purpose of concluding the appraisal until Chubb has finished its investigation and until [Haman] ha[d] had an opportunity to complete its duties under the insurance policy." (Doc. 123-1, ex. 15).

Shortly thereafter, Haman brought suit in state court. (Doc. 105-1). The evidence shows that Zarin Visram, the owner of Haman, Inc., did not submit to an examination under oath until September 26, 2017. (Doc. 38-17). Mr. Howarth submitted to examinations under oath on September 26, 2017, and again on December 12, 2017. (Docs. 123-2, 123-3). Chubb learned about Mr. Howarth's fee arrangement in the September 26, 2017 examination. After that, on March 18, 2018, Chubb wrote to Haman that it was appropriate to return the fire damage claim to appraisal but that Mr. Howarth did not satisfy the criteria of being an impartial appraiser, given his financial interest and advocacy role. (Doc. 6-4).

The court previously found that genuine issues of material fact arose as to whether Haman's appraiser, Chuck Howarth, is impartial. In its previous memorandum opinion, the court noted that The Howarth Group's website "contained statements that *could* reflect his bias in favor of Haman," such as its

31

statement that The Howarth Group "always serve[s] on the insured's side of the claim." (Doc. 38-2). The court also stated that reasonable jurors could find that Mr. Howarth's payment agreement—he would only receive payment if he "actually improve[d] the settlement"—could "create[] a financial incentive for Mr. Howarth to increase his appraisal." (Doc. 48 at 6–7). In that opinion, the court also found that Haman had submitted evidence showing that Mr. Howarth's financial incentive no longer exists, as he is now an hourly-paid expert. (*Id.* at 7).

Haman argues that discovery has shown that the dispute over Mr. Howarth's impartiality was a "red herring." (Doc. 89 at 33). Haman asserts Mr. Howarth's capping his fee at 30 percent is nothing unusual, as he was getting paid by the hour, and that some of Chubb's own experts have capped fees. (*Id.*). But the question of whether Mr. Howarth is impartial extends beyond his fee cap. The Howarth Group's website states that it only takes on "claims when there is a major deficit in the estimate" (doc. 38-2 at 2), and Mr. Howarth's appraisal employment agreement—which was redacted when first produced to Chubb (doc. 6-2)—states that if the appraisal process produces "no additional settlement then no fee will be due" (doc. 38-3).

The question of Mr. Howarth's impartiality has less to do with the fact that he caps his fees and more to do with whether Mr. Howarth has a financial incentive to increase his appraisal valuation. Given the fact that Mr. Howarth

would collect no fee if no additional settlement resulted and that he only takes on

claims in which he might significantly increase the payout the insured might

receive, reasonable jurors could conclude that he has a financial incentive and is

thus not an impartial appraiser.

The court thus finds that genuine issues of material fact exist regarding

whether Chubb materially breached the contract by refusing to honor the appraisal

provision as to the fire claim. Reasonable jurors could find that Chubb improperly

opted out of the appraisal process after entering it and that its requests for Haman

to comply with post-loss obligations were merely delay tactics; likewise,

reasonable jurors could find that Haman failed to reasonably comply with its post-

loss obligations once it became clear that potential issues involved the cause of loss

and that it failed to abide by the policy's requirement of selecting an impartial

appraiser.

Haman asserts that Chubb also entered into appraisal on the wind claim,

pointing to a July 22, 2015 e-mail from Chubb's adjuster, Brent Perich, to

Haman's appraiser, Chuck Howarth, that stated that Chubb was choosing Wade

Bushman as its appraiser "in conjunction of disputed building damages" (doc. 90-

18) and a Declaration of Appraisers agreement signed by Wade Bushman and

Chuck Howarth in August 2015, listing the dates of both the fire and wind claims.

(Doc. 90-17). But Chubb maintains that listing both dates on the agreement was an

inadvertent error and an August 24, 2015 letter from Chubb to Haman states: "We do not believe that we are ready for appraisal [as to the wind claim] as we have not received a claim from you. Therefore, we do not know if we yet disagree on the amount of loss." (Doc. 105-67). In that same letter, Chubb stated that the interior water damage was not caused by a covered loss. (*Id.*). On December 10, 2015, Chubb provided Haman with a copy of its expert's report and rejected appraisal as to the wind claim, holding the position that the damage to the EPDM roofing and interior water damage were the result of deterioration and wear-and-tear of the roof. (Doc. 38-13). On May 25, 2016, Chubb sent another letting stating again that the August 24, 2015 Declaration of Appraisers listing both claims had been an error and pointing out that an e-mail from Mr. Perich listed only the March 22, 2015 claim. (Doc. 123-1, ex. 11).

Below, the court finds that Chubb is entitled to summary judgment on Haman's breach of contract claim as to the wind claim because of Haman's untimely notice. But even if it did not make that finding, the court would find that Haman is not entitled to summary judgment on its breach of contract claim as it relates to the appraisal of the wind claim because of the cause of loss and coverage issues and because Haman's pointing to a signed appraisal agreement listing both claims at the same time Chubb was sending communications to Haman that it would not go to appraisal on the wind claim is "[a] mere 'scintilla' of evidence"

and does not create a genuine issue of material fact as to Chubb's intention to enter appraisal on the wind claim. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury would reasonably find for that party.").

### c. Equitable Estoppel

Haman also asserts that Chubb is equitably estopped from backing out of appraisal. (Doc. 89 at 24). Equitable estoppel is a remedy used to "promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertions of such rights contrary to equity and good conscience." *Pierce v. Hand, Arendall, Bedsole, Greaves, & Johnston*, 678 So. 2d 765, 768 (Ala. 1996) (citing *Mazer v. Jackson Ins. Agency*, 340 So. 2d 700 (Ala. 1976)).

To prove equitable estoppel, a party must show that

(1) the person against whom estoppel is asserted, who usually must have knowledge of the facts, communicates something in a misleading way, either by words, conduct, or silence, with the intention that the communication will be acted on; (2) the person seeking to assert estoppel, who lacks knowledge of the facts, relies upon that communication; and (3) the person relying would be harmed materially if the actor is later permitted to assert a claim inconsistent with his earlier conduct.

*General Elec. Credit Corp. v. Strickland Div. of Rebel Lumber Co., Inc.*, 437 So. 2d 1240, 1243 (Ala. 1983) (citing *Mazer v. Jackson Ins. Agency,* 340 So. 2d 770,

773 (Ala. 1976)). A party seeking an equitable remedy "must come with clean hands.'" *Mantiply v. Mantiply*, 951 So. 2d 638, 657 (Ala. 2006) (citing *Neal v. Neal*, 856 So. 2d 766, 786 (Ala. 2002)).

Chubb argues that equitable estoppel is not appropriate in this case because of the evidence showing that Haman may have improperly demanded appraisal for issues involving coverage, because of the evidence showing that Haman demanded appraisal before complying with post-loss obligations, and because Haman selected an appraiser allegedly partial to Haman. (Doc. 123 at 40). The court finds that because of the genuine issues of material fact as to Mr. Howarth's impartiality and the questions as to whether Chubb unreasonably delayed the investigation process of Haman's claims or if Haman failed to in good faith comply with post-loss obligations, Haman is not entitled to partial summary judgment on its breach of contract claim under the principle of equitable estoppel.

For the reasons stated, the court **DENIES** Haman's motion for partial summary judgment on its breach of contract claim as it relates to Chubb's alleged breach of the appraisal provision as to both the fire claim and the wind claim.

### 2. Chubb's Motion for Summary Judgment as to Haman's Breach of Contract Claim

In its motion for summary judgment, Chubb asserts that it is entitled to summary judgment on Haman's breach of contract claim because "the facts prove the disputed property damages were caused by causes of loss not covered under the

Chubb policy of insurance" and because "Haman has no admissible evidence that the disputed damages were caused by covered causes of loss occurring within the Chubb policy period." (Doc. 102 at 2–3). Chubb asserts that "Haman has no admissible evidence that Chubb owes it any additional money for losses covered under the Chubb policy period" for the fire and wind claims and that coverage for the wind claim is also precluded because Haman did not give timely notice of the damage—waiting eleven months after the alleged damage to make a claim. (*Id.* at 3).

### a. Admissible Evidence

Chubb asserts that Haman has "failed to proffer sufficient evidence to support an essential element of its case—i.e. causation by a covered loss." (Doc. 103 at 27). At the same time Chubb submitted its motion for summary judgment, it filed motions to exclude expert testimony of several of Haman's experts, including Charles Howarth and Thomas Irmiter, both of whom Haman sought to offer as experts on causation of damages relating to both the fire and wind claims. (Docs. 98, 100). On March 10, 2021, this court entered an order ruling on those motions. (Doc. 151). The court denied Chubb's motion to exclude the testimony of Haman's expert Thomas J. Irmiter (doc. 100) but granted Chubb's motion to exclude the testimony of Mr. Howarth as to causation. On March 30, 2021, the court denied a motion for reconsideration regarding Mr. Irmiter's opinions. (Doc. 156). Because

the court denied Chubb's motion to exclude the testimony of Thomas J. Irmiter,

Chubb has not met its burden on summary judgment by showing "that Haman

cannot prove that disputed damages were caused by covered causes of loss—fire

and tornado—occurring within the Chubb policy period." (Doc. 103 at 27). On the

contrary, Haman has offered admissible evidence showing that the disputed

damages may have been caused by covered causes of loss (Docs. 38-6; 90-36, 90-

37, 90-38, 90-39). Chubb has also offered admissible evidence that the disputed

damages were not caused by the fire and tornado (Docs. 105-32, 38-11, 38-12).

The court finds that genuine issues of material fact exist as to whether Chubb

breached the contract by not paying for the disputed damages as to the fire claim.

As to the wind claim, the court grants Chubb's motion for summary judgment on

Haman's claim for breach of contract because of Haman's late notice of the wind

claim, as explained below.

      *b.  Timeliness of Wind Claim*

Chubb asserts that Haman's wind claim must fail because it was not

timely reported. The Chubb policy requires that in the event of loss or damage, the

insured must "[g]ive prompt notice of the loss or damage." (Doc. 105-76).

Under Alabama law, "[t]he failure of an insured to comply within a

reasonable time with such conditions precedent in an insurance policy requiring the

insureds to give notice . . . releases the insurer from obligations imposed by the

insurance contract." *Reeves v. State Farm Fire & Cas. Co.*, 539 So. 2d 252, 254 (Ala. 1989). Reasonable time is determined "in view of all the facts and circumstances." *Travelers Indem. Co. of Connecticut v. Miller*, 86 So. 3d 338, 342 (Ala. 2011). But "[o]nly two factors are to be considered in determining the reasonableness of a delay in giving notice to the insurer: the length of the delay and the reasons for the delay." *Id.*

"If the insured does not notify the insurer in a timely fashion and the insured fails to show mitigating circumstances that reasonably justify the lengthy delay, the court must hold as a matter of law that the notice provision has been breached and grant summary judgment in favor of the insurer." *Pa. Nat'l Mut. Cas. Ins. v. Colyer-Lloyd, Inc.*, No. CV-93-AR-2627-E, 1994 WL 927423, at *2 (N.D. Ala. Dec. 2, 1994) (citing *Watson v. Alabama Farm Bureau Mutual Casualty Ins. Co.*, 465 So. 2d 394 (Ala. 1985)).

Chubb points to deposition testimony from Sheila Allen, the Knights Inn manager, and Wasif Bukhari, the Knights Inn maintenance man, showing that as early as April 2014, staff at the Knights Inn were aware of increased water leaks in the ceiling. (Doc. 105-41, Buhkari depo. at 77–80; 105-43, Allen depo. at 150–51). Mr. Bukhari also stated that Mrs. Visram regularly visited the property. (Doc. 105-41, Buhkari depo. at 68–69). Chubb argues that Haman's delay of eleven months was unreasonable as a matter of law.

In response, Haman points to testimony from Sheila Allen that she was not aware of any roof damage up until the time she left Knights Inn as an employee in April 2015 (doc. 90-74, Allen depo. p. 105) and also argues that "the damage to the roof was not readily observable from the ground" but was timely reported after The Howarth Group examined the roof and found wind damage. (Doc. 121 at 29).

Here, the court agrees with Chubb that Haman's delay of eleven months was unreasonable as a matter of law. *See Pharr v. Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983) (finding that an eight-month delay in providing notice of loss to an insurer with no reason for the delay was unreasonable as a matter of law); *Correll v. Fireman's Fund Ins. Cos.*, 529 So. 2d 1006, 1009 (Ala. 1988) (finding that a one-year delay in providing notice with "insufficient reasons" for the delay was unreasonable as a matter of law); *Colyer-Lloyd, Inc.*, 1994 WL 927423, at *2 (finding that a fifteen-month delay in giving notice was unreasonable as a matter of law "absent extenuating circumstances"). Haman has not pointed to mitigating circumstances justifying delay; Ms. Allen's testimony constitutes "[a] mere 'scintilla' of evidence" and does not create a genuine issue of material fact. *See Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury would reasonably find for that party."). Haman's delay of almost a year from the date of the tornado without any

justification breaches the notice provision of the policy and relieves Chubb of its duties under the policy.

The court thus **GRANTS** Chubb's motion for summary judgment on Haman's breach of contract claim as it relates to the wind claim but **DENIES** Chubb's motion for summary judgment on Haman's breach of contract claim as to the fire claim.

### B. Bad Faith

In its Amended Complaint, Haman asserts that Chubb "intentionally refused to pay and has delayed payments of amounts that should have been undisputed." (Doc. 35 at 8). Haman asserts that Chubb "investigated the loss with a pre-determined motive, and has intentionally breached the duty to properly evaluate and honor the claim, has not dealt fairly and in good faith, and has committed bad faith and intentional tortious conduct against the Plaintiff." (*Id.* at 8–9).

In its motion for summary judgment, Chubb argues that it is entitled to summary judgment on Haman's bad faith claim as it relates to refusing to pay both the fire and the wind damages and as it relates to its investigation of both claims. (Doc. 103 at 27, 33).

Under Alabama law, a plaintiff alleging bad faith refusal must prove:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
> (b) an intentional refusal to pay the insured's claim;
> (c) the absence of any reasonably legitimate or arguable reason for

41

> that refusal (the absence of a debatable reason);
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*National Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

Bad faith is a single tort, but there are two methods by which it may be established: 1) bad faith refusal to pay and 2) bad faith refusal to investigate. *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). "Alabama law is clear: . . . regardless of the imperfections of [the insurer's] investigation, the existence of a debatable reason for denying the claim at the time the claim was denied defeats a bad faith failure to pay the claim." *State Farm Fire and Cas. Co. v. Balmer*, 891 F.2d 874, 877 (11th Cir. 1990) (citing *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981)). "[I]f a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *Barnes*, 405 So. 2d at 924. The party asserting bad faith thus "bears a heavy burden." *Madison Cty. v. Evanston*, 340 F. Supp. 3d 1232, 1267 (N.D. Ala. 2018).

Haman has not produced sufficient evidence to show that Chubb breached the contract as to the fire claim or lacked "any reasonably legitimate or arguable reason" for refusing to pay for the fire damage, and the court found that Chubb is entitled to summary judgment on Haman's breach of contract claim as it relates to

the wind claim. Chubb has produced evidence in the form of expert reports and testimony that the additional rooms in the Studio Inn were not damaged by soot and has also produced evidence that Haman's appraiser was not impartial. Because Chubb has demonstrated an arguable basis for refusing to pay both the additional fire damage claim and because the court has found that Chubb is entitled to summary judgment on breach of contract as to the wind claim, Chubb is entitled to summary judgment on Haman's bad faith claim as it relates to failure to pay.

As to failure to investigate, the evidence shows that Chubb did investigate the claims—and that at least some of its slowness in investigating and resolving the claim could have been due to Haman's failure to submit documents and to submit to examination under oath in a timely manner, as well as Haman's filing a lawsuit in state court in February 2016. Even viewing the evidence in the light most favorable to Haman, the evidence shows that Chubb did conduct an investigation—including hiring multiple experts to investigate the losses. Given the high burden of proof Haman must meet, Chubb is entitled to summary judgment on the bad faith claim as it relates to investigation of the loss.

The court thus **GRANTS** Chubb's motion for summary judgment on Haman's bad faith claim.

### C. Specific Performance to Compel Appraisal

Chubb asserts that it is entitled to summary judgment on Haman's claim

for specific performance to compel appraisal because Haman filed its demand for

appraisal prematurely and without fulfilling its post-loss obligations and because a

reasonable jury could not find that Mr. Howarth is an impartial appraiser. (Doc.

103 at 46–52).

In response, Haman states that it "acknowledges that it is far too late for an

appraisal" and that Chubb "achieved its goal of delaying appraisal to the point it no

longer serves a purpose." (Doc. 121 at 44). Haman argues that "to the extent that

Chubb is arguing summary judgment on whether it breached the appraisal

provision of the contract, that motion should be denied." (*Id.* at 44–45). Haman

focuses the rest of its argument on how Chubb breached the contract with its

refusal to participate in appraisal.

Here, Chubb requested summary judgment on Haman's claim for specific

performance to compel appraisal.  Because Haman does not directly defend against

Chubb's motion, the court finds that Haman has abandoned this claim. *See Adams*

*v. Bank of America, N.A.*, 237 F. Supp. 3d 1189, 1203 (N.D. Ala. 2017) ("A party

that fails to defend a claim that is targeted by a summary judgment motion is

deemed to have abandoned that claim.") (citing *Wilkerson v. Grinnell Corp.*, 270

F.3d 1314, 1322 (11th Cir. 2001) and collecting cases). Thus, the court **GRANTS**

Chubb's motion for summary judgment on Haman's claim for specific

performance to compel appraisal as to both the fire and the wind claims.

## IV.   CONCLUSION

For the reasons stated above, the court **DENIES** Plaintiff's motion for partial summary judgment on its breach of contract claim as it relates to Defendant's alleged breach of the insurance policy's appraisal provision. The court **DENIES** Defendant's motion for summary judgment as to Plaintiff's breach of contract claim as it relates to the fire claim; **GRANTS** Defendant's motion for summary judgment as to Plaintiff's breach of contract claim as it relates to the wind claim; **GRANTS** Defendant's motion for summary judgment as to Plaintiff's bad faith claim; and **GRANTS** Defendant's motion for summary judgment on Haman's claim for specific performance to compel appraisal as to both the fire and wind claims.

**DONE** and **ORDERED** this 31st day of March, 2021.

_Karon O. Bowdre_
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE