FILED
2021 May-26 PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **HAMAN, INC. d/b/a KNIGHTS INN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action File No.** |
| | ) **2:18-cv-1534-KOB** |
| **v.** | ) |
| | ) |
| **CHUBB CUSTOM INSURANCE** | ) |
| **COMPANY,** | ) |
| **Defendant.** | ) |

## PRETRIAL ORDER

The court held a pretrial conference in the above case on May 19, 2021, at which the following proceedings were held and action taken:

1. **Appearances.**  Appearing at the conference were:

Appearing on behalf of Plaintiff:  Gary V. Conchin and Kenneth B. Cole, Jr. of CONCHIN, COLE, JORDAN & SHERROD, 2404 Commerce Court, Huntsville, Alabama 35801; and Gregory A. Brockwell and Jason R. Smith of BROCKWELL, SMITH, LLC., 2100 1ST Avenue, North, Suite 300, Birmingham, Alabama 35203.

Appearing on behalf of Defendant: Wayne D. Taylor of MOZLEY, FINLAYSON & LOGGINS LLP, 1050 Crown Pointe Parkway, Suite 1500, Atlanta, Georgia 30338; Mark D. Hess of HAND, ARENDALL, HARRISON, SALE, LLC,

1801 5th Avenue, North, Suite 400, Birmingham, Alabama 35203; and David A. Lee,

PARSONS, LEE & JULIANO, P.C., 600 Vestavia Parkway, Suite 300,

Birmingham, Alabama.

    **2.** **Jurisdiction and Venue:**  This case was removed to this court pursuant to

28 U.S.C. §1441. Subject matter jurisdiction exists under 28 U.S.C. §1332, based on

the amount in controversy and the admitted diversity of citizenship. Personal

jurisdiction and venue are not contested.

    **3.** **Parties and trial counsel:**  The parties before the court are correctly named

as set out below and the designated trial counsel for the parties are as set out below:

|  | Parties: | Trial Counsel: |
|---|---|---|
| **Plaintiff:** | **HAMAN, INC. d/b/a KNIGHTS INN** | **Gary V. Conchin Kenneth B. Cole, Jr. (Conchin, Cole, Jordan & Sherrod)**<br><br>**-and-**<br><br>**Gregory A. Brockwell Jason R. Smith (Brockwell Smith LLC)** |
| **Defendant:** | **CHUBB CUSTOM INSURANCE COMPANY** | **Wayne D. Taylor Michelle A. Sherman (Mozley, Finlayson & Loggins LLP)**<br><br>**-and-**<br><br>**Mark D. Hess** |

| | | **(Hand Arendall Harrison Sale LLC)** |
| | | |
| | | **-and-** |
| | | |
| | | **David A. Lee** **(Parsons, Lee & Juliano, P.C.)** |

4. **Pleadings:**  The following pleadings, with modifications contained in this Order, have been allowed:  Complaint on behalf of Plaintiff (Doc. 1, Notice of Removal, 9/19/18); Answer on behalf of Defendant (Doc. 6, Removal Documents, 9/19/18); Dismissal of Defendant Chubb's counterclaims (Doc. 23); Amended Complaint of Haman (Doc. 35, 3/20/19); Answer to Amended Complaint by Defendant (Doc. 36, 4/4/19).

5. **Statement of the Case.**

(a) **Agreed Summary.**   The Plaintiff is Haman, Inc., and it owned and operated a motel, located at 1121 9th Avenue SW in Bessemer, Alabama, that consisted of three buildings. On March 22, 2014, one of those buildings, called the "Studio Inn," was damaged by a fire. Plaintiff sought insurance proceeds to pay for the damages resulting from this fire from Defendant Chubb Custom Insurance Company. Defendant insured the property under a commercial policy of property insurance, effective March 2, 2014 to March 2, 2015, subject to the policy's terms,

conditions, limitations, and exclusions. At the time of the March 22, 2014 fire, the policy was in full force and effect. Fire was a covered cause of loss under the policy.

Plaintiff says Chubb breached the insurance contract (1) because it did not pay for all covered damages, (2) paid an inadequate amount, and (3) then refused to participate in a process called appraisal, as defined in the policy. Plaintiff says appraisal was appropriate and properly invoked according to the policy, and that Chuck Howarth was a competent and impartial appraiser. Defendant says it was not obligated to participate in the appraisal process.

Defendant investigated Plaintiff's fire loss, and in November 2014, paid Plaintiff the adjusted amount of the fire loss in payments of $357,401.93 for damages to 36 rooms and a stairwell in the Studio Inn and $27,602.01 for damage to Plaintiff's personal property.

Plaintiff disagreed with the amount of Defendant's payments. Plaintiff alleged additional damages, including damages to all 80 rooms of the Studio Inn, and submitted an estimate dated March 21, 2015 in the amount of $1,679,975.00 for repair and replacement costs. Plaintiff submitted an additional estimate for $139,451.32 RCV (replacement cost value) and $86,471.20 ACV (actual cost value) for personal property losses on August 7, 2015. Defendant denied the fire caused damage to all 80 rooms of the motel building. Therefore, the dispute between the

parties relates to the amount of the fire loss, and the claim asserted against Defendant is for breach of contract relating to the fire claim. (See Order, Doc. 159).

Defendant maintains that Plaintiff cannot meet its burden of proving that it breached the insurance contract by refusing to pay additional money for fire damages because the Studio Inn building is not a total loss as a result of the March 2014 fire, Defendant has already fully paid Plaintiff for the only rooms damaged by the fire, and the policy limits Plaintiff's damages to actual cash value (ACV) because repairs have never been made. Defendant further states that it had agreed to submit Plaintiff's fire claim to appraisal so long as Plaintiff selected a "competent and impartial appraiser," as required by the policy. Defendant objected to Plaintiff's chosen appraiser, Chuck Howarth of The Howarth Group, as not "impartial" because he had a financial interest in the outcome of the appraisal due to his capped contingency fee agreement with Plaintiff, he prejudged the amount of the loss, and he advocated for the insured for the payment of additional insurance proceeds. Despite Defendant's objections, Plaintiff refused to select a different, impartial appraiser, and is precluded from any additional recovery under the policy because it failed and refused to satisfy the policy's requirement that it select an "impartial" appraiser.

The jury's job will be to decide if Defendant breached the insurance contract and, if it did so, what damages, if any, were suffered by Plaintiff.

**(b)  <u>Stipulated Facts</u>.**

1.  Plaintiff owns a motel located at 1121 9th Avenue SW in Bessemer, Alabama, consisting of three buildings, including the "Studio Inn," an 80-room building designed for extended-stay customers.

2.  Defendant insured the motel under a commercial policy of property insurance, policy number 99783420-00, effective March 2, 2014 to March 2, 2015 ("the policy"), subject to the policy's terms, conditions, limitations, and exclusions.

3.  On March 22, 2014, the Studio Inn building sustained damage due to a fire. On September 30, 2014, Plaintiff signed a partial sworn proof of loss prepared by Defendant concerning fire damages to 36 rooms and a stairwell in the building in the amount of $466,838.73 (not reduced to actual cash value or for depreciation). This amount was the amount of Defendant's adjusters' estimate. Defendant paid $357,401.93 for damage to the building.

4.  On September 30, 2014, Plaintiff signed a partial sworn proof of loss prepared by Defendant's adjuster concerning fire damages to the building's personal property in the amount of $26,481.40. Defendant paid $27,602.01 for damage to personal property in the building.

5.  The parties disagree on the amount of covered loss as a result of the fire.

6.  Plaintiff has neither repaired nor replaced the damaged property.

**(c)  <u>Contested Issues of Fact</u>.**

1.  The cause, scope, and extent of the damage to Plaintiff's building and personal property;

2.  Whether Defendant failed to pay any amount due under the policy for covered damages sustained to the building and personal property as a result of the fire;

3.  Whether Plaintiff was, and is, entitled to Replacement Cost benefits under the policy even though the property was neither repaired nor replaced; and

4.      Whether either party failed to comply with the provisions of the policy's Appraisal Loss Condition.

**(d)  Agreed Applicable Propositions of Law.**

**APJI (Civil) 20.17 ("Breach of Insurance Contract") provides:**

Plaintiff Haman, Inc., says that Defendant Chubb Custom Insurance Company breached or broke its promises to abide by an appraisal provision in an insurance contract and to pay it for a loss covered under an insurance contract. To recover damages on these claims, Haman must prove to your reasonable satisfaction all of the following:

1.      That a contract of insurance existed between Haman and Chubb;
2.      That Chubb breached the contract by not abiding by the appraisal provision contained in the insurance policy and/or that Haman suffered fire loss, covered under the insurance policy with Chubb; and
3.      That Haman suffered damages because Chubb did not participate in the appraisal process and/or that Chubb did not pay full benefits due under the insurance contract.

**(e)  Plaintiff's Position.**

Plaintiff is entitled to all amounts claimed for fire damages to the structure and personal property, plus pre-judgment interest pursuant to Ala. Code §8-8-10 at 7.5% per annum from the date of the cause of action. The policy is a replacement cost policy. Chubb's inadequate and delayed payments for the fire losses constituted a breach of contract. The Chubb estimates did not include all of the damage, including the Plaintiff's expert and fact witnesses' observation that soot, smoke, and other uncompensated for damages to the premises had occurred. Chubb's inadequate and delayed payments, along with its refusal to participate in the appraisal process,

7

prevented repair of the premises, and led to the demise of the entire motel business operation. Plaintiff's expert witnesses agree that the meager amounts paid by Defendant were inadequate to make the necessary repairs, even if the amounts had been timely paid. The entire motel premises are a total loss, and those damages flow naturally from Chubb's breach. These damages were reasonably anticipated and foreseeable. *HealthSouth Rehabilitation Corp. v. Flacon Mgmt. Co.,* 799 So.2d 177, 183 (Ala. 2001); *see also Aldridge v. Dolbeer*, 567 So.2d 1267,1269 (Ala. 1990); *Kohn v. Johnson*, 565 So.2d 165, 168 (Ala. 1990); *Shiver v. Barrow*, 232 So.2d 676, 679 (Ala. Civ. App. 1970). The measure of damages is what Haman, Inc., suffered because of Chubb's failure to perform under the contract. *Rickenbaugh v. Asbury*, 185 So. 181, 185 (Ala. Civ. App. 1938); *Hover v. Kirk*, 321 So.2d 214, 216 (Ala. Civ. App. 1975); *Cobbs v. Fred Burgos Const. Co.*, 477 So.2d 335, 338 (Ala. 1985).

At the time of the fire, the fire-damaged structure, referred to as the Studio Inn, was insured and valued by Chubb for $1,600,000.00. Chubb had also insured and valued the other two buildings that were part of the motel complex (the Knights Inn building and the office building), for $1,600,000.00, and for $1,150,000.00, respectively. These coverage amounts and values were set by the Defendant Chubb for the policy period of March 2, 2014 to March 2, 2015. The actual current replacement costs are considerably higher, as testified to by Plaintiff's expert witnesses. Plaintiff claims Defendant's breach of contract has caused a total loss of

all buildings, which are now worthless. The testimony is that if timely and sufficient payments had been paid, the business could have survived. Underpayment prevented the repairs. The payment of inadequate amounts 8 months after the fire, along with Defendant's refusal to participate in the appraisal process, doomed the entire motel operation. The amount paid constituted a clear underpayment and was not sufficient to make the needed repairs. Underpayment prevented complete repairs from being reasonably made, and made it impossible for Plaintiff to make the needed repairs and to stay in business. Defendant cannot profit from its wrongdoings and its breaches. Plaintiff says that Chuck Howarth was an impartial appraiser.

**(f) <u>Defendant's Position</u>.**

Defendant denies that it is liable to Plaintiff for breach of contract and further denies that it owes Plaintiff any additional money and, therefore, contests damages.

Plaintiff demands that Defendant pay the full cost to demolish and rebuild one of its motel buildings that sustained a fire on March 22, 2014. The damaged motel building, known as the Studio Inn, is one of three now abandoned buildings that comprise the Knights Inn, a motel and conference center located at the intersection of I-65 and U.S. Hwy 31 in Bessemer, Alabama. Despite Plaintiff's contentions to the contrary, only one insured building—the Studio Inn—was damaged by fire.

Defendant has paid Plaintiff a total of $380,003.94 for its insurance claim, after applying the policy's $5,000.00 deductible, which includes the actual cash

value of the fire damages to 36 rooms and a stairwell in the building in the amount of $357,401.93, plus $27,602.01 for damage to Plaintiff's business personal property. Based upon the findings of its experts, Defendant refutes Plaintiff's claim that soot from the fire caused damages in all 80 rooms of the motel building and that the cost to repair the fire damages is, as claimed by Plaintiff, $1,679,975.33, which is 4.36 times greater than Defendant's estimate of the structural damages. Instead, the damages caused by the fire were limited to the rooms for which Defendant has already paid. Therefore, Plaintiff cannot carry its burden to prove the existence of additional covered loss. *See Nat'l Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1097 (N.D. Ala. 2018) ("An insured or claimant seeking to recover benefits under an insurance policy must establish that the damage alleged in the claim falls within the policy's coverage.") (citation omitted); *see also FCCI, Inc. v. Capstone Process Sys., LLC*, 49 F. Supp. 3d 995, 998 (N.D. Ala. 2014) (citing *Colonial Life & Acci. Ins. Co. v. Collins*, 280 Ala. 373, 194 So. 2d 532, 535 (Ala. 1967)).

Defendant also disputes that the fire damages to Plaintiff's business personal property amount to $139,451.32 (RCV) / $86,471.20 (ACV).

Defendant further denies that Plaintiff is owed the replacement cost of the damaged property. It has been more than seven years since the fire loss, and Plaintiff still has not repaired any of the damaged property. The policy states that Defendant will not pay the replacement cost of a loss "until the lost or damaged property is

actually repaired or replaced; and [] unless the repairs are made as soon as reasonably possible after the damage or loss," (Building and Personal Property Coverage Form, CP 00 10 06 07, p. 14 of 15), neither of which have occurred here. "*Provisions like ... those have been interpreted as providing a condition precedent to an insurer's duty to pay repair or replacement costs of an insured building. A party who has not repaired or replaced his insured building has not complied with the condition precedent to recovery under the policy **and so cannot recover**.*" *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184, 189 (Ala. 1990) (quoting *Huggins v. Hanover Ins. Co.,* 423 So.2d 147, 150 (Ala. 1982)) (italics by the Court, boldface added). In *Hilley,* the Alabama Supreme Court agreed with Judge Robert B. Propst's holding in *Blevins v. State Farm Fire & Casualty Co.,* No. CV–86–DT–0114–M (N.D. Ala. Aug. 22, 1986) that (1) "because the plaintiffs had not actually replaced the subject property in the time required by their policy, they had failed to meet a policy condition precedent and could not recover the replacement cost policy limits" and (2) that "a mere intention to replace does not trigger the insurer's replacement cost payment obligations." 562 So.2d at 189–90. Consequently, the court held that even though the insureds "allegedly intended" to replace the fire destroyed building "but claim that they could not afford to effectuate that rebuilding, they cannot overcome the clear and unambiguous terms of their Allstate policy that precluded any replacement cost payment prior to the completion of rebuilding." *Id.* at 190. Thus, Plaintiff's

recovery in this case, if any, is limited to the actual cash value of the damages. Plaintiff, therefore, cannot meet its burden of proving that Defendant breached the contract of insurance by refusing to pay additional money for the fire loss.

Defendant also is not liable for breach of the insurance contract by asserting its right under the policy to demand that Plaintiff select an "impartial" appraiser, as required by the policy. In fact, Plaintiff is not entitled to any additional recovery under the policy because it failed to select an "impartial" appraiser, which is a breach of the policy's Appraisal provision, which provides:

> If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, <u>each party will select a competent and impartial appraiser</u>. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge or a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

> \*       \*       \*

> If there is an appraisal, we will still retain our right to deny the claim.
(Building and Personal Property Coverage Form, CP 00 10 06 07, p. 9 of 15) (emphasis added).

Plaintiff's appointed appraiser, Chuck Howarth, is not "impartial" because he possessed a financial interest in the outcome of the appraisal award based on his capped contingency fee appraisal employment agreement to serve as Plaintiff's appraiser, whereby Howarth would be paid only if the results of the appraisal

12

exceeded Defendant's initial offer. Further, the maximum amount of Howarth's fee is based on a percentage of the total award, which also provides him with a financial interest in the appraisal process. Howarth also is not impartial because he prejudged the amount of the loss before appraisal was demanded and he advocated for Plaintiff for the payment of additional insurance proceeds. Therefore, Howarth was not an "impartial" appraiser as required by the policy. Because Howarth was not "impartial," Defendant did not breach the appraisal provision of the policy by refusing to submit to appraisal using Howarth as Plaintiff's appraiser. On the contrary, it is Plaintiff that breached the policy by its failure to select an "impartial" appraiser.

### 6.   **Discovery and other pretrial procedures**.

(a)  All discovery in this case was completed by May 20, 2020. No further discovery is required.

(b)  The Standard Pretrial Procedure specified on Exhibit A to Pretrial Order hereto are adopted as part of this Order.

(c)  Pending Motions: There are no pending motions.

(d)  Motions in Limine shall be filed at least two weeks in advance of the scheduled trial date.

(e)  The August 20, 2020 deadline for filing any dispositive motions has expired and the court has ruled on all motions.

7.  **Trial – Jury Case.** At least five business days prior to trial, the parties

shall present to the court any special questions or topics for voir dire examination

of the jury venire, and, to the extent the same can be anticipated, any requests for

instructions to the jury (including extracts of any statutes on which instructions are

requested). (See specific requirements for Jury Instructions in Exhibit A). By the

date set for trial, the parties shall file and serve any requested special verdict forms

or interrogatories for submission to the jury. These submissions should be served

on opposing counsel and emailed in Word or WordPerfect format to chambers

(Bowdre_chambers@alnd.uscourts.gov).

8.  **Advisory for Limiting Personal Information in Transcripts and**

**Exhibits.** The judiciary's privacy policy restricts the publication of certain personal

data in documents filed with the court. The policy requires limiting social security

and financial account numbers to the last four digits, using only initials for the names

of minor children, and limiting dates of birth to the year. However, if such

information is elicited during testimony or other court proceedings, it will become

available to the public when the official transcript is filed at the courthouse unless,

and until, it is redacted. The better practice is for you to avoid introducing this

information into the record in the first place. Please take this into account when

questioning witnesses, presenting documents, or making other statements in court.

If restricted items are mentioned in court, you may ask to have it stricken from the

record or partially redacted to conform to the privacy policy, or the court may do so

on its own motion.

**9.     This case is set for jury trial in Birmingham, Alabama on July 19,**

**2021.** Counsel reasonably anticipates the case should take ____5____ days to try.

**ORDERED** this 26th day of May, 2021, that the above provisions be

binding on all parties unless modified by further order for good cause shown.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE

15