FILED
2021 Jun-21  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**HAMAN, INC. d/b/a KNIGHTS INN,**

    **PLAINTIFF,**

v.

    **NO. 2:18-CV-01534-KOB**

**CHUBB CUSTOM INSURANCE COMPANY,**

    **DEFENDANT.**

## PLAINTIFF'S TRIAL BRIEF ON DAMAGES

## INTRODUCTION

Plaintiff Haman, Inc. ("Haman") offers this Trial Brief on Damages to the Court because it anticipates Defendant Chubb Custom Insurance Company ("Chubb") will incorrectly argue Plaintiff is not entitled to introduce evidence of the value of the three (3) buildings that make up the premises of the Knights Inn motel in Bessemer, Alabama. While the fire occurred in one of the three buildings located on the premises of the motel, the Studio Inn building, Plaintiff is able to recover damages for the other two buildings, including prejudgment interest, because of Defendant's breach of contract and foreseeable, resultant deterioration of all buildings on the motel premises.  These losses occurred as a proximate result of Defendant Chubb's breach of contract. The Alabama Supreme Court has clearly

determined that Plaintiff can recover such damages so long as damages were reasonably certain at the time of the breach of contract and a proximate result of the breach. Such evidence exists in this case. For these reasons and the additional reasons below, Plaintiff's evidence on damages is admissible, and the jury should be allowed to weigh it and award damages accordingly.

## PLAINTIFF IS OUT OF BUSINESS

Plaintiff will present evidence and seek damages based on Defendant Chubb breaching its contract of insurance with Plaintiff Haman by not paying appropriately for the fire damages in the Studio Inn Building. Because of Chubb's breaches in that regard, this Studio Inn Building could not be repaired. The fact it could not be repaired was the basis for the local authorities shutting down the entire motel (not just one building). Therefore, Chubb's breaches in late payment of, and underpayment for, the fire damage, coupled with its breach in failing to participate in the appraisal process, could have been reasonably anticipated to cause the motel to be shut down. Evidence in this case will show that Defendant Chubb paid too little, too late, on Plaintiff's fire claim, which caused Plaintiff to be unable to continue business. If there was any hope of salvaging the business the Defendant eliminated that hope by breaching the properly invoked appraisal provisions in the policy. This is not a business interruption claim. It is a breach of contract and consequential damages claim.

Plaintiff operated the Knights Inn at the same location in Bessemer, Alabama since 1995. The motel had existed for 19-20 years before the continuous insurance contract breaching conduct of Defendant Chubb resulted in the deterioration and physical destruction of these buildings and contents assets that ultimately resulted in the motel property being forced to close.

## DAMAGES EVIDENCE

Plaintiff anticipates offering documentary evidence regarding the value that Chubb placed on these buildings.  That evidence comes not only through the insurance policy itself, and the declarations page, but from an evaluation done at Chubb's request ten (10) days before the fire (Plaintiff trial exhibit 6), and another valuation report done at Chubb's request fourteen (14) months after the fire. (Plaintiff trial exhibit 56).  Plaintiff will also call various fact and expert witnesses to testify to replacement costs. There will be substantial testimony that this claim should have been investigated and paid within 60 – 90 days.[1]  Defendant Chubb made only a partial payment as to the structure on November 14, 2014, a date eight (8) months after the fire. Chubb made another partial payment as to contents in March 2015, some twelve (12) months after the fire. These amounts were

---

[1] Even Defendant's adjuster Perich states he made his recommendations within 90 days, and did not know why it took so long for Chubb to make payments. He made recommendations for ACV payments to be paid within the first 90 days, and for the pay advance within the first 60 days (Perich deposition p.144 , attached hereto as Exhibit C). As to why Chubb ignored his recommendations he said "I don't know...but it was obviously not immediately responding." (*Id.*)

underpayments that were inadequate to compensate Plaintiff Haman for the damages it suffered as a result of Chubb's breach. Owner of the motel, Zarin Visram, explained in her deposition that while she received partial payment on the fire claim, she found out later that the actual damages were "a lot more than that" and "that little amount would not do it." See Exhibit A, Deposition Transcript of Zarin Visram at pp. 101-102. Plaintiff's expert witnesses agree that the meager amounts paid by Defendant were inadequate to make the necessary repairs, even if the amounts had been timely paid. See Exhibit B, Deposition Transcript of Chuck Howarth at p. 71, 81, and 94. Showing extreme indifference to its contractual obligations, Defendant Chubb did not even have its own damage estimate completed until May 13, 2015, which was 14 months after the fire.[2] The entire motel premises are a total loss, and those damages flow naturally from Chubb's breach. Underpayment prevented complete repairs from being reasonably made, and made it impossible for Plaintiff to make the needed repairs to stay in business.

In spite of the fact that Chubb had a 225-page report from Plaintiff's expert, documenting $1,679,975.33 in covered fire damages, Chubb made no more payments above the partial payment of $357,401.93 that it made November 14, 2014 (8 months after the fire).

---

[2] Bushman estimate $523,477.01 (Plaintiff trial exhibit 55).

With no money to make necessary repairs to the fire damaged building, and no ability to rent the damaged rooms, the repairs were not made and the City of Bessemer condemned and closed the entire motel on November 13, 2015, twenty (20) months after the fire. The delay in paying for Haman's contents losses was even worse, though less in amount. The net amount paid to Haman for contents losses was $14,645.97. It was paid in March 2015, <u>an entire year after the fire.</u> When Haman's contents expert submitted an itemized estimate for $139,451.32, Chubb did nothing and paid no more.[3]

In fact, one of Chubb's hired experts, Perich, had begun requesting payments from Chubb within a period after the fire he described as "right off the bat." See Exhibit C, Deposition Transcript of Brent Perich at pp. 72-73.   Perich repeatedly made payment recommendations to Chubb for contents and structure, which they repeatedly ignored. For example, Perich noted in his Claim File Note from June 17, 2014, at 9:29 am, "[e]mail to Chubb GA...confirm of recommendation of Pay Advance w/in Rpt 2 and status of received remediation/repair estimates." <u>See</u> Exhibit D, Perich Claim File Note at Bates 001791. Then, on June 23, 2014 at 9:52 am, Perich noted, "[e]mail to Chubb GA in share of rationale attached to $100K Pay Advance..." <u>See</u> *id.* at Bates 001790. Another Perich file note from July 1, 2014 at 12:44 pm states, "[e]mail to Chubb

---

[3] Sarah Grandinetti estimate (Plaintiff trial exhibit 74).

GA and carrier rep in inquiry of review of pending release of Pay Advance…" See *id.* That same day, Perich noted, "Mult. email and tel call w/Chubb GA in refresh of their memory concerning past exchange regarding recommended Pay Advance…" See *id.* at Bates 001789. Additionally, on July 7, 2014 at 9:45 am, Perich noted "Email to Chubb GA and carrier rep in inquiry of status of Pay Advance and if it had been issued yet." See *id.*

On July 18, 2014, at 3:41 pm, Perich made two notes regarding delay of payment. The first file note was: "Tel call w/carrier rep in discussion of logistics regarding payment recommendations/issuances and pending status to share w/insured." See *id.* at Bates 001787. The second file note was: "Receipt and exchange of mult. email correspondence(s) w/ Chubb reps regarding outstanding $100K Pay Advance and pending release through applic channels." See *id.* Then, on July 21, 2014, at 3:02 pm, Perich noted, "Follow-up email to carrier rep as to status of issuance of General Pay Advance." See *id.* at Bates 001786. That same day, Perich noted, "Tel call w/ carrier rep in discussion of findings/recommendation from review of 3 independent estimates, their understanding concerning status of Pay Advance, last exchange w/ Chubb GA and decision for undersigned to follow-up w/ Chubb GA concerning status of pending release of Pay Advance…" See *id.* at Bates 001785-001786.

On August 4, 2014, at 10:09 am, Perich noted, "Mult. email exchange(s) w/ carrier rep concerning status of Pay Advance and disagreement as to reasoned delays, advice of incurred expenses by insured and need of pro-active measures." See *id.* at Bates 001782. That same day, he noted, "Email to carrier rep and Chubb GA in advice of contact w/insured and definitive advice/decision concerning Pay Advance ASAP." See *id.* Further, he noted, "Receipt of advice from carrier rep in ack...pending release of Partial Settlement." See *id.* at Bates 001781. Additionally, he noted, "Correspondence to carrier rep and Chubb GA in inquiry in whether they had connected w/ regards to...pending issuance of Pay Advance and/or Partial Settlement..." See *id.* Perich also noted, "Email to carrier rep in ack to discussion w/ Chubb GA and forthcoming authorization Advice for consideration to do all behind the scene actions for intention of expediting pending Pay Advance..." See *id.* Finally, he noted, "Tel call w/ carrier rep inquiry of current review of file-- focus status of pending Pay Advance release-- advice by carrier rep that he is awaiting the carrier to authorize/accept his reserve amounts and pending pipeline of further authorizations...Determination of need to further contact Chubb GA for pending authorization." See *id.*

On August 6, 2014 at 9:00 am, Perich noted, "Follow-up email to carrier rep in inquiry of status in release of ACV Payment and position concerning other recommendations/requests included w/in our Rpt 3." See *id.* at Bates 001780.

Then, on August 25, 2014, at 9:41 am, he noted, "Follow-up email to carrier rep in inquiry as to review and pending payment of previously forwarded ED&T invoice…" See id. That same day, at 9:57 am, Perich noted, "Follow up email to carrier rep in follow-up to 8/1 email and inquiry as to status of ACV payment…" See id. Further, he noted, "Receipt of advice from carrier rep as to contact w/ insured and mult reps concerning delays in release of payment and other matters." See id.

On September 2, 2014, at 4:52 pm, Perich noted, "Email to carrier rep and Chubb GA in inquiry of status of Partial Payments (Pay Advance and ACV)…" See id. That same day, he noted, "Receipt of email from carrier rep advising earlier release of an $80K payment and forthcoming remainder of ACV." See id. at Bates 001779. Then, on September 8, 2014, at 2:36 pm, Perich noted, "Tel call from carrier rep in further share of status concerning review/contact w/ Chubb reps and pending release of remainder of ACV settlement to insured." See id. at Bates 001778. On September 16, 2014, at 10:39 am, he noted, "Tel call w/ Chubb GA concerning…payment(s)…plan of action moving fwd, etc." See id. at Bates 001777-001778. That same day, Perich noted, "Receipt/review of email from carrier rep in share of response from carrier concerning authorized ACV Settlement of bldg and question/request of contact w/ insured for secure of POL." See id. at Bates 001777. Further, he noted, "Email to carrier rep in response to above and request of email

contact of actual insured rep for exchange, inquiry if POL issued for pay advance and question as to ACV Settlement for contents." <u>See</u> <u>id.</u>

On September 22, 2014, at 6:24 am, Perich noted, "Follow-up correspondence to carrier rep in inquiry of status of pending further payment release, or if already released and further follow-up to issued inquiries on 9/9." <u>See</u> <u>id.</u> That same day, he noted, "Receipt/review of correspondence from Chubb GA in extending authority for both Bldg and BPP ACV..." <u>See</u> <u>id.</u> Perich also noted, "Receipt/review of mult. correspondences from carrier rep in echo of above authority for ACV Settlement...as well as separate correspondence to prepare/issue POLs." <u>See</u> <u>id.</u> Finally, he noted, "Email correspondence to both Chubb GA and carrier rep in ack to direction to prepare ACV POLs..." <u>See</u> <u>id.</u> Then, on October 1, 2014, at 9:58 am, Perich noted, "Prepare of Partial POL- BPP." <u>See</u> <u>id.</u> at Bates 001775. He also noted, "Prepare of ltr in explanation of Partial Settlement/Pay Advance- BPP." <u>See</u> <u>id.</u> Further, he noted, " Prepare of Partial POL- Bldg II." <u>See</u> <u>id.</u> Finally, he noted, Prepare of ltr in explanation of Partial Settlement/Pay Advance- Bldg." <u>See</u> <u>id.</u>

On October 27, 2014, at 1:12 pm, Perich noted, "Correspondence to carrier rep and Chubb GA in share of completed POLs and recommendation of applic partial payments." <u>See</u> <u>id.</u> at Bates 001770. Then, on December 15, 2014, at 10:11 am, Perich noted, "Correspondence to carrier rep in inquiry of status of handling

on their end--- any contact from insured reps on their end and attempted confirm of release of all applic payments verified by completed POLs." See *id.* at Bates 001767.

On December 29, 2014, at 9:01 am, Perich noted, "Follow-up correspondence to owner/insured rep in inquiry of status of their handling concerning bldg repairs and content replacement." See *id.* at Bates 001766. That same day, he noted, "Tel call from local insured rep (GM of hotel). Discussion in confirm that bldg repairs commenced ~4 wks ago, re[c]overy of name of contractors, no known timeline attached PoR, no contents replaced yet, etc." See *id.* Further, he noted, "Follow-up correspondence to carrier rep in share of advice from insured of yet to receive ACV Payment for BPP." See *id.* Finally, he noted, "Tel call from carrer rep in advice of no payment released and confusion as to difference of ACV measurement and separate contents handling payment made directly to Evans Garmant. Further discussion of forthcoming rpt and overall status of file." See *id.*

Between January 7, 2015 and January 30, 2015, Perich noted multiple calls and correspondence with the owner/insured and/or the local insured rep regarding follow up of the payment(s). See *id.* at Bates 001764-001765. Then, on February 17, 2015, at 10:03 am, Perich noted, "Tel cal from Chubb GA in ack review of Rpt 8. Inquiry/response attached referenced non-issued payment of ACV

measurement…" <u>See</u> *id.* at Bates 001763. That same day, he noted, "Tel call w/ Chubb GM. Confirm of agreed to date handling. Further advice of his intention to follow up w/ carrier rep in confirm of release of authorized funds not yet accounted for." <u>See</u> *id.* Then, on March 18, 2015, at 8:07 am, Perich noted, "Follow-up email to carrier rep in inquiry as to their handling since last exchange on 3/2, re-request of payment(s) made/status and requested direction." <u>See</u> *id.* at Bates 001754. Finally, on March 30, 2015, at 10:41 am, Perich noted, "Correspondence to carrier rep…inquiry concerning advised payment of BPP to insured back in early March had been made and possibly cashed by insured." <u>See</u> *id.* at Bates 001750. He also noted, "Tel call from carrier rep in confirm of cashed check for BPP partial payment on 3/20." <u>See</u> *id.*

All of the above cited portions pulled from Perich's Claim File indicate that Chubb had several months of reminders and follow-ups from its own hired expert regarding payment, yet chose not to pay in a timely fashion. Plaintiff's General Manager at the time of the fire and for the next year, testified she asked Perich for money several times. If she would have had the insurance money in 60-90 days, she could have had the motel up and running and salvageable. <u>See</u> Exhibit E, Deposition Transcript of Sheila Allen, at p. 142. It took so long to get paid it damaged her ability to make repairs with no money. It damaged the ability to stay afloat and that was the end of the motel at that point. <u>See</u> *id.* at pp. 147-48.

As to why, for example, the contents losses were not paid for a year, Perich stated "I'm not certain for the delay." (Ex. C, p. 179).  However, Chubb did not prepare and submit its own estimate until May 13, 2015, fourteen (14) months after the fire. Chubb's Lehman, another adjuster, has testified that from the time of his initial inspection he tries to get all his reports out within twenty-one (21) days. (Exhibit F, Deposition Transcript of Steve Lehman at p. 59).  Even Chubb's Industrial Hygienist, Sumner, who first visited the scene October 23, 2015 (19 months after the fire) commented on the worsened conditions caused by delay, stating "the longer you leave it the worse it gets." He stated remediations should have started within the first two or three months, not the delay occasioned here. (Exhibit G, Deposition Transcript of Thomas Sumner at pp. 50, 52).

The evidence is, and a jury could conclude, that Chubb breached the insurance contract in the following ways: (1) late payment; (2) inadequate payment; and (3) further delay by breaching the appraisal provision to prevent claim resolution.

Further, Plaintiff's damages calculation offered to this Court takes into account the undenied fact that the City of Bessemer shut down the entire motel business, not just one building.[4]  It was around this time, and in the following months, that Chubb unilaterally withdrew from and killed the appraisal process.

---

[4] Cease and desist, City of Bessemer, November 13, 2015 (Plaintiff trial exhibit 97).

Haman had attempted to save its business by invoking appraisal on February 25, 2015.  Defendant agreed, entered the appraisal process and then breached the appraisal agreement. The two appraisers had met at the premises to discuss scope and Chubb's representatives walked away from the meeting. The calculation also is supported by the updated estimate from The Howarth Group, and it presents an approximation of damages, using generally accepted valuation principles. Such calculations support a damages award in the total amount of **$7,118,729.42**.

## THE APPLICABLE LAW ON DAMAGES

"In order to recover on a breach-of-contract claim, a party must establish: (1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages." *Capmark Bank v. RGR, LLC, et al.*, 81 So. 3d 1258, 1267 (Ala. 2011) (citing *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105 (Ala.2002)). "Prejudgment interest may be available in a breach-of-contract case, § 8–8–8, Ala.Code 1975, but only if damages were reasonably certain at the time of the breach." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 429 (Ala. 2006) (citing *Continental Cas. Co. v. Plantation Pipe Line Co.,* 902 So.2d 36 (Ala.2004)).

"'The general rule as to the measure of damages in breach-of-contract cases is that damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the same

condition he would have occupied if the contract had not been breached.'" *Ex Parte Steadman*, 812 So.2d 290, 295 (Ala. 2001) (quoting *Brendle Fire Equip., Inc. v. Electronic Eng'rs, Inc.,* 454 So.2d 1032, 1034 (Ala.Civ.App.1984)); *see also Systrends, Inc. v. Grp. 8760, LLC,* 959 So. 2d 1052, 1075 (Ala. 2006) (citations and internal quotation marks omitted) ("Damages for breach of contract should return the injured party to the position he would have been in had the contract been fully performed"); *Wells Fargo Bank, Nat'l Ass'n v. Choice Medicine: Hwy 53 Med. Ctr.,* No. 5:19-CV-00247-AKK, 2020 WL 2557927, at *4 (N.D. Ala. May 20, 2020) (quoting *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d 177, 183 (Ala. 2001)) ("'the damages awarded in an action for breach of contract should be an amount sufficient to return the nonbreaching party to the position he would have occupied had the breach not occurred.'").

These damages were reasonably anticipated and foreseeable. *HealthSouth Rehabilitation Corp. v. Falcon Mgmt. Co.,* 799 So.2d at 183; *See also Aldridge v. Dolbeer,* 567 So.2d 1267,1269 (Ala. 1990); *Kohn v. Johnson,* 565 So.2d 165, 168 (Ala. 1990); *Shiver v. Barrow,* 232 So.2d 676, 679 (Ala. Civ. App. 1970).  The measure of damages is what Haman, Inc. suffered because of Chubb's failure to perform under the contract. *Rickenbaugh v. Asbury,* 185 So. 181, 185 (Ala. Civ. App. 1938); *Hover v. Kirk,* 321 So.2d 214, 216 (Ala. Civ. App. 1975); *Mid-State Homes, Inc. v. Berry,* 359 So. 2d 401, 404 (Ala. Civ. App. 1978); *Cobbs v. Fred*

*Burgos Const. Co.,* 477 So.2d 335, 338 (Ala. 1985); *Target Media Partners*

*Operating Co., LLC v. Specialty Mktg. Corp.*, 177 So. 3d 843, 861 (Ala. 2013).

Further, the proposed Alabama Pattern Jury Instruction on Breach of

Insurance Contract provides as follows:

> Plaintiff Haman, Inc., says that Defendant Chubb Custom
> Insurance Company breached or broke its promises to abide by
> an appraisal provision in an insurance contract and to pay it for
> a loss covered under an insurance contract. To recover damages
> on these claims, Haman must prove to your reasonable
> satisfaction all of the following:
>
> 1. That a contract of insurance existed between Haman
> and Chubb;
>
> 2. That Chubb breached the contract by not timely
> paying the losses, by not adequately paying the amount of the
> losses and by not abiding by the appraisal provision contained
> in the insurance policy and that Haman suffered loss, covered
> under the insurance policy with Chubb; and
>
> 3. That Haman suffered damages because Chubb did not
> timely pay, did not participate in the appraisal process and that
> Chubb did not pay full benefits due under the insurance
> contract.

APJI (Civil) 20.17 (Adaptation, "Breach of Insurance Contract").

As to interest damages "where no written contract controls the interest rate

…, the legal rate of pre-judgment interest is six percent per annum." *Rhoden*

*v. Miller*, 495 So.2d 54, 58 (Ala. 1986) (internal citations omitted). Alabama law

provides that prejudgment interest on a contract for the performance of any act or

duty accrues from the day the act should have been performed. *See* Ala.Code

1975 § 8-8-8; *see also Miller and Co. v. McCown*, 531 So.2d 888, 889 (Ala. 1988) ("in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest from that time until recovery") (citations omitted).

These opinions and relevant law make it clear that these legal principles apply in breach of contract cases and that they apply to damages at a business, so long as the damages are the proximate result of a defendant's breach of contract, and such damages were reasonably certain at the time of the breach. Therefore, it is an understatement to say they apply to Haman's Knights Inn, an established business in Bessemer, Alabama, with almost 2 decades of history.

But for Defendant Chubb's breach of contract by paying too little too late, and refusing to resolve damages differences via the appraisal process, Plaintiff Haman's business would not have suffered devastating losses and been ultimately closed by the City of Bessemer. It is entirely foreseeable and within reasonable contemplation of the parties at the time of Chubb's breach, that by Chubb's paying too little too late on the fire claim, the business of Haman would plummet.Chubb was aware of the burned out and smoke-damaged rooms and that these rooms were not in operation. Chubb documented the scene within two (2) months. This was not a latent defect situation. Chubb was acutely aware of the situation. The building closest to the road was an eyesore after the fire. This deterred potential customers

16

from all buildings on the premises. Fire tape was put up. Without sufficient payment by Defendant Chubb, Plaintiff Haman simply could not afford to make repairs and keep up the business at its motel. It tried to continue by renting rooms in the other building. It paid for security guards for years. Chubb's breaches caused this failure to make repairs.  This case does not involve a refusal to make repairs. It involves more than $1 million dollars in underpayment and delay which prevented repairs and made it impossible for Plaintiff to stay in business. Thus, the motel was left to ruin, despite Plaintiff's efforts and desire to keep the business running. Defendant Chubb's breaches were the proximate causes of the deterioration and damage to all buildings on the premises and has now left all Plaintiff's buildings in a completely run-down, ragged, deserted, abandoned, and rat-infested condition. Plaintiff Haman is, unfortunately, the owner of three completely deteriorated buildings that must be totally replaced due to Defendant Chubb's multiple delays and underpayments conduct.

## **CONCLUSION**

It is the jury's prerogative to award damages for the physical destruction and deterioration and complete loss caused by Defendant's breaches. The jury is allowed to hear the evidence and decide if Defendant Chubb's breaches caused the loss of the buildings and physical assets.

Respectfully submitted,

/s/Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)
Attorney for Plaintiff

/s/Kenneth Bridges Cole, Jr.
Kenneth Bridges Cole, Jr. (ASB-0595-C56K)
Attorney for Plaintiff

OF COUNSEL:
CONCHIN, COLE, JORDAN & SHERROD
2404 Commerce Court
Huntsville, Alabama 35801
(256) 705-7777 – Telephone
(256) 705-7778 – Facsimile
gary@alainjurylaw.com
kenny@alainjurylaw.com

/s/Gregory A. Brockwell, Esq.
Gregory A. Brockwell, Esq. (ASB-9949-R49B)
Attorney for Plaintiff

/s/Jason R. Smith, Esq.
Jason R. Smith, Esq. (ASB-2692-J50S)
Attorney for Plaintiff

OF COUNSEL:
BROCKWELL SMITH, LLC
2100 1st Avenue North, Suite 300
Birmingham, Alabama 35203
(205) 800- 8500 – Telephone
(205) 928-8110 – Facsimile
greg@brockwellsmith.com
jay@brockwellsmith.com

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on the 21st day of June, 2021, served a true and correct copy of the foregoing to counsel for all parties in this matter via electronic mail.

Michelle A. Sherman, Esq.
Wayne D. Taylor, Esq.
MOZLEY, FINLAYSON
& LOGGINS, LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia 30342
msherman@mfllaw.com
wtaylor@mfllaw.com

Mark D. Hess, Esq.
HAND, ARENDALL
2001 Park Place, N., Ste. 1200
Birmingham, AL 35203
mhess@handarendall.com

David A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, Alabama
dlee@pljpc.com

Gregory A. Brockwell, Esq.
Jason R. Smith, Esq.
BROCKWELL SMITH, LLC
2100 1st Avenue North, Suite 300
Birmingham, Alabama 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

/s/Gary V. Conchin
Gary V. Conchin (ASB 1263-C56G)

19