FILED
2021 Jul-08  PM 05:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HAMAN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:18-CV-1534-JHE |
| | ) | |
| CHUBB CUSTOM INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT (DOC. 176)

Gary V. Conchin
Kenneth B. Cole, Jr.
**CONCHIN COLE & JORDAN**
2404 Commerce Court SW
Huntsville, AL  35801
(256) 705-7777 Phone
(256) 705-7778 Facsimile
E-mail: gary@alainjurylaw.com
kenny@alainjurylaw.com

Gregory Brockwell, Esq.
Jason R. Smith, Esq.
**BROCKWELL, SMITH, LLC**
2100 1st Avenue, N., Ste. 300
Birmingham, Alabama 35203
greg@brockwellsmith.com
jay@brockwellsmith.com

**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................... i

I.    INTRODUCTION................................................................................ 1

II.   CHUBB'S NEW ASSERTIONS............................................................. 2

    1)  That Haman cannot claim ACV or RCV and that Defendant
        Chubb has not been adequately apprised of the measure of
        Damages for breach of contract pursuant to Alabama law ................... 3

    2)  That Haman seeks damages in categories not disclosing during
        Discovery, which is absurdly false........................................................ 3

    3)  That Haman seeks damages for wind and water damages to
        Knights Inn and the office building, which is entirely false. ............... 7

    4)  That Haman seeks damages for lost income of business
        Interruption ........................................................................................ 7

    5)  That Haman cannot claim replacement costs ...................................... 7

III.  LEGAL AUTHORITY....................................................................... 11

IV.   ARGUMENT .................................................................................... 17

V.    CONCLUSION ................................................................................. 25

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**HAMAN, INC. d/b/a KNIGHTS INN,**

    **PLAINTIFF,**

**v.**

    **NO. 2:18-CV-01534-KOB**

**CHUBB CUSTOM INSURANCE
COMPANY,**

    **DEFENDANT.**

---

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 176)

### I.    INTRODUCTION

Plaintiff Haman, Inc. ("Haman") files this Response in Opposition to Defendant Chubb's ("Chubb") most recent dilatory Motion for Summary Judgment (Doc. 176). The Court should now deny Chubb's Motion for Summary Judgment as no good cause exists to extend the already-expired deadline for dispositive motions. There are no new facts to be considered, contrary to Chubb's assertions. No new claims have been made. Still, even if the Court allows Chubb another motion, Chubb's Motion should be denied because genuine issues of

1

material fact exist as to whether Haman can recover for Chubb's breaches of contract, and Chubb is not entitled to judgment as a matter of law.

This is a breach of contract case, pure and simple. (Doc. #166 – Pretrial Order). Chubb breached the contract by failing to properly pay the fire claim, by unreasonably delaying payment of the fire claim and by breaching the appraisal provision in the insurance policy in response to Haman's last-ditch effort to save its motel by invoking the appraisal provision. There is more than enough evidence to counter the arguments Chubb could have, and should have, made previously. **This effort by Chubb is simply a damages argument, not a legitimate dispositive motion.** That said, Haman's response speaks to the proper measure of damages in the case.

Chubb's most recent attempts to evade responsibility for its conduct have absolutely no merit. Chubb blatantly, against the case evidence, misrepresents the legal issues before the Court, in its new attempts to obtain another, time-barred, bite at the summary judgment apple. Every single new argument that Chubb now raises addresses false narratives. They are bogus. Chubb seeks, again, to have the Court view this case the way Chubb wants it viewed, and not according to the facts and law applicable to the simple breach of contract claims before the Court.

## II.  CHUBB'S NEW ASSERTIONS

Chubb blatantly misrepresents to the Court several unsupported contentions.  Since they all relate to damages, they are dealt with separately hereinbelow:

1) **That Haman cannot claim ACV or RCV and that Defendant Chubb has not been adequately apprised of the measure of damages for breach of contract pursuant to Alabama law**.  Chubb's ignorance of the law applicable, as set forth in Haman's Trial Brief on Damages (Doc. #168) is not the fault of any party but Chubb.  Breach of contract damages were clearly sought in the Complaint. (Doc. #1-1), and the Complaint stated the breach put the Plaintiff "completely out of business." (p. 3-4, ¶s 15-17); p. 6-7, ¶s 27-33.  The *ad damnum* clause in the breach of contract claim demands damages for breach of contract and <u>for all damages provided by law</u> and for such other and further relief as the Court and jury deems proper and just. The Pre-trial Order (Doc. #166) cites, with Chubb's approval, the breach of contract issues to be tried.  This entire ACV vs. RCV argument Chubb continues to conjure up is just like the Big Lie.[1]  It has no relevancy to this case. Alabama law on contract damages applies.  See *APJI 10.36*.

Alabama law governs Haman's state law claims in this action.  *Gasperini v.*

---

[1] "I won the election.  Don't believe the facts, believe me." Donald J. Trump, January 2021 (paraphrased).

*Ctr. For Humanities, Inc.* 518 U.S. 415, 427 (1996); *O'Neal v. Kennamer*, 958 F.
2d 1044, 1046 (11th Cir. 1992).

2) **That Haman seeks damages in categories not disclosed during
discovery, which is absurdly false.**   In addition to the above response, it should
be noted that Chubb invites review, in other pleadings filed, of Haman's 27-
month-old prior answers to interrogatories. Haman's answers to Chubb's first set
of interrogatories on April 3, 2019 (Doc. #771-2), interrogatory number 5, state
"however, it is very clear that if there was any doubt, at the time of the fire loss,
the property is certainly a total loss now."  Further, those answers state in answer
to interrogatory number 13, "It is easy to see that all buildings are total losses now
<u>due to abandonment</u> by Chubb" <u>and</u> refusal to pay the wind loss damages." Chubb
urges the Court to consider only part of that answer.  Further, those answers state
in answer to interrogatory number 26, "Seriously?  Our complaint states our cause
of actions for refusal to pay and underpayment and for bad conduct associated
with the delay in payment and refusal to pay on both the fire and storm losses.
The estimate provided by my retained experts and consultants show the
differences in what Chubb wants to pay and the true damages.  <u>Now the place is
a total loss</u>."

These answers were given over twenty-seven months ago. Defendant
Chubb then noticed Haman's deposition on November 26, 2019 to include "all

expert and consulting reports, records, documents, diagrams, photos, tests, test results, statements, correspondence and any other documentation that were gathered, provided to, or received from any experts or consultants related to the alleged damages to the property that occurred as a result of a fire on or about March 22, 2014." Chubb then proceeded to examine Ms. Visram for the second time in a 215-page deposition, where she stated, "I have been deprived of so much, I have lost everything. All my building's lost, everything is lost." Previously, Chubb took a 105-page deposition (EUO) from Ms. Visram on September 26, 2017 and asked her about damages. She advised the hotel had not operated and was out of business since November 2015. (Visram EUO p. 53; Doc.# 90-71). She signed a proof of loss for the fire loss on April 8, 2016. (Doc. #90-3).

Ms. Visram also testified "Chubb's entire effort has been delay, including all efforts made by their attorneys to stop the case in Bessemer. I incorporate my sworn statement at EUO and those of Mr. Howarth provided to Chubb. Still, after all that Chubb wouldn't pay the losses." Further, the answers to interrogatories, number 26 state, "I also have to incorporate all the examination under oath statements. Also, representatives of the City of Bessemer will be called to show the conditions that existed when we were forced to close the hotel." Ms. Visram has never asked for ACV or RCV damages. She has asked for repair damages caused by Chubb in underpaying and late paying, forcing her out of business.

On September 26, 2017 and again on December 12, 2017, Chubb requested lengthy EUO examinations from Haman's expert, Charles Howarth, supposedly to better understand Haman's damages. Ms. Visram had deferred to Mr. Howarth as to damages. Mr. Howarth explained in detail why the smoke and soot issues involve internal cavities, and expansion joints were a dominant issue Chubb's adjusters had ignored. (Howarth Sept. 26, 2017 EUO transcript, p. 46-56 – Doc. #90-69). Then again, on December 12, 2017, Mr. Howarth gave a second EUO and produced his entire file. Chubb's counsel confirmed he understood the fire loss cavities issue. ((Doc. #90-70; Howarth Dec. 12, 2017 EUO transcript, pp. 200-201, 246).

Both Haman and Chubb have listed Fire Chief Michael Brannon as a trial witness. Chief Brannon was never deposed or even contacted by Chubb, but his file reports tell the damage story in this case. The condition of the hotel before the fire was operable. There were only maintenance issues. After the fire damages and inability to repair, the entire hotel property declined, resulting in his decision to close the hotel. The hotel is now in a total loss situation. See Brannon affidavit, attached hereto as Exhibit "A", filed in opposition to Haman's most recent dispositive motion efforts.

There are no new damages claims, only damages for total loss of the buildings due to the Chubb breaches. See *APJI 10.36* on Contract Damages. There are no references to ACV or RCV in *APJI 10.36*.

3) **That Haman seeks damages for wind and water damages to the Knights Inn and the office building, which is entirely false. There is no such claim.**

4) **That Haman seeks damages for lost income or business interruption.** That is simply and entirely false. Those damages would be for lost rents at prevailing rent rates for a specific period of time. There is no such claim and the Pretrial Order (Doc. #166) makes that clear.

5) **That Haman cannot claim replacement costs.** Haman's claim relates to the deficiency balance due and owing for the fire structure loss, any damages naturally flowing from the fire loss, and interest provided by law. Breach of contract damages are repair costs, or the amount it takes to return the damaged party to its previous position. It equates to an RCV amount in this case simply because both consist of repair costs. But, breach of contract damages are neither RCV or ACV. Chubb never paid its actual cash value (ACV) obligations and in breaching the contract prevented replacement costs value from being recovered. Had the Court ruled the appraisal clause enforceable, the parties may have continued those type of discussions. Haman

made a claim for ACV/RCV in its proof of loss documents and otherwise, but they were not paid. This is, therefore, not a coverage case, or a dispute about RCV or ACV. This is a breach of contract case. Chubb cannot legitimately argue it is not subject to Alabama law. Chubb also cannot limit its damages to provisions of a contract it breached, as discussed more fully herein.

Rather than refer the Court to a previously filed document, or documents, Haman hereinbelow quotes excerpts, for ready reference, from the Affidavit of Chuck Howarth, a Haman expert witness. (Doc. #116-1). Chuck Howarth has testified:

> "As to the insurer's argument that our estimates are in some way inaccurate because we did not list ACV, it appears that Chubb, in making this argument, does not understand that an RCV loss valuation is the necessary first step in determining ACV. It is the relevant loss valuation in the policy. One cannot, per the policy, get to an ACV figure without first determining RCV of that loss and work from there." Further, see language, page 15 (Ex. 1, p.18) of the policy that places the burden on the insurer to determine ACV. There is no provision in the policy requiring the insured to determine an ACV loss. More importantly, in the Knights Inn case, the insurer's payments were inadequate to make repairs. If the insured had spent every dime it received, when it received it, there would not have been enough money to make the necessary repairs. I saw that personally. ACV never became a relevant factor and no requests for the differential between ACV and RCV could be made by the insured. In other words, in refusing to pay the amount adequate to make repairs, Chubb prevented Haman from ever repairing the losses and being able to request payment under the RCV provisions of the policy. Chubb's argument about RCV and ACV is completely nonsensical and shows a complete lack of understanding of its own policy. **This is a replacement cost**

**policy.   The insured paid for RCV coverage.   The ACV provisions are replaced by the RCV coverage provided.**

Further, Chubb's assertion that the ACV was not provided by Haman is just simply erroneous.  Proof of loss documents were sent to Chubb with the estimates that we prepared for Knights Inn.  (Haman MSJ Ex. 3, 5). Both proof of losses included RCV and ACV.  Chubb has had these since they were filed on April 8, 2016, more than five (5) years ago.  The policy requires proofs of loss documents <u>if</u> requested by the insurer. As a practical matter, insurers usually require an insured to sign a partial proof of loss document in exchange for a check.  That was done when Chubb paid its inadequate amount on the fire structure loss.  Chubb's adjuster required Haman to sign a partial proof of loss.  The Chubb representative procuring that signature on the initial, partial proof of loss, knew it was only a partial proof and not a release.  <u>See</u> Haman MSJ Ex. 16 pp.81-82, and;

The late payment of the fire loss, after eight months, was improper.  This fire loss should have been investigated and paid in 60-90 days.   When payment was finally made, it was inadequate to make the fire repairs, and;

The policy requires Chubb to make payment or explain why within 30 days  of receipt of the proof of loss.  Chubb did not do that to my knowledge, and;

Both parties have extensively investigated and evaluated the property damage, and the case was ripe for the appraisal process. It is very clear to  me  that  Chubb  aborted  the appraisal process because it was not going well for Chubb. We submitted to appraisal. So did Chubb. What Chubb did, aborting the process 1½ years after the loss, was unexpected and unfair. Even before that they delayed the appraisal process.  I had many communications with Chubb representatives. Their conduct in causing delay and then aborting the appraisal process was without good cause or reason. We delayed trying to resolve these claims to accommodate the appraisal process.  The result has been tragic."

(Howarth Affidavit excerpts (Doc. #116-1).

As shown in Plaintiff's Trial Brief on Damages, "[e]ven Chubb's Industrial Hygienist, Sumner, who first visited the scene October 23, 2015 (19 months after the fire) commented on the worsened conditions caused by delay, stating "the longer you leave it the worse it gets." He stated remediations should have started within the first two or three months, not the delay occasioned here." See Docs. 168-1, 168-2, 168-3, 168-4, 168-5, 168-6. See Doc. 168 at p.12 & Doc. 168-7. Chubb's adjuster Perich stated he made his recommendations, but Chubb did not follow them.[2]

According to Mr. Howarth, "In this case, you know, it's a fire loss. It's the most basic loss there is in the world, in the insurance world. And it's no question of coverage because the carrier has already issued some payments on their estimates. There's been work on it so far. There's a dispute over how much." (Doc. #90-69, Howarth Sept. 26, 2017 EUO transcript, p. 93); and "for whatever reason Chubb has just refused to do what they should have done, what they're supposed to do, and that is treat and deal with how far the soot went." (Doc. #90-70; Howarth Dec. 12, 2017 EUO transcript, pp. 200-201).

---

[2] Even Defendant's adjuster Perich states he made his recommendations within 90 days, and did not know why it took so long for Chubb to make payments. He made recommendations for ACV payments to be paid within the first 90 days, and for the pay advance within the first 60 days (Perich depo. p.144; Doc. #90-53). As to why Chubb ignored his recommendations he said "I don't know...but it was obviously not immediately responding." (Id.)

Haman's General Manager, Sheila Allen, has testified if she had the insurer's money in 60-90 days, she could have had the hotel up and running and salvageable. (Doc. #168-5).

All of the bogus, late-filed arguments Chubb now makes, after summary judgment and dispositive pleading deadlines, are either transpicuously false or simply interposed in defiance of the Court's previous orders.  The Pretrial Order in this case (Doc. 166), was entered May 26, 2021.

### III.  <u>LEGAL AUTHORITY</u>

"Pursuant to Federal Rule of Civil Procedure 16(b), the district court issues a scheduling order that limits the time to file dispositive motions." *Johnson v. AT&T Umbrella Benefit Plan No. 3*, No. 2:15-CV-01074-HNJ, 2018 WL 333832, at *2 (N.D. Ala. Jan. 9, 2018) (citing Fed. R. Civ. P. 16(b)(3)(A)). Further, "[t]he Eleventh Circuit has held that a district court does not abuse its discretion by holding the litigants to the clear terms of its scheduling order." *Id.* (citing, e.g., *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011)). Deadlines help the Court to manage its docket. *See Thurmond v. Bayer Healthcare Pharms., Inc.*, 649 F. App'x 1003, 1005 (11th Cir. 2016) (citing *Josendis*, 662 F.3d 1292 at 1307). Further, as Judge Kallon opined, "no party has the right to ignore a deadline or to fail to use the available tools to timely raise an issue with the court and then expect the court to grant relief after-the-fact." Order

at 6, *Thacker v. Tennessee Valley Authority*, No. 5:15-CV-01232-AKK, (N.D.Ala. Apr. 9, 2021), ECF No. 115. Additionally, Rule 6(b) provides that the court may extend a deadline for good cause when an act must be done within a specified time. Fed. R. Civ. P. 6(b)(1)(A). However, when a party moves to extend a deadline after that deadline has expired, Rule 6(b) provides that good cause manifests only "if the party failed to act *because of excusable neglect.*" Fed. R. Civ. P. 6(b)(1)(B) (emphasis added). There is no excusable neglect by Defendant Chubb, unless failure to understand Alabama breach of contract law is considered to be excusable neglect.

In *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court established the following factors for its consideration of excusable neglect: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395.

As to the summary judgment issues in this case, "a factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Haman, as

nonmovant in this case, appropriately countered Chubb's motion for summary

judgment as to breach of contract issues   The Court ruled.  (Doc. #158).

The Court's pretrial order in this case cited, with Chubb's approval, APJI

(Civil) 20.17.


APJI 20.17 states as follows:

Plaintiff Haman, Inc., says that Defendant Chubb Custom
Insurance Company breached or broke its promises to abide by
an appraisal provision in an insurance contract and to pay it for
losses covered under an insurance contract. To recover
damages on these claims, Haman must prove to your
reasonable satisfaction all of the following:

    1. That a contract of insurance existed between Haman
and Chubb;

    2. That Chubb breached the contract by not timely
paying the losses, by not adequately paying the amount of the
losses and by not abiding by the appraisal provision contained
in the insurance policy and that Haman suffered loss, covered
under the insurance policy with Chubb; and

    3. That Haman suffered damages because Chubb did not
timely pay, did not participate in the appraisal process and that
Chubb did not pay full benefits due under the insurance
contract.

APJI (Civil) 20.17 (Adaptation, "Breach of Insurance Contract").

Although the pretrial order did not specify the APJI on breach of contract

damages, the measure of damages for breach of contract is clearly those damages

which would place the Plaintiff in the same condition it would have been in if the

contract had not been breached.   APJI 10. 36.  The pre-judgment interest jury charge

is APJI 10.37.  Again, Alabama law governs Haman's state law claims in this action.

*Gasperini v. Ctr. For Humanities, Inc.,* 518 U.S. 415, 427 (1996);  *O'Neal v.*

*Kennamer*, 958 F. 2d 1044, 1046 (11th Cir. 1992).


"In order to recover on a breach-of-contract claim, a party must establish: (1)

the existence of a valid contract binding the parties; (2) the plaintiff's performance

under the contract; (3) the defendant's nonperformance; and (4) damages."

*Capmark Bank v. RGR, LLC, et al.*, 81 So. 3d 1258, 1267 (Ala. 2011)

(citing *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105 (Ala.2002)); *Cobblestone*

*Condominium Assn., Inc. v. Travelers Ins. Co.,* 377 F. Supp. 3d 1291 (N.D. Ala.

2019); *Southern Med. Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala.

1995) (citing *McGinney v. Jackson*, 575 So. 2d 1070, 1071-72 (Ala. 1991)). "A

nonperformance must be 'material,' which means that the nonperformance

undermined the parties' objectives in making the contract."  *Cole v. Owners Ins.*

*Co.*, 326 F. Supp. 3d 1307, 3121 (N.D. Ala. 2018) (citing *Sokol v. Bruno's, Inc.*,

527 So. 2d 1245, 1247-48 (1988)).  The law implies a duty of good faith and fair

dealing in every contract.  *Shoney's LLC v. MAC East, LLC*, 27 So. 3d 1216, 1220,

n. 5 (Ala. 2009).  This "implied covenant" requires that "neither party shall do

anything which will have the effect of destroying or injuring the rights of the other

14

party to receive the fruits of the contract." *Shoney's,* 27 So. 2d at 1220, n. 5 (quoting *Sellers v. Head*, 73 So. 2d 747, 751 (1954)).  "Prejudgment interest may be available in a breach-of-contract case, § 8–8–8, Ala. Code 1975, but only if damages were reasonably certain at the time of the breach." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 429 (Ala. 2006) (citing *Continental Cas. Co. v. Plantation Pipe Line Co.,* 902 So.2d 36 (Ala.2004)).

"'The general rule as to the measure of damages in breach-of-contract cases is that damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.'" *Ex Parte Steadman*, 812 So.2d 290, 295 (Ala. 2001) (quoting *Brendle Fire Equip., Inc. v. Electronic Eng'rs, Inc.,* 454 So.2d 1032, 1034 (Ala.Civ.App.1984)); *see also Systrends, Inc. v. Grp. 8760, LLC,* 959 So. 2d 1052, 1075 (Ala. 2006) (citations and internal quotation marks omitted) ("Damages for breach of contract should return the injured party to the position he would have been in had the contract been fully performed"); *Wells Fargo Bank, Nat'l Ass'n v. Choice Medicine: Hwy 53 Med. Ctr.,* No. 5:19-CV-00247-AKK, 2020 WL 2557927, at *4 (N.D. Ala. May 20, 2020) (quoting *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So. 2d 177, 183 (Ala. 2001)) ("'the damages awarded in an action for breach of contract

should be an amount sufficient to return the nonbreaching party to the position he would have occupied had the breach not occurred.'").

These damages were reasonably anticipated and foreseeable. *HealthSouth Rehabilitation Corp. v. Falcon Mgmt. Co.,* 799 So.2d at 183; *See also Aldridge v. Dolbeer,* 567 So.2d 1267,1269 (Ala. 1990); *Kohn v. Johnson,* 565 So.2d 165, 168 (Ala. 1990); *Shiver v. Barrow,* 232 So.2d 676, 679 (Ala. Civ. App. 1970). The measure of damages is what Haman, Inc. suffered because of Chubb's failure to perform under the contract. *Rickenbaugh v. Asbury,* 185 So. 181, 185 (Ala. Civ. App. 1938); *Hover v. Kirk,* 321 So.2d 214, 216 (Ala. Civ. App. 1975); *Mid-State Homes, Inc. v. Berry,* 359 So. 2d 401, 404 (Ala. Civ. App. 1978); *Cobbs v. Fred Burgos Const. Co.,* 477 So.2d 335, 338 (Ala. 1985); *Target Media Partners Operating Co., LLC v. Specialty Mktg. Corp.*, 177 So. 3d 843, 861 (Ala. 2013).

Chubb clearly breached its appraisal obligation. In a similar case, it was held "because the parties reached the point of submitting Cobblestone's claim to appraisal, Travelers necessarily agreed that Cobblestone had performed under the policy. Having properly entered the appraisal process, Travelers had a contractual obligation to complete the process." *Cobblestone Condominium Assn., Inc. v. Travelers Ins. Co.*, 377 F. Supp. 3d 1291 (N.D. Ala. 2019)). Further, from *Cobblestone* with respect to the fire loss, the Court has determined a contract existed between the parties and that Travelers breached the contract by

withdrawing from appraisal. Travelers's decision to not satisfy the claim in *Cobblestone* or to move a resolution forward via appraisal amounted to a denial of the claim. The Alabama Supreme Court has recognized that a delay in payment may constitute a denial of a claim even though the insurer has agreed to pay some amount toward the claim. *See Livingston v. Auto Owners Ins. Co.*, 582 So. 2d 1038, 1041-42 (Ala. 1991) (finding that the insurer's "investigative tactics" and delay in paying the claim "amounted to a denial of the claim"). *Id.* By breaching the insurance contract, Chubb denied Haman's claim. In a case before this very Court, the Court held, "stated another way, the parties agree that a fire occurred and that the things damaged by the fire would be covered under the Policy. Owners and the Coles, therefore, only disagree about the extent and value of the loss. That subject is primed for appraisal." *See Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 3121 (N.D. Ala. 2018).

## IV. **ARGUMENT**

On May 27, 2020, this Court entered an Order which provided, in part, "Dispositive/Daubert Motions are due by August 20, 2020." See Order, Doc. 79.

The deadline for filing dispositive motions in this case passed over ten months ago. The Court set that deadline for August 20, 2020. See Order, Doc. 79. Therefore, Defendant Chubb should be held to the terms of the Court's Order, and Chubb's new Motion for Summary Judgment should be summarily DENIED. Since the court has

agreed to look at what Chubb says are new arguments Chubb should have previously made, Chubb's Motion should still be denied because genuine issues of material fact exist as to whether Haman can recover for Chubb's breaches of contract, when the breaches occurred, and what damage Haman is entitled to. Chubb's most recent get-out motion is simply a damages argument, not a legitimate dispositive motion.

Chubb's most recent Motion for Summary Judgment (Doc. 176) is highly prejudicial to Haman and not in the interest of effective judicial administration. Chubb is simply trying to get another bite at the apple on an issue the Court has already addressed and denied at the summary judgment stage. Chubb's new Motion for Summary Judgment is not raised on account of excusable neglect, nor any reason which merits good cause. Being "surprised" at Alabama law on breach of contract damages is not good cause. It is not proper to argue a non-breach measure of damages in a breach of contract case. Therefore, Defendant's Motion for Summary Judgment (Doc. 176) filed on June 25, 2021 should be DENIED.

Chubb incorrectly argues "Haman cannot establish an essential element of its only remaining claim for breach of contract - that Chubb did not pay the "benefits due under the insurance contract" (1 Alabama Pattern Jury Instructions (Civil) 20.17) - and Chubb is entitled to judgment as a matter of law." See Doc. 176 at p. 2. Chubb's argument is without merit. Chubb breached the insurance contract in more than one way. Haman has sufficiently shown all essential elements of its case with

respect to the breach of contract claim, including the element that Chubb did not pay full benefits due under the insurance contract, paid late and breached appraisal. Haman has not presented the issues in any way that precludes its recovery. Therefore, the Court should deny Chubb's Motion for Summary Judgment.

This case does not involve a refusal to make repairs.  It involves more than $1 million dollars in underpayment and delay by Chubb which prevented repairs and made it impossible for Haman to stay in business. Thus, the motel was left to ruin, despite Haman's efforts and desire to keep the business running. Chubb's breaches caused this failure to make repairs.  Chubb cannot take advantage of its breaching conduct by preventing performance of that contract.  Haman's brief on damages (Doc. #168) details with great specificity evidence that failure to pay an adequate amount timely led to the entire motel going out of business.  If that were not enough, Plaintiff tried to save its business by invoking appraisal, and Chubb also breached that provision of the contract.

The Court ordered Haman to file a damages calculation, which Haman timely did. That damages calculation did not involve ACV or RCV costs.  There was a time, in the appraisal process, that such terms of art may have been relevant.  But Chubb refused that damages resolution method.  It breached that contract.  It cannot now jump back into that limited method of ascertaining damages. Chubb's filing of a motion to strike a court-ordered compliance document is misplaced. Chubb may

have a right to argue the measure of damages, but not to strike Haman's damages, especially since the damages sought comport with Alabama law.

Further, this case is distinguishable from the cases cited by Chubb. For example, Chubb draws attention to the *Hilley*, *Blevins*, and *Huggins* opinions on pages 5-7 of its new Motion for Summary Judgment (Doc. 176). These cases were previously cited by Chubb in its prior motion for summary judgment. This case, unlike those cases cited by Chubb, is not one where the insureds "'allegedly intended' to replace the fire destroyed building. See Doc. 176 at p. 6. That is a classic RCV vs. ACV argument, inapplicable here.

The replacement cost cases cited by Chubb are inapplicable to our case facts. In *Hilley*, the Hilley's sought an advancement of the replacement costs so their contractor could finish with their home repairs. **There was no dispute about the amount of the replacement costs.** When Allstate would not guarantee the additional monies due under the policy to be paid to the construction company, the Hilley's contented that Allstate's refusal to work with the contractor constituted a breach of contract, bad faith and violation of public policy. There were also additional living expense issues. Citing *Huggins v. Hanover Ins. Co.*, 423 So. 2d 147 (Ala. 1982) and *Blevins v. State Farm Casualty Ins. Co.*, CV-86-DT-0114-M (N.D. Ala. Aug. 22, 1986) (Propst, J.). Plaintiff had pressed for payment of replacement cost policy limits. Those are not the damages being sought by

Haman.  Although the Chubb policy at issue is a replacement cost policy, damages pursuant to the limited confines of the policy are not the measure of damages in the Haman case.   Further, neither party is entitled to interfere with the rights of the others to receive the benefits of an insurance agreement.  See *Childs v. Mississippi Valley Title Ins. Co.*, 359 So. 2d 1146 (Ala. 1978).

There is no evidence, or even dictum in *Hilley, Huggins* and *Blevins* related to conduct of the insurer <u>preventing</u> the insured from repairing its premises.  There was no evidence of lengthy delays or hugely significant underpayments.  There was not any argument about the amount of loss.

For example, in *Hilley*, the court expressly noted that the parties did not dispute the damages calculations Allstate had made.[3]  In *Huggins* a fire gutted the insured's residence and he received $85,000.00 in actual cash. Since it took only $79,000.00 to totally rebuild, which was done, the carrier argued it had met its payment duties when it overpaid for the loss.  The Court agreed.

The undisputed evidence in our case is that Chubb not only breached its agreement to timely pay, but did not pay even the proper undisputed, sometimes called actual case values by insurers, amount.   Therefore, they were never in a replacement cost situation and the refusal to pay proper damages under the

---

[3] *Hilley* had more to do with fraud and alternative living expenses than the calculation of damages.

contract, along with the serious delays in paying anything, and the subsequent breach of the appraisal provision, all amount to separate breaches of contract for which Alabama law provides a remedy. That remedy is not confined to the four corners of an appraisal cost analysis. As it stands, however, those are not the damages that Haman seeks. The very nature of Haman's damages involves an evaluation of repair costs, which is exactly what The Howarth Group provided to Chubb in a 225-page report. That report correctly identified repair costs. It did not identify ACV. Chubb is now estopped from backing up and seeking the protection of terms of the very insurance contract that it breached.

Alabama law makes clear that Chubb cannot breach the insurance contract and then use Haman's alleged resulting non-performance as a defense to its breach failures and breaching conduct by expecting Haman to make repairs when Chubb's own breaching conduct is the sole reason which prevented Haman's motel repairs and/or replacement. Therefore, Haman is entitled to bring this breach of contract claim against Chubb and Haman is further excused from any performance toward repairs.

"A defendant breaches a contract when he or she prevents performance of the contract without the fault of the plaintiff whose duty it was to perform and who is ready, willing, and able to perform." *Baldwin v. Panetta*, 4 So. 3d 555, 561 (Ala. Civ. App. 2008) (citing *Braswell v. Malone,* 262 Ala. 323, 328, 78 So.2d 631, 636

(1955) (internal quotation omitted)). Further, "[a] party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure." *Id.* at 562. (quoting *Big Thicket Broad. Co. of Alabama, Inc. v. Santos,* 594 So.2d 1241, 1244 (Ala.Civ.App.1991)). "It is well settled that once a party to a contract materially breaches the contract by repudiating the parties' agreement, the other party is excused from performance and has an immediate cause of action for the breach." *Id.* (citing *Federal Ins. Co. v. I. Kruger, Inc.,* 829 So.2d 732, 737 (Ala.2002)).

Haman's ability to perform repairs was made impossible due solely to Chubb's breaches, namely its delayed underpayment and its abandonment of the appraisal process. As such, Haman is entitled to recover damages under its claim for breach of contract.

The insurer cannot prevent the insured's rightful recovery by improper delay, underpayment or by breaching the appraisal provision in the policy. All of those issues are present in our case. None of them are present in Chubb's ACV vs. RCV argument cases.

No where in *Hilley, Huggins* or *Blevins* is there any evidence that a simple fire loss should have been investigated and paid within sixty to ninety days. However, literally every expert who was asked their opinion about timing on our case, including experts for Haman and experts for Chubb, rendered opinions that

sixty to ninety days is an appropriate time to resolve such a claim as the Haman claim. Not eight (8) months, for the structure payment and not twelve (12) months, for a contents payment. This was an ongoing business, not a residence that could be rebuilt while the homeowner was provided an alternative living location.

The policy also stated that replacement cost coverage did not apply to contents.  See policy p. 14, 3(b)(2).   Note that the Replacement Cost provision in the Chubb policy is listed under G.  Optional Coverages.  These coverages are optional, according to Chubb.

Haman has consistently claimed actual damages, what it costs to repair. Those are the proper damages under Alabama law. Haman has never agreed with Chubb's estimates.

In the case at hand, the determining factor is not whether any "condition precedent to recovery under the policy" was met,[4] and it is not whether Haman's inability to afford or otherwise obtain repairs in and of itself prevented repairs.  This is not a coverage case.  It is a breach of contract case. The issue in this case is whether Defendant Chubb breached the contract by its substantial underpayment and delay of any payment for the fire claim-related damages.

The jury is entitled to decide if Chubb underpaid the claim. It is clear that Chubb delayed its payment to Haman's detriment. Haman has presented enough evidence

---

[4] See Doc. 176 at pp. 5-7 for Defendant Chubb's discussion about conditions precedent.

to show a genuine and material dispute as to whether Chubb's breaches and delay of payment led to the foreseeable decline and ultimate end of Haman's motel business. In fact, the evidence is overwhelming. Haman's General Manager at the time of the fire and for the next year, Sheila Allen, testified she asked one of Chubb's appraisers, Brent Perich, for money several times. If she would have had the insurance money in 60-90 days, she could have had the motel up and running and salvageable. See Doc. 168-5. It took so long to get paid it damaged her ability to make repairs with no money. It damaged the ability to stay afloat and that was the end of the motel at that point. See id. Based on this, Chubb should not be entitled to summary judgment as genuine issues of material fact exist.

## V. **CONCLUSION**

The Court's deadline to submit dispositive motions has passed and Chubb has failed to demonstrate good cause to have extended that deadline. Chubb's blatant misrepresentations to the Court, creating false narratives, arguing irrelevant measures of damages in order to get another bite at the apple, should be denied, as genuine issues of material fact exist as to whether Haman can recover for Chubb's breaches of contract, and Chubb is not entitled to judgment as a matter of law. Chubb cannot seek to benefit from its own breaches and malfeasance. Chubb's most recent effort is not really a dispositive motion argument. It is a

damages argument. The jury is entitled to determine if Chubb breached, when it breached and what damages naturally flowed from that breach. Therefore, for the reasons presented herein, Haman respectfully asks that this Court DENY Defendant Chubb's most recent Motion for Summary Judgment (Doc. 176).

Respectfully submitted this 8th day of July, 2021.

/s/Gary V. Conchin
Gary V. Conchin (ASB-1263-C56G)
Attorney for Plaintiff

/s/Kenneth Bridges Cole, Jr.
Kenneth Bridges Cole, Jr. (ASB-0595-C56K)
Attorney for Plaintiff

OF COUNSEL:

CONCHIN, COLE, JORDAN & SHERROD
2404 Commerce Court
Huntsville, Alabama 35801
(256) 705-7777 – Telephone
(256) 705-7778 – Facsimile
gary@alainjurylaw.com
kenny@alainjurylaw.com

/s/Gregory A. Brockwell, Esq.
Gregory A. Brockwell, Esq. (ASB-9949-R49B)
Attorney for Plaintiff

/s/Jason R. Smith, Esq.
Jason R. Smith, Esq. (ASB-2692-J50S)
Attorney for Plaintiff

OF COUNSEL:

BROCKWELL SMITH, LLC
2100 1st Avenue North, Suite 300
Birmingham, Alabama 35203
(205) 800- 8500  – Telephone
(205) 928-8110 – Facsimile
greg@brockwellsmith.com
jay@brockwellsmith.com

## CERTIFICATE OF SERVICE

    I do hereby certify that I have on the 8th day of July, 2021, served a true and correct copy of the foregoing to counsel for all parties in this matter via electronic mail.

Michelle A. Sherman, Esq.
Wayne D. Taylor, Esq.
MOZLEY, FINLAYSON
& LOGGINS, LLP
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, Georgia 30342
msherman@mfllaw.com
wtaylor@mfllaw.com

Mark D. Hess, Esq.
HAND, ARENDALL
2001 Park Place, N., Ste. 1200
Birmingham, AL 35203
mhess@handarendall.com

David A. Lee, Esq.
PARSONS, LEE & JULIANO, P.C.
600 Vestavia Parkway, Suite 300
Birmingham, Alabama
dlee@pljpc.com

/s/Gary V. Conchin
Gary V. Conchin (ASB 1263-C56G)