FILED
2021 Oct-12  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HAMAN, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | **2:18-cv-01534-KOB** |
| CHUBB CUSTOM INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION

The court has described this case as "lengthy and contentious," and that statement holds true even in the weeks before trial. On June 21, 2021, Haman filed its damages list in preparation for trial. (Doc. 167). Defendant Chubb Custom Insurance Company then simultaneously filed a motion to strike Haman's damages, (doc. 177), and a motion asking the court to *sua sponte* consider the sufficiency of Haman's claim as a matter of law under Rule 56(f)(3), (doc. 176). Even though this court considered and ruled upon the parties' prior motions for summary judgment, (doc. 158), Chubb's motion for summary judgment under Rule 56(f) "respectfully suggest[ed]" that the court *sua sponte* enter summary judgment against Haman because it cannot recover the damages it seeks as a matter of law (doc. 176 at 2). *See* Fed. R. Civ. P. 56(f).

1

Haman's valuation method for its requested damages has twisted, turned, and doubled back as this case progressed. Before the case even began, Haman provided to Chubb estimates of both ACV (actual cash value) and RCV (replacement cost value) losses. *See* (doc. 166 at 4). Then Haman's initial disclosures announced Haman's damages "for the fire loss for $1,679,957.33 RCV. . . . Those are the compensatory damages at issue." (Doc. 176-2 at 7). Haman's supplement to the initial disclosure, however, provided "what ACV (actual cash value) would be for [Haman's expert's] RCV (replacement cost value) estimates." (Doc 69-4 at 3). But despite its mention of ACV damages, the supplemental disclosures also stated that Haman was seeking only "replacement costs . . . those costs to repair or replace at the time repairs or replacements are made." (Doc. 69-4 at 4). In the Pretrial Order, Haman states that it seeks "the actual current replacement costs." (Doc. 166 at 8). More recently, Haman filed its damages statement, which Haman argues represents the value of the "natural and proximate consequences" of Chubb's breach. (Doc. 168 at 13).

As this case approaches trial, the court has recognized the importance of resolving the issue of what damages, if any, Haman may recover. On March 2, 2021, this court stated in the *Daubert* hearing that "[o]ne of the big issues in this case . . . is whether the measure of damages would be the replacement cost or the actual cash value at the time of the loss." (Doc. 176-1 at 38). The court recognized

that damages were an issue to be resolved "somewhere along the way before the case goes to the jury." (*Id.*). So when Chubb filed its challenges to Haman's damages statements, the court invited briefing on the issue, reiterating that the "legal question of the proper measure of damages should be decided before trial in the interest of efficiency." (Doc. 182). Haman responded (doc. 186); Chubb then replied (doc. 190). Given the twisting nature of Haman's valuation for damages, Haman's damages statement and briefs on the motions at hand provide the first definitive statement of Haman's damages valuation to date. The court can finally address the issue as a matter of law.

For the reasons explained below and because it presents a question of law without disputed facts, the court construes Chubb's motion to strike as a motion for summary judgment as to RCV damages; as to claims regarding the Knights Inn and Office buildings; as to claims of business interruption; and as to claims for prejudgment interest on 2021 valuation of damages. The court will grant summary judgment in part against Haman, finding that Haman cannot claim replacement cost value (RCV) damages under the policy at issue. The court will also grant summary judgment in part as to all other damages not directly caused by the March 22, 2014 fire that damaged the Studio Inn building. The court will not revisit its denial of partial summary judgment against Haman for its underlying claims for breach of the policy regarding fire damage to the Studio Inn building. *See* (doc.

158).

## I.   <u>Background</u>

The factual background for this case is set forth in this court's prior memorandum opinion regarding the parties' motions for summary judgment. *See* (Doc. 158). And in the Pretrial Order, the parties also stipulated to many of the facts that are relevant here. (Doc. 166).

In short, the case concerns an insurance dispute stemming from alleged losses to Haman's three buildings: a Studio Inn, a Knights Inn, and an Office building. The parties have stipulated that, on March 22, 2014, a fire damaged the Studio Inn building. (Doc. 166 at 6, Pretrial Order). Haman does not claim that the fire damaged the other two buildings, but claims that those buildings suffered wind damage during a tornado that occurred on April 28, 2014. The court entered summary judgment against Haman on the wind claims because they were untimely filed. (Doc. 158 at 38 *et seq.*).

The parties also agree that Haman filed a sworn proof of loss with Chubb in September 2014, claiming damages of $466,838.73 for 36 rooms in the Studio Inn caused by fire. (*Id.*). This damage claim was "not reduced to actual cash value or for depreciation." (*Id.*). At the same time, Haman filed another sworn proof of loss for $26,481.40, for damages to personal property. (*Id.*). In November 2014, Chubb

made payments as to both these claims in the amounts of $357,401.93 and $27,602.01, respectively. (*Id.*).

In 2015, Haman submitted additional claims that Chubb has not paid. The parties agree that in March 2015, Haman submitted an estimate for $1,679,975.00 for "repair and replacement costs" for fire damage to the Studio Inn. (Doc. 166 at 4). Haman also submitted an estimate "for $139,451.32 RCV (replacement cost value) and $86,471.20 ACV (actual [cash] value) for personal property losses on August 7, 2015" stemming from fire damage to the Studio Inn. (Doc. 166 at 6). Chubb disagreed with these valuations, so Chubb did not make payments on the claims submitted in 2015. (*Id.* at 4).

And, as most relevant to the issues here, the parties agree that Haman never made any repairs or replacements to its damaged property. (*Id.* at 6).

In March of 2021, the court granted summary judgment as to all claims arising out of the wind damage to the Studio Inn, Knights Inn, and Office buildings, as well as other claims. (Doc. 158). After that ruling, Haman's only remaining claim is for breach of contract as to the damages arising directly from the fire damage only as to the Studio Inn building. In the summary judgment opinion, this court identified a genuine issue of material fact as to whether Chubb breached the insurance policy by failing to honor the policy's appraisal process and

whether Chubb paid the proper amount on Haman's claims caused by the fire. (Doc. 158 at 33, 38).

### a.  The Chubb Policy

The Chubb policy issued to Haman covers "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Doc. 105-76 at 8).[1] The policy provides replacement cost as optional coverage: "Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form." (Doc. 105-76 at 21) (*see also* Doc. 105-76 at 7, Schedule, listing "RC" as "Valuation"). But the insured may make a claim for loss or damage "on an actual cash value basis instead of on a replacement cost basis." (Doc. 105-76 at 21). Even so, the insured can change to a claim for the optional replacement cost coverage *if* the insured notifies Chubb of its "intent to do so within 180 days after the loss or damage." (Doc. 105-76 at 21).

In calculating damage on a replacement cost basis, the policy provides that Chubb will not pay more than the least of the following:

(1) The Limit of Insurance applicable to the lost or damaged property; [*or*]
(2) The cost to replace the lost or damaged property with other property:
    (a) Of comparable material and quality; and
    (b) Used for the same purpose; *or*

---

[1] The terms of the policy are also set forth in this court's previous summary judgment opinion (doc. 158 at 17 *et seq.*), and the record contains a certified copy of the policy (doc. 105-76).

> (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

(Doc. 105-76 at 22) (emphasis added).

> But in any event,

> We [Chubb] will not pay on a replacement cost basis for any loss or damage:
>> (1) Until the lost or damaged property is actually repaired or replaced; *and*
>> (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(Doc. 105-76 at 21) (emphasis added).

Further, the policy provides that the value of the damaged property will be determined "as of the time of loss or damage." (Doc. 105-76 at 18).

Another relevant policy provision sets out duties after loss or damage. It requires that the insured

> Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. . . .

(Doc. 105-76 at 17).

Haman also purchased "business income" coverage, for which Haman has not stated a claim. (Doc. 105-76 at 7, 23 *et seq.*).

### b.  Haman's Damages Statement

On June 21, 2021, Haman filed its damages list in preparation for trial. (Doc.

168). That damages list states the following amounts:

| | | |
|---|---|---|
| Studio Inn Building | $1,987,612.20 | |
| Knights Inn Building | $1,892,960.00 | |
| Office Building | $1,360,565.00[2] | |
| Personal Property | <u>$139,451.32</u> | |
| | $5,380,588.52 | **SUBTOTAL** |
| Amount paid by Defendant ($357,401.93 plus $27,601.01) | – <u>$385,002.94</u> | **CREDIT** |
| | $4,995,585.58 | **NET DAMAGES** |
| Simple interest (6% from June 20, 2014 to July 19, 2021 = $299,735.13 Per year x 7 ½ years) | <u>$2,123,143.84</u> | **INTEREST** |
| | **$7,118,729.42** | **TOTAL[3]** |

---

[2] The court notes that Haman's claims for damages to the three buildings exceed the coverage limits for each building. *See* (doc. 105-76 at 7).

[3] The court also notes that Haman's total damages exceed the policy's Loss Limit of Insurance— $5,480,000.00—which is the most Chubb will pay for "all premises," "under all coverages . . ." "for all loss or damage caused by or resulting from" one event or series of related events that contribute to or "worsen the loss or damage." (Doc. 105-76 at 56).

(Doc. 167 at 1–2). Haman also attached an exhibit itemizing the damages for the Studio Inn building only. That list includes itemized values for specific building materials and items like "overhead," and "profit," for a total of $1,987,612.20. (Doc. 167 at 5).

## II.    <u>Legal Standard</u>

The court notes the odd procedural mechanism of Chubb's filing a motion to strike damages alongside a prompt that the court consider granting summary judgment *sua sponte*. The court found only a few cases in which courts addressed such a combination of motions to strike damages and motions for summary judgment. These courts considered the motion to strike as a motion for partial summary judgment on the issue of damages. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) ("[Defendant's Rule] 12(f) motion was really an attempt to have certain portions of [plaintiff]'s complaint dismissed or to obtain summary judgment against [plaintiff] as to those portions of the suit— actions better suited for a Rule 12(b)(6) motion or a Rule 56 motion"); *In re Prempro Prods. Liability Litigation*, 2008 WL 565330, at *1 (E.D. Ark. Feb. 28, 2008) ("Although titled Motions to Strike, the motions are for summary judgment."). These courts have suggested that ruling on the motions to strike as partial motions for summary judgment under the typical legal standard for Rule 56 motions is appropriate in circumstances involving questions of law. By treating the

motions to strike as motions for partial summary judgment, courts may eliminate damages claims while leaving the underlying claims intact.

The court will follow the lead of this persuasive authority and consider Chubb's motion to strike as a motion requesting summary judgment regarding recoverable damages. This path is especially appropriate in this case because Chubb's motion to strike addresses purely legal issues and asks the court to strike Haman's claimed damages "and all claims arising out of it." (Doc. 177 at 1). The court may decide these matters of law under the familiar standard of review for all Rule 56 motions because the issue is purely legal and, as explained below, no disputed facts are at issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, the court declines Chubb's invitation to act *sua sponte* under Rule 56(f) as unnecessary to resolve the legal issues presented.

Chubb also argues that some of Haman's damages claims were not previously disclosed. Under Rule 26(a), parties must disclose "a computation of each category of damages claimed." Fed. R. Civ. P. 26(a)(1)(A)(iii). Failure to provide accurate damages computations under Rule 26(a) triggers Rule 37(c), which provides that a "party is not allowed to use [undisclosed] information or witness[es] to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When a party proposes a new "theory of damages" on the eve of trial, the Eleventh Circuit

under Rule 37(c) has upheld the trial court's exclusion of those damages and the theory underlying them because the party did not "enumerate 'loss of goodwill' as a category of damages until the Joint Pretrial Statement." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010).

## III.   <u>Discussion</u>

Haman seeks damages for "repair costs" to the Studio Inn, Knights Inn, and Office buildings, as well as "personal property" losses and prejudgment interest, for a total of $7,118,729.42. (Doc. 167). Chubb challenges these claims on several grounds: (1) Haman cannot recover RCV costs because it failed to replace the damaged property; (2) Haman cannot recover on damages to the Knights Inn and Office buildings because those buildings were not damaged by the fire; (3) Haman cannot claim lost business income because it has never stated a claim for lost business income; (4) Haman cannot calculate its damages at 2021 replacement cost prices; and (5) Haman cannot recover prejudgment interest at six percent. (Doc. 177 at 3). The court agrees and will discuss each point in turn. But the court does not revisit its previous finding that genuine issues of material fact exist as to whether Chubb breached the policy at issue and whether Haman is entitled to *some* damages, so the court is not revisiting Haman's underlying claims. *See* (doc. 158 at 33).

### a.  *Replacement Cost Value (RCV) Damages*

Haman has previously described the insurance policy at issue as "a replacement cost policy." (Doc. 74 at 21) (emphasis in original). As previously stated, the policy describes replacement cost value (RCV) as the *least* of: (1) the policy's limit ($1.6 million for the Studio Inn); *or* "(2) The cost to replace the lost or damaged property with other property: (a) Of comparable material and quality; and (b) Used for the same purpose; *or* (3) The amount actually spent that is necessary to repair or replace the lost or damaged property." (Doc. 105-76 at 22) (emphasis added).

But the policy also provides that Chubb "will not pay on a replacement cost basis for any loss or damage: (1) Until the lost or damaged property is actually repaired or replaced; *and* (2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage." (Doc. 105-76 at 21) (emphasis added). In other words, the policy requires that Haman replace or repair its damaged property in a reasonable time before Chubb is obligated to pay RCV damages.

Repair or replacement requirements are commonplace in RCV insurance policies, and Alabama courts routinely uphold them. *See, e.g.*, *Hilley v. Allstate Ins. Co.*, 562 So. 2d 184 (Ala. 1990); *Huggins v. Hanover Ins. Co.*, 423 So. 2d 147 (Ala. 1982). Under Alabama law, the requirement that an insured repair the

damaged property is a "condition precedent" to recovery of RCV losses: "A party who has not repaired or replaced his insured building has not complied with the condition precedent to recovery under the policy and so cannot recover." *Huggins*, 423 So. 2d at 150.

An instructive case is *Hilley v. Allstate Ins. Co.*, where the Alabama Supreme Court affirmed summary judgment for the insurer when the insured failed to make required repairs. 562 So. 2d 184 (Ala. 1990). The insured Hilley faced the predicament of meeting the policy's repair requirement for RCV damages, while struggling to obtain financing to make the required repairs. Allstate, like Chubb in this case, made ACV payments to Hilley shortly after the loss. But that payment was not enough for Hilley to repair the building, so Hilley asked Allstate for additional payment up to the policy's RCV limit to help him secure financing. Allstate refused, and Hilley never repaired or replaced the property. Suing for breach of contract and bad faith, Hilley argued that the failure to provide the RCV payment prevented him from making the repairs that would entitle him to claim RCV losses. But the Court found that "a mere intention to replace does not trigger the insurer's replacement cost obligations." *Id.* at 190.

In this case, the parties stipulated in the Pretrial Order that "Plaintiff has neither repaired nor replaced the damaged property." (Doc. 166 at 6). So the court finds no genuine dispute as to this material fact. Because Haman has not repaired

the property, Alabama law would prohibit Haman from claiming RCV damages—if those are the measures of damages Haman seeks.

As to whether Haman seeks RCV costs, Haman states in the Pretrial Order that its current damages statement reflects "repair and replacement costs." (Doc. 166 at 4). In its brief, Haman clarifies that its so-called "repair costs" are "the amount it takes to return the damaged party to its previous position. It *equates to an RCV amount* in this case simply because both consist of repair costs." (Doc. 186 at 9) (emphasis added). Whatever damages valuation Haman may have sought in its early discovery disclosures, Haman's pretrial stipulations now reveal that the "repair costs" it seeks are in fact RCV damages.

Because Haman purchased the optional replacement value coverage, Haman's policy with Chubb provides that "Replacement Cost (without deduction for depreciation) replaces Actual Cash Value" as the measure of damages. (Doc. 105-76 at 21). The policy limits Chubb's RCV payments to either the policy limits, or "the cost to replace the lost or damaged property with other property: (a) Of comparable material and quality; and (b) Used for the same purpose," or the amount actually spent that is necessary to make repairs. (Doc. 105-76 at 22). The court finds no distinction between this measure of damages and Haman's claimed damages, which Haman clarifies "equates to an RCV amount," whichever is less. (Doc. 186 at 9).

And as a matter of Alabama law, Haman is not entitled to claim RCV damages because Haman admits that it failed to repair or replace the property—a "condition precedent" to recovery. *See Huggins*, 423 So. 2d at 150. The Court in *Hilley* instructed that an insured may not fail to repair or replace the damaged property and still claim RCV losses—even if further payment from the insurer is needed to make repairs possible. So although Haman may have expressed an "intention to replace" by engaging in the claims and appraisal process, intent is not enough. *See Hilley*, 562 So. 2d at 190. Chubb, like Allstate, made initial ACV payments but refused later payments when the valuation and appraisal process became disputed. Just as in *Hilley*, Chubb's refusal to pay Haman's additional claims did not relieve Haman of the duty to repair to be able to recover RCV under the policy.

But injecting confusion, Haman argues in its brief that "[RCV] is not what Haman is seeking. This is not a case about RCV." (Doc. 187 at 9). For this point, Haman relies on several generic breach-of-contract cases, providing that "damages are recoverable which are the natural and proximate consequence of the breach, and it is that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Ex parte Steadman*, 812 So. 2d 290, 295 (Ala. 2001) (assessing whether mortgage broker breached title search contract). In Haman's view, the full "repair costs" of the Studio Inn building

are the "natural and proximate consequence" of Chubb's failure to abide by the appraisal provision and failure to pay what was due under the policy. In other words, Haman seeks to escape the limits of the coverage under the policy and instead seeks "damages pursuant to Alabama law for breach of contract." (Doc. 187 at 9).

The problem with this argument is that Haman's cited authority concerns generic breaches of contract, rather than breaches of an insurance contract. Alabama courts find that *insurance* policy provisions setting out the measure of damages within the scope of the policy "expressly limits the damages for which the [insurance company] is liable." *Com. Union Ins. Co. v. Ryals*, 355 So. 2d 684, 686 (Ala. 1978) (quoting *Great Am. Ins. Co. v. R.R. Furniture Salvage of Mobile, Inc.*, 162 So. 2d 488, 494 (Ala. 1964)); *see also Reliance Ins. Co. v. Substation Products Corp.*, 404 So. 2d 598, 609 (Ala. 1981) (limiting recovery to "the correct measure of damages under the policies"). In other words, "contract principles govern the award of any damages in [an insurance] action, and the language of the insurance policy determines the measure of damages to be recovered." *Pritchett v. State Farm Mut. Auto Ins. Co.*, 834 So. 2d 785, 789 (Ala. Civ. App. 2002). And under Alabama law, "the court must enforce the insurance policy as written if the terms are unambiguous." *Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005).

Here, Haman cannot recast its claims for RCV damages as "natural breach" damages because Haman is not entitled to natural breach damages under the policy. The insurance policy, rather than natural consequences of the breach, "determines the measure of damages to be recovered." *See Pritchett*, 834 So. 2d at 789. Haman points to no policy provision that covers its "repair cost" damages beyond the RCV provisions that the court has described, so Haman fails to show that its claimed damages fall within the "expres[s] limits" of the policy. *See Com. Union Ins.*, 355 So. 2d at 686. Here, the policy expressly provides the measure of damages Haman may seek and the conditions precedent to recovery. The court is bound to "enforce the insurance policy as written." *See Safeway Ins. Co. of Ala.*, 912 So. 2d at 1143. So the court construes Haman's damages claims in light of the policy's coverage, which provides for RCV damages *only* if the insured meets the condition precedent. Haman's "repair costs," which Haman clarifies as equating to an RCV amount, fall within that category.

In sum, Alabama law prohibits Haman from recovering RCV damages—however Haman labels them—because Haman undisputedly failed to repair or replace the damaged property. *See Hilley*, 562 So. 2d at 186. The court finds that Haman's efforts to skirt the condition precedent to recover RCV damages by recharacterizing its damages claims as "repair costs" fail because Haman has also admitted that such costs "equate to an RCV amount" for the Studio Inn. (Doc. 186

at 9). And as a matter of law, Haman cannot repackage its RCV damages as damages for "natural and proximate consequences" of the breach. *See Ex parte Steadman*, 812 So. 2d at 295. Rather, Alabama courts interpret insurance policies to expressly limit the insurer's liability to the recovery identified in the policy. *See Reliance Ins. Co.*, 404 So. 2d at 609; *Com. Union Ins. Co.*, 355 So. 2d at 686; *Pritchett*, 834 So. 2d at 789.[4]

Thus, the court will grant summary judgment in part against Haman and in favor of Chubb to the extent that Chubb seeks any RCV damages under the policy. Regardless of the label Haman applies to its damages claims, Haman may not seek any damages equivalent to RCV costs at trial.

But the court stands by its ruling from barely six months ago, that genuine issues of material fact remain as to whether Chubb materially breached the contract by refusing to honor the policy's appraisal provisions and by refusing to pay Haman's additional claims for fire damage to the Studio Inn. (Doc. 158 at 33). Of course, the court also found that a genuine issue exists as to whether Haman materially breached the policy. (*Id.*). On that point, Chubb may present its arguments to the proper audience—the factfinders at trial.

---

[4] The court notes that insurers may be liable for greater damages than the policy provides in cases of bad faith. But Haman's bad faith cause of action did not survive summary judgment. *See* (doc. 158 at 21; doc. 159).

### b. *Damage to the Knights Inn and Office Buildings*

In its damages statement, Haman also seeks damages to the "Knights Inn Building" and the "Office Building," for $1.89 million and $1.36 million, respectively. (Doc. 167). In its motion to strike, Chubb challenges these damages claims, arguing that Haman has never disclosed any fire damages to the Knights Inn and Office buildings and may not do so now. (Doc. 178 at 14 *et seq.*). Chubb further argues that the policy only covers "direct physical loss of or damage" to the covered buildings, rather than attenuated damages caused by disrepair. (Doc. 178 at 14) (citing doc. 105-76 at 8). As stated above, the court also considers this motion to be a motion for partial summary judgment as to claims and damages related to the Knights Inn and Office buildings.

After this court's prior summary judgment ruling, the court thought it had been clear that only one claim remains for trial: breach of contract as to the fire damage to the Studio Inn building. (Doc. 158). As to the fire loss, the court found a genuine issue of material fact as to whether Chubb breached the policy by refusing to pay Haman's additional claims for fire damage to the Studio Inn and "by refusing to honor the appraisal provision as to the fire claim." (Doc. 158 at 33, 37). But the court dismissed all claims arising from wind damage to Haman's three buildings because Haman failed to file the wind claim in a reasonable time under the policy. (Doc. 158 at 39).

At any rate, the court finds that Haman has stipulated that the fire damaged *only* the Studio Inn building. In the Pretrial Order, the parties stipulate that, "On March 22, 2014, the Studio Inn building sustained damage due to a fire." (Doc. 166 at 6). Also, the "Plaintiff's Position" portion of the Pretrial Order identifies "the fire-damaged structure, referred to as the Studio Inn." (Doc. 166 at 8). And Haman's damages brief begins by admitting that "the fire occurred in one of the three buildings located on the premises of the motel, the Studio Inn building. . . ." (Doc. 168 at 1). Based on these statements, the court finds no genuine dispute that the only fire-damaged structure was the Studio Inn building.

Puzzling, then, are Haman's claims for damages to the Knights Inn and Office buildings, given that the court has granted summary judgment as to the wind loss that allegedly damaged those buildings. Haman justifies these claims:

> All three of the buildings were in disrepair and Haman was put out of business in all buildings due to Chubb's breaches of contract related to the fire claim. It is entirely foreseeable that the Studio Inn, having burned out from fire, had difficulty obtaining motel customers in the other buildings. Additionally, by Chubb breaching the contract by its abandonment and delayed underpayment to Haman, all buildings were left to deteriorate and end up in disrepair as a result of the breaches relating to the fire claim.

(Doc. 187 at 4–5).

Haman supports this argument by again citing to generic contract cases stating that "the natural and proximate consequences of the breach" are available as damages. *See Ex parte Steadman*, 812 So. 2d 290, 295 (Ala. 2001). Haman

argues that damages to all three buildings are "natural" because "all buildings deteriorated due to Chubb's breaches of contract relating to the fire claim." (Doc. 187 at 5).

The court disagrees with Haman's claim that damages to the other two buildings are recoverable under generic contract law principles regarding "natural" consequences of the breach. As discussed above, Alabama insurance law, not generic contract law, controls this case, and insurance law expressly limits recovery to the terms of the policy. *See Reliance Ins. Co.*, 404 So. 2d at 609; *Com. Union Ins. Co.*, 355 So. 2d at 686; *Pritchett*, 834 So. 2d at 789. Also, the court must enforce the policy terms as written. *See Safeway Ins. Co. of Ala.*, 912 So. 2d at 1143. But Haman cites no provision of the policy under which its fire claims regarding the Knights Inn and Office buildings would have merit. Haman also cites no insurance law where breach of a contract covering one building entitled the plaintiff to recover damages suffered under separate causes of loss to other buildings. So as a matter of law, Haman may not claim "natural" contractual damages for attenuated losses to the Knights Inn and Office buildings, which Haman stipulates that the fire did not damage.

Haman's claims for "natural" damages to the Knights Inn and Office buildings also asks the court to do something it cannot do: "rewrite the policy to provide coverage that was not intended by the parties." *See Pritchett*, 834 So. 2d at

791. The policy's building and personal property coverage states that Haman may only recover for "direct physical loss of or damage to" its buildings.[5] (Doc. 105-76 at 8). Here, although all three buildings were allegedly damaged by covered losses (wind and fire), this court granted summary judgment against claims arising from the alleged wind damage to all three of Haman's buildings. (Doc. 158). So under the policy, Haman may only claim damages for buildings that suffered direct physical damage caused by the March 22, 2014 fire. Haman stipulated that only the Studio Inn suffered fire losses, and Haman's previously disclosed damages for the other two buildings stemmed only from wind damage. Neither this court nor Haman can rewrite the policy to provide for "natural" damages to the Knights Inn and Office buildings. *See Pritchett*, 834 So. 2d at 791.

Insofar as Haman's damages statement attempts to amend its prior claims to assert that the March 22, 2014 fire damaged the Knights Inn and Office buildings, that claim was not disclosed under Rule 26. The court prohibits any such amendment under the power granted in Rule 37(c) because Haman shows no substantial justification for that amendment and permitting it on the eve of trial would prejudice Chubb. *See* Fed. R. Civ. P. 37(c)(1). Also, any new claim for fire damage to the other two buildings would be untimely under the policy, which requires that the insured "give . . . prompt notice of the loss or damage." *See* (doc.

---

[5] As the court will later explain, Haman also purchased business income coverage, but Haman has not stated a claim under that provision.

105-67 at 17). And insofar as Haman states a new "theory of damages based on" a newly claimed damage to the Knights Inn and Office buildings, the court also prohibits any such amendment under Rule 37(c). *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010). Haman may only recover for fire damage to the Studio Inn building, and only if Haman proves that such losses fall within the policy.

Haman also argues that it deserves payment for the other buildings because Chubb's alleged breaches of the insurance contract as to the Studio Inn damage "prevented" Haman from repairing and maintaining the other two buildings. (Doc. 187 at 11). In other words, Chubb's alleged failure to pay the amount Haman requested for the Studio Inn building and Chubb's failure to complete the appraisal process "led to the entire motel going out of business" because Haman did not receive insurance payments that would keep the motel afloat. (*Id.*). Haman argues that Chubb's alleged breaches as to the fire loss led to recoverable damages for the "resultant deterioration of all buildings." (Doc. 168 at 1). Haman also argues that this theory of the case is not new. For example, the complaint stated that "Chubb has refused to abide by the terms of the insurance contract," and, therefore "Plaintiff . . . has been completely 'out of business.'" (Doc. 35 at 3).

For one thing, Haman's argument glosses the factual record. That record indicates several causes led to the motel's going out of business, including perhaps

Chubb's alleged breaches regarding the fire claims, Haman's own failure to repair the buildings, and, ultimately, the City of Bessemer's finding that the motel buildings were "hazardous to both life and property." (Doc. 177-1 at 2, Cease and Desist Letter).

Also, Haman's claims for "resultant deterioration" and "out-of-business" losses run headlong into several provisions of the policy, which "determines the measure of damages to be recovered." *See Pritchett*, 834 So. 2d at 789. First, as stated above, Haman's building and personal property coverage only covers "direct physical loss of or damage to Covered Property." (Doc. 105-76 at 8). Although Alabama's state courts have never conclusively interpreted what constitutes a "direct physical loss or damage," Alabama's federal courts are developing a robust interpretation of that phrase in the context of insurance claims for COVID-related business losses. *See Hillcrest Optical, Inc. v. Continental Cas. Co.*, 497 F. Supp. 3d 1203, 1210 (S.D. Ala. 2020) (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293 (Ala 1999)); *see also Ascent Hospitality Management Co., LLC v. Employers Ins. Co. of Wausau*, -- F. Supp. 3d --, 2021 WL 1791490, at *3 (N.D. Ala. 2021). Those courts generally find that a "direct physical loss or damage" requires a "tangible injury to property" that is "due to some immediate or proximate cause" covered by the policy. *See Hillcrest Optical, Inc.*, 497 F. Supp. 3d at 1210–1211 (citing *Slade*, 747 So. 2d at 310). But Haman's motel went out of

business long after the property's tangible injury that occurred with the March 22, 2014 fire. So the court finds that Haman has proven neither a direct physical loss nor proximate causation for these losses.

Second, the policy provides that Haman may only seek damages for losses "*caused by or resulting from* any Covered Cause of Loss." (Doc. 105-76 at 8) (emphasis added). Here, Haman argues that Chubb's alleged breaches of the policy—not the fire damage itself—caused the "resultant deterioration" to the Knights Inn and Office buildings. (Doc. 168 at 1). Likewise, Haman argues that the motel went out of business because of Chubb's breach, not the fire damage to the Studio Inn. (*Id.*). But the only covered cause of loss under the policy is the fire damage to the Studio Inn, not Chubb's alleged breach. So even if Chubb's alleged breach caused the "resultant deterioration" to the Knights Inn and Office buildings, Haman fails to show that such deterioration was *caused by* a covered cause of loss—the fire damage. In other words, the disrepair of the Knights Inn and Office buildings was not "direct physical . . . damage" caused by the March 22, 2014 fire and thus does not form the basis of recoverable damages.

And third, Haman's argument that Chubb's alleged breaches "prevented" it from making repairs to its buildings and caused their deterioration contradicts the policy's provision that, in the event of a loss, *Haman* must "take all reasonable steps to protect the Covered Property from further damage, and keep a record of

[its] expenses necessary to protect the Covered Property. . . ." (Doc. 105-76 at 17). Haman alone bore the duty to take "all reasonable steps to protect" its three buildings. Any "resultant deterioration" that the Studio Inn, Knights Inn, and Office buildings suffered is attributable to Haman's failure to abide by this provision. Haman's attempt to label Chubb's alleged breaches as "preventing" its repair efforts does not shift the responsibility to Chubb for repairs to the other two buildings that Haman admits were in disrepair.

Finally, Haman's cited authority indicates that Haman claims that Chubb breached a contractual duty of good faith and fair dealing. *See* (doc. 187 at 13–15). To be sure, Alabama courts recognize—in general breach-of-contract cases—that "[a] defendant breaches a contract when he or she prevents performance of the contract without the fault of the plaintiff whose duty it was to perform and who is ready, willing and able to perform." *Baldwin v. Panetta*, 4 So. 3d 555, 561 (Ala. Civ. App. 2008). But in the insurance context, the Alabama Supreme Court has stated: "We cannot allow the obligation of good faith and fair dealing to supply a term that adds something new or different to the rights and obligations to which the parties have expressly agreed or to vary clear contract terms." *Hilley*, 562 So. 2d at 190.

This court heeds *Hilley*'s advice because the policy terms unambiguously limit coverage to direct physical loss or damage, and those terms provide the

correct measure of damages. *See Pritchett*, 834 So. 2d at 789. Moreover, Haman

forgets Chubb's allegations that *Haman* breached the policy by not selecting an

impartial appraiser and by not providing timely notice of its claims. Thus, Haman

itself arguably bears "fault" and was not "ready, willing and able to perform." *See*

*Baldwin*, 4 So. 3d at 561.

At any rate, to the extent that Haman is now asserting a new claim for

breach of the contractual duty of good faith and fair dealing, the court has already

granted summary judgment against that claim. (Doc. 158 at 41). So no claim for

damages arising from any breach of good faith and fair dealing can succeed.

Alternatively, the court now bars damages from such claim under Rule 37(c)

because Haman did not previously disclose those damages as Rule 26(a) requires.

*See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010) (barring

damages because plaintiff did not "enumerate 'loss of goodwill' as a category of

damages until the Joint Pretrial Statement").

So the court will grant summary judgment in favor of Chubb and against

Haman as to all damages claims involving the Knights Inn and Office buildings.

The court already dismissed claims arising from the losses these buildings

allegedly suffered, caused by wind damage. (Doc. 158 at 37 *et seq.*). To be clear,

Haman may not present evidence of damages to these buildings at trial.

### c.  Lost Business Income Damages

Chubb also presents another challenge to Haman's generalized claim that Chubb's breaches put the entire motel operation out of business. (Doc. 178 at 16). Chubb argues that this "out of business" claim is really a claim for "lost business income" as described in the policy, and for which Haman had coverage but has not previously made a claim. (Doc. 178 at 16, *et seq*.). Chubb also argues that Haman's failure to disclose the basis for the out-of-business damage figure prejudices Chubb. (*Id.*).

Haman responds that its "out of business" claim for damages is not a lost business income claim. Rather, it is another claim for damages that were the "natural and proximate consequences of [Chubb's] breach." *See* (doc. 187 at 7) (citing *Ex parte Steadman*, 812 So. 2d at 295). In other words, the very idea that Haman seeks lost business income is "entirely false." (Doc. 187 at 9).

In the sections above, the court has explained that damages are not measured by the "natural and proximate consequences of the breach" in the insurance context. *See Ex parte Steadman*, 812 So. 2d at 295.  Rather, the policy's valuation provisions control. *See Reliance Ins. Co.*, 404 So. 2d at 609; *Com. Union Ins. Co.*, 355 So. 2d at 686; *Pritchett*, 834 So. 2d at 789. And the court must enforce unambiguous provisions of the policy. *See Safeway Ins. Co. of Ala.*, 912 So. 2d at 1143.

Here, the policy provided for business income losses. (Doc. 105-76 at 7, 23). But Haman admits in its brief that it never made such a claim and does not intend to do so now. (Doc. 187 at 9). So the court finds no genuine dispute as to that fact. Also, a lost business income claim would now be untimely under the policy and barred. *See* (doc. 158 at 39) (granting summary judgment on wind claims because such claims were untimely). Because Haman did not state a lost business income claim, it is now limited to recovery under the other terms of the policy. As a matter of law, then, Haman may not claim damages for the loss of the "entire motel operation" because the policy does not provide for such losses. *See Pritchett*, 834 So. 2d at 789.

Also ambiguous are Haman's unexplained line items in the damages statement for "overhead" and "profits." (Doc. 167 at 5). Insofar as these claims (or any others) are claims for lost business income, the court finds that damages arising from those claims were not timely disclosed under Rule 26(a). Also, when Chubb construed Haman's claims to be seeking lost business income and then challenged such claims in the current motions, Haman abandoned those claims by failing to defend them in its brief. (Doc. 187 at 9); *see Adams v. Bank of Am, N.A.*, 237 F. Supp. 3d 1189, 1203 (N.D. Ala. 2017) (finding that a party "that fails to defend a claim that is targeted by a summary judgment motion is deemed to have abandoned that claim") (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322

(11th Cir. 2001) and collecting cases).

For these reasons, the court will grant summary judgment in favor of Chubb and against Haman as to all claims for lost busines income, however named, categorized, or classified. In other words, Haman cannot present evidence of damages or make arguments about the "entire motel operation going out of business" at trial.

### d. Prejudgment Interest and 2021 Replacement Costs

In its brief, Haman states that its damages statement reflects "6% interest on 2021 repair costs." (Doc. 187 at 9). In the Pretrial Order, Haman also states that it seeks "current replacement costs," which are "considerably higher" than those provided in its previous insurance claims. (Doc. 166 at 8). Haman thus seeks to recover the alleged value of all three buildings based upon 2021 prices instead of prices effective on the date of the fire—March 22, 2014. Haman also seeks prejudgment interest on these amounts.

Chubb disagrees with Haman's valuation, citing policy provisions stating that loss valuations should occur as of the date of the loss: "We will determine the value of Covered Property in the event of loss or damage . . . *as of the time of loss or damage*." (Doc. 105-76 at 18) (emphasis added).

The court finds that Haman may not claim any damages—RCV or otherwise—at 2021 costs. As explained above, Alabama courts treat insurance

policy provisions as express limits on recovery. *See Reliance Ins. Co.*, 404 So. 2d at 609; *Com. Union Ins. Co.*, 355 So. 2d at 686; *Pritchett*, 834 So. 2d at 789. Here, the policy provides that the parties are to calculate loss valuations "as of the time of loss or damage," not the time of trial. (Doc. 105-76 at 18). So this provision limits Haman's damages, if any, to cash value at the time of the fire, March 22, 2014.

As to interest, Haman's argument for prejudgment interest relies on Alabama law providing that "where an amount is *certain or can be made certain* as to damages at the time of the breach, the amount may be increased by the addition of legal interest from that time until recovery." *Miller & Co., Inc. v. McCown*, 531 So. 2d 888, 889 (Ala. 1988) (citing C. Gamble, *Alabama Law of Damages*, § 8-3 (2d ed. 1988)) (emphasis added). But in this case, Haman's own brief illustrates that the amount at issue was far from certain. For example, Haman points out the motel owner's testimony that after she filed a proof of loss in 2014, "she found out later that the actual damages were 'a lot more than that.'" (Doc. 168 at 4). And of course, most of the argument over whether Chubb breached the policy's appraisal provision stems from a dispute over whether Haman's appraiser was impartial, and Chubb challenged his updated 2015 loss valuations. The court finds, then, no genuine dispute that the amount of damages was *not* "certain . . . at the time of the

breach." *See McCown*, 531 So. 2d at 889.  Thus, Alabama law prohibits Haman's claims for prejudgment interest.

So, the court will grant summary judgment in favor of Chubb and against Haman as to the claim for 2021 valuation of losses; Haman may not seek "current replacement costs." The court will also grant summary judgment in favor of Chubb and against Haman on the issue of prejudgment interest; Haman may not seek prejudgment interest because the disputed amount was not a sum certain at the time of the alleged breach.

## IV.   <u>Conclusion</u>

Although styled as a "motion to strike," Chubb's motion addresses the purely legal issue of what damages Haman may seek, so the court treats that motion as a motion for partial summary judgment. For the reasons stated above, the court will grant partial summary judgment in favor of Chubb and against Haman as to the following issues: (1) Haman may not claim damage to the Studio Inn at replacement cost value (RCV) because Haman did not repair or replace the damaged property; (2) Haman may not claim damages to the Knights Inn and Office buildings because they did not sustain direct physical damage from the March 22, 2014 fire; (3) Haman may not seek damages for lost business income or for "the entire motel operation going out of business"; (4) Haman may not seek as damages "current replacement costs" or "2021 repair costs"; and (5) Haman may

not claim prejudgment interest on its damages. The court will not permit Haman to offer evidence on these issues at trial.

But the court is not revisiting its prior finding that a genuine dispute of material fact exists as to whether Chubb breached the policy by opting out of the appraisal process or by not paying for the disputed damages as to the fire claim. (Doc. 158 at 33, 38).

To be clear, the only issues for trial are whether Chubb breached the insurance contract by, as Haman claims, (a) improperly refusing to engage in the appraisal process, and/or (b) failing to pay the correct amount for fire damage to the Studio Inn building; and whether, as Chubb claims, Haman (a) breached the insurance appraisal provision by failing to select an impartial appraiser and/or (b) breached the insurance policy by failing to complying with its other post-loss obligations.

Further, damages, if any, must be valued as of the time of loss (i.e., the March 22, 2014 fire) and limited to the correct measure of damages in the policy, including applicable conditions precedent.

**DONE** and **ORDERED** this 12th day of October, 2021.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE